Fred Norton (CA SBN 224725)
fnorton@nortonlaw.com
Nathan Walker (CA SBN 206128)
nwalker@nortonlaw.com
Bree Hann (CA SBN 215695)
bhann@nortonlaw.com
Gil Walton (CA SBN 324133)
gwalton@nortonlaw.com
THE NORTON LAW FIRM PC
299 Third Street, Suite 200
Oakland, CA 94607
Telephone: (510) 906-4900

Attorneys for Defendant
PATREON, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BRAYDEN STARK, JUDD OOSTYEN, KEVIN BLACK, and MARYANN OWENS, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>PATREON, INC.,<br><br>                    Defendant. | Case No. 3:22-cv-03131-JCS<br><br>**DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      September 9, 2022<br>Time:     9:30 a.m.<br>Judge:    Hon. Joseph C. Spero |

**NOTICE OF MOTION AND MOTION**

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD, PLEASE TAKE NOTICE that on September 9, 2022, at 9:30 a.m. or as soon thereafter as counsel may be heard, in Courtroom F, 15th Floor of this Court, located at 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Patreon, Inc. ("Patreon") will, and hereby does, move for an order dismissing the Complaint in this case (Dkt. 1) in its entirety with prejudice, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim on which relief can be granted.

This motion is based on this notice of motion and motion; the following memorandum of points and authorities; Patreon's Request for Judicial Notice ("RJN") and its attached supporting Declaration of Tyler Layton submitted herewith; the Complaint (Dkt. 1); any evidence or argument presented at the hearing on the motion; and any other matters the Court deems proper.

**STATEMENT OF RELIEF SOUGHT**

Patreon moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint in this case in its entirety with prejudice.

## **TABLE OF CONTENTS**

I.      INTRODUCTION AND STATEMENT OF ISSUES ................................................. 1

II.     STATEMENT OF FACTS ........................................................................................ 1

III.    ARGUMENT ........................................................................................................... 5

        A.    Legal Standard ............................................................................................. 5

        B.    The Court Should Dismiss Plaintiffs' VPPA Claims ................................. 5

              1.    Overview of the VPPA ...................................................................... 5

              2.    Patreon Is Not a "Video Tape Service Provider" .............................. 6

              3.    Plaintiffs Fail to Allege Patreon Disclosed Their Identities............. 9

              4.    Plaintiffs Fail to Plausibly Allege Patreon "Knowingly" Disclosed
                    PII to Facebook ................................................................................. 9

              5.    The VPPA, on Its Face and as Applied to Patreon, Violates the First
                    Amendment to the United States Constitution ................................ 10

                    a.    The VPPA, on Its Face, Violates the First Amendment ......... 11

                    b.    The VPPA, as Applied in this Case, Violates the First Amendment....... 13

                          i.    The VPPA is a content- and speaker based regulation of
                                non-commercial speech and thus it is subject to strict scrutiny... 13

                          ii.   The VPPA fails to satisfy strict scrutiny on the alleged
                                facts of this lawsuit ...................................................... 16

                          iii.  Even if the VPPA regulates commercial speech subject to
                                intermediate scrutiny, it fails to withstand scrutiny .................... 18

        C.    Plaintiffs Do Not State A Claim For Violation of the UCL or the CLRA..................... 20

              1.    Plaintiffs Do Not State a UCL Claim Based on Patreon's Alleged
                    Disclosure of Information to Facebook............................................. 21

              2.    Plaintiffs Do Not State a UCL or CLRA Claim Based on Patreon's
                    Alleged Failure to Disclose ............................................................. 23

        D.    Plaintiffs' Claim for Unjust Enrichment Should Be Dismissed ................... 24

IV.     CONCLUSION...................................................................................................... 25

i

Defendant Patreon, Inc.'s Notice Of Motion And Motion To Dismiss Complaint;
Memorandum Of Points And Authorities In Support Thereof
Case No. 3:22-cv-03131-JCS

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

*44 Liquormart, Inc. v. Rhode Island*,
    517 U.S. 484 (1996) ............................................................................................... 19

*Abuelhawa v. Santa Clara Univ.*,
    529 F. Supp. 3d 1059 (N.D. Cal. 2021) .................................................................. 24

*Ashcroft v. Free Speech Coal.*,
    535 U.S. 234 (2002) ............................................................................................... 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................... 5, 10, 25

*Austin-Spearman v. AMC Network Ent. LLC*,
    98 F. Supp. 3d 662 (S.D.N.Y. 2015) ................................................................ 14, 18

*Bank of New York Mellon v. Citibank, N.A.*,
    8 Cal. App. 5th 935, 214 Cal.Rptr.3d 504 (2017) ................................................... 25

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
    140 S.Ct. 2335 (2020) ............................................................................................ 14

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001) ............................................................................................... 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................. 5

*Berger v. City of Seattle*,
    569 F.3d 1029 (9th Cir. 2009) ............................................................................... 14

*Bolger v. Youngs Drug Prod. Corp.*,
    463 U.S. 60 (1983) ................................................................................................. 15

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ............................................................. 24, 25

*Brown v. Ent. Merchants Ass'n*,
    564 U.S. 786 (2011) ......................................................................................... 15, 17

*Cappello v. Walmart Inc.*,
    No. 18-CV-06678-RS, 2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) ...................... 22

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
    447 U.S. 557 (1980) ............................................................................................... 19

*Collins v. eMachines, Inc.*,
    202 Cal. App. 4th 249 (2011) ................................................................................. 24

*Cox Broad. Corp. v. Cohn*,
    420 U.S. 469 (1975) ............................................................................................... 13

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Crittenden v. Apple, Inc.*,
  No. 5:21-CV-04322-EJD, 2022 WL 2132224 (N.D. Cal. June 14, 2022)...........................................9

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012) .............................................................................................21

*De Havilland v. FX Networks, LLC*,
  21 Cal. App. 5th 845, 230 Cal.Rptr.3d 625 (2018)...........................................................25

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) .............................................................................5, 7, 9, 12

*Ellis v. Cartoon Network, Inc.*,
  803 F.3d 1251 (11th Cir. 2015) .....................................................................................14, 18

*ESG Cap. Partners, LP v. Stratos*,
  828 F.3d 1023 (9th Cir. 2016) ............................................................................................25

*Forsyth Cnty., Ga. v. Nationalist Movement*,
  505 U.S. 123 (1992)............................................................................................................11

*Garrison v. Louisiana*,
  379 U.S. 64 (1964) ............................................................................................................12

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) .....................................................................................................13, 17

*Hill v. Roll Int'l Corp.*,
  195 Cal. App. 4th 1295, 128 Cal.Rptr.3d 109 (2011).......................................................25

*Hunt v. City of Los Angeles*,
  638 F.3d 703 (9th Cir. 2011) .............................................................................................15

*IMDb.com Inc. v. Becerra*,
  962 F.3d 1111 (9th Cir. 2020) .....................................................................................*Passim*

*In re Google Android Consumer Priv. Litig.*,
  No  11-MD-02264 JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ...........................23

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
  794 F. Supp. 2d 1067 (N.D. Cal. 2011) ............................................................................22

*In re Grand Jury Subpoena to Kramerbooks & Afterwords Inc.*,
  26 Med. L. Rptr. 1599 (D.D.C. 1998)................................................................................18

*In re Hulu Priv. Litig.*,
  86 F. Supp. 3d 1090 (N.D. Cal. 2015) ............................................................................6, 9

*In re iPhone Application Litig.*,
  No. 11-md-2250, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)......................................22

*In re Nickelodeon Consumer Priv. Litig.*,
  827 F.3d 262 (3d Cr. 2016).................................................................................................9

*In re Vizio, Inc., Consumer Privacy Litigation*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ...............................................................................8

*Italian Colors Rest. v. Becerra*,
    878 F.3d 1165 (9th Cir. 2018) ..................................................................................... 19, 20

*Janda v. T-Mobile, USA, Inc.*,
    No. C 05-03729 JSW, 2009 WL 667206 (N.D. Cal. Mar. 13, 2009) .................................... 21

*Klein v. Facebook, Inc.*,
    No. 20-CV-08570-LHK, 2022 WL 141561 (N.D. Cal. Jan. 14, 2022) ................................... 24

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ...................................................................................................... 21

*LaCourt v. Specific Media, Inc.*,
    No. SACV 10-1256 GW JCGX, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011)...................... 23

*Landers v. Quality Commc'ns, Inc.*,
    771 F.3d 638 (9th Cir. 2014), *as amended* ......................................................................... 7

*Low v. Linkedin Corp.*,
    2011 WL 5509848 (N.D. Cal. Nov.11, 2011) ...................................................................... 23

*McBride v. Boughton*,
    123 Cal. App. 4th 379 (2004) ............................................................................................ 25

*McDougal v. Fox News Network, LLC*,
    489 F. Supp. 3d 174 (S.D.N.Y. 2020) ................................................................................ 12

*Meyer v. Sprint Spectrum L.P.*,
    45 Cal. 4th 634 (2009) ...................................................................................................... 24

*MicroTechnologies, LLC v. Autonomy, Inc.*,
    No. 15-CV-02220-JCS, 2017 WL 1848470 (N.D. Cal. May 8, 2017) .................................. 25

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990)............................................................................................................... 12

*Millare v. Bank of Am., N.A.*,
    No. CV 21-8398 PA (KESX), 2022 WL 1434109 (C.D. Cal. Apr. 1, 2022) ........................ 10

*Mollett v. Netflix, Inc.*,
    No. 5:11-CV-01629-EJD, 2012 WL 3731542 (N.D. Cal. Aug. 17, 2012)......................... 6, 9

*New York v. Ferber*,
    458 U.S. 747 (1982)........................................................................................................... 11

*Papasan v. Allain*,
    478 U.S. 265 (1986)............................................................................................................. 5

*Persona Cosms., Inc. v. Societe Des Produits Nestle S.A.*,
    No. 221CV04644JVSKES, 2021 WL 6103348 (C.D. Cal. Nov. 3, 2021)............................ 25

*R.A.V. v. City of St. Paul, Minn.*,
    505 U.S. 377 (1992)..................................................................................................... 14, 17

*Reed v. Town of Gilbert, Ariz.*,
    576 U.S. 155 (2015)..................................................................................................... 15, 16

iv

*Resnick v. Hyundai Motor Am., Inc.*,
  No. CV1600593BROPJWX, 2017 WL 1531192 (C.D. Cal. Apr. 13, 2017) (dismissing .................. 10

*Rhynes v. Stryker Corp.*,
  No. 10-5619 SC, 2011 WL 2149095 (N.D. Cal. May 31, 2011) ........................................................ 7

*Robbins v. Plushcare, Inc.*,
  No. 21-CV-03444-MMC, 2022 WL 2988344 (N.D. Cal. July 28, 2022) .......................................... 25

*Ruiz v. Gap, Inc.*,
  540 F. Supp. 2d 1121 (N.D. Cal. 2008) .......................................................................................... 22

*S&S Worldwide, Inc. v. Wells Fargo Bank*,
  509 F. Supp. 3d 1154 (N.D. Cal. 2020) .......................................................................................... 10

*Salenfriend v. Green Tree Servicing LLC*,
  No. C-14-03251(EDL), 2014 WL 12647745 (N.D. Cal. Sept. 24, 2014) .......................................... 9

*Seattle Times Co. v. Rhinehart*,
  467 U.S. 20 (1984) ......................................................................................................................... 14

*Shin v. ICON Found.*,
  No. 20-CV-07363-WHO, 2021 WL 6117508 (N.D. Cal. Dec. 27, 2021) .......................................... 25

*Smith v. Daily Mail Pub. Co.*,
  443 U.S. 97 (1979) ......................................................................................................................... 17

*Sorrell v. IMS Health Inc.*,
  564 U.S. 552 (2011) ......................................................................................................... 13, 14, 19, 20

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ............................................................................................................ 5

*State Bd. of Pharmacy v. Virginia. Citizens Consumer Council, Inc.*,
  425 U.S. 748 (1976) ....................................................................................................................... 15

*Svenson v. Google Inc.*,
  65 F. Supp. 3d 717 (N.D. Cal. 2014) .............................................................................................. 22

*Tattered Cover, Inc. v. City of Thornton*,
  44 P.3d 1044 (Colo. 2002) .............................................................................................................. 18

The *Fla. Star v. B.J.F.*,
  491 U.S. 524 (1989) ............................................................................................................. 12, 13, 18

*U.D. Registry Inc. v. State of California*,
  144 Cal. App. 4th 405 (2006) ......................................................................................................... 15

*United States v. Hansen*,
  25 F.4th 1103 (9th Cir. 2022) ......................................................................................................... 11

*United States v. Playboy Ent. Grp., Inc.*,
  529 U.S. 803 (2000) ................................................................................................................... 16, 17

*United States v. Stanko*,
  491 F.3d 408 (8th Cir. 2007) ............................................................................................................ 7

v

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-03131-JCS

*United States v. Stevens*,
   559 U.S. 460 (2010)................................................................................. 11, 13

*Van Patten v. Vertical Fitness Grp., LLC*,
   847 F.3d 1037 (9th Cir. 2017) ....................................................................... 21

*Victory Processing, LLC v. Fox*,
   937 F.3d 1218 (9th Cir. 2019) ....................................................................... 17

*Warren v. Fox Fam. Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) ......................................................................... 5

*Washington State Grange v. Washington State Republican Party*,
   552 U.S. 442 (2008)....................................................................................... 11

**Statutes**

8 U.S.C. § 1324 ...................................................................................................... 11

18 U.S.C. § 2710 ............................................................................................. *Passim*

Cal. Bus. & Prof. Code § 17204 ........................................................................... 21

Cal. Civ. Code § 1780(a) ...................................................................................... 24

Cal. Civ. Code § 1798.83.5.............................................................................. 16, 18

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ......................................................... 1, 2

## I. INTRODUCTION AND STATEMENT OF ISSUES

Defendant Patreon, Inc. moves to dismiss the claims of the four Plaintiffs here, each of whom alleges that Patreon unlawfully transmitted to Facebook information about videos Plaintiffs watched when using Patreon's website.  None of the claims has merit.

For their claims under the Video Privacy Protection Act (VPPA), Plaintiffs must plead facts showing that Patreon is a "video tape service provider," that Patreon disclosed the specific videos they watched along with information that would identify them individually, and that Patreon had actual knowledge it was transmitting that particular information to Facebook.  Not only does the complaint lack any such factual allegations, documents cited in the Complaint contradict an essential element of the claim.  But even if Plaintiffs could adequately plead a violation of the VPPA, it would not matter, because that law – which imposes presumed damages on the disclosure of truthful information to which a consumer has actually consented, without any actual injury – violates the First Amendment, both on its face and as applied.

Plaintiffs' UCL and CLRA claims fare no better.  Plaintiffs cannot recover for disclosures that they actually consented to, as they each did here.  And even if consent were lacking, Plaintiffs have failed to plead required facts that show they lost money or property merely because Patreon (purportedly) disclosed to Facebook videos they had watched, so that Facebook and Patreon could improve their services to Plaintiffs.  Plaintiffs' final claim, for unjust enrichment, is not a standalone cause of action in California.  Moreover, the Complaint once again alleges no facts to show how Patreon was unjustly enriched, nor any facts that would establish that Patreon could be unjustly enriched by conduct that Plaintiffs agreed to in Patreon's Terms of Use.

The Complaint fails to state a claim, and should be dismissed with prejudice.

## II. STATEMENT OF FACTS

The gist of the case is simple:  The four Plaintiffs allege that they each signed up to be Patreon members and Facebook users; they watched videos using the Patreon website; and Patreon, through the use of a software tool called Facebook Pixel, transmitted to Facebook the titles of the videos Plaintiffs watched, along with their Facebook user IDs.  (Dkt. 1, ¶¶ 1-4)  Plaintiffs assert that Patreon never told them it would disclose their viewing content to third parties, and that they never consented to such

disclosures.  (*Id.* ¶ 5)  Had they known, Plaintiffs say, they would have paid Patreon less, or not used Patreon's services at all.  (*Id.* ¶ 94)[1]

But the Complaint is more noteworthy for what it fails to say, for what it says only in conclusory fashion without any factual support, and for what it says that is directly contradicted by documents that the Complaint expressly references, such as Patreon's Terms of Use ("ToU"), Privacy Policy, and Cookie Policy.  (*Id.* ¶¶ 47, 85)  Plaintiffs' silence on significant elements of their claim, plus the facts established by the actual documents they cite, tell a different story.

Although Plaintiffs allege, in conclusory fashion, that Patreon is a "video tape service provider" (*id.* ¶¶ 2, 65), the Complaint does not contain a single allegation describing Patreon's actual business. Fortunately, Patreon's Terms of Use describe what Patreon actually does for its members.  (Patreon Request for Judicial Notice ("RJN") Ex. A (Layton Decl.) at Ex. 1 (ToU))

"Patreon is a membership platform that enables creators to be paid by their fans."  (RJN Ex. A at Ex. 1 (ToU) at 1; *see also* RJN Ex. A at Ex. 5 (Privacy Policy) at 2 ("Patreon is a platform where patrons can support and engage with creators.")  A creator is someone who creates a membership page on Patreon to engage with their fans – known on the site as patrons – by offering "access, merchandise, exclusivity, and engaging experiences."  (RJN Ex. A at Ex. 1 (ToU) at 3-4)  As the ToU explain, creators "can use creator tools that Patreon provides, showcase [their] creations, provide merchandise to patrons through Patreon's Merch service, and receive recurring revenue from [their] page."  (*Id.* at 4) Patrons purchase memberships for specific creators on a monthly, annual, or per creation basis.  (*Id.* at 8-11)  The fees that patrons pay for memberships go to the creators as taxable income, except for a percentage (currently 5-12%) that Patreon retains as a platform and payment-processing fee.  (*Id.* at 5-6)

In short, Patreon's business is helping creative people connect with those who are interested in supporting their work, for which it charges a commission.  Patreon is not in the business of "rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials."  18 U.S.C. § 2710(a)(4).

---

[1] Patreon denies that it discloses to Facebook what videos Patreon members watch.  But this is a Rule 12(b)(6) motion, and for this motion Patreon accepts as true the Complaint's factual allegations, to the extent they are not contradicted by the documents cited in the Complaint itself.

2

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-03131-JCS

The Complaint alleges that each Plaintiff paid Patreon "subscription fees."  (Dkt. 1, ¶¶ 19, 22, 25, 28)  With the benefit of the ToU, that allegation is more clear:  each of the Plaintiffs signed up for a membership program to be a patron of one or more creators through the Patreon platform, and Patreon retained a small percentage of each payment.  (RJN Ex. A at Ex. 1 (ToU) at 5-6)  In addition, each Plaintiff alleges that they viewed videos on the Patreon website.  (Dkt. 1, ¶¶ 20, 23, 26, 29)  Presumably, one or more of the creators they supported offered some form of video content to their patrons through their membership pages.  (RJN Ex. A at Ex. 1 at 3-4)

Plaintiffs further allege that Patreon's website incorporated "Pixel," which they describe as "an advertising tool that allows website owners to track visitor actions on their websites for purposes of sending the corresponding information to Facebook."  (Dkt. 1, ¶ 41)  According to Plaintiffs, "[t]hrough use of the Facebook Pixel, Patreon discloses to Facebook the full name of each video a User watched, together with the User's FID [Facebook ID], thus linking Users' viewing content choices and preferences to their Facebook profiles."  (*Id.* ¶ 45)

Plaintiffs claim that they did not know about, and did not consent to, the disclosure of their viewing conduct to third parties.  (Dkt. 1, ¶¶ 5, 46, 79)  Patreon's ToU and Privacy Policy say otherwise.[2]  In the Privacy Policy, Patreon disclosed the data it may collect:

- Through their accounts, members provide their first and last name, email address, and state and country of residence.  (RJN Ex. A at Ex. 5 at 2)

- Patreon stated that "[w]e collect information automatically as you navigate the site or through our third-party analytics providers."  (*Id.* at 5)

- Patreon stated that it collects "usage information such as the type of device you use to access Patreon, your operating system, browser type, IP address, device ID, the pages you visit or request, links clicked, referring sites, user interactions and your search terms."  (*Id.*)

In addition, Patreon's Privacy Policy disclosed, under the bolded heading "Information We Share With Third Parties," that it would share that data with third parties like Facebook:

**INFORMATION WE SHARE WITH THIRD PARTIES**

... We will only ***share data with third parties***, other than with creators, under the following circumstances:  ***... with our service providers, who are companies that are contractually engaged with us to provide us with services***, *such as* order fulfilment, email management,

---

[2] Patreon's ToU explicitly incorporates its Privacy Policy.  (RJN Ex. A at Ex. 1 at 2; *see also* RJN Ex. A at Ex. 5 at 2 ("This updated Privacy Policy … is part of our Terms of Use."))

*analysing data trends*, credit card processing, multi-currency settlement solutions, increasing our brand awareness and *user engagement with marketing initiatives*, and fraud detection and prevention.

(*Id.* at 11 (emphasis in title in original; emphasis in body text added))

Plaintiffs nonetheless object to Patreon's alleged disclosure to Facebook of titles of videos they watched on the Patreon website, along with their Facebook IDs ("FIDs").  Plaintiffs assert, as a general matter, that a user's FID is linked to their Facebook profile, "which generally contains a wide range of demographic and other information about the user, including pictures, personal interests, work history, relationship status, and other details."  (Dkt. 1, ¶ 2)  But Plaintiffs nowhere allege that *their own* Facebook profiles have detailed personal information about them, or even that their Facebook profiles use their own names.

Plaintiffs allege that "Patreon was aware" that its disclosures to Facebook through Pixel identified Plaintiffs and that "Patreon also knew" Plaintiffs' viewing content "was disclosed to Facebook because Patreon programmed the Facebook Pixel into its website code knowing that Facebook would receive video titles and the subscriber's FID when a user watched a video."  (*Id.* ¶ 71)  Plaintiffs offer nothing else in support of their allegation that Patreon "was aware of" or "knew" what specific information was transmitted by the Facebook Pixel.

As for injury, the Complaint remains true to form.  Plaintiffs allege that Patreon and Facebook use the information from Pixel to improve the products and services they offer Plaintiffs, not in any way that exposes Plaintiffs publicly or causes them embarrassment.  (Dkt. 1, ¶ 41-44)  Plaintiffs do not allege facts showing the loss of money or property; they merely allege the disclosure (to Facebook) of "personal information."  (Dkt. 1, ¶ 50)  Plaintiffs attempt to bolster their claims of harm by further alleging that "Patreon's wrongful acquisition and use of their personal, private information deprived Plaintiffs and Class members of control over that information, and prevented them from realizing its full value for themselves."  (*Id.*)  Yet the Complaint contains no factual allegations supporting the assertion that "personal information" at issue was valuable at all, or that any of the Plaintiffs would have or could have entered into any kind of transaction to realize that "full value for themselves."

4

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-03131-JCS

## III.     ARGUMENT

### A.     Legal Standard

A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (cleaned up).  On a motion to dismiss, the court does not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Fam. Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003).  Further, the court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Id.*; *see also Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).

### B.     The Court Should Dismiss Plaintiffs' VPPA Claims

The Court should dismiss the VPPA claims for four independent reasons: (1) the VPPA does not apply to Patreon because Patreon is not a "video tape service provider"; (2) Plaintiffs fail to allege Patreon disclosed their identities; (3) Plaintiffs fail to allege Patreon "knowingly" disclosed personally identifiable information ("PII"); and (4) the VPPA violates the First Amendment to the United States Constitution, on its face and as applied.

#### 1.     Overview of the VPPA

The Video Privacy Protection Act, 18 U.S.C. § 2710, was originally enacted in 1988, in response to a newspaper obtaining and publishing a list of video tapes that Supreme Court nominee Judge Robert H. Bork had rented from his local video store.  *See Eichenberger v. ESPN, Inc.,* 876 F.3d 979, 984 n.2 (9th Cir. 2017).  It imposes civil liability on a "video tape service provider" that knowingly discloses information that identifies a "consumer" as having "requested or obtained specific video materials or services" from the video tape service provider, unless the consumer has provided written consent "in a form distinct and separate from any form setting forth other legal or financial obligations of the

5

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-03131-JCS

consumer." 18 U.S.C. § 2710(b).  Because of the VPPA's highly formalized consent requirement, a defendant cannot avoid liability under the VPPA, even if the consumer expressly consented to the disclosure in writing, unless the particular requirements of Section 2710(b)(2)(B) are satisfied.

Of particular relevance here, "video tape service provider" and "consumer" are defined terms in the statute.  A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).  It does not, however, include some providers of video cassette tapes or similar audio visual materials, such as public libraries, which are not "engaged in business" at all, or anyone who distributes live rather than prerecorded video.  A "consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider."  18 U.S.C. § 2710(a)(1).

While "knowingly" is not defined in the statute, a decision from this District interpreting that term in the VPPA context has held that "knowingly" means "actual knowledge. … [K]nowingly means consciousness of transmitting the private information.  It does not merely mean transmitting the code." *In re Hulu Priv. Litig.,* 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015); *see also Mollett v. Netflix, Inc.,* No. 5:11-CV-01629-EJD, 2012 WL 3731542, at *4 (N.D. Cal. Aug. 17, 2012), *aff'd*, 795 F.3d 1062 (9th Cir. 2015).

A plaintiff who prevails on a claim for violation of the VPPA is entitled to actual damages, but not less than liquidated damages of $2,500, plus punitive damages, reasonable attorneys' fees and costs, and other equitable relief.  18 U.S.C. § 2710(c)(2).

### 2.     Patreon Is Not a "Video Tape Service Provider"

The VPPA solely limits disclosures by a "video tape service provider," defined as a person "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).  Thus, for the VPPA to apply: (1) the materials the defendant provides must be prerecorded video cassette tapes or similar audio visual materials, and (2) the defendant must be engaged in the business of renting, selling, or delivering such video content. *Id.*

The Complaint alleges that each Plaintiff "viewed videos" on the Patreon website (Dkt. 1,

6

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-03131-JCS

¶¶ 20,23, 26, 29), but offers no description or factual detail that would permit the Court to infer that those videos were "similar" to prerecorded video cassette tapes.  It is not enough to allege that Plaintiff watched "videos."  Had Congress intended the VPPA to apply to "*any* audio visual materials," it could have and would have said so.  *See, e.g., United States v. Stanko*, 491 F.3d 408, 413 (8th Cir. 2007) (statute that forbade firearm possession by a person convicted of antitrust violations, unfair trade practices, restraints of trade, or "other similar offenses relating to the regulation of business practices" was limited to convictions of a certain character, not conviction for any offense related to regulation of business practices).  By using the term "similar," Congress made clear that it did not intend to the VPPA to apply to videos that were nothing like the video cassettes that Judge Bork rented.  *See Eichenberger*, 876 F.3d at 985 ("[W]e are not persuaded that the 1988 Congress intended for the VPPA to cover circumstances so different from the ones that motivated its passage.").  Plaintiffs' lack of specificity dooms the Complaint.

The Complaint also contains no allegations from which the Court could conclude that Patreon is "engaged in the business of renting, selling, or delivering" such audio visual materials.  To be sure, the Complaint mechanically recites that "Patreon is a 'video tape service provider' as defined in 18 U.S.C. § 2710(a)(4) because it engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes and those sales affect interstate or foreign commerce."  (Dkt. 1, ¶ 65) But it is well settled that "[u]nder *Iqbal*, threadbare recitals of statutory elements are insufficient to withstand a motion to dismiss."  *Rhynes v. Stryker Corp.*, No. 10-5619 SC, 2011 WL 2149095, at *6 (N.D. Cal. May 31, 2011); *see also Landers v. Quality Commc'ns, Inc.,* 771 F.3d 638, 644 (9th Cir. 2014), *as amended* (Jan. 26, 2015) (holding that "we do not agree that conclusory allegations that merely recite the statutory language are adequate," as "such an approach runs afoul of the Supreme Court's pronouncement in *Iqbal*").

For these reasons alone, the Complaint must be dismissed.

Moreover, the documents Plaintiffs cite in their Complaint – yet failed to place before the Court – affirmatively demonstrate Patreon is *not* a "video tape service provider."  Patreon's business is not the "rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4).  Patreon's business is providing a membership platform that enables creators to be

7

paid by their fans, and for fans to engage with the creators they support, for which Patreon earns a commission on subscription fees the patrons pay.  (RJN Ex. A at Ex. 1 (ToU) at 1, 5-6)

Again, Plaintiffs do allege that they each "viewed videos on the Patreon website," but that bare allegation means nothing.  In 2022, one can "view videos" on almost any website, including websites operated by entities that are obviously not in the business of delivering prerecorded video cassette tapes or similar audio visual materials, such as the Ninth Circuit,[3] the United States Congress,[4] countless corporations,[5] consulting firms,[6] accounting firms,[7] non-profit organizations,[8] hardware stores,[9] craft supply stores,[10] and on and on and on.  And to the extent that Plaintiffs would assert that Patreon is in the business of "delivering" "audio visual materials" because it provides a platform for third-party creators to offer video content to their patrons, that would not make Patreon a video tape service provider either.  As the court explained in *In re Vizio, Inc., Consumer Privacy Litigation*,

> Take, for instance, a letter carrier who physically places a package that happens to contain a videotape into a consumer's mailbox. No person is more obviously "delivering" a video tape to a consumer than this employee. Yet, the letter carrier could not be characterized as "engaged in the business" of delivering video content because her job responsibilities are in no way tailored to delivering packages that contain videotapes as opposed to any other package.

238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017); *see id.* ("When used in this context, 'business' connotes 'a particular field of endeavor,' i.e., a focus of the defendant's work." (citing Webster's Third New International Dictionary 302 (1981) (def. 1d))).  The *In re Vizio* court's reasoning forecloses Plaintiffs' VPPA claims here, as Plaintiffs have not alleged facts to suggest that Patreon's "responsibilities" to its members are "tailored to delivering" videos, or that delivering videos is the "focus" of Patreon's work

---

[3] *See* https://www.ca9.uscourts.gov/media/.
[4] *See* https://www.congress.gov/video.
[5] *See, e.g.,* https://www.apple.com/watch/ (Apple Inc.); https://www.dupont.com/now.html (DuPont de Nemours, Inc.).
[6] *See, e.g.,* https://www.bcg.com/about/overview  (Boston Consulting Group).
[7] *See, e.g.,* https://www2.deloitte.com/us/en/pages/energy-and-resources/articles/power-utilities-videos.html (Deloitte).
[8] *See, e.g.,* https://www.redcross.org/about-us/news-and-events/news/Video-Why-Give-Blood.html (The Red Cross).
[9] *See, e.g.,* https://www.homedepot.com/c/diy_projects_and_ideas (Home Depot); https://www.acehardware.com/aceprojectplace (Ace Hardware).
[10] *See, e.g.,* https://www.michaels.com/projects/videos/videos (Michael's Stores, Inc.).

8

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-03131-JCS

(in fact, the ToU demonstrates the opposite).

For each of these reasons, Plaintiffs have failed to state a claim under the VPPA, and the Complaint must be dismissed.

### 3.  Plaintiffs Fail to Allege Patreon Disclosed Their Identities

The Complaint fails to state a VPAA claim for a separate, independent reason:  Plaintiffs do not allege any facts from which the Court could infer that Patreon disclosed information to Facebook that identified them individually.  *See* 18 U.S.C. § 2710(a)(3), (b)(1).  The Complaint alleges that Patreon disclosed to Facebook their respective FIDs and the titles of videos that they had watched on the Patreon website.  (Dkt. 1, ¶ 45)  But, as explained above, the Complaint contains no allegation that their Facebook profiles have detailed personal information about them, or even that their Facebook profiles use their own names.  *See Eichenberger*, 876 F.3d at 985-86 (holding that VPPA plaintiff must allege disclosure of sufficient information about the plaintiff to "permit an ordinary person to identify a specific individual's video-watching behavior") (citing *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 267 (3d Cr. 2016)).  Not only is this information an essential element of each Plaintiff's claim, it is information that is uniquely in each Plaintiff's possession.  *See Crittenden v. Apple, Inc.,* No. 5:21-CV-04322-EJD, 2022 WL 2132224, at *4 (N.D. Cal. June 14, 2022) (dismissing claim where plaintiffs failed to plead "facts at issue [that] are in [p]laintiffs' control"); *Salenfriend v. Green Tree Servicing LLC*, No. C-14-03251(EDL), 2014 WL 12647745, at *4 (N.D. Cal. Sept. 24, 2014) (dismissing claim where complaint failed to allege facts that were "at the very least equally in Plaintiff's control").  The Complaint's omission of that factual support also requires dismissal.

### 4.  Plaintiffs Fail to Plausibly Allege Patreon "Knowingly" Disclosed PII to Facebook

To state a claim under the VPPA, Plaintiffs must also plead facts showing that Patreon "knowingly" disclosed to Facebook information that identified them and the specific video materials they watched.  In the VPPA, "knowingly" means "actual knowledge."  *In re Hulu Priv. Litig.,* 86 F. Supp. 3d at 1095.  It means "consciousness of transmitting the private information.  It does not merely mean transmitting the code."  *Id.*; *see also Mollett*, 2012 WL 3731542, at *4 ("Plaintiffs must still allege facts giving rise to a reasonable inference that Netflix knowingly or willfully disclosed PII to someone

other than the consumer.").

The Complaint alleges no facts that support an inference that Patreon "knowingly" transmitted private information subject to the VPPA.  Plaintiffs' sole, conclusory allegation on this topic appears in Paragraph 71, which asserts that Patreon acted knowingly because "Patreon programmed the Facebook Pixel into its website code knowing that Facebook would receive video titles and the subscriber's FID when a user watched a video."  (Dkt. 1, ¶ 71)  This circular allegation is nothing more than, "Patreon knew because it knew."  It does not satisfy Plaintiffs' pleading obligations under *Iqbal.  See Iqbal*, 556 U.S. at 680-81 (holding that bare allegation that defendants "knew" plaintiff would be subjected by others to "harsh conditions of confinement" was "conclusory and not entitled to be assumed true").

Following the Supreme Court's guidance, courts in this Circuit have frequently dismissed complaints that fail to plead particular facts showing actual knowledge, where actual knowledge is an element of the claim.  *See, e.g. Millare v. Bank of Am., N.A.,* No. CV 21-8398 PA (KESX), 2022 WL 1434109, at *3 (C.D. Cal. Apr. 1, 2022) (dismissing claim for aiding and abetting financial elder abuse where plaintiff failed to "allege any facts establishing actual knowledge" by defendant of the abusive conduct); *S&S Worldwide, Inc. v. Wells Fargo Bank*, 509 F. Supp. 3d 1154, 1165 (N.D. Cal. 2020) (dismissing claims for aiding and abetting conversion and fraud because complaint failed to plead sufficient facts to support the conclusion that the defendant had the requisite "actual knowledge" of others' wrongful conduct); *Resnick v. Hyundai Motor Am., Inc.,* No. CV1600593BROPJWX, 2017 WL 1531192, at *14-15 (C.D. Cal. Apr. 13, 2017) (dismissing claim for failure to disclose a product defect, which requires actual knowledge of that defect, where amended complaint failed to allege facts establishing defendant's actual knowledge).

The Complaint contains no facts to support the conclusory allegation that Patreon acted "knowingly," and for this reason as well, the Complaint must be dismissed.

### 5.   The VPPA, on Its Face and as Applied to Patreon, Violates the First Amendment to the United States Constitution

Even assuming that the Complaint pleads a violation of the VPPA – it does not – Plaintiffs' claims under the VPPA must be dismissed because the VPPA, on its face and as applied to the facts of this case, violates the First Amendment.

10

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-03131-JCS

a.        The VPPA, on Its Face, Violates the First Amendment

In the First Amendment context, a law is facially invalid if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State Republican Party,* 552 U.S. 442, 449, n.6 (2008)); *see also Ashcroft v. Free Speech Coal.,* 535 U.S. 234, 244 (2002).  A law can be facially unconstitutional under the First Amendment even if its application in the particular case before the court is "constitutionally unobjectionable."  *See Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 129 (1992).

For example, in *Ashcroft*, the Court struck down the Child Pornography Prevention Act of 1996 (CCPA), which prohibited any visual depiction that is, or appears to be, of a minor engaging in sexual conduct.  535 U.S. at 241.  While Congress certainly has the power to ban child pornography, and the Court had upheld a prior ban, *see New York v. Ferber*, 458 U.S. 747 (1982), the CCPA would also ban protected expression such as modern depictions of *Romeo & Juliet* and other dramatic works.  *See* 535 U.S. at 248.  Because the CCPA swept too far, it was facially unconstitutional.  In *United States v. Hansen*, 25 F.4th 1103 (9th Cir. 2022), the Ninth Circuit addressed 8 U.S.C. § 1324, which forbade efforts to knowingly "encouraged or induced an alien to 'enter, or reside in the United States … in violation of law.'"  *Id.* at 1108.  Because the statute would also punish protected speech such as "encouraging an undocumented immigrant to take shelter during a natural disaster, advising an undocumented immigrant about available social services, [or] telling a tourist that she is unlikely to face serious consequences if she overstays her tourist visa," it too was facially unconstitutional.  *Id.* at 1110.

Applying these principles, the VPPA violates the First Amendment on its face.  Most strikingly, the *very incident* that prompted Congress to pass the VPPA – the disclosure of videos Supreme Court nominee Judge Bork rented from his local video store – is protected speech.  Given Bork's stated views on the right to privacy and other issues, critics of the nominee urged then-Chairman of the Senate Judiciary Committee Joe Biden to subpoena Bork's video rental records, speculating they might reveal pornography.  *See* Jeffrey Rosen, "The Myth of Biden v. Bork," *The New York Times* (Aug. 26, 2008), available at https://www.nytimes.com/2008/08/27/opinion/27rosen.html.  Biden refused, *see id.*, and a reporter obtained the records just by asking for them, *see* Michael Dolan, "Borking Around," *The New*

11

*Republic* (Dec. 19, 2012), available at https://newrepublic.com/article/111331/robert-bork-dead-video-rental-records-story-sparked-privacy-laws).  Senator Patrick Leahy joined with Senator Alan Simpson in denouncing the disclosure:  "It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home," and that sentiment led directly to the VPPA.  *See* S. REP. 100-599 Section III(A); *Eichenberger,* 876 F.3d at 984 n.2.

Senators Leahy and Simpson were wrong.  Speech discussing whether a public official has taken hypocritical positions on important issues are statements "'on matters of public concern' that deserve the highest protection."  *McDougal v. Fox News Network*, *LLC*, 489 F. Supp. 3d 174, 183 (S.D.N.Y. 2020) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990)).  First Amendment protection of this category of speech "protects the paramount public interest in a free flow of information to the people concerning public officials," and "anything which might touch on an official's fitness for office is relevant," even though it may also concern "the official's private character."  *Garrison v. Louisiana*, 379 U.S. 64 (1964).  The VPPA precludes this speech and sweeps too far.

The VPPA's overbreadth problem is not limited to speech concerning the conduct of public officials and other public figures.  The law unreasonably forbids disclosure of individual viewing information even with a consumer's express written consent, if that consent does not comply with the VPPA's peculiar formalities.  *See IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1127 (9th Cir. 2020) (statute regulating public disclosure of the ages of entertainment industry professionals violated the First Amendment, even though prohibition applied only if subscriber objected to disclosure).  And the VPPA punishes disclosure of information that is not even private:  the fact that the consumer may have also disclosed their video viewing history to others, recommending favorite videos, sharing them on social media, endorsing them, even writing reviews about them, appears irrelevant to liability under the VPPA.  The First Amendment does not permit liability in such cases.  For example, in The *Fla. Star v. B.J.F.*, 491 U.S. 524, 539 (1989), the Supreme Court held that a statutory ban on disclosures of rape victims' names was overinclusive in part because it "require[d] no case-by-case findings that the disclosure of a fact about a person's private life was one that a reasonable person would find highly offensive" but instead caused "liability [to] follow[] automatically from publication," "regardless of whether" the information had already been disclosed within the plaintiff's community and indeed whether the

plaintiff "has voluntarily called public attention to" it.  *See also Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494-95 (1975) (striking down prohibition on disclosure of name of rape victim that was already disclosed in public records).

All these defects are exacerbated by the VPPA's "liquidated damages" provision, which imposes liability of $2,500 even when the plaintiff has **no** actual damages.  In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974), the Supreme Court stressed that "remedies" even "for defamatory falsehood" must "reach no farther than is necessary to protect the legitimate interest involved," which is why plaintiffs normally should be limited "to compensation for actual injury" without presumed or punitive damages unless they show knowing or reckless lies.  If **negligent falsehoods** generally should not be subject to presumed or punitive damages, then even more clearly **true statements** should not be so limited.  *Cf. also The Florida Star*, 491 U.S. at 541 n.9 (flagging, but not reaching, the question whether "the imposition of punitive damages for publication independently violated the First Amendment" in a privacy case).

None of this is to say that Congress could not have passed a law that appropriately protected legitimate privacy interests in watching videos.  Congress could have enacted a law that prohibited knowing disclosure of the particular videos a consumer watched – and allowed for compensation for actual damages suffered – unless (a) the consumer consented, (b) the disclosure related to a matter of public concern, or (c) the disclosed conduct was already publicly known.  But the VPPA is not nearly so narrow.  It is "substantially overbroad, and therefore invalid under the First Amendment."  *Stevens*, 559 U.S. at 482.

### b. The VPPA, as Applied in this Case, Violates the First Amendment

To the extent the VPPA imposes, without any showing of injury, $2,500 liquidated damages for disclosing truthful consumer information to a third party with the consumer's express consent – as alleged and shown here – the VPPA violates the First Amendment.

### i. The VPPA is a content- and speaker based regulation of non-commercial speech and thus it is subject to strict scrutiny

The Supreme Court has made clear that "the creation and dissemination of information is speech for First Amendment purposes."  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011).  "[I]f the acts of

13

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-03131-JCS

'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category, as distinct from the category of expressive conduct." *Id.* at 570 (quoting *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001)). "An individual's right to speak is implicated when information he or she possesses is subjected to 'restraints on the way in which the information might be used' or disseminated." *Sorrell*, 564 U.S. at 568 (quoting *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 32 (1984)). The VPPA prohibits the disclosure of information, and thus plainly regulates speech.

A speech-restricting statute like the VPPA is "content-based" if it, "by its very terms, singles out particular content for differential treatment." *Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009) (en banc). As the Supreme Court has explained, "a law banning the use of sound trucks for political speech – and only political speech – would be a content-based regulation, even if it imposed no limits on the political viewpoints that could be expressed." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S.Ct. 2335, 2346 (2020).

On its face, the VPPA imposes content- and speaker-based restrictions on the disclosure of information. It prohibits dissemination of one kind of speech: speech that discloses a particular consumer's video-viewing history; and "perhaps more troubling, it restricts only a single category of speakers" – video tape service providers. *IMDb.com*, 962 F.3d at 1120. Other parties with knowledge of a person's video-viewing history, such as libraries or distributors of live videos, are not subject to the VPPA's prohibition. In addition, because the statute applies only to "consumers" as defined in the statute, its prohibition does not fall on other parties that possess information about an individual's video viewing behavior but that do not have a "consumer" relationship with the viewer. *See, e.g.*, *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1255-57 (11th Cir. 2015) (plaintiff who viewed free content on his smartphone using a free app was not a subscriber and therefore not a "consumer" under the VPPA); *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015) (same, plaintiff viewed free videos on defendant's website without signing up for an account).

"Content-based" restrictions on speech are "disfavored and 'presumptively invalid.'" *IMDb.com,* 962 F.3d at 1120 (quoting *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382 (1992)); *see also Sorrell*, 564 U.S. at 571 (content- and speaker-based burden on protected expression justifies application of "heightened scrutiny"). A content- and speaker-based restriction on speech, like the

VPPA, is generally subject to strict scrutiny, a "demanding standard" satisfied only if the prohibition "furthers a compelling governmental interest and is narrowly tailored to that end." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799 (2011); *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 171 (2015).

Although "commercial speech" is subject to intermediate scrutiny, rather than strict scrutiny, neither the speech regulated by the VPPA in general, nor the specific disclosures alleged by Plaintiffs here, are commercial speech for purposes of the First Amendment. "Commercial speech 'does no more than propose a commercial transaction.'" *IMDb.com*, 962 F.3d at 1122 (quoting *Virginia. State Bd. of Pharmacy v. Virginia. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976)). Disclosing a consumer's video-viewing history is in no way a proposal of a commercial transaction, and the Complaint does not allege otherwise. *IMDb.com*, 962 F.3d at 1122 (commercial company's website listing entertainment industry profiles and disclosing individual's ages did not propose a commercial transaction). If it is a "close question" whether speech at issue proposes a commercial transaction, a court considers whether the speech is an advertisement, the speech refers to a particular product, or the speaker has an economic motivation. *See Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (citing *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 66-67 (1983)) (the "*Bolger* factors"). The VPPA is not limited to these circumstances, and the Complaint offers nothing to suggest that the disclosures Plaintiffs allege were advertisements or referred to a particular product. Thus, the alleged disclosures are not commercial speech. *IMDB.com*, 962 F.3d at 1122; *see also U.D. Registry Inc. v. State of California*, 144 Cal. App. 4th 405, 420 (2006) ("The fact that UDR sells the information does not transform it to commercial speech any more than the fact that a magazine or newspaper is sold makes its contents commercial speech.").

The Ninth Circuit's decision in *IMDB.com* illustrates the heightened standards that apply to speech restrictions like the VPPA. In that case, the Ninth Circuit applied strict scrutiny in striking down, on First Amendment grounds, a California law that prevented any "person or business that owns, licenses, or otherwise possesses computerized information, including, but not limited to, age and date of birth information, about individuals employed in the entertainment industry, including television, films, and video games, and that makes the information available to the public or potential employers" from disclosing the date of birth or age of any person who subscribed to its services if that person requested

their age not be disclosed.  Cal. Civ. Code § 1798.83.5; *IMDb.com*, 962 F.3d at 1116-17.  The plaintiff, which published an online database of information about movies, television, and video games, including profiles of entertainment industry professionals, challenged the law on First Amendment grounds.  The Ninth Circuit found that the law targeted specific content ("It prohibits the dissemination of one type of speech: 'date of birth or age information'") and specific speakers ("[a]nd perhaps more troubling, it restricts only a single category of speakers").  962 F.3d at 1120.

Further, the court applied strict scrutiny, rejecting the state's two arguments that the speech at issue was entitled to lesser protection as "commercial speech" or speech concerning "private matters." As to the first argument, commercial speech, the court readily found that "public profiles on IMDb.com do not 'propose a commercial transaction'" and that the issue was not a "close question." *Id.* at 1122. Even if it were, profiles of entertainment industry professionals on IMDB's website were neither advertisements nor references to particular products, confirming that they were not commercial speech even if IMDB had a commercial interest is disclosing them. *Id.*  As to the second argument, speech concerning private matters, the Ninth Circuit emphatically rejected the state's contention that "speech of a purely private concern" is entitled "only to reduced protection." *Id.* at 1124.  "[N]either this court, nor the Supreme Court, has held that content-based restrictions on public speech touching on private issues escape strict scrutiny." *Id.*

In sum, the VPPA is a content- and speaker-based regulation of non-commercial speech that precludes particular speakers from disclosing particular, accurate information that they already lawfully possess.  Plaintiffs can proceed on their claims under the VPPA only if the law withstands strict scrutiny.  As explained below, it does not.  But even if the VPPA were subject to the intermediate scrutiny afforded commercial speech, it still would fail, as also discussed below.

   **ii.** **The VPPA fails to satisfy strict scrutiny on the alleged facts of this lawsuit**

Under strict scrutiny, the VPPA can stand only if it "furthers a compelling governmental interest and is narrowly tailored to that end." *Reed,* 576 U.S. at 171.  The defender of the statute must specifically identify an "actual problem" in need of solving, *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 82-23 (2000), and the curtailment of free speech must be "reasonably necessary" to the

16

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-03131-JCS

solution, *R.A.V.*, 505 U.S. at 395.  "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *Playboy,* 529 U.S. at 813.  Further, a statute is not narrowly tailored if it is either underinclusive or overinclusive in scope.  *See IMDB.com*, 962 F.3d at 1125.  Given how demanding the strict-scrutiny standard is, "'[i]t is rare that a regulation restricting speech because of its content will ever be permissible.'" *Brown*, 564 U.S. at 799 (quoting *Playboy*, 529 U.S. at 818).

The VPPA is not the rare exception.  It is not narrowly tailored to advance any compelling governmental interest.

Patreon acknowledges that there is a substantial governmental interest in protecting consumer privacy; Patreon has a similar interest in protecting its users' privacy as described in the Privacy Policy. And for purposes of this motion, Patreon assumes that this consumer privacy interest is "compelling." But a compelling interest is not enough – even California's admittedly important interest in preventing age discrimination in the entertainment industry did not suffice.  *See IMDB.com*, 962 F.3d at 1126. More is required.

Again, the VPPA does not merely prohibit the disclosure of a consumer's video-viewing behavior.  It prohibits disclosure of a consumer's video-viewing behavior even if the consumer, like Plaintiffs here, has expressly consented in writing (albeit in a different form than that specified by the VPPA) and it imposes $2,500 in "liquidated damages" per consumer – a steep penalty – even if the consumer, like Plaintiffs here, has suffered no actual damages of any kind from the disclosure.  There can be no compelling state interest in punishing a speaker like Patreon for disclosing accurate and factual information about a consumer, with the consumer's permission, in a manner that causes the consumer no harm.  *See Smith v. Daily Mail Pub. Co*., 443 U.S. 97, 104-106 (1979) (no compelling state interest in punishing the "truthful publication" of lawfully obtained identifying information); *Gertz*, 418 U.S. at 349 (presumed damages even for false statements impermissible without actual malice).

That would be enough to invalidate the VPPA, but there is more.  A speech-restrictive law is not narrowly tailored if it eliminates one type of speech while at the same time allowing other types that create the same purported problem.  *See IMDB.com*, 962 F.3d at 1126; *see also Victory Processing, LLC v. Fox*, 937 F.3d 1218, 1228 (9th Cir. 2019) ("While narrow tailoring requires that a statute not

17

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-03131-JCS

cover *more* speech than is necessary to serve a compelling government interest, a statute can also fail strict scrutiny if it covers *too little* speech.").  That is yet another problem with the VPPA.  It prevents "video tape service providers" from disclosing the video viewing history of "consumers."  But it permits disclosure of the exact same information by persons who are not "video tape service providers" (*e.g.*, libraries) or even by "video tape service providers" if the information concerns individuals who did not pay for the video service or who otherwise fail to meet the definition of "consumer."  *Ellis*, 803 F.3d at 1255-57; *Austin-Spearman*, 98 F. Supp. 3d at 669.  "Because [the VPPA] leaves open the possibility that others may disseminate [video-viewing] information unfettered, we cannot conclude that its 'selective ban ... satisfactorily accomplishes its stated purpose.'"  *IMDB.com*, 962 F.3d at 1127 (quoting *The Fla. Star v. B.J.F.*, 491 U.S. 524, 541 (1989)).  The VPPA is clearly under-inclusive if one looks only at regulation of speech concerning consumption of videos.  But the VPPA ignores other broad swaths of consumer behavior that are equally private, if not more so – *e.g.*, live video, books, magazines, newspapers, web browsing, podcasts, music, etc. – rendering its prohibition on one specific category of speech even less defensible.  *Cf., e.g., Tattered Cover, Inc. v. City of Thornton*, 44 P.3d 1044, 1053 (Colo. 2002) (noting the special importance of privacy of reading material); *In re Grand Jury Subpoena to Kramerbooks & Afterwords Inc.*, 26 Med. L. Rptr. 1599 (D.D.C. 1998) (likewise).  The VPPA's under-inclusiveness is fatal to the statute, and fatal to Plaintiffs' claims.

Last, the fact that the VPPA allows a consumer to consent to disclosure (in a very specific, formalized way) does not save the statute.  In *IMDB.com*, the state law prohibiting disclosure applied only if a paying subscriber to the online service requested that their age not be posted publicly.  Cal. Civ. Code § 1798.83.5.  The statute thus rejected speech only when subscribers objected to disclosure, *i.e.*, declined consent.  That did not matter, *see* 962 F.3d at 1127, and the Ninth Circuit struck down the law.  This case is no different.

### iii.    Even if the VPPA regulates commercial speech subject to intermediate scrutiny, it fails to withstand scrutiny

As explained above, the VPPA does not regulate commercial speech and intermediate scrutiny does not apply.  But even if it did, the VPPA still would fail.

The defender of the law regulating commercial speech must show that the statute directly

18

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-03131-JCS

advances a substantial governmental interest and that the measure is drawn to achieve that interest. *Sorrell*, 564 U.S. at 572 (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980)).  "There must be a fit between the legislature's ends and the means chosen to accomplish those ends." *Id.* (quotation omitted).

Courts applying the Supreme Court's commercial speech test under *Central Hudson* begin by determining whether the regulated speech is misleading or related to illegal activity.  *See Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1176 (9th Cir. 2018).  If it is not – and in this case, it is not – the defender of the statute must advance a substantial interest to be achieved by the regulation, and that regulation must be no more extensive than is necessary to serve that interest.  *Id.*  Plaintiffs' burden under this test is "heavy."  *Id.* (citing *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 516 (1996)).

*Sorrell* is instructive.  In *Sorrell*, Supreme Court struck down, on First Amendment grounds, a Vermont law that prohibited pharmacies from selling, or disclosing for marketing purposes, records that revealed the prescribing practices of individual doctors.  564 U.S. at 557.  Although the Court suggested that strict scrutiny would apply, it did not need to impose that test; even if the less-exacting standard for "commercial speech" applied, the law still fell short.  *Id.*  The law was not drawn to protect confidentiality, as it allowed prescriber information to be disclosed in other circumstances; it was not drawn to protect doctors from "harassing sales behaviors," as doctors remained free to refuse to engage with the pharmaceutical marketers who used prescription records; and the argument that marketers would use the records to affect doctors' decisions concerning patient care was an attack on speech itself and not worthy of deference.  *See id.* at 572-76.  And of particular significance here, the Vermont law was not saved by the fact that doctors could consent to disclosure of their prescription practices.  564 U.S. at 573-74.

The same reasoning that the Court applied in *Sorrell* applies here.  As explained above, the VPPA does not directly advance an interest in the privacy of video viewing as it exempts disclosure of that same information in numerous other circumstances, including where videos are provided either free of charge or by non-commercial entities that are not engaged in business (*e.g.*, public libraries).  *See Italian Colors*, 878 F.3d at 1177 (noting that law's "broad swath of exemptions" undermined any conclusion that it served an interest in preventing consumer deception).  As in *Sorrell*, the VPPA does

1   not serve any interest in protecting consumers from "harassing" marketing, as consumers are free to

2   decline to engage with third parties whose marketing behavior they dislike.  As in *Sorrell*, the VPPA

3   cannot be defended on the grounds that disclosure of a consumer's viewing history will allow third

4   parties to personalize the advertising they see, as Plaintiffs allege here – that is the benefit of speech, not

5   a harm.  And as in *Sorrell*, the fact that consumers can consent to disclosure does not save the content-

6   and speaker-based prohibition.

7       The VPPA also falls short in that there is no reasonable "fit" between the VPPA and any asserted

8   state interest.  The alleged disclosure here is quite narrow – solely to Facebook, not to the general

9   public; merely to offer Facebook and Patreon users better products (Dkt. 1, ¶¶ 41-44); and not in a

10   manner that would cause embarrassment or humiliation or any other traditional harm to privacy

11   interests, *cf. IMDB.com*, 962 F.3d at 1116-17 (disclosure of personal information even on **public-facing**

12   **website** protected by First Amendment).  Further, to the extent the government seeks to protect the

13   actual privacy interests of video-watching consumers, it would be sufficient to simply require the

14   consumer's consent, not to require consent exclusively in writing, on a separate, standalone form.  *See*

15   *Italian Colors*, 878 F.3d at 1178 (finding statute lacked reasonable fit where the state had "other, more

16   narrowly tailored means" available to it).  On top of all that, the VPPA's heavy sanction of $2,500 in

17   "liquidated damages" per consumer – potentially massively multiplied in a class action – for disclosure

18   that caused no actual damages nor public exposure and to which the consumer actually consented bears

19   no relation to any actual privacy interest the government might wish to protect.  On the facts alleged in

20   this case, liability under the VPPA would violate the First Amendment, requiring dismissal of the claim.

21       **C.       Plaintiffs Do Not State A Claim For Violation of the UCL or the CLRA**

22       Plaintiffs allege two theories of liability under the UCL and CLRA.  First, Plaintiffs allege that

23   Patreon violated the "unlawful" and "unfair" prongs of the UCL by disclosing their video history to

24   Facebook in violation of the VPPA.  (Dkt. 1, ¶¶ 75-82)  Second, Plaintiffs allege that Patreon violated

25   the UCL's "fraudulent" prong and the CLRA by failing to disclose that it would share Plaintiffs' video

26   history information with Facebook.  (*Id.* ¶¶ 83-88)  Plaintiffs do not state a claim under either theory, for

27   the reasons set forth below.

28

20

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-03131-JCS

1

### 1. Plaintiffs Do Not State a UCL Claim Based on Patreon's Alleged Disclosure of Information to Facebook

Plaintiffs fail to state a UCL claim based on Patreon's alleged disclosure of their personal information to Facebook, for two reasons: (1) Plaintiffs fail to show that Patreon's alleged disclosure of information to Facebook was either "unlawful" or "unfair," and (2) Plaintiffs fail to show they suffered economic injury from Patreon's alleged disclosures, as they must do to establish standing to pursue their UCL claim.

Plaintiffs hinge their UCL claim on the theory that Patreon violated the VPPA, but fail to show that Patreon's alleged disclosure of their video history information to Facebook was either "unlawful" under the VPPA or "unfair." Patreon's alleged disclosure was (and is) not a violation of the VPPA for the reasons set forth in section III(B) above. Moreover, Patreon's alleged disclosure of information to Facebook was (and is) not unfair either, since Plaintiffs agreed to Patreon's ToU and Privacy Policy, and the Privacy Policy expressly discloses Patreon shares information concerning patrons' use of the Patreon website (such as video history) with third parties (such as Facebook) for marketing and other purposes. *See Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1170-71 (9th Cir. 2012) (affirming dismissal of UCL "unfair" claim alleging that defendant failed to mention fees because terms and conditions disclosed those fees); *Janda v. T-Mobile, USA, Inc.*, No. C 05-03729 JSW, 2009 WL 667206, at \*6-9 (N.D. Cal. Mar. 13, 2009) (dismissing with prejudice UCL "unfair" claim based on allegedly hidden fees where contractual terms disclosed that fees would be charged), *aff'd*, 378 F. App'x 705 (9th Cir. 2010).

Plaintiffs have another problem with their UCL claim: because they did not suffer economic injury from Patreon's alleged disclosures, they have no standing to pursue a UCL claim based on them. To establish standing under California's UCL, plaintiffs must "'(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim .'" *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048-49 (9th Cir. 2017) (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011)) (emphasis omitted); Cal. Bus. & Prof. Code § 17204.

21

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-03131-JCS

Here, Plaintiffs allege that Patreon violated the UCL by disclosing their personal information to Facebook.  To plausibly allege a UCL claim based on that alleged conduct, Plaintiffs thus must show that the alleged disclosure of their personal information to Facebook caused them to suffer economic injury (*i.e.*, a loss of money or property).

Plaintiffs allege they were harmed in two ways.  ***First***, Plaintiffs allege that Patreon's alleged disclosure of their personal information "deprived [them] of control over that information."  Multiple courts, however, have recognized that the alleged improper disclosure of personal information, which necessarily includes loss of control over the information, is not an economic injury for purposes of UCL standing.  *See Cappello v. Walmart Inc.*, No. 18-CV-06678-RS, 2019 WL 11687705, at *4 (N.D. Cal. Apr. 5, 2019) (dismissing UCL claim based on alleged disclosure of personal information on ground that "Plaintiffs must allege more than a loss of personal information to establish standing under the UCL"); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008) (finding that "unauthorized release of personal information" was not "loss of property" under UCL); *In re iPhone Application Litig.*, No. 11-md-2250, 2011 WL 4403963 at *14 (N.D. Cal. Sept. 20, 2011) (dismissing UCL claim based alleged improper access to private user information and explaining that "[n]umerous courts have held that a plaintiff's 'personal information' does not constitute money or property under the UCL"); *In re Google Inc. St. View Elec. Commc'ns Litig.*, 794 F. Supp. 2d 1067, 1086 (N.D. Cal. 2011) (dismissing UCL claim involving interception of private communications because "data packets that a plaintiff has sent over a wireless network are not lost property for purposes of determining [UCL] standing").

*Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 730 (N.D. Cal. 2014), is instructive.  The *Svenson* plaintiff alleged that when she purchased certain mobile applications from the Google Play Store, Google improperly disclosed her personal information to the third-party app developers in violation of the Stored Communications Act.  *Id.*  The *Svenson* court ruled that these allegations did not support UCL standing because "[d]efendants' [alleged] business practice – disclosing users' Contact Information to third-party App vendors" – did not cause plaintiff to "change[] her economic position at all."  *Id.*  Rather, "Plaintiff alleges that she purchased an App for $1.77 and received that App," therefore, "Plaintiff has not alleged facts showing that she suffered any damages resulting from that transaction."  *Id.*  Similarly here, Plaintiffs allege that Patreon improperly disclosed their video history to

22

Facebook, but that alleged privacy violation cannot support a UCL claim because Plaintiffs received the services they paid for and did not suffer any economic harm from the transaction.

*Second*, Plaintiffs allege that they were harmed by Patreon's alleged disclosure of their personal information to Facebook because the alleged disclosure "prevented them from realizing [the information's] full value" for themselves.  (Dkt. 1, ¶ 50)  But Plaintiffs do not allege facts to support that allegation:  the complaint is silent as to whether Plaintiffs ever attempted to sell their personal information to Facebook (or anyone else), whether they plan to do so in the future, or whether they were foreclosed from entering into a value-for-value transaction with Facebook (or anyone else) relating to their personal information as a result of Patreon's conduct.  Plaintiffs thus do not plausibly allege they suffered economic injury.  *See Low v. Linkedin Corp.,* 2011 WL 5509848, at *5 (N.D. Cal. Nov.11, 2011) (holding that plaintiff failed to plausibly allege either injury in fact or loss of money or property based on loss of opportunity to capitalize on value of his personal data, where plaintiff failed to allege facts showing how he was foreclosed from capitalizing on the value of his personal data or how he was 'deprived of the economic value of [his] personal information simply because [his] unspecified personal information was purportedly collected by a third party" (quoting *LaCourt v. Specific Media, Inc.*, No. SACV 10-1256 GW JCGX, 2011 WL 1661532, at *5 (C.D. Cal. Apr. 28, 2011))); *In re Google Android Consumer Priv. Litig.*, No  11-MD-02264 JSW, 2013 WL 1283236, at *4 (N.D. Cal. Mar. 26, 2013) (finding that plaintiffs failed to plausibly allege either injury-in-fact or loss of money or property based on alleged diminution in value of their PII, where plaintiffs did "not allege they attempted to sell their personal information, that they would do so in the future, or that they were foreclosed from entering into a value for value transaction relating to their PII"  as a result of defendants' conduct); *LaCourt,* 2011 WL 1661532, at *4-5 (court noted that it "probably would decline to say that it is categorically impossible for [p]laintiffs to allege some property interest" relating to value of personal information, but found plaintiffs lacked standing because they failed to "identify a single individual who was foreclosed from entering into a 'value-for-value exchange" as a result of defendant's practices).

### 2.      Plaintiffs Do Not State a UCL or CLRA Claim Based on Patreon's Alleged Failure to Disclose

Plaintiffs fail to state UCL and CLRA claims for three reasons.  *First*, the allegation that Patreon

failed to disclose it would share users' video history information with Facebook is contradicted by Patreon's Privacy Policy, which expressly discloses that Patreon shares information concerning their use of the Patreon website with third parties (such as Facebook) for marketing and other purposes.  ***Second***, Plaintiffs fail to show, as they must, that Patreon had a ***duty*** to disclose that it shares user video history information with Facebook.  California courts have recognized four circumstances in which a failure to disclose a fact can constitute fraud or deceit:  (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.  *See Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011).  Plaintiffs do not allege that any of those four circumstances existed, and without alleging such a duty to disclose, they fail to state a UCL or CLRA claim.[11]  ***Third***, Plaintiffs do not show that Patreon's alleged failure to disclose caused them economic injury (as required for UCL standing) or damage (as required for UCL standing). Plaintiffs do not allege facts showing that what they received (Patreon's service, with disclosures to Facebook) was worth less than what they allegedly bargained for (Patreon's service, without disclosures to Facebook).[12]  Any one of these three problems would be fatal to Plaintiffs' claims based on failure to disclose; here, Plaintiffs' claims are flawed thrice over.

### D.      Plaintiffs' Claim for Unjust Enrichment Should Be Dismissed

Plaintiffs' last claim – unjust enrichment – should be dismissed because unjust enrichment is not a cause of action under California law.  *See Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1070-1072 (N.D. Cal. 2021) (dismissing unjust enrichment claim on ground that "unjust enrichment is not a cause of action under California law"); *Klein v. Facebook, Inc.*, No. 20-CV-08570-LHK, 2022 WL 141561, at *62 (N.D. Cal. Jan. 14, 2022) (same); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132–33

---

[11] Plaintiffs allege that Patreon "made partial representations about its data-sharing practices yet neglected to disclose that it shares Users' personal information and viewing content to Facebook" (Dkt. 1, ¶ 86), but Plaintiffs do not allege Patreon made a partial representation that was misleading.

[12] To have standing to bring a CLRA claim, a consumer must be exposed to an unlawful practice and "some kind of damage must result."  *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009); Cal. Civ. Code § 1780(a).

(N.D. Cal. 2020) (same; collecting California and federal cases); *Persona Cosms., Inc. v. Societe Des Produits Nestle S.A.*, No. 221CV04644JVSKES, 2021 WL 6103348, at *4 (C.D. Cal. Nov. 3, 2021) (same); *Robbins v. Plushcare, Inc.*, No. 21-CV-03444-MMC, 2022 WL 2988344, at *2 (N.D. Cal. July 28, 2022) ("unjust enrichment is 'not a cause of action'") (*quoting McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004); *MicroTechnologies, LLC v. Autonomy, Inc.*, No. 15-CV-02220-JCS, 2017 WL 1848470, at *22 (N.D. Cal. May 8, 2017) (same); *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870, 230 Cal.Rptr.3d 625 (2018) ("'Unjust enrichment is not a cause of action.'") (quoting *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307, 128 Cal.Rptr.3d 109 (2011)); *accord Bank of New York Mellon v. Citibank, N.A.*, 8 Cal. App. 5th 935, 955, 214 Cal.Rptr.3d 504 (2017), *as modified* (Mar. 1, 2017) (same).  "Courts have consistently dismissed stand-alone claims for unjust enrichment." *Brodsky*, 445 F. Supp. 3d at 132.[13]

Even if the Court concludes that unjust enrichment is a cause of action under California law, Plaintiffs here have not plausibly alleged unjust enrichment.  Plaintiffs allege that "Patreon's practice of sharing Users' personal information and viewing content with Facebook without their consent, and its failure to disclose this practice, caused Patreon to profit from membership fees it would otherwise not have received."  (Dkt. 1, ¶ 102).  But that allegation is unsupported by facts, *see Iqbal*, 556 U.S. at 678, and, indeed, it is directly contradicted by Patreon's ToU and Privacy Policy, which expressly disclose that Patreon discloses user information to third party service providers (such as Facebook) for marketing purposes.

## IV.   CONCLUSION

For all the foregoing reasons, the Court should dismiss the Complaint in its entirety with prejudice under Rule 12(b)(6).

---

[13] Those courts that have held that unjust enrichment is a cause of action under California law have done so where the plaintiff stated a quasi-contract claim for restitution or where otherwise an equitable cause of action best fits the unique case at hand – circumstances that do not exist here.  *See, e.g.*, *Shin v. ICON Found.*, No. 20-CV-07363-WHO, 2021 WL 6117508, at *3-4 (N.D. Cal. Dec. 27, 2021) (allowing claim for unjust enrichment, and relying on *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1039 (9th Cir. 2016), which allowed a cause of action where it stated a claim for relief "as an independent cause of action [for unjust enrichment] or as a quasi-contract claim for restitution" under California law).

25

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-03131-JCS

1

Dated:  August 5, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,
THE NORTON LAW FIRM PC
*/s/ Fred Norton*
Fred Norton

Attorneys for Defendant
PATREON, INC.