Adam E. Polk (SBN 273000)
Simon Grille (SBN 294914)
Kimberly Macey (SBN 342019)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
kmacey@girardsharp.com

*Attorneys for Plaintiffs*

*[Additional Counsel Listed on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| BRAYDEN STARK, JUDD OOSTYEN, KEVIN BLACK, and MARYANN OWENS, on behalf of themselves and all others similarly situated,<br><br>　　　　Plaintiffs,<br>　v.<br>PATREON, INC.,<br>　　　　Defendant. | Case No. 3:22-cv-03131-JCS<br><br>~~[PROPOSED]~~ STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION |

1. **PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules. The parties agree to consult in good faith this District's Guidelines for the Discovery of Electronically Stored Information ("Guidelines") and utilize this District's Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information ("Checklist").

2. **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3. **DEFINITIONS**

All technical terms shall follow or be defined by the "The Sedona Conference Glossary: E-Discovery and Digital Information Management" (2020 ver.).

4. **LIAISON**

The parties each have identified or will identify e-discovery liaisons who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the e-discovery liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

5. **PRESERVATION**

The parties have discussed their preservation obligations and needs and agreed that preservation of potentially relevant ESI will be reasonable and proportionate. The parties agree to meet and confer concerning their respective preservation efforts consistent with the Guidelines and Checklist.

6. **SEARCH**

(a) *Duty to Meet and Confer*. The parties recognize that there exist a variety of search tools and methodologies that can be used in advance of producing documents, including but not limited to the

use of search terms and technology assisted review ("TAR") tools. The parties agree to meet and confer over the use of search tools and methodologies, including the use of search terms and TAR, before any particular tool or methodology is applied to locate and collect documents responsive a party's production requests.

(b)     *Search Terms & Source Files*. Where potentially responsive ESI will be searched using search terms, the parties agree that the producing party will investigate what search terms and source files will be reasonably likely to uncover responsive information and then propose those search terms and source files for the requesting party's consideration. Specifically, a producing party shall disclose the custodians or other non-custodial sources, date range, and search terms or queries, if any, and methodology that it proposes to use to locate ESI likely to contain discoverable information.

The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing party's name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production, and the parties agree to meet and confer, in good faith, to develop such terms.

Proposed search terms will be subject to negotiation with and input from the requesting party. The requesting party may ask for (and the producing party will not unreasonably withhold) qualitative and quantitative information regarding search methodology, including but not limited to, production of search term hit reports, with unique document "hit" counts (i.e., documents that do not hit on other search terms or queries and that have been de-duped within the set), and associated testing and validation to be conducted after the methodology is implemented.

The parties will reach an agreement on the search terms or queries to be used before the producing party produces documents hitting on those search terms or queries.

Agreement on a search methodology does not relieve a Party of its obligation under the Federal Rules of Civil Procedure to conduct a reasonable search and produce all relevant and responsive documents of which a party is aware, regardless of whether they contain agreed-upon search terms or are responsive to any other search methodology agreed to by the parties or ordered by the Court.

1  Discovery requests shall govern the scope of documents to be produced, subject to any agreements
2  reached during the parties' conferral and court orders concerning such requests, and search terms do not
3  supplant discovery requests.
4        To the extent a party is aware of non-duplicative documents that are relevant, responsive, non-
5  privileged, reasonably accessible, and within the party's possession, custody, and/or control, such
6  documents will be produced regardless of whether they contain search terms or are responsive to any
7  other search methodology agreed to by the parties or ordered by the Court.
8        The parties acknowledge that there may be subsequent occasions on which potential
9  modification to a previously agreed upon search protocol may be warranted. Should such an instance
10 arise, the parties agree to meet and confer about modifications to a search methodology. If a party
11 requests such a meet and confer, the parties will meet and confer within seven days.
12       The parties further agree that each party will use its best efforts to filter out common system files
13 and application executable files by using a commercially reasonable hash identification process. Hash
14 values that may be filtered out during this process are located in the National Software Reference
15 Library ("NSRL") NIST hash set list.
16       Nothing in this Order shall be construed as precluding a producing party from performing a
17 privilege review to determine if certain documents should be withheld.

18 **7.   PRODUCTION FORMATS**

19       With the exception of spreadsheets, presentation files, Multi-Media files, and other native files
20 that cannot be converted to image files, the parties shall produce all relevant, responsive, and non-
21 privileged ESI as Bates stamped single-page 1-bit TIFF images with a load file in standard Opticon OPT
22 or iPro LFP or Summation (DII) format that enables the document to be uploaded and viewed using
23 standard litigation support software in accordance with the provisions below. Unless excepted below,
24 single page, 1-bit, black and white Group IV TIFFs should be provided, at least 300 dots per inch (dpi)
25 for all documents. Original document orientation should be maintained (i.e., portrait to portrait and
26 landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of
27 the original, the producing party shall provide a higher quality TIFF image or the native or original file.
28

     (a)    *Production Media*.  The parties shall produce documents in an encrypted format through electronic means, such as external hard drives, secure file sharing methods (e.g., FTP), or readily accessible computer or electronic media (e.g., CDs, DVDs) (collectively, "Production Media"), with explicit decryption instructions. Productions shall have the following four directories: (1) IMAGES for the images; (2) DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; and (4) NATIVES for any native Excel or other files that cannot be understood reasonably unless displayed in native format. The producing party shall identify: (a) the Responding Party's name; (b) the production date; and (c) the Bates Number range of the materials contained on the Production Media.

     (b)    *Color*.  Plaintiffs and Defendant shall produce documents in color where the document in its original format contained color (e.g., charts and graphics, tracked changes, or other highlights). Color images should be produced with a high quality setting as to not degrade the original image.

     (c)    *Unique IDs*. Images shall be produced using a unique file name that will be the Bates number of that page (e.g., ABC000001.TIFF). The Bates number must appear on the face of the image and to the extent practical, not obliterate, conceal, or interfere with any information from the source document. While Bates numbers will not appear on the face of the image for native documents produced, slipsheets shall be provided in accordance with subsection (h).

     (d)    *Parent-Child Relationships*. For ESI only, Parent-child relationships (association between an attachment and its parent document) shall be preserved. The attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment.

     (e)    *Redactions*. A Party may not redact information on the basis that it believes the information to be irrelevant. If the parties are redacting information from a page, they shall electronically "burn" the word "Redacted" onto the page or otherwise clearly indicate a redaction at or reasonably near to the location of the redaction(s). If documents that the parties have agreed to produce in native format need to be redacted, the parties agree to meet and confer in good faith on how to best produce the documents so that proper formatting and usability are maintained. Extracted text will not be

[PROPOSED] STIPULATED ORDER RE: DISCOVERY OF
ELECTRONICALLY STORED INFORMATION
CASE NO. 3:22-cv-03131-JCS

1    provided for electronic documents that have been redacted. Instead, these files should be run through an
2    OCR process to capture the visible text only and the results exchanged in lieu of the original extracted
3    text.

4    (f)    *Confidentiality Designation*. Responsive documents in TIFF format will be stamped with
5    the appropriate confidentiality designations in accordance with the Protective Order entered in this
6    matter. Each responsive document produced in native format will have its confidentiality designation
7    identified in the filename of the native file, indicated on its corresponding TIFF placeholder and/or set
8    forth as a metadata field.

9    (g)    *Metadata Fields*. Plaintiffs and Defendant shall provide the existing system-generated
10   and metadata fields (the "Production Fields") set forth in Exhibit A.

11   (h)    *Native Format*. The Responding Party shall produce spreadsheets (e.g., Excel),
12   presentation files (e.g., PowerPoint), and any other materials not readily convertible to TIFF format
13   (e.g., three-dimensional design files), in native format. To the extent that they are produced in this
14   action, audio, video, image (e.g., .gif or .jpg) and multimedia files will be produced in native format. If a
15   native file originally had track changes, comments, or other collaborative change features turned on, the
16   .TIF file will display those changes in the converted image file; provided, however, that if doing the
17   foregoing is not reasonably feasible for any given file(s), the producing party will so advise the
18   requesting party and the parties will meet and confer regarding an alternative process. Native files shall
19   be produced with a link in the NATIVEPATH field, along with extracted text (where extracted text is
20   available) and applicable metadata fields set forth in Exhibit A. For each native file produced, the
21   production will include a *.tiff image slipsheet indicating the production number of the native file and
22   the confidentiality designation and stating, "File Provided Natively." Native files will be produced in a
23   separate folder on the production media. TIFF images of e-mail messages should include the BCC line.
24   Upon request from the receiving party that any files be produced in native format (identified by Bates
25   number), the parties agree to meet and confer in good faith concerning such requests. A request for such
26   production shall not be unreasonably denied.

(i) *Text Files*. For each produced document, a document-level text file shall be provided in addition to the image files (TIFFs). The text of native files should be extracted directly from the native file and each text file will be named using its corresponding beginning bates number (e.g., ABC000001.TXT). For ESI with redacted text, a commercially acceptable technology for Optical Character Recognition ("OCR") shall be used for all scanned, hard copy documents with redactions. To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows.

(j) *Physical/Hard Copy Documents*. Nothing herein shall relieve the parties of any obligations they may have to search for responsive Documents in hard copy form. The parties shall produce documents that exist solely in physical hard-copy format following this ESI Protocol. The metadata shall indicate document breaks and identify the custodian or non-person custodial source from whom/where the document was collected. The following objective coding fields should be provided, if applicable: (1) beginning Bates number, (2) ending Bates number, (3) page count, and (4) source location/custodian. The documents should be logically unitized for production to the extent reasonably practicable. Where the documents were organized into groups, such as folders, clipped bundles, and binders, this structure shall be maintained and provided in the load file to the extent reasonably practicable. The parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents. The ".tiff" files shall be subject to an OCR process. The OCR software should maximize text quality over process speed. Settings such as "auto skewing" and "auto-rotation" should be turned on during the OCR process. The parties will meet and confer to address instances of undue burden and will work to negotiate an appropriate solution.

(k) *Databases and Other Structured Data*. The parties shall meet and confer regarding the production format and scope of data contained in enterprise database or database management systems (e.g., Oracle, SQL server, DB2), including the types of information stored in the database(s) (e.g., fields), the types of reports that can be generated from or for the data, whether there are existing and reasonably available reports that include the information, and whether the receiving Party will need any

information in native form in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden. Information will be considered reasonably usable when produced in CSV format, tab-delimited text format, Microsoft Excel format, or Microsoft Access format. To facilitate the meet and confer process and production of this information, sample reports reflecting the types of information and fields contained in the database(s) shall not be unreasonably withheld.

(l)     *Duplicates*. The Responding Party may use software to identify duplicate documents that are in files of individual or multiple Production Custodians. To the extent there are duplicate documents, the Responding Party need only produce a single copy of a responsive document, unless the Requesting Party reasonably requests the duplicate document for a legitimate reason. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level only). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. De-duplication should be done across the entire collection (i.e., global level) and the custodian and path information will be provided for each duplicate. To accommodate for rolling productions, for ESI that is removed as a duplicate from earlier productions, the producing party should provide an overlay file along with or within a reasonable time after each production.

**8.     PHASING**

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to meet and confer concerning whether the production of responsive ESI should occur in phases.

**9.     COSTS**

Each party shall bear its own e-discovery costs, unless the parties otherwise agree or the Court orders otherwise for good cause shown. The parties reserve the right to seek cost shifting for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

**10. MODIFICATION**

This Order may be modified by written agreement of the parties or by the Court for good cause shown.

Dated: August 22, 2022   Respectfully submitted,

By: */s/ Simon S. Grille*
Adam E. Polk (State Bar No. 273000)
Simon Grille (SBN 294914)
Kimberly Macey (SBN 342019)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
apolk@girardsharp.com
sgrille@girardsharp.com
kmacey@girardsharp.com

*Attorneys for Plaintiffs*

By: */s/ Nathan Walker*
Fred Norton (CA SBN 224725)
Nathan Walker (SBN 206128)
Bree Hann (CA SBN 215695)
Gil Walton (CA SBN 324133)
**THE NORTON LAW FIRM PC**
299 Third Street Suite 200
Oakland, CA 94607
Telephone: (510) 906-4900
fnorton@nortonlaw.com
nwalker@nortonlaw.com
bhann@nortonlaw.com
gwalton@nortonlaw.com

*Attorneys for Defendant Patreon, Inc.*

**ATTESTATION**

I, Simon S. Grille, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that all counsel have concurred in this filing.

Dated: August 22, 2022                                          /s/   Simon S. Grille

**[~~PROPOSED~~] ORDER**

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Date: August 23, 2022                                          _____
                                                                                Hon. Joseph C. Spero
                                                                                United States Chief Magistrate Judge

# Exhibit A

## Production Fields[1]

| | |
|---|---|
| BEGBATES | Start Bates (including prefix) -- No spaces or special characters |
| ENDBATES | End Bates (including prefix) -- No spaces or special characters |
| BEGATTACH | The identifier of the first page of the first document in a family group. This is used for page-level numbering schemes. |
| ENDATTACH | The identifier of the last page of the first document in a family group. This is used for page-level numbering schemes. |
| ATTACHNAME | File name of the attachment, with any attachments separated by semi-colon |
| ATTACHMENT | Child document list: BEGDOC# of each child (populated ONLY in parent records) |
| CONFIDENTIALITY | Confidentiality designation assigned to document |
| REDACTION | Whether the document contains redactions (Yes/No) |
| REDACTIONBASIS | The basis for any redactions made to the document by the producing party (*e.g.*, A-C Priv, Work Prod., etc.) |
| CUSTODIAN | Custodian/source/source party of initial instance of document/family collected |
| DUPCUSTODIAN | Custodian(s)/source(s)/source parties of any instances of document/family collected |
| FROM | Sender of an email. |
| TO | Recipient(s) from the to line of an email. |
| CC | Carbon copy recipient(s) on an email. |
| BCC | Blind carbon copy recipient(s) on an email. |
| SUBJECT | Subject line from an email. |
| DATESENT | The date an email was sent. |
| TIMESENT | The time an email was sent. |
| DATERCVD | The date an email was received. |
| TIMERCVD | The time an email was received. |
| FILEEXT | The file extension of the native file. |
| AUTHOR | Person who created the file. A file can have one or no author. |
| MODIFIEDBY | Person who last modified or saved the item. |
| CREATEDATE | The date the file was created. |
| CREATETIME | The time the file was created. |
| DATELASTMOD | The date changes were last made to a file. |
| TIMELASTMOD | The time changes were last made to a file. |
| FILENAME | The original name of the first instance native file. |
| PGCOUNT | The number of pages in a document. |
| DOCTYPE | The kind of application or file a document came from. |

---

[1] Field names can vary from system to system and even between different versions of systems. Thus, parties are to be guided by these field names and descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol Order.

| | |
|---|---|
| PARENTDATE | The date of the parent document. For emails this will be date sent and for non-emails date last modified. |
| PATH | The full file, folder, or directory structure from which the initial instance of a document was collected. This should be the path where the document is kept in the usual course. |
| HASH | Numeric value of a fixed length that uniquely identifies data. |
| NATIVEPATH | The path to a copy of a file within the production deliverable. |
| TITLE | Available title information extracted from MS Office and PDF documents. |