1 Fred Norton (CA SBN 224725)
fnorton@nortonlaw.com
2 Nathan Walker (CA SBN 206128)
nwalker@nortonlaw.com
3 Bree Hann (CA SBN 215695)
bhann@nortonlaw.com
4 Gil Walton (CA SBN 324133)
gwalton@nortonlaw.com
5 THE NORTON LAW FIRM PC
299 Third Street, Suite 200
6 Oakland, CA 94607
Telephone: (510) 906-4900
7

8
Attorneys for Defendant
9 PATREON, INC.

10                **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
11                **SAN FRANCISCO DIVISION**

12

13 BRAYDEN STARK, JUDD OOSTYEN,            Case No. 3:22-cv-03131-JCS
KEVIN BLACK, and MARYANN OWENS,
14 individually and on behalf of all others similarly
situated,
15                                        **DEFENDANT PATREON, INC.'S**
**NOTICE OF MOTION AND MOTION**
16              Plaintiffs,              **TO DISMISS PLAINTIFFS' CLAIMS**
**UNDER THE VPPA, THE CLRA, AND**
17        v.                            **THE "FRAUD" PRONG OF THE UCL;**
**MEMORANDUM OF POINTS AND**
18 PATREON, INC.,                        **AUTHORITIES IN SUPPORT**
**THEREOF**
19              Defendant.
20                                        Date:    January 27, 2023
Time:    9:30 a.m.
21                                        Judge:   Hon. Joseph C. Spero

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD, PLEASE TAKE NOTICE that on January 27, 2023, at 9:30 a.m. or as soon thereafter as counsel may be heard, in Courtroom F, 15th Floor of this Court, located at 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Patreon, Inc. ("Patreon") will, and hereby does, move for an order dismissing with prejudice Plaintiffs' claims for violations of the Video Privacy Protection Act ("VPPA"), the California Legal Remedies Act ("CLRA"), and the "fraud" prong of the California Unfair Competition Law ("UCL"), as set forth the Plaintiffs' First Amended Complaint (Dkt. 41), under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted.

This motion is based on this notice of motion and motion; the following memorandum of points and authorities; any evidence or argument presented at the hearing on the motion; and any other matters the Court deems proper.

## STATEMENT OF RELIEF SOUGHT

Patreon moves for an order dismissing with prejudice Plaintiffs' claims for violations of the VPPA, the CLRA, and the "fraud" prong of the UCL, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted.

1

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-cv-03131-JCS

# TABLE OF CONTENTS

I.      INTRODUCTION AND STATEMENT OF ISSUES ................................................. 1

II.     STATEMENT OF FACTS ......................................................................................... 1

III.    ARGUMENT ............................................................................................................. 2

    A.      Legal Standard ............................................................................................... 2

    B.      The Court Should Dismiss Plaintiffs' VPPA Claim Because The VPPA Is
        Unconstitutional Under The First Amendment .............................................. 3

        1.      Overview of the VPPA ....................................................................... 3

        2.      The VPPA, on Its Face, Violates the First Amendment to the United States
               Constitution ........................................................................................ 4

               a.      The VPPA is unconstitutional if a substantial number of its
                    applications are unconstitutional ............................................ 5

               b.      The VPPA is a content- and speaker-based regulation of speech
                    and thus it is subject to strict scrutiny ................................... 7

               c.      The VPPA regulates non-commercial speech and thus it is subject
                    to strict scrutiny ..................................................................... 8

               d.      The VPPA unconstitutionally prohibits a wide range of
                    constitutionally protected, non-commercial speech and consequently
                    is unconstitutional on its face ............................................... 10

               e.      The VPPA does not further a compelling governmental interest
                    in privacy by narrowly tailored means.................................. 15

    C.      Plaintiffs' Claims Under The CLRA And The "Fraud" Prong Of The UCL
        Sound In Fraud And Should Dismissed For Failure To Allege Fraud With
        Particularity As Required By Rule 9(b) ....................................................... 17

IV.     CONCLUSION ....................................................................................................... 21

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ................................................................ 19

*Americans for Prosperity Found. v. Bonta*,
141 S. Ct. 2373 (2021) ........................................................................................ 6

*Arce v. Douglas*,
793 F.3d 968 (9th Cir. 2015) .............................................................................. 6

*Ariix, LLC v. NutriSearch Corp.*,
985 F.3d 1107 (9th Cir. 2021) ............................................................................ 9

*Ashcroft v. Free Speech Coal.*,
535 U.S. 234 (2002) ........................................................................................ 5, 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................... 2

*Austin-Spearman v. AMC Network Ent. LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015) ............................................................ 8, 16

*Baldwin v. Redwood City*,
540 F.2d 1360 (9th Cir. 1976) .......................................................................... 13

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
140 S.Ct. 2335 (2020) ........................................................................................ 7

*Bartnicki v. Vopper*,
532 U.S. 514 (2001) ........................................................................................... 7

*Bd. of Trustees of State Univ. of New York v. Fox*,
492 U.S. 469 (1989) ......................................................................................... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................... 2

*Berger v. City of Seattle*,
569 F.3d 1029 (9th Cir. 2009) ............................................................................ 7

*Bolger v. Youngs Drug Prod. Corp.*,
463 U.S. 60 (1983) ............................................................................................. 8

*Brown v. Ent. Merchants Ass'n*,
564 U.S. 786 (2011) .......................................................................... 6, 8, 10, 15

*Browning v. Am. Honda Motor Co.*,
2022 WL 824106 (N.D. Cal. Mar. 18, 2022) ................................................... 19

*Buckland v. Threshold Enters., Ltd.*,
155 Cal. App. 4th 798 (2007) ........................................................................... 21

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,

ii

637 F.3d 1047 (9th Cir. 2011) ................................................................................. 3, 18

*Cholakyan v. Mercedes-Benz USA, LLC,*
   796 F. Supp. 2d 1220 (C.D. Cal. 2011) ........................................................................ 21

*Collins v. eMachines, Inc.,*
   202 Cal. App. 4th 249 (2011) .................................................................................... 19

*Coplin v. Fairfield Pub. Access Television Comm.,*
   111 F.3d 1395 (8th Cir. 1997) ........................................................................... 5, 13, 14

*Cox Broad. Corp. v. Cohn,*
   420 U.S. 469 (1975) ................................................................................................. 13

*Eichenberger v. ESPN, Inc.,*
   876 F.3d 979 (9th Cir. 2017) ..................................................................................... 3, 10

*Ellis v. Cartoon Network, Inc.,*
   803 F.3d 1251 (11th Cir. 2015) ............................................................................ 4, 7, 16

*Entler v. Gregoire,*
   872 F.3d 1031 (9th Cir. 2017) ...................................................................................... 11

*Forsyth Cnty., Ga. v. Nationalist Movement,*
   505 U.S. 123 (1992) .................................................................................................... 6

*Frenzel v. AliphCom,*
   76 F. Supp. 3d 999 (N.D. Cal. 2014) ............................................................................ 18

*Friedman v. Mercedes Benz USA LLC,*
   2013 WL 12086785 (C.D. Cal. Jan. 31, 2013) ................................................................ 21

*Garrison v. State of La.,*
   379 U.S. 64 (1964) ..................................................................................................... 11

*Gertz v. Robert Welch, Inc.,*
   418 U.S. 323 (1974) .................................................................................................... 14

*Gilbert v. Medical Economics Co.,*
   665 F.2d 305 (10th Cir. 1981) ........................................................................................ 5

*Haskins v. Symantec Corp.,*
   2014 WL 2450996 (N.D. Cal. June 2, 2014) .................................................................. 21

*Herron v. Best Buy Co. Inc.,*
   924 F. Supp. 2d 1161 (E.D. Cal. 2013) ........................................................................ 20

*Hodsdon v. Mars, Inc.,*
   891 F.3d 857 (9th Cir. 2018) ...................................................................................... 20

*Hunt v. City of Los Angeles,*
   638 F.3d 703 (9th Cir. 2011) ......................................................................................... 8

*Iancu v. Brunetti,*
   139 S. Ct. 2294 (2019) ................................................................................................. 6

*IMDb.com Inc. v. Becerra,*
   962 F.3d 1111 (9th Cir. 2020) .............................................................................. Passim

iii

*In re Grand Jury Subpoena to Kramerbooks & Afterwords Inc.*,
   26 Med. L. Rptr. 1599 (D.D.C. 1998) ................................................................ 16

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009) ........................................................................................ 21

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ........................................................................... 18

*Kumandan v. Google LLC*,
   2022 WL 103551 (N.D. Cal. Jan. 11, 2022) ............................................ 18, 19, 20

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310, 120 Cal.Rptr.3d 741, 246 P.3d 877 ........................................ 21

*Landmark Commc'ns, Inc. v. Virginia*,
   435 U.S. 829 (1978) ........................................................................................... 13

*Louth v. NFL Enterprises LLC*,
   2022 WL 4130866 (D.R.I. Sept. 12, 2022) .................................................... 4, 16

*McDougal v. Fox News Network, LLC*,
   489 F. Supp. 3d 174 (S.D.N.Y. 2020) ............................................................... 11

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990) ............................................................................................... 11

*NetChoice, LLC v. Att'y Gen., Fla.*,
   34 F.4th 1196 (11th Cir. 2022) .......................................................................... 15

*New York v. Ferber*,
   458 U.S. 747 (1982) ............................................................................................. 6

*Papasan v. Allain*,
   478 U.S. 265 (1986) ............................................................................................. 2

*Perry v. Cable News Network, Inc.*,
   854 F.3d 1336 (11th Cir. 2017) ........................................................................... 4

*R.A.V. v. City of St. Paul, Minn.*,
   505 U.S. 377 (1992) ....................................................................................... 8, 15

*Rasmussen v. Apple Inc.*,
   27 F. Supp. 3d 1027 (N.D. Cal. 2014) ............................................................... 20

*Reed v. Town of Gilbert, Ariz.*,
   576 U.S. 155 (2015) ....................................................................................... 8, 15

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984) ............................................................................................... 7

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) .................................................................................. 7, 8, 17

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ............................................................................... 3

*State Bd. of Pharmacy v. Virginia. Citizens Consumer Council, Inc.*,

iv

425 U.S. 748 (1976) ............................................................................................................ 8

*Szep v. Gen. Motors LLC*,
  491 F. Supp. 3d 280 (N.D. Ohio 2020) ........................................................................... 20

*Tattered Cover, Inc. v. City of Thornton*,
  44 P.3d 1044 (Colo. 2002) ............................................................................................... 16

*The Fla. Star v. B.J.F.*,
  491 U.S. 524 (1989) ...................................................................................... 5, 13, 14, 16

*True v. Am. Honda Motor Co.*,
  520 F. Supp. 2d 1175 (C.D. Cal. 2007) ........................................................................... 21

*Tschida v. Motl*,
  924 F.3d 1297 (9th Cir. 2019) ........................................................................................... 6

*United States v. Hansen*,
  25 F.4th 1103 (9th Cir. 2022) ........................................................................................... 6

*United States v. Playboy Ent. Grp., Inc.*,
  529 U.S. 803 (2000) ......................................................................................................... 15

*United States v. Rundo*,
  990 F.3d 709 (9th Cir. 2021) ............................................................................................. 6

*United States v. Stevens*,
  559 U.S. 460 (2010) .................................................................................................... 5, 17

*United States v. Velentzas*,
  2019 WL 3252961 (E.D.N.Y. July 16, 2019) ................................................................. 11

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ..................................................................................... 3, 17

*Victory Processing, LLC v. Fox*,
  937 F.3d 1218 (9th Cir. 2019) ......................................................................................... 16

*Warner Constr. Corp. v. City of Los Angeles*,
  2 Cal. 3d 285 (1970) ......................................................................................................... 20

*Warren v. Fox Fam. Worldwide, Inc.*,
  328 F.3d 1136 (9th Cir. 2003) ........................................................................................... 2

*Washington State Grange v. Washington State Republican Party*,
  552 U.S. 442 (2008) ........................................................................................................... 5

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) ......................................................................................... 19


**Statutes**


8 U.S.C. § 1324 ....................................................................................................................... 6

18 U.S.C. § 842 ..................................................................................................................... 11

v

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-03131-JCS

18 U.S.C. § 2251 ................................................................................................................... 11

18 U.S.C. § 2710 ........................................................................................................... 3, 4, 12

Cal. Civ. Code § 1798.83.5 ............................................................................................. 9, 17

Cal. Civ. Code §§ 1770(a)(5), (7), and (9) ........................................................................ 18

**Rules**

Federal Rule of Civil Procedure 9(b) ........................................................................... *passim*

Federal Rule of Civil Procedure 12(b)(6) ................................................................... 1, 2, 21

## I.      INTRODUCTION AND STATEMENT OF ISSUES

Defendant Patreon moves to dismiss Plaintiffs' claims under the Video Privacy Protection Act (VPPA), the California Consumer Legal Remedies Act (CLRA), and the "fraud" prong of the California Unfair Competition Law (UCL), all with prejudice.

The VPPA claims must be dismissed because the VPPA, on its face, violates the First Amendment to the United States Constitution.  Because the VPPA singles out a specific category of speakers and a single type of speech, Plaintiffs cannot proceed under that statute unless they can demonstrate that it meets the unforgiving standard of strict scrutiny.  They cannot make that showing.  Contrary to settled First Amendment law, the VPPA forbids a broad range of constitutionally protected, non-commercial speech, without being narrowly tailored to advance an interest in privacy.  It forbids disclosure on matters of public concern at the core of the First Amendment, disclosure of accurate information lawfully obtained, disclosure even with the express written consent of a consumer, disclosure of information that is already public, and disclosure of information that is in no way embarrassing, invasive, or offensive to a reasonable person.  And in each case, the VPPA imposes substantial, mandatory liquidated damages even in the absence of any actual injury.  At the same time, the VPPA fails to protect disclosures of other consumer information that is equally private, if not more private, than the video-viewing history the VPPA regulates.  The VPPA is unconstitutional and the VPPA claim must be dismissed.

Plaintiffs also assert claims under the CLRA and the UCL that Patreon misrepresented or failed to disclose that it would share video-watching information with Facebook.  These claims sound in fraud, and thus they are subject Federal Rule of Civil Procedure 9(b)'s heightened pleading standard.  But Plaintiffs do not allege the who, what, when, where, and how of the supposed misrepresentations, nor do the allege any facts that would establish a duty to disclose the purportedly omitted facts.  For these reasons, the CLRA and the UCL claims must be dismissed as well.

## II.     STATEMENT OF FACTS

The gist of the case is simple:  The four Plaintiffs allege that they each signed up to be Patreon members and Facebook users and watched prerecorded videos using the Patreon website.  (Dkt. 41 (First

Amended Complaint (FAC)), ¶¶ 1-4, 51)[1]  Plaintiffs further allege that Patreon's website incorporated "Pixel," which they describe as "an advertising tool that allows website owners to track visitor actions on their websites for purposes of sending the corresponding information to Meta," Facebook's parent company.  (FAC, ¶ 54)  According to Plaintiffs, Patreon disclosed to Meta the titles of the videos Plaintiffs watched, along with their Facebook user IDs.  (*Id.* ¶¶ 5, 51-53)  They also allege that these Facebook User IDs (FIDs) would permit Meta, or an ordinary person who had access to the FID, to identify an individual Patreon subscriber and the specific video content that they viewed using the Patreon website.  (*Id.* ¶ 50)

Plaintiffs assert that Patreon never told them it would disclose their viewing content to third parties, and that they never consented to such disclosures.  (*Id.* ¶¶ 64-65)  Had they known, Plaintiffs say, they would have paid Patreon less, or not used Patreon's services at all.  (*Id.* ¶ 70)

## III.     ARGUMENT

### A.  Legal Standard

A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678 (cleaned up).  On a motion to dismiss, the court does not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Warren v. Fox Fam. Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003).  Further, the court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."  *Id.*; *see also Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).

---

[1] Patreon denies that it discloses to Facebook what videos Patreon members watch.  But this is a Rule 12(b)(6) motion, and for this motion Patreon accepts as true the Complaint's factual allegations, to the extent they are not contradicted by the documents cited in the Complaint itself.

Additionally, claims sounding in fraud – including CLRA and UCL claims that sound in fraud – are subject to the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a clamant alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted).

### B.    The Court Should Dismiss Plaintiffs' VPPA Claim Because The VPPA Is Unconstitutional Under The First Amendment

The VPPA violates the First Amendment to the United States Constitution on its face. Because the statute is unconstitutional, Plaintiffs' VPPA claims must be dismissed with prejudice.

#### 1.   Overview of the VPPA

The Video Privacy Protection Act, 18 U.S.C. § 2710, was originally enacted in 1988, in response to a newspaper obtaining and publishing a list of video tapes that Supreme Court nominee Judge Robert H. Bork had rented from his local video store. *See Eichenberger v. ESPN, Inc.,* 876 F.3d 979, 984 n.2 (9th Cir. 2017). It imposes civil liability on a "video tape service provider" that knowingly discloses information that identifies a "consumer" as having "requested or obtained specific video materials or services" from the video tape service provider, unless the consumer has provided written consent "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710(b). Because of the VPPA's highly formalized consent requirement, a defendant cannot avoid liability under the VPPA, even if the consumer expressly consented to the disclosure in writing, unless the particular requirements of Section 2710(b)(2)(B) are satisfied. And even if the consumer does expressly consent, and does so in a separate form as the VPPA requires, there is a timing requirement as well: consent must either be obtained "at the time of the disclosure" or if consent is obtained in advance, it is effective for no more than two years. *See id.*

"Video tape service provider" and "consumer" are defined terms in the statute. A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce,

3

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-03131-JCS

of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).  It does not, however, include some providers of video cassette tapes or similar audio visual materials, such as public libraries, which are not "engaged in business" at all, or anyone who distributes live rather than prerecorded video.  *See Louth v. NFL Enterprises LLC*, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022).

A "consumer" is "any renter, purchaser, or subscriber of goods or services from a video tape service provider."  18 U.S.C. § 2710(a)(1).  Courts have interpreted the VPPA's definition of consumer to require some kind of "ongoing commitment or relationship" with the video provider, such that a person who watches news, cartoons, or other video content through an app or website, but does not sign up for an account or pay money, is not a "consumer" and falls outside the VPPA's reach.  *See*, *e.g.*, *Perry v. Cable News Network, Inc.,* 854 F.3d 1336, 1343 (11th Cir. 2017); *Ellis v. Cartoon Network, Inc.,* 803 F.3d 1251, 1257 (11th Cir. 2015).

The VPPA has an exemption for disclosures in the "ordinary course of business," 18 U.S.C. § 2710(b)(2)(E), which is another defined term, meaning "only debt collection activities, order fulfillment, request processing, and the transfer of ownership."  18 U.S.C. § 2710(a)(2).  It also has exemptions for disclosures to law enforcement agencies in response to a search warrant or court order, 18 U.S.C. § 2710(b)(2)(C), and for disclosures in response to a civil court order after notice to the consumer and satisfaction of a heightened showing of need, 18 U.S.C. § 2710(b)(2)(F).

A plaintiff who prevails on a claim for violation of the VPPA is entitled to actual damages, but not less than liquidated damages of $2,500, plus punitive damages, reasonable attorneys' fees and costs, and other equitable relief.  18 U.S.C. § 2710(c)(2).

### 2. The VPPA, on Its Face, Violates the First Amendment to the United States Constitution

Plaintiffs' claims under the VPPA must be dismissed because the VPPA violates the First Amendment on its face.

The fact that the VPPA has as its purpose the protection of privacy does not spare it from scrutiny under the First Amendment.  Much to the contrary, as the Supreme Court has recognized, there is "tension between the right which the First Amendment accords to a free press, on the one hand, and

4

the protections which various statutes and common-law doctrines accord to personal privacy against the publication of truthful information, on the other …." *The Fla. Star v. B.J.F.*, 491 U.S. 524, 530 (1989). As a result, "[o]nly in the 'extreme case' is it constitutionally permissible for a governmental entity to regulate the public disclosure of facts about private individuals." *Coplin v. Fairfield Pub. Access Television Comm.,* 111 F.3d 1395, 1404 (8th Cir. 1997) (quoting *Gilbert v. Medical Economics Co.,* 665 F.2d 305, 308 (10th Cir. 1981)).  In *Coplin*, the Eighth Circuit summarized the "substantial limitations" that apply to regulation of truthful facts about private individuals for such regulation to withstand scrutiny under the First Amendment:  (1) the regulation must be viewpoint neutral; (2) "the facts revealed must not already be in the public domain," (3) the facts revealed "must not be the subject of legitimate public interest," and (4) "the facts revealed must be highly offensive" to a reasonable person. *Coplin*, 111 F.3d at 1404-05 (citations omitted).  The VPPA does not comply with these restrictions.

As set out in greater detail below, the VPPA is a content- and speaker-based regulation of speech, and without question applies to speech that is not commercial, as well as speech that touches on matters of public concern.  Consequently, (1) the VPPA's restrictions on speech are subject to strict scrutiny, meaning that they must further a compelling governmental interest and be narrowly tailored to that end, and (2) the law is facially invalid if a substantial number of its applications fail to meet that standard – even if the law might withstand scrutiny as applied to the specific facts alleged in the FAC. The VPPA does indeed forbid a wide range of constitutionally protected speech, including core political speech, without being narrowly tailored to advance an interest in privacy.  For that reason, it violates the First Amendment and plaintiffs' VPPA claims must be dismissed.

### a.     The VPPA is unconstitutional if a substantial number of its applications are unconstitutional

In the First Amendment context, a law is facially invalid if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Washington State Grange v. Washington State Republican Party,* 552 U.S. 442, 449, n.6 (2008)); *see also Ashcroft v. Free Speech Coal.,* 535 U.S. 234, 244 (2002).  A law can be facially unconstitutional under the First Amendment because of its overbreadth, even if its application in the particular case before the court is "constitutionally

5

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-03131-JCS

unobjectionable." *See Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 129 (1992).

For example, in *Ashcroft*, the Court struck down the Child Pornography Prevention Act of 1996 (CCPA), which prohibited any visual depiction that is, or appears to be, of a minor engaging in sexual conduct.  535 U.S. at 241.  While Congress certainly has the power to ban child pornography, and the Court had upheld a prior ban, *see New York v. Ferber*, 458 U.S. 747 (1982), the CCPA would also ban protected expression such as modern depictions of *Romeo & Juliet* and other dramatic works.  *See* 535 U.S. at 248.  Because the CCPA swept too far, it was facially unconstitutional.  In *United States v. Hansen*, 25 F.4th 1103 (9th Cir. 2022), the Ninth Circuit addressed 8 U.S.C. § 1324, which forbade efforts to knowingly "encourage[] or induce[] an alien to 'enter, or reside in the United States … in violation of law.'"  *Id.* at 1108.  Because the statute would also punish protected speech such as "encouraging an undocumented immigrant to take shelter during a natural disaster, advising an undocumented immigrant about available social services, [or] telling a tourist that she is unlikely to face serious consequences if she overstays her tourist visa," it too was overbroad and hence facially unconstitutional.  *Id.* at 1110.

Applying these principles, the Supreme Court and Ninth Circuit have repeatedly invalidated laws on overbreadth grounds in recent years.  *See, e.g.*, *Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2387 (2021) (California's charitable organization donor disclosure requirement was overbroad); *Iancu v. Brunetti*, 139 S. Ct. 2294, 2302 (2019) (Lanham Act's prohibition on the registration of trademarks containing "immoral or scandalous" matter was overbroad); *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 805 (2011) (California law restricting the sale of violent video games to minors was overbroad); *Hansen*, 25 F.4th 1103 (federal statute proscribing encouragement or inducement of illegal immigration for financial gain was overbroad); *United States v. Rundo*, 990 F.3d 709, 717 (9th Cir. 2021), *cert. denied*, 211 L. Ed. 2d 570, 142 S. Ct. 865 (2022) (provision of federal statute criminalizing speech urging riots was overbroad); *Tschida v. Motl*, 924 F.3d 1297, 1304 (9th Cir. 2019) (Montana statute imposing a confidentiality requirement on ethics complaints against unelected officials and state employees was overbroad); *Arce v. Douglas*, 793 F.3d 968, 986 (9th Cir. 2015) (Arizona statute prohibiting courses and classes designed primarily for students of a particular ethnic group in public schools was overbroad).

### b.	The VPPA is a content- and speaker-based regulation of speech and thus it is subject to strict scrutiny

The Supreme Court has made clear that "the creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011).  "[I]f the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category, as distinct from the category of expressive conduct." *Id.* at 570 (quoting *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001)).  "An individual's right to speak is implicated when information he or she possesses is subjected to 'restraints on the way in which the information might be used' or disseminated." *Sorrell*, 564 U.S. at 568 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984)).  The VPPA prohibits the disclosure of information, and thus plainly regulates speech.

A speech-restricting statute like the VPPA is "content-based" if it, "by its very terms, singles out particular content for differential treatment." *Berger v. City of Seattle*, 569 F.3d 1029, 1051 (9th Cir. 2009) (en banc).  As the Supreme Court has explained, "a law banning the use of sound trucks for political speech – and only political speech – would be a content-based regulation, even if it imposed no limits on the political viewpoints that could be expressed." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S.Ct. 2335, 2346 (2020).

On its face, the VPPA imposes content- and speaker-based restrictions on the disclosure of information.  It prohibits dissemination of one kind of speech:  speech that discloses a particular consumer's video-viewing history; and "perhaps more troubling, it restricts only a single category of speakers" – video tape service providers.  *See IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1120 (9th Cir. 2020) (statute regulating public disclosure of the ages of entertainment industry professionals violated the First Amendment).  Other parties with knowledge of a person's video-viewing history, such as libraries or distributors of live videos, are not subject to the VPPA's prohibition.  In addition, because the statute applies only to "consumers" as defined in the statute, its prohibition does not fall on other parties that possess information about an individual's video viewing behavior but that do not have a "consumer" relationship with the viewer.  *See, e.g.*, *Ellis*, 803 F.3d at 1252-58 (plaintiff who viewed free content on his smartphone using a free app was not a subscriber and therefore not a "consumer" under

7

the VPPA); *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 669 (S.D.N.Y. 2015) (same, plaintiff viewed free videos on defendant's website without signing up for an account).

"Content-based" restrictions on speech are "disfavored and 'presumptively invalid.'" *IMDb.com*, 962 F.3d at 1120 (quoting *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 382 (1992)); *see also Sorrell*, 564 U.S. at 571 (content- and speaker-based burden on protected expression justifies application of "heightened scrutiny"). A content- and speaker-based restriction on speech, like the VPPA, is generally subject to strict scrutiny, a "demanding standard" satisfied only if the prohibition "furthers a compelling governmental interest and is narrowly tailored to that end." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799 (2011); *Reed v. Town of Gilbert, Ariz.,* 576 U.S. 155, 171 (2015).

c. **The VPPA regulates non-commercial speech and thus it is subject to strict scrutiny**

Although "commercial speech" is subject to intermediate scrutiny, rather than strict scrutiny, the speech regulated by the VPPA in general is not commercial speech for purposes of the First Amendment. "Commercial speech 'does no more than propose a commercial transaction.'" *IMDb.com*, 962 F.3d at 1122 (quoting *Virginia. State Bd. of Pharmacy v. Virginia. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976)). Disclosing a consumer's video-viewing history is in no way a proposal of a commercial transaction, and the FAC does not allege otherwise. *IMDb.com*, 962 F.3d at 1122 (commercial company's website listing entertainment industry profiles and disclosing individual's ages did not propose a commercial transaction). If it is a "close question" whether speech at issue proposes a commercial transaction, a court considers whether the speech is an advertisement, the speech refers to a particular product, or the speaker has an economic motivation. *See Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (citing *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 66-67 (1983)) (the "*Bolger* factors"). And even if there is an "economic motivation" to speak, that alone is still is not enough to render speech "commercial." As the Ninth Circuit held in *Ariix, LLC v. NutriSearch Corp.,* "not all types of economic motivation support commercial speech. A simple profit motive to sell copies of a publication or to obtain an incidental economic benefit, without more, does not make something commercial speech. Otherwise, virtually any newspaper, magazine, or book for sale could be considered a commercial publication." 985 F.3d 1107, 1117 (9th Cir. 2021) (citing cases). Properly

8

understood then, very little of the speech regulated by the VPPA is "commercial speech," even if it is speech by commercial actors, and even if it has an economic motivation.

The Ninth Circuit's decision in *IMDb.com* illustrates the heightened standards that apply to speech restrictions like the VPPA.  In that case, the Ninth Circuit applied strict scrutiny in striking down, on First Amendment grounds, a California law that prevented any "person or business that owns, licenses, or otherwise possesses computerized information, including, but not limited to, age and date of birth information, about individuals employed in the entertainment industry, including television, films, and video games, and that makes the information available to the public or potential employers" from disclosing the date of birth or age of any person who subscribed to its services if that person requested their age not be disclosed.  Cal. Civ. Code § 1798.83.5; *IMDb.com*, 962 F.3d at 1116-17.  The plaintiff, which published an online database of information about movies, television, and video games, including profiles of entertainment industry professionals, challenged the law on First Amendment grounds.  The Ninth Circuit found that the law targeted specific content ("It prohibits the dissemination of one type of speech: 'date of birth or age information'") and specific speakers ("[a]nd perhaps more troubling, it restricts only a single category of speakers").  *IMDb.com,* 962 F.3d at 1120.

Further, the Ninth Circuit applied strict scrutiny, rejecting the state's two arguments that the speech at issue was entitled to lesser protection as "commercial speech" or speech concerning "private matters."  As to the first argument, commercial speech, the court readily found that "public profiles on IMDb.com do not 'propose a commercial transaction'" and that the issue was not a "close question."  *Id.* at 1122.  Even if it were, profiles of entertainment industry professionals on IMDB's website were neither advertisements nor references to particular products, confirming that they were not commercial speech even if IMDB had a commercial interest is disclosing them.  *Id.*  As to the second argument, speech concerning private matters, the Ninth Circuit emphatically rejected the state's contention that "speech of a purely private concern" is entitled "only to reduced protection."  *Id.* at 1123-244.  "[N]either this court, nor the Supreme Court, has held that content-based restrictions on public speech touching on private issues escape strict scrutiny."  *Id* at 1123.

In sum, the VPPA is a content- and speaker-based regulation of non-commercial speech that precludes particular speakers from disclosing particular, accurate information that they already lawfully

9

possess.  The VPPA thus is unconstitutional if a substantial number of its applications fail to meet strict scrutiny.  They do.

### d. The VPPA unconstitutionally prohibits a wide range of constitutionally protected, non-commercial speech and consequently is unconstitutional on its face

The VPPA violates the First Amendment on its face.  There are numerous examples of non-commercial[2] speech that the VPPA restricts and punishes, without furthering a compelling interest in privacy, and without furthering such an interest by narrowly tailored means.  *Brown*, 564 U.S. at 799.

*First*, and most strikingly, the ***very incident*** that prompted Congress to pass the VPPA – the disclosure of videos Supreme Court nominee Judge Bork had rented from his local video store – is protected speech.  Given Bork's stated views on the right to privacy and other issues, critics of the nominee urged then-Chairman of the Senate Judiciary Committee Joe Biden to subpoena Bork's video rental records, speculating they might reveal pornography.  *See* Jeffrey Rosen, "The Myth of Biden v. Bork," *The New York Times* (Aug. 26, 2008), available at https://www.nytimes.com/2008/08/27/opinion/27rosen.html.  Biden refused, *see id.*, and a reporter obtained the records just by asking for them, *see* Michael Dolan, "Borking Around," *The New Republic* (Dec. 19, 2012), available at https://newrepublic.com/article/111331/robert-bork-dead-video-rental-records-story-sparked-privacy-laws).  Senator Patrick Leahy joined with Senator Alan Simpson in denouncing the disclosure:  "It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home," and that sentiment led directly to the VPPA.  *See* S. REP. 100-599 Section III(A); *Eichenberger,* 876 F.3d at 984 n.2.

Senators Leahy and Simpson were wrong.  Speech discussing whether a public official has taken hypocritical positions on important issues are statements "'on matters of public concern' that deserve the highest protection."  *McDougal v. Fox News Network*, *LLC*, 489 F. Supp. 3d 174, 183 (S.D.N.Y. 2020)

---

[2] Overbreadth analysis does not apply to "commercial speech."  *Bd. of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 481 (1989).  As discussed above, even the speech that Plaintiffs attribute to Patreon is not "commercial speech."  However, for purposes of the overbreadth analysis, it is unimportant that ***some*** categories of speech subject to the VPPA, or even the speech Plaintiffs attribute to Patreon in this case, might be characterized as "commercial."  What matters is that the VPPA is overbroad because it ***also*** restricts a substantial amount of constitutionally protected speech.  *See id.*

(quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990)).  First Amendment protection of this category of speech "protects the paramount public interest in a free flow of information to the people concerning public officials," and "anything which might touch on an official's fitness for office is relevant," even though it may also concern "the official's private character."  *Garrison v. State of La.*, 379 U.S. 64, 77 (1964).  The VPPA precludes this speech and sweeps too far.

**Second**, the VPPA prohibits video service providers from voluntarily notifying law enforcement that consumers are requesting or obtaining content that actually violates federal law.  For example, in 1999, in response to growing concerns about the availability of bomb-making information on the internet and elsewhere,[3] Congress amended 18 U.S.C. § 842 to make it a federal crime to "teach or demonstrate the making or use of an explosive" with the intent that the information will be used in furtherance of a federal crime.  *See* 18 U.S.C. § 842(p).  The law applies to online videos, *see, e.g.*, *United States v. Velentzas*, 2019 WL 3252961, at *8 (E.D.N.Y. July 16, 2019).  Federal law likewise punishes the possession and distribution of child pornography, including videos.  *See* 18 U.S.C. § 2251.  But under the VPPA, a video tape service provider cannot tell law enforcement that a particular user is requesting or obtaining such illegal, dangerous content through the provider's platform.  It can make that disclosure only after law enforcement obtains and serves a search warrant.  By prohibiting providers from voluntarily reporting potentially illegal activity to law enforcement, the VPPA violates the First Amendment.  *See Entler v. Gregoire*, 872 F.3d 1031, 1043-44 (9th Cir. 2017) (holding that "the filing of criminal complaints falls within the embrace of the First Amendment"); *id.* at 1044 ("It matters not who files the criminal complaint or who the complaint is against.").

**Third**, the VPPA's overbreadth problem is not limited to speech concerning the conduct of public officials and other public figures, potential criminal conduct, or other issues of public concern.  The VPPA also sweeps up a wide variety of disclosures that may not rise to the level of public concern but nonetheless implicate important First Amendment interests.  It prohibits a video store clerk from

---

[3] *See* United States Department of Justice, 1997 Report on the Availability of Bombmaking Information (April 1997), available at https://webharvest.gov/peth04/20041026201550/http://www.usdoj.gov/criminal/cybercrime/bombmakinginfo.html

telling a customer that the customer's minister, or spouse, or child's babysitter rented highly pornographic or extremely violent videos.  It prohibits a video tape service provider from informing a parent that their teenaged child obtained and viewed similar material.  It prohibits traffic schools from certifying to courts that a person completed an online driver safety course.[4]  It prohibits online continuing education providers from certifying to regulators that a licensee completed a required video course.[5]  No compelling privacy interests are implicated by these disclosures, but the VPPA forbids them all, all the same.  If any "consumer" watches any pre-recorded video provided by a "video tape service provider," the VPPA restricts disclosure of the consumer's identity and the video they watched.

*Fourth*, the law also unreasonably forbids disclosure of individual viewing information even with a consumer's express written consent, if that consent does not comply with the VPPA's peculiar formalities, or even if it does, but the consent was given more than two years before the disclosure.  *See* 18 U.S.C. § 2710(b)(2)(B).  There is no First Amendment justification for punishing the disclosure of truthful information that the consumer has actually and expressly consented to.  *See IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1127 (9th Cir. 2020) (statute regulating public disclosure of the ages of entertainment industry professionals violated the First Amendment, even though prohibition applied only if subscriber objected to disclosure).  Moreover, even if a consent requirement is justified, unnecessarily burdensome consent requirements like that of the VPPA run afoul of the First

---

[4] For example, for persons sentenced to traffic school, California courts require that an online traffic school notify the court directly that the person completed the course.  *See*, *e.g.*, Superior Court of California, County of San Diego, "Traffic School," available at https://www.sdcourt.ca.gov/sdcourt/traffic3/trafficschool ("Traffic schools are now required to **electronically** notify the court of traffic school completion.…  California licensed drivers should rely on the schools to notify the court." (emphasis in original)).

[5] For example, in many states, providers of continuing education for insurance agents are required to submit certificates of completion directly to the Department of Insurance.  *See*, *e.g.*, Cal. Code Regs. tit. 10 § 2188.8  (identifying information that providers of continuing education must provide directly to the department, including student name and social security number and the title of the course); Nebraska Department of Insurance, "Frequently Asked Questions for Continuing Education Providers," FAQ No. 5 available at https://doi.nebraska.gov/producers/provide-education (explaining that course results are "required to be uploaded by the course provider electronically" to the department); Kansas Insurance Department, "Continuing Education for Insurance Providers," available at https://insurance.kansas.gov/continuing-education/ ("Continuing education completion information must be submitted electronically to State Based System (SBS) by the continuing education provider").

Amendment.  *See*, *e.g.*, *Baldwin v. Redwood City*, 540 F.2d 1360, 1371 n.30 (9th Cir. 1976) (where city's permitting regime for temporary signs required that applicants certify that they had written consent of the property owner where the sign was to be posted, benefits of requiring written rather than verbal consent were "insufficient to justify the heavy additional burdens imposed on the exercise of First Amendment rights.").

*Fifth*, the VPPA punishes disclosure of information that is not even private:  the fact that the consumer may have also disclosed their video viewing history to others, recommending favorite videos, sharing them on social media, endorsing them, even writing reviews about them, appears irrelevant to liability under the VPPA.  But again, the First Amendment does not permit liability in such cases.  For example, in *The Fla. Star v. B.J.F.*, 491 U.S. 524, 539 (1989), the Supreme Court held that a statutory ban on disclosures of rape victims' names was overinclusive in part because it "require[d] no case-by-case findings that the disclosure of a fact about a person's private life was one that a reasonable person would find highly offensive" but instead caused "liability [to] follow[] automatically from publication," "regardless of whether" the information had already been disclosed within the plaintiff's community and indeed whether the plaintiff "has voluntarily called public attention to" it.  *See also Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494-95 (1975) (striking down prohibition on disclosure of name of rape victim that was already disclosed in public records).  As the *Cox* Court noted, "even the prevailing law of invasion of privacy generally recognizes that the interests in privacy fade when the information involved already appears on the public record."  *Id.  See also The Florida Star*, 491 U.S. at 535 (observing that punishing a speaker for "dissemination of information which is already publicly available is relatively unlikely to advance the interests" of privacy); *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 840 (1978) (describing holding of *Cox*:  "a civil action against a television station for breach of privacy could not be maintained consistently with the First Amendment when the station had broadcast only information which was already in the public domain"); *Coplin*, 111 F.3d at 1405 (under the First Amendment, privacy regulation cannot restrict disclosure of facts in the public domain).  The VPPA, in contrast, punishes disclosure without regard to whether the information is publicly known or private at all.

*Sixth*, the VPPA prohibits any disclosure of a consumer's video-watching history, regardless of whether the nature of the information is harmful to any privacy interest.  Under the VPPA, the plaintiff

13

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-03131-JCS

need not even show that the consumer had a subjective desire to keep the information private, much less establish that the disclosure was "one that a reasonable person would find highly offensive," *see The Florida Star*, 491 U.S. at 539.  But the First Amendment requires that a privacy law be limited to revelation of facts that would be "highly offensive," "those intimate physical details the publicizing of which would not be merely embarrassing and painful but deeply shocking to the average person subjected to such exposure." *Coplin*, 111 F.3d at 1405 (citation omitted).  The VPPA is not limited as the First Amendment requires, but indiscriminately treats all video-viewing as if it were the most sensitive, private, and personal information about a person.

**Seventh and finally**, all these defects are exacerbated by the VPPA's "liquidated damages" provision, which imposes liability of $2,500 even when the plaintiff has ***no*** actual damages.  Assume a plaintiff who posts on Facebook the ten best children's movies that she has watched on the defendant's platform in the preceding year.  Assume further that she has consented to disclosure of the videos she watched, albeit in the defendant's general terms of use, not a standalone form.  And last, assume that the defendant's disclosure was limited to using Facebook Pixel to inform Facebook, and no one else, that the plaintiff had watched the particular movies she posted about.  Under the VPPA, the plaintiff would claim to be entitled to at least $2500 (and perhaps even $25,000) in mandatory liquidated "damages," despite having suffered no damages or any other harm of any kind, and despite having voluntarily published that same information to a far broader audience than the defendant had.

The First Amendment does not permit imposition of monetary damages for speech that causes no actual injury.  In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974), the Supreme Court stressed that "remedies" even "for defamatory falsehood" must "reach no farther than is necessary to protect the legitimate interest involved," which is why plaintiffs normally should be limited "to compensation for actual injury" without presumed or punitive damages unless they show knowing or reckless lies.  If ***negligent falsehoods*** generally should not be subject to presumed or punitive damages, then even more clearly ***true statements*** should not be so.  *Cf. The Florida Star*, 491 U.S. at 541 n.9 (flagging, but not reaching, the question whether "the imposition of punitive damages for publication independently violated the First Amendment" in a privacy case).  Further, the potential for tens of millions of dollars or more in aggregated damages from such inconsequential disclosures is itself an unreasonable burden that

14

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-03131-JCS

impermissibly chills protected speech.  *See NetChoice, LLC v. Att'y Gen., Fla.,* 34 F.4th 1196, 1231 (11th Cir. 2022) (noting that potential for online platform to be subject to "millions, or even billions, of dollars in statutory damages" is "unduly burdensome and would chill protected speech") (cleaned up)).  By imposing damages for truthful speech without any injury, the VPPA violates the First Amendment.

### e. The VPPA does not further a compelling governmental interest in privacy by narrowly tailored means

Under strict scrutiny, the VPPA can stand only if it "furthers a compelling governmental interest and is narrowly tailored to that end."  *Reed,* 576 U.S. at 171.  The defender of the statute must specifically identify an "actual problem" in need of solving, *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 822-23 (2000), and the curtailment of free speech must be "reasonably necessary" to the solution, *R.A.V.*, 505 U.S. at 395.  "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative."  *Playboy,* 529 U.S. at 813.  Further, a statute is not narrowly tailored if it is either underinclusive or overinclusive in scope.  *See IMDB.com*, 962 F.3d at 1125.  Given how demanding the strict-scrutiny standard is, "'[i]t is rare that a regulation restricting speech because of its content will ever be permissible.'"  *Brown*, 564 U.S. at 799 (quoting *Playboy*, 529 U.S. at 818).

The VPPA is not the rare exception.  It is not narrowly tailored to advance any compelling governmental interest.

Patreon acknowledges that there is a substantial governmental interest in protecting consumer privacy; Patreon has a similar interest in protecting its users' privacy as described in its Privacy Policy.  And for purposes of this motion, Patreon assumes that this consumer privacy interest is "compelling."  But a compelling interest is not enough – even California's admittedly important interest in preventing age discrimination in the entertainment industry did not suffice.  *See IMDB.com*, 962 F.3d at 1126.  More is required.

As set out above, the VPPA restricts speech in the interest of "privacy" even if the consumer has consented, or even if the subject matter of the speech is already public, not private.  Such restrictions do nothing to further a state interest in consumer privacy.  And the VPPA imposes substantial liquidated damages even if the consumer has no damages and has suffered none of the harms normally associated

15

DEFENDANT PATREON, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
CASE NO. 3:22-CV-03131-JCS

with a right to privacy – humiliation, embarrassment, harm to reputation, etc.  The VPPA's liquidated damages provision is not narrowly tailored to further an interest in privacy.  This alone would be grounds to find the law unconstitutional on its face.  But the VPPA falls short in other ways as well.

A speech-restrictive law is not narrowly tailored if it eliminates one type of speech while at the same time allowing other types that create the same purported problem.  *See IMDB.com*, 962 F.3d at 1126; *see also Victory Processing, LLC v. Fox*, 937 F.3d 1218, 1228 (9th Cir. 2019) ("While narrow tailoring requires that a statute not cover *more* speech than is necessary to serve a compelling government interest, a statute can also fail strict scrutiny if it covers *too little* speech.").  That is yet another problem with the VPPA.  It prevents "video tape service providers" from disclosing the video viewing history of "consumers."  But it permits disclosure of the exact same information by persons who are not "video tape service providers" (*e.g.*, libraries) or even by "video tape service providers" if the information concerns individuals who did not pay for the video service or who otherwise fail to meet the definition of "consumer."  *Ellis*, 803 F.3d at 1252-58; *Austin-Spearman*, 98 F. Supp. 3d at 669.   It does not apply to live video, such as sporting events, news broadcasts, or live-streams.  *See Louth*, 2022 WL 4130866, at *4.

The Ninth Circuit's reasoning in *IMDb.com* applies precisely to the VPPA as well:  "Because [the VPPA] leaves open the possibility that others may disseminate [video-viewing] information unfettered, we cannot conclude that its 'selective ban ... satisfactorily accomplishes its stated purpose.'" *IMDb.com*, 962 F.3d at 1127 (quoting *The Florida Star*, 491 U.S. at 541).  The VPPA is clearly under-inclusive if one looks only at regulation of speech concerning consumption of videos.  But the VPPA ignores other broad swaths of consumer behavior that are equally private, If not more so – *e.g.*, live video, books, magazines, newspapers, web browsing, podcasts, music, etc. – rendering its prohibition on one specific category of speech even less defensible.  *Cf., e.g., Tattered Cover, Inc. v. City of Thornton*, 44 P.3d 1044, 1053 (Colo. 2002) (noting the special importance of privacy of reading material); *In re Grand Jury Subpoena to Kramerbooks & Afterwords Inc.*, 26 Med. L. Rptr. 1599 (D.D.C. 1998) (likewise).  The VPPA does not advance an interest in privacy if it arbitrarily allows disclosure of so much video viewing and makes no effort at all to restrict disclosure of other kinds of equally private information. *See Sorrell* 564 U.S. at 572-76; *IMDb.com*, 962 F.3d at 1127.  The VPPA's under-

16

inclusiveness is fatal to the statute, and fatal to Plaintiffs' claims.

Last, the fact that the VPPA allows a consumer to consent to disclosure (in a very specific, formalized way) does not save the statute.  In *IMDB.com*, the state law prohibiting disclosure applied only if a paying subscriber to the online service requested that their age not be posted publicly.  Cal. Civ. Code § 1798.83.5.  The statute thus restricted speech only when subscribers objected to disclosure, *i.e.*, declined consent.  That did not matter, *see* 962 F.3d at 1127, and the Ninth Circuit struck down the law. This case is no different.

*       *       *

Congress could have passed a different law that appropriately protected legitimate privacy interests in watching videos.  Congress could have enacted a law that allowed for actual damages suffered from the knowing disclosure of a consumer's private video watching information unless (a) the disclosure related to a matter of public concern, (b) the consumer consented, or (c) the disclosed conduct was already publicly known.  But the VPPA is not that law; it is not nearly so narrow.  It restricts speech on matters of public concern.  It restricts speech that the consumer actually consented to.  It restricts speech that is already public.  It imposes substantial presumptive liquidated damages in the absence of any actual injury, and without regard to whether the speech is on a matter of public concern, is actually consented to, or concerns matters that are not even private.  And at the same time, it fails to do anything to protect equally important, and equally private, forms of consumer conduct.  For all of these reasons, the VPPA is "substantially overbroad, and therefore invalid under the First Amendment."  *Stevens*, 559 U.S. at 482.

Plaintiffs' VPPA claim must be dismissed with prejudice.

### C.     Plaintiffs' Claims Under The CLRA And The "Fraud" Prong Of The UCL Sound In Fraud And Should Dismissed For Failure To Allege Fraud With Particularity As Required By Rule 9(b)

Claims sounding in fraud – including CLRA and UCL claims that sound in fraud – are subject to the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a clamant alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (affirming dismissal of UCL

17

claim that sounded in fraud for failure to meet Rule 9(b)'s particularity requirement); *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1010 (N.D. Cal. 2014) (dismissing UCL and CLRA claims that sounded in fraud for failure to meet Rule 9(b)'s particularity requirement);  *Kumandan v. Google LLC*, No. 19-CV-04286-BLF, 2022 WL 103551, at *14 (N.D. Cal. Jan. 11, 2022) (dismissing CLRA claims for failure to adequately plead fraud under Rule 9(b)).  "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false."  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted).  "Because the Supreme Court of California has held that nondisclosure is a claim for misrepresentation in a cause of action for fraud, it (as any other fraud claim) must be pleaded with particularity under Rule 9(b)."  *Kearns*, 567 F.3d at 1127; *see also Kumandan*, 2022 WL 103551, at *14 (dismissing claims for failure to adequately plead fraud under Rule 9(b) due to their failure to allege sufficient facts in support of an actionable omission).

Here, Plaintiffs' claims under the CLRA and the "fraud" prong of the UCL sound in fraud, and thus they are subject Rule 9(b)'s heightened pleading standard.  Plaintiffs' CLRA claims sound in fraud because they are premised on the allegation that "[i]n describing its services and privacy policies, Patreon *misrepresented and/or omitted the true nature of its information-sharing practices*" and thereby violated the CLRA, Cal. Civ. Code §§ 1770(a)(5), (7), and (9).  (FAC ¶ 113 (emphasis added); *see also id.* ¶ 115 ("Patreon's *misrepresentations and omissions* were material." (emphasis added))).[6]  Similarly,  for their UCL "fraud" prong claim, Plaintiffs allege that "Patreon's *conduct is fraudulent* in violation of the UCL because its business acts were likely to deceive a reasonable consumer."  (FAC ¶ 103 (emphasis added); *see also* FAC ¶ 104 ("Patreon *knowingly concealed* that it shares California Plaintiffs' and Subclass members' FIDs and viewing content with Meta …" (emphasis

---

[6] The CLRA subsections that Plaintiffs allege Patreon violated – Cal. Civ. Code §§ 1770(a)(5), (7), and (9) – define the following acts as unlawful:  "(5) *Representing* that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(7) *Representing* that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(9) *Advertising* goods or services with intent not to sell them as advertised."  Cal. Civ. Code § 1770(a)(5), (7), and (9) (emphasis added).

added)); FAC ¶ 107 ("Patreon also has a **duty to disclose** ... because it made **partial representations** about its data-sharing practices yet neglected to disclose that it shares Users' personal information and viewing content to Meta." (emphasis added))).

Plaintiffs' CLRA and UCL "fraud" prong claims do not meet Rule 9(b)'s heightened pleading standard, for two reasons:  (1) Plaintiffs do not allege with particularly that Patreon made any **misrepresentation** or failed to disclose information it had a **duty to disclose**; and (2) Plaintiffs do not adequately allege **causation**.  Although Plaintiffs allege Patreon made "misrepresentations" (*see* discussion *supra*), Plaintiffs do not allege **what** the misrepresentations were, **where** they were made, **when** they were made, or **how** they were communicated.  Likewise, although Plaintiffs allege Patreon "failed to disclose" to them that it shares information with Meta that would allow Meta to identify their personal video-watching preferences, Plaintiffs do not allege facts that show Patreon had a **duty** to disclose that information.  "California courts have generally rejected a broad obligation to disclose[.]" *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012).  There are four circumstances in which a duty to disclose may potentially arise under California law:  (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.  *See Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011).  Here, Plaintiffs do not plead facts showing that any of these circumstances existed.

Although Plaintiffs allege Patreon "concealed" information about its information-sharing practice (*see* FAC ¶ 104), they do not plead facts showing Patreon engaged in "active concealment." This Court has made clear that "[m]ere nondisclosure does not constitute active concealment." *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 576 n.5 (N.D. Cal. 2019); *Kumandan*, 2022 WL 103551, at *9. Instead, a party must take "affirmative acts" that "hide[ ], conceal[ ], or cover up[ ]" the omitted information. *Browning v. Am. Honda Motor Co.*, No. 20-CV-05417-BLF, 2022 WL 824106, at *17 (N.D. Cal. Mar. 18, 2022) ("To plead active concealment, Plaintiffs must point to specific affirmative acts [defendant] took 'in hiding, concealing or covering up the matters complained of.'") (quoting *Szep v. Gen. Motors LLC*, 491 F. Supp. 3d 280, 298 (N.D. Ohio 2020) for proposition that "[C]oncealment by

19

mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent injury.").  Here, Plaintiffs do not allege Patreon engaged in any *affirmative acts* of concealment, nor do they allege the circumstances of any such affirmative acts, including *what* acts were taken, *who* (that is, who at Patreon) took them, and *when*.  Plaintiffs thus have not adequately pleaded Patreon had a duty to disclose based on any active concealment.  *See Kumandan*, 2022 WL 103551, at *8 (holding that plaintiffs did not adequately plead a duty to disclose based on concealment, where they failed to allege any affirmative acts of concealment, like affirmative denials).[7]

Plaintiffs likewise do not plead facts showing Patreon had a duty to disclose based on a "partial representation."  In evaluating a partial representation claim, courts consider whether "the defendant ma[de] partial representations that are misleading because some other material fact ha[d] not been disclosed."  *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1033 (N.D. Cal. 2014).  A partial representation claim may arise when "'the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead.'"  *Kumandan*, 2022 WL 103551, at *10 (citing *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1177 (E.D. Cal. 2013) (quoting *Warner Constr. Corp. v. City of Los Angeles*, 2 Cal. 3d 285, 294 (1970))).  Here, Plaintiffs allege that Patreon made "partial representations" about its data-sharing practices yet neglected to disclose that it shares users' personal information and viewing content to Meta.  (FAC, ¶ 107).  But Plaintiffs do not identify *what* the alleged partial representations were, *where* they were made, *when* they were made, or *why* or *how* they were misleading as a result any omission of material fact.

Plaintiffs' "partial representation" allegation is also deficient for another reason:  Plaintiffs do not allege they ever read or heard the alleged "partial representation" and thus plaintiffs do not adequately allege *causation* (*i.e.*, that Patreon's alleged "partial representation" and failure to disclose

---

[7] Plaintiffs' "concealment" allegation is also inadequate for another reason:  Plaintiffs fail to allege that the allegedly concealed information (namely, that Patreon shares users' video-history information with Meta) affects a "central function" of Patreon's service (namely, providing an online platform for fans (a/k/a "patrons") to support creators.  *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 860 (9th Cir. 2018) (holding that in the absence of an affirmative misrepresentation, chocolate manufacturer had no duty disclose the labor practices of its suppliers, because the labor practices were not defects that affected the "central function" of chocolate products).

other information that made the partial representation misleading caused them harm), as required for a claim under the CLRA and the "fraud prong" of the UCL. *See Haskins v. Symantec Corp.*, 2014 WL 2450996, at **1-3 (N.D. Cal. June 2, 2014) (dismissing plaintiff's UCL and CLRA claims, where plaintiff failed to allege she "actually viewed" any representation and thus "failed to allege actual reliance and causation"); *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 809, 811 (2007) ("'Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof'"; "[A]ctual reliance is an element of a CLRA claim sounding in fraud.") (overruled on other grounds by *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 120 Cal.Rptr.3d 741, 246 P.3d 877); *True v. Am. Honda Motor Co.*, 520 F. Supp. 2d 1175, 1182 (C.D. Cal. 2007) ("With respect to Plaintiff's CLRA claim for false advertising, California law clearly holds that causation, in the form of reliance, likewise is an essential element of such claims.") (citing numerous cases); *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009) ("a plaintiff must plead and prove actual reliance to satisfy the standing requirement" of the UCL); *Friedman v. Mercedes Benz USA LLC*, No. CV 12-7204 GAF (CWX), 2013 WL 12086785, at *17 (C.D. Cal. Jan. 31, 2013) ("In order to assert a UCL claim, a named plaintiff must allege he suffered an injury in fact and lost money or property due to the alleged unfair competition, and, '[w]here such a claim is premised on allegedly misleading communications,' the plaintiff must allege he relied on them.") (quoting *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1228-29 (C.D. Cal. 2011).

Because Plaintiffs' claims under the CLRA and the "fraud" prong of the UCL do not meet Rule 9(b)'s heightened pleading standard, they should be dismissed.

## IV.      CONCLUSION

For all the foregoing reasons, the Court should dismiss the Plaintiffs' claims under the VPPA, the CLRA, and the "fraud" prong of the UCL, with prejudice, under Rule 12(b)(6).

Dated:  November 23, 2022

Respectfully submitted,

THE NORTON LAW FIRM PC
*/s/ Fred Norton*

Fred Norton

Attorneys for Defendant
PATREON, INC.