BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

LESLIE COOPER VIGEN
Trial Attorney (DC Bar No. 1019782)
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW, Washington, DC 20005
Telephone: (202) 305-0727
Email: leslie.vigen@usdoj.gov

*Counsel for United States*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| Brayden STARK, Judd OOSTYEN, Kevin BLACK, and Maryann OWENS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>PATREON, INC.,<br><br>        Defendant. | **No. 3:22-cv-03131-JCS**<br><br>**UNITED STATES OF AMERICA'S MEMORANDUM IN SUPPORT OF THE CONSTITUTIONALTY OF THE VIDEO PRIVACY PROTECTION ACT**<br><br>Hon. Joseph C. Spero |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

BACKGROUND ........................................................................................ 2

I.    Legal Background ........................................................................... 2

II.   Plaintiffs' Claims ............................................................................ 5

III.  Procedural History ........................................................................ 6

ARGUMENT ............................................................................................. 8

I.    The Overbreadth Doctrine Has Limited Application and Does Not
Apply to Commercial Speech. ...................................................... 8

II.   The VPPA Regulates Commercial Speech. ................................. 10

III.  The VPPA Withstands Intermediate Scrutiny. ........................... 14

IV.  Defendant's Hypothesized Non-Commercial Applications of the
VPPA Do Not Render the Statute Substantially Overbroad.................... 17

CONCLUSION ........................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**

*Amazon.com v. Lay,*
758 F. Supp. 2d 1154 (W.D. Wash. 2010)............................................................ 16

*Ariix, LLC v. NutriSearch Corp.,*
985 F.3d 1107 (9th Cir. 2021) ..........................................................................12, 13

*Ashwander v. TVA,*
297 U.S. 288 (1936) ............................................................................................. 8

*Barr v. Am. Ass'n of Political Consultants, Inc.,*
140 S. Ct. 2335 (2020) ......................................................................................... 9

*Bartnicki v. Vopper,*
532 U.S. 514 (2001) ............................................................................................. 9

*Bd. of Trustees of State Univ. of N.Y. v. Fox,*
492 U.S. 469 (1989) ........................................................................................10, 16

*Boelter v. Advance Magazine Publishers Inc. (Advance Magazine),*
210 F. Supp. 3d 579 (S.D.N.Y. 2016)..............................................................*passim*

*Boelter v. Hearst Commc'ns, Inc. (Hearst I),*
192 F. Supp. 3d 427 (S.D.N.Y. 2016)............................................................. *passim*

*Boelter v. Hearst Commc'ns, Inc. (Hearst II),*
269 F. Supp. 3d 172 (S.D.N.Y. 2017) ............................................................... 4, 5

*Bolger v. Youngs Drugs Prod. Corp.,*
463 U.S. 60 (1983) .............................................................................................. 12

*Broadrick v. Oklahoma,*
413 U.S. 601 (1973) ............................................................................................. 9

*Burson v. Freeman,*
504 U.S. 191 (1992) ............................................................................................. 17

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,*
447 U.S. 557 (1980) ..........................................................................................*passim*

*Conn. Bar Ass'n v. United States,*
620 F.3d 81 (2d Cir. 2010) ............................................................................... 4, 13

*Czarnionka v. The Epoch Times Ass'n, Inc.*,
2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ....................................................11, 15

*Edenfield v. Fane*,
507 U.S. 761 (1993) ................................................................................. 15

*Eichenberger v. ESPN*,
876 F.3d 979 (9th Cir. 2017)....................................................3, 11, 14, 20

*Ellis v. Cartoon Network*,
803 F.3d 1251 (11th Cir. 2015) ................................................................. 17

*First Resort, Inc v. Hererra*,
860 F.3d 1263 (9th Cir. 2017)..........................................................12, 13

*Fla. Bar v. Went For It, Inc.*,
515 U.S. 618 (1995) ................................................................................. 15

*French v. Jones*,
876 F.3d 1228 (9th Cir. 2017) ................................................................. 16

*Holt v. Facebook, Inc.*,
240 F. Supp. 3d 1021 (N.D. Cal. 2017) ................................................... 16

*Hunt v. City of Los Angeles*,
638 F.3d 703 (9th Cir. 2011) ................................................................... 12

*IMDb.com Inc. v. Becerra*,
962 F.3d 1111 (9th Cir. 2020)..........................................................13, 14

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)..........................................................11, 20

*In re Hulu Privacy Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ................................................... 11

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016) ................................................................... 2, 3

*In re Vizio, Inc., Consumer Privacy Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................... 15

*Jordan v. Jewel Food Stores, Inc.*,
743 F.3d 509 (7th Cir. 2014) ................................................................... 12

*L.A. Police Dep't v. United Reporting Pub. Corp.*,
528 U.S. 32 (1999) ................................................................................. 9, 12

Brief in Support of Constitutionality                    Case No. 3:22-cv-03131-JCS

*Lebakken v. WebMD, LLC,*
2022 WL 16716151 (N.D. Ga. Nov. 4, 2022) ............................................11, 15, 17

*Marquez-Reyes v. Garland,*
36 F.4th 1195 (9th Cir. 2022) ...................................................................... 9

*Members of City Council of L.A. v. Taxpayers for Vincent,*
466 U.S. 789 (1984) ..................................................................................... 9

*Mollett v. Netflix, Inc.,*
795 F.3d 1062 (9th Cir. 2015) ..................................................................... 2

*New York v. Ferber,*
458 U.S. 747 (1982) ..................................................................................... 9

*Retail Digital Network, LLC v. Prieto,*
861 F.3d 839 (9th Cir. 2017) ..................................................................... 14

*Rubin v. Coors Brewing Co.,*
514 U.S. 476 (1995) ................................................................................... 15

*Sabri v. United States,*
541 U.S. 600 (2004) ..................................................................................... 8

*Trans Union Corp. v. FTC,*
245 F.3d 809 (D.C. Cir. 2001) ................................................................... 15

*United Reporting Publ'g Corp. v. Cal. Highway Patrol,*
146 F.3d 1133 (9th Cir. 1998) ..............................................................12, 13

*United States v. Sineneng-Smith,*
140 S. Ct. 1575 (2020) ................................................................................. 9

*United States v. Williams,*
553 U.S. 285 (2008) ............................................................................5, 9, 10

*Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.,*
425 U.S. 748 (1976) ................................................................................... 12

*Van Patten v. Vertical Fitness Grp.,*
847 F.3d 1037 (9th Cir. 2017) ................................................................... 20

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
455 U.S. 489 (1982) ................................................................................... 10

*Wash. State Grange v. Wash. State Republican Party,*
552 U.S. 442 (2008) ................................................................................ 8, 9

iv

*Williams-Yulee v. Fla. Bar*,
575 U.S. 443 (2015) ..................................................................... 16

*Yershov v. Gannett Satellite Info. Network, Inc.*,
820 F.3d 482 (1st Cir. 2016) ........................................................ 15

**Statutes**

18 U.S.C. § 2710 ................................................................*passim*

Mich. Comp. Laws Ann. §§ 445.1711–15 ................................... 4

**Federal Rules**

Federal Rule of Civil Procedure 5.1 ............................................ 6

Federal Rule of Civil Procedure 12(b)(6).................................... 6

**Other Authorities**

S. Rep. 100-599 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342–1 .......................... 2

Am. Library Ass'n., State Privacy Laws Regarding Library Records,
https://perma.cc/YXA6-6LB6 ...................................................17

Nat'l Conf. of State Legislatures, State Laws Related to Digital Privacy,
https://perma.cc/XS76-4DNT ................................................. 17

**INTRODUCTION**

Since 1988, the Video Privacy Protection Act (VPPA) has prohibited a "video service provider" from knowingly disclosing "personally identifiable information" that demonstrates which video materials a consumer has requested or obtained— except in certain limited circumstances, such as disclosure to the consumer herself; to law enforcement in response to a warrant, subpoena, or court order; or with prior knowing, written consent in a separate form.   18 U.S.C. § 2710(b).   Congress enacted the law to protect personal privacy with respect to consumers' video viewing habits and advance important values like the right to intellectual freedom. The constitutionality of the statute has not been challenged in the nearly 35 years since its passage, and the only two federal courts to have considered First Amendment challenges to analogous state statutes have rejected those challenges. There is no basis for this Court to become the first (and only) court to find the VPPA unconstitutional.

Defendant asserts that the VPPA is facially overbroad because certain of its hypothetical applications could violate the First Amendment.   In doing so, it has chosen a difficult path.   The Supreme Court has repeatedly indicated that facial challenges are disfavored, and it has been particularly careful to rule narrowly in cases that address the intersection of privacy and the First Amendment.   The VPPA is properly characterized as a regulation of commercial speech to which overbreadth analysis does not typically apply.   The statute withstands the intermediate scrutiny analysis applicable to regulations of commercial speech.   Although it may be possible to imagine limited scenarios in which the VPPA could prohibit non-commercial disclosures, any such application is not substantial in comparison to the statute's legitimate sweep.   And in any event, courts can consider those issues in a concrete context should they arise in future cases.   The Court should reject Defendant's facial challenge to the VPPA.

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BACKGROUND**

I.     Legal Background

Congress enacted the VPPA in 1988 in response to the *Washington City Paper*'s publication of then-Supreme-Court-nominee Robert Bork's video rental history, obtained without his knowledge or consent. *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 278 (3d Cir. 2016). "Members of the Judiciary Committee 'denounced the disclosure,'" and Congress passed the VPPA soon after. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (quoting S. Rep. 100-599, at 5 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342–1). The statute's stated purpose was "[t]o preserve personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio visual materials." *Id.* Among other things, the Senate Report cited the First Amendment right to intellectual freedom as one of the bases underlying the legislation. *See* S. Rep. 100-599, at 4–5.

The statute prohibits a "video tape service provider" from "knowingly" disclosing "personally identifiable information concerning any consumer of such provider" to "any person." 18 U.S.C. § 2710(b)(1). It provides several exceptions to this broad prohibition, permitting (1) disclosure to the consumer; (2) disclosure the consumer has authorized via "informed, written consent" provided "in a form distinct and separate from any form setting forth other legal or financial obligations"; (3) disclosure to a law enforcement agency pursuant to a warrant, subpoena, or court order; (4) disclosure that is "solely the names and addresses of consumers," provided the consumer had the ability to opt out and the disclosure does not identify the subject matter of any material (unless the sole purpose is marketing directly to the consumer); (5) disclosure "incident to the ordinary course of business of the video tape service provider"[1]; and (6) disclosure pursuant to a

---

[1] The VPPA defines "ordinary course of business" to include only "debt collection activities, order fulfillment, request processing, and the transfer of ownership." 18 U.S.C. § 2710(a)(2).

court order in a civil proceeding. *Id.* § 2710(b)(2). The statute creates a private right of action for any aggrieved person to bring a civil suit against any person who violates its terms. *Id.* § 2710(c). Upon a finding of liability, a court may award actual damages, but "not less than" $2,500 in liquidated damages; punitive damages; attorneys' fees and costs; and other appropriate equitable relief. *Id.* § 2701(c)(2)(A). The VPPA does not contemplate civil or criminal enforcement by the government.

The statute defines several key terms. As relevant here, a "video tape service provider" is "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." *Id.* § 2710(a)(4). "Personally identifiable information" means "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."[2] *Id.* § 2710(a)(3). A "consumer" is defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id.* § 2710(a)(3).

The VPPA has not previously been subject to First Amendment challenge. An analogous state statute, however, has survived such challenges: two different judges in the Southern District of New York determined that a Michigan statute's restrictions on disclosure did not violate the First Amendment. *See Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 435 (S.D.N.Y. 2016) (*Hearst I*); *Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579, 585–86 (S.D.N.Y. 2016)

---

[2] The Ninth Circuit interprets the term "personally identifiable information" as referring to "information that readily permit[s] an *ordinary person* to identify [a particular individual as having watched certain videos]." *Eichenberger v. ESPN*, 876 F.3d 979, 985 (9th Cir. 2017) (quoting *In re Nickelodeon*, 827 F.3d at 290) (emphasis and alterations in original). This standard focuses on the "perspective of the disclosing party" and the "information a video service provider discloses," not "what the recipient of that information decides to do with it." *Id.*

(*Advance Magazine*); *see also Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 196–98 (S.D.N.Y. 2017) (*Hearst II*).  Specifically, a magazine subscriber sued two publishing companies under the Michigan Video Rental Privacy Act (MVRPA)[3]—a statute with prohibitions similar to the VPPA, but which also prohibits disclosure of written materials and sound recordings consumers acquire—over the publishers' practice of selling customer information to data miners.  The publishers defended the suits, in part, by arguing that the MVRPA was unconstitutional under the First Amendment on its face and as applied to them.   Both courts rejected these arguments.

The court in *Hearst I*, the first ruling upon a First Amendment challenge to the MVRPA, determined that the regulated speech—"disclosing the identity of individuals who purchase [certain] products"—was commercial in nature.  192 F. Supp. 3d at 445.  This was primarily because the information at issue "relays an individual's economic decisions, elucidates an individual's economic preferences, and facilitates the proposal of new commercial transactions," and that businesses "profit from the collection and sale of data."  *Id.* (quoting *Conn. Bar Ass'n v. United States,* 620 F.3d 81, 95 (2d Cir. 2010)) (cleaned up).  Applying the test governing commercial speech, *see Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980), the court next found that the statute was constitutional as applied to the publisher's practice of selling information about its consumers to data miners and other third parties.  The court determined that although the speech at issue was not misleading or unlawful, consumer privacy was a substantial state interest, *Hearst I*, 192 F. Supp. 3d at 447–48; that the data disclosure restrictions in the MVRPA directly advanced this interest, *id.* at 449;

---

[3] The statute's formal title is the "Preservation of Personal Privacy Act."  *See* Mich. Comp. Laws Ann. §§ 445.1711–15.  Courts have referred to it by both names. *Compare Hearst I*, 192 F. Supp. 3d at 435 *with Advance Magazine*, 210 F. Supp. 3d at 585.

and that the statute was sufficiently narrowly tailored because it "limits the dissemination of precisely the kind of information with which the state is concerned"—namely, information disclosing individuals' reading, listening, and viewing preferences—and "targets those most likely to disseminate it," *id.*   The *Hearst I* court also rejected the contention that the MVRPA was facially overbroad, observing that facial challenges to statutes that regulate commercial speech are limited to any non-commercial speech the statute covers and finding that the "vast majority of [the statute's] applications" raised "no constitutional problems whatsoever." *Id.* at 451–52 (quoting *United States v. Williams*, 553 U.S. 285, 302–03 (2008)).   The court in *Advance Magazine* reached the same conclusions a few months later. *See Advance Magazine*, 210 F. Supp. 3d at 596–603.   And in *Hearst II*, the court reaffirmed its *Hearst I* holding that the MVPRA constituted a valid restriction on commercial speech that did not offend the First Amendment. *See Hearst II*, 269 F. Supp. 3d at 196–98.

II.   <u>Plaintiffs' Claims</u>

Plaintiffs Brayden Stark, Judd Oostyen, Kevin Black, and Maryann Owens bring this putative class action for declaratory and injunctive relief and damages against Defendant Patreon, Inc.—a website that allows consumers to pay subscription fees to online creators in exchange for exclusive or additional access to their content.   *See* The Story of Patreon, https://www.patreon.com/about. Plaintiffs, who are all Patreon subscribers, allege that Patreon disclosed the titles of prerecorded videos they viewed on Patreon's website and a series of numbers unique to their Facebook profiles, or "Facebook ID[s]," to Meta via a tracking tool called "Meta Pixel."   Am. Compl. ¶¶ 3–4, 46–50, 53, ECF No. 41.   Sharing this information allegedly benefitted Patreon by "improving its ability to promote its content and services to its Users, thereby increasing its profits." *Id.* ¶ 61; *see also id.* ¶¶ 54–55 ("websites use the Pixel in hopes of better targeting their products

5

and services on Facebook to interested consumers . . . in order to increase [their] profits"). And gathering this information allegedly benefitted Meta by providing Patreon "a greater incentive to advertise through Facebook or other Meta-owned platforms," and allowing Meta to "build[] more fulsome profiles of its own users" and thereby "profit from providing more targeted ads." *Id.* ¶ 60. Plaintiffs allege they were harmed by the disclosure of their video viewing history because they reasonably expected such information would remain private; because such information is "valuable data in the digital advertising-related market" that they could have profited from themselves; and because the disclosure diminished the value of the Patreon subscriptions that Plaintiffs purchased. *Id.* ¶¶ 66–70.

Plaintiffs' proposed class encompasses "[a]ll persons in the United States who subscribed to Patreon.com, viewed prerecorded video content on Patreon.com, and used Facebook during the time Meta's Pixel was active on Patreon.com." *Id.* ¶ 74. They allege violations of the VPPA, violations of California state law, and unjust enrichment.[4]

III.  Procedural History

Plaintiffs filed the initial complaint in this matter on May 27, 2022. Compl. ECF No. 1. On August 5, 2022, Defendant moved to dismiss that complaint under Federal Rule of Civil Procedure 12(b)(6), raising statutory and constitutional arguments. ECF No. 21. On August 6, 2021, Defendant filed a notice of constitutional challenge pursuant to Federal Rule of Civil Procedure 5.1, explaining that its motion to dismiss "draws into question the constitutionality of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710," specifically "whether the VPPA, on its face and as Plaintiffs seek to apply it, is unconstitutional because

---

[4] Because they bring claims under California law, Plaintiffs also propose a "California Subclass," consisting of "[a]ll persons in California who subscribed to Patreon.com, viewed prerecorded video content on Patreon.com, and used Facebook during the time Meta's Pixel was active on Patreon.com." Compl. ¶ 74.

Brief in Support of Constitutionality                                    Case No. 3:22-cv-03131-JCS

it violates the First Amendment to the United States Constitution." ECF No. 24. On September 16, 2022, the United States filed an acknowledgement of the constitutional challenge and a stipulation to extend until November 4, 2022 its time to determine whether to intervene in this action in defense of the constitutionality of the VPPA. ECF No. 33. The Court entered the stipulation the same day. ECF No. 34.

On October 13, 2022, prior to the United States' deadline to decide whether to intervene, the Court entered an order partially granting Defendant's motion to dismiss with leave to amend. Order at 1, ECF No. 40. The order dismissed Plaintiffs' VPPA claim on statutory grounds; it expressly declined to reach the parties' constitutional arguments. *Id.* at 10–11, 14. The Court gave Plaintiffs until October 27, 2022 to file an amended complaint and maintained the November 4, 2022 deadline for the United States to determine whether to intervene. *Id.* at 19

Plaintiffs filed their first amended complaint on October 27, 2022, reasserting their claims under the VPPA. ECF No. 41. The parties stipulated to extend the United States' time to determine whether to intervene until seven days after the filing of any motion to dismiss challenging the constitutionality of the VPPA. ECF No. 42; *see also* ECF No. 43 (order entering stipulation). The parties further stipulated to extend the United States' deadline until 10 days after the filing of any motion to dismiss challenging the constitutionality of the VPPA as part of a stipulation extending Defendant's time to respond to the amended complaint. ECF No. 44; *see also* ECF No. 45 (order entering stipulation).

On November 23, 2022, Defendant filed a motion to dismiss the amended complaint. Def.'s Mot. to Dismiss, ECF No. 48 (Mot. to Dismiss). That motion challenges the constitutionality of the VPPA on its face under the First Amendment. *Id.* at 3–17. It does not reassert the argument, raised in the initial motion to dismiss, that the VPPA violates the First Amendment as applied to the

conduct alleged here.  *See* ECF No. 21 at 13–20.  It also does not contend that the amended complaint fails to state a claim under the VPPA.

## ARGUMENT

The Court should reject Defendant's argument that the VPPA, on its face, violates the First Amendment.  Facial challenges to statutes are disfavored, and the overbreadth doctrine upon which Plaintiffs rely is only appropriate where a statute's potentially unconstitutional applications far outweigh its legitimate sweep.  The doctrine does not apply to commercial speech, and thus could invalidate the VPPA only if its application to non-commercial speech significantly outweighed its regulation of commercial speech.  It does not.  The plain language of the VPPA targets speech that is commercial in nature.  The statute has been applied over the years overwhelmingly to regulate commercial speech (as Plaintiffs seek to do here).  It withstands the intermediate scrutiny analysis that applies to regulations of commercial speech.  And any hypothetical non-commercial application of the statute is trivial in comparison to the statute's legitimate scope.  Defendant's facial challenge therefore fails.

I.    The Overbreadth Doctrine Has Limited Application and Does Not Apply to Commercial Speech.

The Supreme Court has made clear that "[f]acial challenges are disfavored." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). There are a number of reasons for this.  First, "[c]laims of facial invalidity often rest on speculation" and risk "premature interpretation of statutes on the basis of factually barebones records." *Id.* (quoting *Sabri v. United States*, 541 U.S. 600, 609 (2004)).  Second, such challenges "run contrary to the fundamental principle of judicial restraint" that courts should avoid deciding a constitutional issue unless necessary, and fashion constitutional rulings narrowly.  *Id.* (citing *Ashwander v. TVA*, 297 U.S. 288, 346–47 (1936) (Brandeis, J., concurring)).  Third, "facial challenges threaten to short circuit the democratic process by preventing laws

8

embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* at 451.

The First Amendment overbreadth doctrine represents "an exception to the traditional rule that 'a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court.'" *L.A. Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32, 39 (1999) (quoting *New York v. Ferber*, 458 U.S. 747, 767 (1982)).  Pursuant to this doctrine, litigants may challenge a statute based on "a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).  And although both the Supreme Court and the Ninth Circuit have applied this doctrine where warranted, *see* Mot. to Dismiss 6, the Supreme Court has cautioned that "invalidation for [First Amendment] overbreadth is 'strong medicine' that is not to be 'casually employed.'" *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1581 (2020) (quoting *Williams*, 553 U.S. at 293).  The Supreme Court has been particularly careful to avoid broad pronouncements in cases involving "clashes between the First Amendment and privacy rights" in light of the "sensitivity and significance of the interests presented." *Bartnicki v. Vopper*, 532 U.S. 514, 529 (2001) (citation and alteration omitted).  In such cases it has instead opted to "rely[] on limited principles that sweep no more broadly than the appropriate context of the instant case." *Id.*; *see also Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2348–56 (2020) (severing unconstitutional provision rather than invalidating entire consumer privacy law under the First Amendment).

"A statute is not overbroad just because 'one can conceive of some impermissible applications.'" *Marquez-Reyes v. Garland*, 36 F.4th 1195, 1201 (9th Cir. 2022) (quoting *Members of City Council of L.A. v. Taxpayers for Vincent*, 466

U.S. 789, 800 (1984)).  Instead, the statute must be *substantially* overly broad, "not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292.  If a challenged statute does not "reach[] a substantial amount of constitutionally protected conduct," "then the overbreadth challenge must fail." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982).

"[O]verbreadth analysis does not typically apply to commercial speech." *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 481 (1989); *see also, e.g.*, *Vill. of Hoffman Estates*, 455 U.S. at 497 ("the overbreadth doctrine does not apply to commercial speech").  If a statute targeting commercial speech also applies to non-commercial speech, however, overbreadth analysis may be used to analyze the statute's non-commercial applications.  *See Fox*, 492 U.S. at 481–82.

## II.    The VPPA Regulates Commercial Speech.

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Williams*, 553 U.S. at 293.  The next step is to examine whether the statute, properly construed, covers "a substantial amount of protected activity." *Id.* at 297.  Applying this test to the VPPA makes plain that the statute principally regulates commercial speech, which is not subject to overbreadth analysis.  *Accord Hearst I*, 192 F. Supp. 3d at 451–52; *Advance Magazine*, 210 F. Supp. 3d at 602–03.

The VPPA prohibits a specific type of speech: disclosures by proprietors revealing certain products that individuals requested or obtained.   *See* 18 U.S.C. § 2710(b).  On its face, the statue applies only to disclosure of actual or proposed transactions—whether a person "requested or obtained specific video materials or services," *id.* § 2710(a)(3)—by a business—specifically, a "video tape service provider" "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," *id.* § 2710(a)(4).  And it

10

includes reasonable, limited exceptions to account for the preferences of the consumer, *see id.* § 2710(b)(2)(A) & (B); the needs of law enforcement entities or courts, *see id.* § 2710(b)(2)(C) & (F); and the practicalities of running a business, *see id.* § 2710(b)(2)(D) & (E).  The reach of the statute is thus demonstrably constrained.  Notably, it does not apply to news organizations, advocacy groups, or other entities whose mission is to publicize information of public import.  Nor is it targeted at information that would typically be a matter of public concern.

In practice, the VPPA's restrictions have overwhelmingly been applied to disclosures of private information by businesses for financial gain.  Take the conduct alleged here.  Patreon allegedly disclosed Plaintiffs' video viewing history to Meta to more effectively target Patreon's products and services to consumers. *See* Am. Compl. ¶¶ 54–55, 61.  What is more, Meta allegedly benefitted economically from the disclosure as a result of (1) Patreon's increased incentive to advertise through Facebook and other Meta-owned platforms, and (2) the ability to create more fulsome profiles of Facebook users, which enabled Meta to profit from more targeted advertising. *See id.* ¶ 60.  The vast majority of cases alleging violations of the VPPA involve similar scenarios. *See, e.g., Eichenberger v. ESPN*, 876 F.3d 979, 981 (9th Cir. 2017) (disclosure of video viewing history by producer of sports-related programming to analytics provider); *Czarnionka v. The Epoch Times Ass'n, Inc.*, 2022 WL 17069810, at *1 (S.D.N.Y. Nov. 17, 2022) (disclosure of video viewing history through Facebook Pixel); *Lebakken v. WebMD, LLC*, 2022 WL 16716151, at *2 (N.D. Ga. Nov. 4, 2022) (disclosure of video viewing history to Facebook); *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 798 (N.D. Cal. 2019) (disclosure of video viewing history by social media company to app developers and others); *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1093–94 (N.D. Cal. 2015) (disclosure of video viewing history by provider of

11

on-demand video content to social media company). Defendant has identified no case alleging a non-commercial disclosure.

The type of speech the VPPA regulates fits comfortably within the commercial speech doctrine. Although the "core" of commercial speech is that "which does no more than propose a commercial transaction," *Bolger v. Youngs Drugs Prod. Corp.*, 463 U.S. 60, 66 (1983) (quoting *Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976)), courts consider this definition a "starting point," and utilize "a common-sense distinction between commercial speech and other varieties of speech," *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021) (quoting *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 516 (7th Cir. 2014)). Courts also look to the three *Bolger* factors: whether the speech is an advertisement, whether it "refers to a product," and whether "the speaker has an economic motivation." *Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (citing *Bolger*, 463 U.S. at 66–67). These factors are "guideposts"; they are not "dispositive." *Ariix*, 985 F.3d at 1116. Nor does each of these factors need to be present for speech to be considered commercial. *First Resort, Inc v. Hererra*, 860 F.3d 1263, 1272 (9th Cir. 2017). And the Supreme Court has signaled that "it would regard as commercial speech any 'expression related solely to the economic interests of the speaker and its audience.'" *United Reporting Publ'g Corp. v. Cal. Highway Patrol*, 146 F.3d 1133, 1137 (9th Cir. 1998) (quoting *Cent. Hudson*, 447 U.S. at 561), *reversed on other grounds by L.A. Police Dep't v. United Reporting Publ'g. Corp.*, 528 U.S. 32 (1999). Thus, at bottom, commercial-speech analysis is "fact-driven," and recognizes "the inherent difficulty of drawing bright lines" in this context. *Ariix*, 985 F.3d at 1115 (quoting *First Resort*, 860 F.3d at 1272).

Although the speech the VPPA regulates does not necessarily "propose a commercial transaction," *Bolger*, 463 U.S. at 66, the information disclosed is a

12

proposed or completed commercial transaction, *see* 18 U.S.C. § 2710(a)(3), and in the majority of its applications, the disclosure relates "solely to the economic interests of the speaker and its audience," *United Reporting*, 146 F.3d at 1137 (quoting *Central Hudson*, 447 U.S. at 561). It also "relays an individual's economic decisions, elucidates an individual's economic preferences, and 'facilitates the proposal of new commercial transactions.'" *Hearst I*, 192 F. Supp. 3d at 445 (quoting *Conn. Bar Ass'n*, 620 F.3d at 95) (cleaned up); *see also Advance Magazine*, 210 F. Supp. 3d at 597 (finding disclosures prohibited by the MVRPA were commercial speech, in part, because they were "intended . . . to initiate commercial activity"). The majority of the conduct regulated by the VPPA thus constitutes commercial speech.

Defendant contends that disclosure of a consumer's video viewing history does not propose a commercial transaction, and as a result, the VPPA does not regulate commercial speech. Mot. to Dismiss 8. In so arguing, Defendant relies heavily upon the Ninth Circuit's decision in *IMDb.com Inc. v. Becerra*, 962 F.3d 1111 (9th Cir. 2020). But the Ninth Circuit has made clear that whether speech proposes a commercial transaction is a mere "starting point" in a commercial-speech analysis, and that the inquiry requires a more fact- and context-specific analysis. *See, e.g., Ariix*, 985 F.3d at 1115; *First Resort*, 860 F.3d at 1272. As explained, applying that analysis here demonstrates that the VPPA targets commercial speech.

*IMDb.com* is readily distinguishable. There, the Ninth Circuit held that a statute prohibiting "commercial online entertainment service provider[s]"—a definition designed to apply specifically to the plaintiff—from publishing information about performers' ages on its public website did not target commercial speech. 962 F. 3d at 1119–20. This conclusion turned on the fact that the statute at issue prohibited the publication of information obtained and submitted by

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

members of the public to IMDb.com's wiki-style public profiles, which were "free," "publicly available," and contained content that was "encyclopedic, not transactional." *Id.* at 1121–22.  Given these circumstances, the Ninth Circuit found the speech at issue in *IMDb.com* non-commercial.  In contrast, the vast majority of the disclosures regulated by the VPPA—including those alleged here— constitute the exchange of economic information between two commercial actors for financial gain.  *See id.* at 1124–25 (distinguishing "an inherently private exchange between private parties" from the posting of information "free of charge for the public to review").  *IMDb.com* therefore does not govern, and the VPPA is properly characterized as a regulation of commercial speech.

III.    The VPPA Withstands Intermediate Scrutiny.

Because the majority of the speech the VPPA regulates is commercial in nature, its constitutionality under the First Amendment is analyzed under the *Central Hudson* standard.  That standard examines: (1) whether the expression "concern[s] lawful activity and [is not] misleading"; (2) "whether the asserted governmental interest is substantial"; (3) "whether the regulation directly advances the governmental interest asserted"; and (4) "whether it is not more extensive than is necessary to serve that interest."  *Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 844 (9th Cir. 2017) (en banc) (quoting *Central Hudson*, 447 U.S. at 566).  The VPPA's disclosure restrictions survive scrutiny under *Central Hudson*.

Given that the prohibited disclosures are not unlawful or misleading, the initial inquiry is whether the governmental interest underlying the VPPA is "substantial."  *Central Hudson*, 447 U.S. at 566.  Congress passed the statute "[t]o preserve personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio visual materials."  S. Rep. 100-599 at 1; *see also Eichenberger*, 876 F.3d at 983 (explaining that the VPPA "protects privacy interests . . . by ensuring that consumers retain control over their personal

14

information"). It has long been recognized that "the protection of . . . privacy is a substantial state interest." *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 625 (1995) (quoting *Edenfield v. Fane*, 507 U.S. 761, 769 (1993)). Courts have specifically acknowledged the government's substantial interest in protecting the privacy of consumer information. *See Hearst I*, 192 F. Supp. 3d at 448; *Advance Magazine*, 210 F. Supp. 3d at 599; *see also Trans Union Corp. v. FTC*, 245 F.3d 809, 818 (D.C. Cir. 2001) (finding that the government's "interest [in] protecting the privacy of consumer credit information . . . is substantial"). Defendant does not dispute that the protection of consumer privacy is a substantial governmental interest. *See* Mot. to Dismiss 15.

The next question is whether the VPPA "directly advances" the government's interest in protecting the privacy of individuals' video viewing choices. *Central Hudson*, 447 U.S. at 566. This prong requires the government to "demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995) (quoting *Edenfield*, 507 U.S. at 770–71). On its face, the VPPA applies to individuals who sell, rent, or deliver video recordings—the only individuals, other than the consumer, likely to have access to the information the statute seeks to keep private. *Accord Hearst I*, 192 F. Supp. 3d at 449. Restricting the ability of these individuals who possess a consumer's video purchase, rental, or request history to disclose such information directly advances the goal of keeping that information private. *Id.* The lawsuits that have credibly alleged VPPA violations over the years demonstrate that the disclosures the statute seeks to prevent are a legitimate concern. *See, e.g.*, *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482 (1st Cir. 2016) (plaintiffs adequately stated claim under the VPPA); *Czarnionka*, 2022 WL 17069810, at *2–4 (same); *Lebakken*, 2022 WL 16716151, at *2–5 (same); *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1221–

1   26 (C.D. Cal. 2017) (same); *see also Amazon.com v. Lay*, 758 F. Supp. 2d 1154,

2   1170–71 (W.D. Wash. 2010) (issuing declaratory judgment that a requested

3   disclosure would violate the VPPA).

4        The final inquiry under Central Hudson is whether the challenged statute

5   is sufficiently narrowly drawn.  This requires a fit between the governmental

6   interest and the statute's prohibitions that is "not necessarily perfect," but rather

7   "reasonable."  *Fox*, 492 U.S. at 480.  Such a fit exists here.  As explained, the

8   VPPA's disclosure prohibitions are targeted at the commercial entities most likely

9   to have, and thus, be in a position to make public, information Congress intended

10  to protect.  *See* 18 U.S.C. § 2710(a)(4).  What is more, the statute includes limited

11  exemptions that allow consumers to make choices about their own information,

12  and permit regulated entities to conduct business and comply with law

13  enforcement and judicial directives as necessary.  *See id.* § 2710(b)(2).

14       In addition to arguing that the VPPA is overbroad, Defendant argues that

15  the statute is not sufficiently narrowly drawn because it is regulates *too little*

16  speech, insofar as it does not cover entities that provide video content free of charge

17  or disclosure of consumers' consumption of other types of media.[5]   Mot. to

18  Dismiss 15–17.  This contention lacks merit.  It is well settled that the government

19  "need not address all aspects of a problem in one fell swoop" and is permitted to

20  focus regulation on certain types of information, and on the entities most likely to

21  possess the information it seeks to protect.  *See Williams-Yulee v. Fla. Bar*, 575

22  U.S. 443, 449 (2015); *see also, e.g.*, *French v. Jones*, 876 F.3d 1228, 1238–39 (9th

23  Cir. 2017); *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1035 (N.D. Cal. 2017).  And

24  in any event, some courts have found that the VPPA covers businesses that provide

25

26  [5]  Defendant contends that the statute's purported underinclusiveness
27  demonstrates that it is not narrowly tailored to fit a compelling governmental
    interest.  Mot. to Dismiss 15–17.  As explained, because the VPPA regulates
28  commercial speech, it is subject only to the less-demanding *Central Hudson*
    inquiry.

video content free of charge in order to generate revenue through advertising, provided that the individual whose video content was disclosed is a "subscriber" under 18 U.S.C. § 2710(a)(1). *See Lebakken*, 2022 WL 16716151, at *2; *see also Ellis v. Cartoon Network*, 803 F.3d 1251, 1256 (11th Cir. 2015) ("Payment . . . is only one factor a court should consider when determining whether an individual is a 'subscriber' under the VPPA.").

Moreover, states have enacted regulations that cover many of the situations to which Defendant points, and Congress is not required to pass laws redundant with existing regulation. *Cf. Burson v. Freeman*, 504 U.S. 191, 207 (1992) ("The First Amendment does not require States to regulate for problems that do not exist."). For example, all but two states and the District of Columbia have laws protecting the confidentiality of library records. *See Advance Magazine*, 210 F. Supp. 3d at 599 (citing the American Library Association). In each of the two states that do not have such laws, the state attorney general has issued an opinion protecting the privacy of library users. *See* Am. Library Ass'n, State Privacy Laws Regarding Library Records, https://perma.cc/YXA6-6LB6 (collecting state laws and attorney general opinions). States have also enacted a variety of laws to protect digital privacy. *See* Nat'l Conf. of State Legislatures, State Laws Related to Digital Privacy, https://perma.cc/XS76-4DNT (collecting state laws). For all of these reasons, the VPPA is not fatally underinclusive. *Accord Advance Magazine*, 210 F. Supp. 3d at 601.

IV. <u>Defendant's Hypothesized Non-Commercial Applications of the VPPA Do Not Render the Statute Substantially Overbroad.</u>

The few hypothetical situations in which the VPPA could apply to non-commercial speech do not substantially outweigh its legitimate application to commercial speech. Defendant concocts a number of scenarios in which it asserts that the VPPA would impermissibly restrict protected speech. *See* Mot. to Dismiss 10–15. But these situations are improbable and infrequent in relation to

17

the statute's application to commercial speech.   They have occurred either extremely rarely, or not at all, in the nearly 35 years since the statute's passage. Even if the statute could apply in such a scenario, such occurrence would be infrequent, and a court could address it in the regular course, with the benefit of concrete facts.

Defendant first argues that the VPPA could prohibit disclosure of information of significance to the public, such as a public official's video rental history demonstrating that he or she has taken hypocritical positions on important issues. Mot. to Dismiss 10–11. Although Defendant is hypothetically correct that such disclosure could constitute a form of non-commercial speech prohibited by the VPPA, the unlikely scenario that a commercial provider of video products would both be in a position to, and take action to, publicly disseminate such information is not substantial as compared to the statute's legitimate applications. *Accord Hearst I*, 192 F. Supp. 3d at 452; *Advance Magazine*, 210 F. Supp. 3d at 602. Nothing similar has occurred since the statute's passage, to the government's knowledge.   In addition, the VPPA does not impose liability on any entity other than a "video tape service provider" for revealing such information—including any news organization—which further limits the concern that the statute could prevent the airing of matters of public concern.

Defendant next posits that the VPPA could prevent a video tape service provider from voluntarily notifying law enforcement authorities that an individual accessed illegal content. Mot. to Dismiss 11. This scenario is even less likely to occur. Logically, a proprietor would be aware that an individual requested or obtained illegal and dangerous content only *if it provided those materials*.   Such disclosure would thus require a video tape service provider to expose itself to criminal liability by admitting it is in the business of selling unlawful content. Instead   of   accounting   for   this   highly   improbable   situation,   the   statute

18

appropriately addresses the potential need for law enforcement to access an individual's video viewing history by permitting disclosure pursuant to a warrant, subpoena, or court order.  18 U.S.C. § 2710(b)(2)(C).

It is also unlikely that the VPPA might prevent a significant number of "video store clerk[s]" from informing one customer that a different customer— perhaps the first customer's "minister," "spouse," or "babysitter"—had obtained certain materials that, although legal, the clerk presumably believes customer number one might find objectionable.  Mot. to Dismiss 11–12.  Even assuming enough brick-and-mortar video rental stores remained to make this a widespread concern—which they likely do not—this scenario would require a large number of video store clerks to have extensive knowledge of their customers' personal relationships, pay enough attention to their customers' rentals to note videos they found objectionable, and to have the proper combination of nosiness, moral certitude, and disregard for others' privacy to disclose this information.  Merely describing the situation demonstrates its unlikelihood.

Nor does the VPPA prevent businesses from making disclosures that consumers are aware of and agree to.  *See* 18 U.S.C. § 2710(b)(2)(B).  Assuming a driving school or a provider of continuing education is a "video tape service provider" and a student taking an online class is a "consumer" under the VPPA— which is not necessarily the case—the school could disclose the student's video viewing history as long as it received prior, written consent in a separate form. *Contra* Mot. to Dismiss 12.  Students would presumably consent to a school sharing their video viewing history where doing so was required to certify that the student completed a mandatory course.

Defendant's remaining arguments do not concern scenarios in which it claims the VPPA would apply to non-commercial, protected speech, but instead raise general complaints about the statute.  These are easily addressed.  *First*,

Defendant cites no case law suggesting that a requirement of separate, written consent necessarily violates the First Amendment.   Whether an individual consented to waive her privacy rights is a key inquiry in cases alleging violations of privacy statutes. *See, e.g.*, *Van Patten v. Vertical Fitness Grp.*, 847 F.3d 1037, 1044 (9th Cir. 2017); *In re Facebook*, 402 F. Supp. 3d at 788–89. It therefore makes good sense for a privacy statute to set clear expectations, for both businesses and customers, as to what form valid consent would take. And in any event, it is unlikely that consumers who believe they consented to a disclosure, albeit in the wrong form, would bring suit under the VPPA. *Second*, Defendant's speculation that the statute could prohibit disclosure of information that the consumer has already made publicly available elsewhere, Mot. to Dismiss 13, while hypothetically possible, would not necessarily concern non-commercial speech, and therefore does not demonstrate that the statute is substantially overly broad. Tellingly, none of Defendant's cited case law involves regulations of commercial speech. *Third*, the Ninth Circuit has specifically recognized that a violation of the VPPA harms the affected consumer's "*substantive* right to privacy." *Eichenberger*, 876 F.3d at 983–84. Defendant is thus incorrect that the VPPA could only validly protect information that was "highly offensive." Mot. to Dismiss 14. In doing so, Defendant once again attempts to subject a regulation of commercial speech to the higher standards applied to, for example, regulation of media reporting on issues of public concern. *See id.* *Fourth*, Defendant contends that the VPPA's imposition of a minimum of $2,500 in damages renders the statute overly broad because the consumer could have "no actual damages." Mot. to Dismiss 14. But Defendant cites no case law suggesting this would be impermissible. And again, the Ninth Circuit has specifically recognized that, even in the absence of monetary damages, a violation of the VPPA harms the affected consumer's "*substantive* right to privacy." *Eichenberger*, 876 F.3d at 983–84.

20

1

## CONCLUSION

2

3
For the foregoing reasons, the Court should reject Defendant's constitutional challenge.

4

5
Dated: December 5, 2022

6
Respectfully submitted,

7

8
BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

9

10
LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

11

12
*/s/ Leslie Cooper Vigen*

13
LESLIE COOPER VIGEN
Trial Attorney (D.C. Bar No. 1019782)
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW, Washington, D.C. 20005
Telephone: (202) 305-0727
Email: leslie.vigen@usdoj.gov

14

15

16

17

18
*Counsel for United States*

19

20

21

22

23

24

25

26

27

28

21