Fred Norton (CA SBN 224725)
fnorton@nortonlaw.com
Nathan Walker (CA SBN 206128)
nwalker@nortonlaw.com
Bree Hann (CA SBN 215695)
bhann@nortonlaw.com
Gil Walton (CA SBN 324133)
gwalton@nortonlaw.com
THE NORTON LAW FIRM PC
299 Third Street, Suite 200
Oakland, CA 94607
Telephone: (510) 906-4900

Attorneys for Defendant
PATREON, INC.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| BRAYDEN STARK and JUDD OOSTYEN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>PATREON, INC.,<br><br>                    Defendant. | Case No. 3:22-cv-03131-JCS<br><br>**DEFENDANT PATREON, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CLAIMS UNDER THE VPPA, THE CLRA, AND THE "FRAUD" PRONG OF THE UCL**<br><br>Date:    January 27, 2023<br>Time:    9:30 a.m.<br>Judge:   Hon. Joseph C. Spero |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ...................................................................................................... 1

    A.    The Court Should Dismiss Plaintiffs' VPPA Claim Because The VPPA Is Unconstitutional Under The First Amendment.................................................. 1

        1.    Plaintiffs Cannot Save the VPPA by Pretending It "Protects Constitutionally Recognized Privacy Interests".......................................... 3

        2.    The VPPA Is a Content-Based Regulation of Speech Generally Subject to Strict Scrutiny ............................................................................................ 4

        3.    The VPPA Is Not In Any Way Limited to Commercial Speech............................. 4

        4.    Plaintiffs Cannot Save the VPPA by Arguing that It Applies Only to Private Speech ....................................................................................... 8

        5.    The VPPA Substantially Infringes Protected Speech.................................... 9

        6.    The VPPA Cannot Satisfy Strict Scrutiny and Fails for Overbreadth .................... 12

    B.    Plaintiffs' UCL "Fraud" Prong And CLRA Claims Should Dismissed For Failure To Allege Fraud With Particularity As Required By Rule 9(b) ......................... 13

III.    CONCLUSION................................................................................................. 15

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Amazon.com LLC v. Lay*,
   758 F. Supp.2d 1154 (W.D. Wash. 2010) ............................................................... 6

5

*Ambrose v. Bos. Globe Media Partners LLC*,
   No. CV 21-10810-RGS, 2022 WL 4329373 (D. Mass. Sept. 19, 2022) ................... 5

6

*Ariix, LLC v. NutriSearch Corp.*,
   985 F.3d 1107 (9th Cir. 2021) ................................................................................ 7

7

*Ashcroft v. Free Speech Coal.*,
   535 U.S. 234 (2002) ......................................................................................... 6, 12

8

9

*Austin-Spearman v. AMC Network Ent. LLC*,
   98 F. Supp. 3d 662 (S.D.N.Y. 2015) ..................................................................... 11

10

*Baldwin v. Redwood City*,
   540 F.2d 1360 (9th Cir. 1976) .............................................................................. 10

11

*Belozerov v. Gannett Co.*,
   No. CV 22-10838-NMG, 2022 WL 17832185 (D. Mass. Dec. 20, 2022) .................. 5

12

13

*Buckley v. Valeo*,
   424 U.S. 1 (1976) .................................................................................................... 3

14

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, Inc.,
   637 F.3d 1047 (9th Cir. 2011) .............................................................................. 13

15

*Camfield v. City of Oklahoma City*,
   248 F.3d 1214 (10th Cir. 2001) .............................................................................. 6

16

17

*Coplin v. Fairfield Pub. Access Television Comm.*,
   111 F.3d 1395 (8th Cir. 1997) ............................................................... 3, 4, 11, 12

18

*Cox Broadcasting Corp. v. Cohn*,
   420 U.S. 469 (1975) ................................................................................................ 4

19

20

*Daniel v. Cantrell*,
   375 F.3d 377 (6th Cir. 2004) ............................................................................. 6, 10

21

*Dirkes v. Borough of Runnemede*,
   936 F. Supp. 235 (D.N.J. 1996) .............................................................................. 6

22

23

*Dun & Bradstreet*,
   472 U.S. 749 (1985) ................................................................................................ 3

24

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) ................................................................................ 12

25

26

*Entler v. Gregoire*,
   872 F.3d 1031 (9th Cir. 2017) ................................................................................ 9

27

*Fla. Star v. B.J.F.*,
   491 U.S. 524 (1989) .......................................................................................... 4, 11

28

ii

*Four Navy Seals v. Associated Press*,
    413 F. Supp. 2d 1136 (S.D. Cal. 2005) ........................................................................ 11

*Gakuba v. Hollywood Video, Inc.*,
    No. 3:15-CV-00496-BR, 2015 WL 5737589 (D. Or. Sept. 30, 2015) ...................... 6, 10

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ...................................................................................................... 12

*Gilbert v. Med. Econ. Co.*,
    665 F.2d 305 (10th Cir. 1981) ........................................................................................ 3

*Harris v. Blockbuster Inc.*,
    622 F. Supp. 2d 396 (N.D. Tex. 2009) ........................................................................... 6

*Harris v. Quinn*,
    573 U.S. 616, (2014) ....................................................................................................... 7

*IMDb.com Inc. v. Becerra*,
    962 F.3d 1111 (9th Cir. 2020) ........................................................................... 4, 5, 7, 8

*In re Hulu Priv. Litig.*,
    No. C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ............................ 11

*In re Search of Encrypted Data Provided by Nat'l Ctr. for Missing & Exploited Child. for Nineteen
    Related Cyber Tipline*, No. 20-SW- (ZMF), 2021 WL 2100997 (D.D.C. May 22, 2021) ................. 10

*Nat'l Endowment for the Arts v. Finley*,
    524 U.S. 569 (1998) ......................................................................................................... 1

*Olosoni v. HRB Tax Grp., Inc.*,
    2020 WL 11563095 (N.D. Cal. Mar. 24, 2020) ............................................................ 14

*Brooks v. Thomson Reuters Corp.*,
    No. 21-CV-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ...................... 8

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) ......................................................................................................... 4

*U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*,
    489 U.S. 749 (1989) ....................................................................................................... 11

*United States v. Alvarez*,
    567 U.S. 709 (2012) ......................................................................................................... 4

*United States v. Hansen*,
    25 F.4th 1103 (9th Cir. 2022) ............................................................................ 1, 5, 6, 12

*United States v. Hansen*,
    40 F.4th 1049 (9th Cir. 2022) .......................................................................................... 1

*United States v. McAdory*,
    935 F.3d 838 (9th Cir. 2019) ........................................................................................... 4

*United States v. Stevens*,
    559 U.S. 460 (2010) ......................................................................................................... 1

iii

*United States v. Williams*,
   553 U.S. 285 (2008).................................................................................................5

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
   425 U.S. 748 (1976).................................................................................................7

*Washington State Grange v. Washington State Republican Party*,
   552 U.S. 442 (2008).................................................................................................1

**Statutes**

8 U.S.C. § 1324........................................................................................................6

18 U.S.C. § 2710...............................................................................................6, 9, 12

47 USC § 551(c)(1)..................................................................................................11

Cal. Civ. Code of Proc. § 425.16.............................................................................8

# I.    INTRODUCTION

The Video Privacy Protection Act is unconstitutional because it impermissibly restricts a substantial amount of constitutionally protected speech.  As a result, Plaintiff's VPPA claims must be dismissed.  Separately, Plaintiffs have failed to plead with particularity their claims for "fraud" under the UCLA and CLRA, and those claims must also be dismissed.

# II.    ARGUMENT

## A.    The Court Should Dismiss Plaintiffs' VPPA Claim Because The VPPA Is Unconstitutional Under The First Amendment

The VPPA violates the First Amendment because it is overbroad.  That is, even if the VPPA has a "plainly legitimate" application in some circumstances, "a substantial number of its applications are unconstitutional."  *United States v. Stevens*, 559 U.S. 460, 473 (2010).  In its opening brief, Patreon explained why the VPPA is subject to strict scrutiny (Dkt. 48 at 15-18); detailed examples of speech that the VPPA unconstitutionally restricts (*id.* at 18-23); and demonstrated how the VPPA fails to further a compelling governmental interest by narrowly tailored means, as strict scrutiny requires (*id.* at 23-25).

In defense of the VPPA, Plaintiffs and the United States make somewhat different arguments but most of the same errors.  Both begin with a thumb on the scale, arguing facial invalidation is "disfavored."  (Dkt. 51 at 11-12, citing *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008); (Dkt. 49-1 at 14-15 (same)).  But that language is merely window dressing for the objective standard:  Patreon must "demonstrate a substantial risk that application of the provision will lead to the suppression of speech."  *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998).  And however "heavy" that burden, it is not an immovable object.  The Supreme Court and Ninth Circuit have repeatedly invalidated laws on overbreadth grounds in recent years.  (Dkt. 48 at 14 (citing cases)).  Further, while facial overbreadth may be "strong medicine," *see United States v. Hansen*, 25 F.4th 1103, 1111 (9th Cir. 2022), "[o]n occasion, strong medicine is just what is needed." *United States v. Hansen,* 40 F.4th 1049, 1057 (9th Cir. 2022) (Gould, J., concurring in denial of rehearing en banc).  Strong medicine is what the VPPA needs.

Once they reach the merits, both Plaintiffs and the United States recognize that overbreadth analysis requires a comparison of the legitimate scope of the law (if any) with the scope of its unconstitutional applications. (Dkt. 51 at 21:22-26; Dkt. 49-1 at 14:8-10; 16:10-12).  To get there, both

1

argue the VPPA primarily regulates "commercial speech" that is subject only to intermediate scrutiny, which they claim it satisfies.  (Dkt. 51 at 15-18; Dkt. 49-1 at 16-20).  They then assert the purportedly legitimate sweep of the VPPA significantly exceeds the scope of any unconstitutional applications (which they dispute to varying degrees).  (Dkt. 51 at 21-29; Dkt. 49-1 at 23-26).  Plaintiffs add an argument, which the United States does not join, that the VPPA regulates only speech on private matters and that such speech is also subject only to lesser, intermediate scrutiny.  (Dkt. 51 at 18-20).

Superficially sound, this analysis crumbles on inspection.  As explained below, neither Plaintiffs nor the United States offer any credible basis to conclude the VPPA primarily regulates commercial speech (or private speech).  To the contrary, the actual text of the statute with its broad definitions, its explicit origins as a prohibition on embarrassing political speech, and its application over its thirty-plus-year history, all demonstrate the VPPA's application to commercial speech is incidental, while it restricts and chills a wide range of everyday, non-commercial speech, including speech on matters of public concern.  Moreover, both Plaintiffs and the United States mistakenly assume disclosures by commercial actors (like Patreon's alleged disclosures here) are always commercial speech.  In fact, neither Patreon's alleged speech nor similar disclosures using the Meta Pixel or analogous software would be commercial speech under Ninth Circuit law.  As a result, the vast majority of the VPPA's applications must be evaluated under strict scrutiny, which it cannot satisfy.  (Dkt. 48 at 23-25).  The "plainly legitimate sweep" of the VPPA is a narrow band at best.

On the other side of the ledger, both Plaintiffs and the United States argue the VPPA's unconstitutional applications are unlikely or permissible, but they are neither.  Video tape service providers have in fact disclosed the viewing history of public figures, have reported customers' viewing histories to family members and law enforcement, have reported customers' viewing histories to state courts and regulatory authorities, have been exposed to liability despite having obtained consumers' consent but in a form that differs from what the VPPA prescribes, and have been exposed to presumptive damages even in the absence of any injury to any privacy interest, in each case subject to the VPPA's unconstitutional burdens on protected speech.

As Patreon explained in its opening brief, Congress could have passed a law that appropriately protected interests in privacy, without trampling on constitutionally protected speech.  (Dkt. 48 at 25);

*Coplin v. Fairfield Pub. Access Television Comm.*, 111 F.3d 1395, 1404-05 (8th Cir. 1997). The VPPA is not that law, and Plaintiffs' claims under that statute must be dismissed.

### 1. Plaintiffs Cannot Save the VPPA by Pretending It "Protects Constitutionally Recognized Privacy Interests"

Plaintiffs try to seize the mantle of the First Amendment themselves, making the implausible claim that "the VPPA protects constitutionally recognized privacy interests." (Dkt. 51 at 13-14). Plaintiffs are not on the side of the First Amendment. The First Amendment protects free speech; the VPPA curtails speech in favor of a *legislatively created* privacy interest, not a constitutional one. "[T]he concept that government may restrict the speech of some … to enhance the relative voice of others is wholly foreign to the First Amendment." *Buckley v. Valeo*, 424 U.S. 1, 48-49 (1976). While privacy rights are important – as Patreon itself recognizes in its contracts with consumers – the right to privacy against non-governmental actors is not a constitutional right, and it is subordinate to the First Amendment. *Coplin*, 111 F.3d at 1404 ("Only in the 'extreme case' is it constitutionally permissible for a governmental entity to regulate the public disclosure of facts about private individuals." (quoting *Gilbert v. Med. Econ. Co.*, 665 F.2d 305, 308 (10th Cir. 1981))).

While attempting to elevate the VPPA to the status of the Constitution, Plaintiffs posit a watered-down First Amendment with protections that extend only to speech in the public interest, or made by members of the media. (Dkt. 51 at 14; 26). Thus, Plaintiffs mischaracterize the Supreme Court as having held, in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.* that "restrictions on commercial speech, such as disclosing a consumer's credit report, do *not* violate the First Amendment, particularly when it 'concerns no public issue.'" (Dkt. 51 at 12 (citing *Dun & Bradstreet*, 472 U.S. 749, 762 (1985)). In *Dun & Bradstreet*, the Supreme Court actually held that a credit report that concerns no public issue and is "solely in the individual interest of the speaker and its specific business audience" "warranted no special protection when … *the speech is wholly false and clearly damaging to the victim's business reputation*." 472 U.S. at 762 (emphasis added). The disclosure of truthful, lawfully acquired information – which is what the VPPA regulates in all instances – is clearly protected by the First Amendment. *See Fla. Star v. B.J.F.*, 491 U.S. 524, 539 (1989); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 494-95 (1975); *Coplin*, 111 F.3d at 1404-05. And that protection is not limited to

3

members of the "media," as the Supreme Court has made clear: "When a State attempts the extraordinary measure of punishing truthful publication in the name of privacy, it must demonstrate its commitment to advancing this interest by applying its prohibition evenhandedly, to the smalltime disseminator as well as the media giant." *Florida Star*, 491 U.S. at 540.

### 2.   The VPPA Is a Content-Based Regulation of Speech Generally Subject to Strict Scrutiny

In *IMDb.com*, the Ninth Circuit addressed a state law, AB 1687, that prohibited "dissemination of one type of speech: 'date of birth or age information'" of entertainment industry professionals. *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1120 (9th Cir. 2020). Given that fact alone, the Ninth Circuit did not hesitate to hold that "[o]n its face, AB 1687 restricts speech because of its content." *Id.* The VPPA is no different; it is a content-based speech restriction targeted at one kind of speech – disclosure of personally identifiable video viewing. Consequently, every application of the VPPA is subject to strict scrutiny unless a particular application is one of the "few historic and traditional" exceptions that are entitled to lesser protection. *See United States v. Alvarez*, 567 U.S. 709, 717 (2012) (Kennedy, J. plurality opinion) (quotation omitted); *IMDb.com*, 962 F.3d at 1121.[1]

Plaintiffs argue the VPPA is not content-based, but they fail to discuss the holding of *IMDb.com* on this point. (Dkt. 51 at 20-21.) Instead, they simply cite other, more general articulations of the content-neutrality inquiry, which do not contradict or undermine the binding holding of *IMDb.com*. (*Id.*) The fact that the VPPA is content-based has critical implications for the overbreadth analysis – every application of the VPPA is "presumptively invalid," *see R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992), unless Plaintiffs demonstrate that it falls into one of the "few" exceptions or satisfies strict scrutiny. As demonstrated below, Plaintiffs and the government demonstrate neither.

### 3.   The VPPA Is Not In Any Way Limited to Commercial Speech

In an attempt to save the VPPA, Plaintiffs and the government both argue the statute really just regulates commercial speech, which is subject to intermediate scrutiny and is not subject to overbreadth

---

[1] Plaintiffs cite *IMDb.com* as if it upheld the VPPA against a First Amendment challenge (Dkt. 51 at 13-14), but its offhand reference to the statute is the weakest form of *dicta*, a mere "prelude to another legal issue that commands the panel's full attention," *United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019), and thus not binding.

analysis.  Neither succeeds in making that showing.  The VPPA in general is not limited to commercial speech, and even the type of speech at issue in this case – which Plaintiffs and the United States claim represents the majority of VPPA lawsuits – is not commercial speech.

Patreon agrees with the government that "the first step in overbreadth analysis is to construe the challenged statute" to determine what it covers.  (Dkt. 49-1 at 16 (quoting *United States v. Williams*, 553 U.S. 285, 293 (2008)).  In *Williams*, the Supreme Court carefully analyzed the text of the statute to ascertain the types of statements it would prohibit or exempt.  *See Williams*, 553 U.S. at 294-304; *see also Hansen*, 25 F.4th at 1107-11 (same).

Neither Plaintiffs nor the government engage in such an analysis.  Actually, nothing in the language of the VPPA limits the statute to commercial speech, as the law applies to **any** disclosure (outside its narrow exceptions) by **any** "video tape service provider," a term that Plaintiffs argue must be construed broadly.  (Dkt. 31 at 13-14).  In arguing the VPPA regulates commercial speech, Plaintiffs do not rely on the text of the statute or ways in which it has been applied, but instead simply cite their own descriptions of Patreon's alleged conduct.  (*E.g.*, Dkt. 51 at 15:12-19; 17:2-4; 17:21-24).  Although the United States does examine the text of the statute to argue the VPPA regulates commercial speech, it does not attempt to describe the actual speech the VPPA applies to.  Instead, the government merely notes the statute applies to commercial actors, and assumes the speech of those actors must be commercial speech.  (Dkt. 49-1 at 16-17).  Of course, speech by commercial actors is not necessarily commercial speech.  *See, e.g.*, *IMDb.com*, 962 F.3d at 1122.  The government exacerbates the error by asserting the VPPA "does not apply to news organizations, advocacy groups, or other entities" that publicize information.  (Dkt. 49-1 at 17).  That is not the law; the text of the VPPA contains no such limitation.  *See Belozerov v. Gannett Co.*, No. CV 22-10838-NMG, 2022 WL 17832185, at *3 (D. Mass. Dec. 20, 2022) (rejecting argument that USA Today is a news provider and thus not subject to VPPA); *Ambrose v. Bos. Globe Media Partners LLC*, No. CV 21-10810-RGS, 2022 WL 4329373, at *1 (D. Mass. Sept. 19, 2022) (holding that the Boston Globe, a "multimedia organization that provides news, entertainment, and commentary across multiple brands and platforms," and maintains a website with "news articles, photographs, images, illustrations, audio clips and video clips" was subject to VPPA).

Next, the government argues "the vast majority of cases alleging violations of the VPPA"

involve allegations similar to Plaintiffs' allegations about Patreon – disclosure of video viewing history

to a third party for alleged financial gain, which the government claims must always be commercial

speech. (Dkt. 51 at 17-18).  This assertion does not prove what the government claims.

- *First*, the government wholly ignores the explicit purpose for which the VPPA was enacted:  to prevent non-commercial speech that might prove to be embarrassing to public officials like Judge Bork, Senator Leahy, or Senator Simpson.  (Dkt. 48 at 18-19)

- *Second*, since the VPPA's enactment in 1988 there have been 172 state and federal decisions (on Westlaw) that cite the VPPA, 18 U.S.C. § 2710.  The United States nonetheless cites five, none earlier than 2015, as the "vast majority."

- *Third*, which cases are filed is a poor indicator of what speech the statute regulates (or chills).  In *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 247 (2002), the Supreme Court did not cite to any prosecutions for staging *Romeo and Juliet* or showing the movie *Traffic*, but did not hesitate to conclude the Child Pornography Prevention Act would apply to such speech.  In *Hansen*, the Ninth Circuit did not cite prosecutions for alleged illegal encouragement of an alien in violation of 8 U.S.C. § 1324, but nonetheless recognized the statute impermissibly prohibited that type of speech.  *Hansen*, 25 F.4th at 1110.  Ultimately, the existence of VPPA lawsuits against commercial actors says more about the economic incentives of class action lawyers than the reach of the VPPA.

- *Fourth*, there were *no* VPPA lawsuits involving what the government characterizes as commercial speech until 2009, over twenty years after the VPPA's enactment.  *See Harris v. Blockbuster Inc.*, 622 F. Supp. 2d 396 (N.D. Tex. 2009).

- *Fifth*, there have been numerous *other* lawsuits that involved applications of the VPPA to non-commercial speech, because the VPPA plainly regulates non-commercial speech.  *See, e.g., Daniel v. Cantrell*, 375 F.3d 377, 380 (6th Cir. 2004) (video rental store owners and their employees disclosed, to plaintiff's parents and to parents of alleged victim of molestation by plaintiff, that plaintiff had rented pornographic movies); *Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1219-20 (10th Cir. 2001) (describing violation of VPPA where video stores voluntarily disclosed to police that plaintiff and others had rented obscene movie); *Amazon.com LLC v. Lay*, 758 F. Supp.2d 1154, 1170-71 (W.D. Wash. 2010) (disclosure in response to tax authority's demand would violate VPPA); *Gakuba v. Hollywood Video, Inc.*, No. 3:15-CV-00496-BR, 2015 WL 5737589, at *6 (D. Or. Sept. 30, 2015) (violation of VPPA where state police officers corroborated allegations of sexual abuse of minor by obtaining customer's video rental records); *Dirkes v. Borough of Runnemede*, 936 F. Supp. 235, 236 (D.N.J. 1996) (violation of VPPA when video store informed employer that employee had rented pornographic videos).

Furthermore, even the speech alleged in this case does not meet the definition of "commercial

speech."  Plaintiffs allege Patreon and "30 percent of popular websites" use Pixel to share information

with Facebook, allowing both websites and Facebook to better promote and market their services to their

6

users. (Dkt. 1 at ¶¶ 41-44). This is not commercial speech. As the Ninth Circuit recently confirmed in *IMDb.com*, "[c]ommercial speech 'does no more than propose a commercial transaction.'" 962 F.3d at 1122 (quoting *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976)); *see also Harris v. Quinn*, 573 U.S. 616, 648, (2014) ("Our precedents define commercial speech as 'speech that does no more than propose a commercial transaction.'" (citation omitted)). In *IMDb.com*, the Ninth Circuit held publishing the ages of entertainment professionals in a database was not commercial speech because that speech did not propose a commercial transaction – despite the fact the parties also agreed that IMDb was a "'commercial online entertainment employment service provider' that 'provides employment services' to 'subscribers' through IMDbPro." 962 F.3d at 1118 n.3. Plaintiffs try to distinguish *IMDB.com* by pointing out the disclosures there were "free," and part of an "encyclopedic" offering, like Wikipedia (Dkt. 51 at 18), but Plaintiffs are citing portions of the opinion that have nothing to do with the commercial speech analysis. The Ninth Circuit's analysis of commercial speech does not rely on any of the facts Plaintiffs use to distinguish this case.

Relying almost entirely on out-of-circuit authority, Plaintiffs try to avoid *IMDb.com* by arguing that disclosing consumer information is "an economic act." (Dkt. 51 at 16). But the Ninth Circuit case Plaintiffs **do** cite rejects that reasoning. In *Ariix, LLC v. NutriSearch Corp.*, the Ninth Circuit held,

> [N]ot all types of economic motivation support commercial speech. A simple profit motive to sell copies of a publication or to obtain an incidental economic benefit, without more, does not make something commercial speech. Otherwise, virtually any newspaper, magazine, or book for sale could be considered a commercial publication.

985 F.3d 1107, 1117 (9th Cir. 2021) (citing cases). In *Ariix* (a "narrow" decision "tied specifically to the troubling allegations in this case," *id*. at 1118), the court did find the speech there was commercial, but the case does not help Plaintiffs. There, the defendant published sham, purportedly "independent" nutritional supplement guides that were really paid promotion for one company's products. *Id*. at 1117-18. Even under those facts, the Court noted that the decision to characterize the speech as "commercial" was a "close question." *Id*. at 1116. Plaintiffs' allegations here present no such complexity.

The use of Pixel, as alleged by Plaintiffs, is not commercial speech. Consequently, to the extent that "30 percent of popular websites" use Pixel and disclose consumers' video-watching and identities to

Facebook, or engage in similar speech, that is non-commercial speech that the VPPA prohibits without satisfying strict scrutiny – further establishing the statute's overbreadth.

### 4. Plaintiffs Cannot Save the VPPA by Arguing that It Applies Only to Private Speech

Plaintiffs make an additional argument, not joined by the United States, that strict scrutiny does not apply here because the VPPA generally regulates speech regarding private matters, not matters of public concern.  (Dkt. 51 at 18-20).  Plaintiffs are mistaken as to the reach of the VPPA – it has no such narrow scope – and as to the law.  In *IMDb.com*, the Ninth Circuit addressed and rejected the argument that "a less exacting standard of review applies to AB 1687 because 'it restricts only speech of a purely private concern.'"  *IMDb.com*, 962 F.3d at 1123.  Plaintiffs try, but fail, to distinguish *IMDb.com* by characterizing IMDb's disclosure as "public" (to the public at large) and Patreon's alleged disclosure as "private" (to one recipient – Facebook).  Once again, Plaintiffs have lost sight of the inquiry.  Overbreadth analysis requires Plaintiffs to discuss ***all categories of speech*** the VPPA precludes, not just the facts Plaintiffs allege.  And under its express terms, the VPPA would apply with equal force, and without distinction, to both public and private disclosures.  Even under Plaintiffs' reading of *IMDb.com*, such restriction would be subject to strict scrutiny, and would fail.

But Plaintiffs' argument is even weaker, because their reading of *IMDb.com* is wrong.  The fact that IMDb.com publicly stated the ages of entertainment professionals was a consideration for the Court, to be sure, which made the case easier.  *See id.* at 1125 (observing that publication "imparts an inherently public character to the speech at issue.").  But the question as framed by the Court was "whether a state can prohibit the dissemination of lawfully obtained information, albeit that of a private character."  *Id.* at 1124.  And the answer to that question was, only if the state satisfies strict scrutiny.  *See id.*[2]  That is the answer here as well.

---

[2] Plaintiffs cite *Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418-EMC, 2021 WL 3621837, at *14-15 (N.D. Cal. Aug. 16, 2021), mistakenly asserting that Judge Chen held that disclosure of private information is not entitled to strict scrutiny.  Not so.  In that case, Judge Chen was deciding an Anti-SLAPP motion under Cal. Civ. Proc. Code 425.16, and was addressing whether the alleged statement was on a matter of public concern, an additional requirement of the Anti-SLAPP law – ***not*** the First Amendment.  Further, unlike *IMDb.com*, that case did not involve a content-based speech restriction like the VPPA.

### 5.  The VPPA Substantially Infringes Protected Speech

In its motion Patreon listed seven examples of speech the VPPA prohibits – in addition to the kind of non-commercial speech at issue in this case – in violation of the First Amendment. (Dkt. 48 at 18-23).  Neither Plaintiffs nor the United States succeed in arguing these examples are actually permitted under the First Amendment, or that they are unlikely to occur.

*First*, Plaintiffs do not rebut Patreon's argument that the VPPA cannot, under the First Amendment, prohibit disclosures that bear on a public official's fitness for office.  (Dkt. 48 at 18-19).  Of course, there is no dispute that the VPPA came into existence for the express purpose of banning such core political speech.  All Plaintiffs can do is speculate that the video-watching practices of public officials are not *always* a matter of public concern.  (Dkt. 51 at 22-23).  Perhaps not, but it remains the case that the VPPA bans any and all disclosures of personally identifiable viewing histories by video service providers, even when they are indisputably on matters of public concern.  In doing so, it violates the First Amendment.  For its part, the government simply asserts that, to its knowledge, there have been no disclosures similar to the Bork disclosure since the VPPA's passage in 1988.  (Dkt. 49-1 at 24).  But that simply suggests the VPPA has been successful in chilling this particular kind of protected speech.

*Second*, the VPPA prevents businesses from notifying law enforcement that customers have requested or obtained illegal content, an issue of public concern and not a form of commercial speech.  Plaintiffs mistakenly assert the First Amendment does not protect such reports; the Ninth Circuit has said the opposite.  *See Entler v. Gregoire*, 872 F.3d 1031, 1043-44 (9th Cir. 2017).  Plaintiffs and the government also assert this would never happen, because the business would "be reporting itself."  (Dkt. 51 at 23; Dkt 49-1 at 24-25).  Not so, as the VPPA prohibits disclosures of "requests" for specific videos, 18 U.S.C. § 2710(a)(3), even if the business does not have them.  Contrary to the speculation by Plaintiffs and the government, businesses have "reported themselves" for distributing allegedly illegal videos to their customers.  *Camfield*, 248 at 1219-20 (video stores violated VPPA when they voluntarily disclosed to police that plaintiff and others had rented movie that judge had determined to be obscene).  Further, given the breadth of the VPPA, a platform (such as YouTube) may deliver content, including illegal content, that it did not originate and still qualify as a "video tape service provider."  Yet YouTube and similar platforms *do* notify law enforcement that a specific user has uploaded (and viewed) specific

videos, such as possible child pornography.  *See, e.g.*, *In re Search of Encrypted Data Provided by Nat'l Ctr. for Missing & Exploited Child. for Nineteen Related Cyber Tipline Reps.*, No. 20-SW-321 (ZMF), 2021 WL 2100997 (D.D.C. May 22, 2021).  Yet the VPPA makes those reports unlawful.

**Third**, the VPPA prevents video tape service providers from notifying a person that someone they have a relationship with – a child, babysitter, or coach – has rented highly pornographic or other controversial video content, which may also be an issue of public concern and also is not commercial speech.  The government describes this situation as unlikely, but it is common enough to have happened – and to have been litigated under the VPPA.  In *Daniel*, the plaintiff invoked the VPPA, complaining video rental store owners and their employees improperly disclosed, to the parents of a minor the plaintiff was eventually convicted of molesting, that the plaintiff had rented pornographic movies.  375 F.3d at 380.  *See also Gakuba*, 2015 WL 5737589, at *6 (violation of VPPA where video provider voluntarily gave police customer's video rental records in investigation of sexual abuse of minor).

Likewise, the VPPA would prevent video providers from confirming to a court, certification body, or regulatory authority that a consumer watched a specific video, a commonplace occurrence that may not be an issue of public concern, but also is not commercial speech.  (Dkt. 48 at 20).  Plaintiffs argue the provider could simply obtain consent (Dkt. 51 at 24), but this simply highlights the onerous and arbitrary requirement that consent be on a standalone form **and** less than two years old.  Such requirements themselves violate the First Amendment, as the Ninth Circuit held in *Baldwin v. Redwood City*, 540 F.2d 1360, 1371 n.30 (9th Cir. 1976).

**Fourth**, and relatedly, the VPPA punishes a truthful disclosure made with actual consent if the consent deviates from the VPPA's prescribed standalone form or is more than two years old.  The VPPA's categorical approach to consent indiscriminately applies to all forms of speech – public concern, private, non-commercial, commercial.  There is no defensible basis for imposing liability the provider obtains actual, but improperly formatted, consent – but the VPPA does.  Notably, the Cable Communications Privacy Act, which serves a similar purpose of restricting disclosure of cable television viewers' selections, requires only "prior written or electronic consent" without a separate form or a time limit, demonstrating the VPPA's heightened burdens are unnecessary.  *See* 47 USC § 551(c)(1).  The government defends the VPPA's disregard of actual consent by (naively) asserting "it is unlikely that

consumers who believe they consented to a disclosure, albeit in the wrong form, would bring suit under the VPPA." (Dkt. 49-1 at 26). But this very case involves a dispute over whether Plaintiffs consented, "albeit in a different form." (Dkt. 21 at 25). This case is not unique. *See, e.g.*, *Austin-Spearman v. AMC Network Ent. LLC*, 98 F. Supp. 3d 662, 671 (S.D.N.Y. 2015) (in VPPA case, noting factual dispute whether plaintiff generally consented to disclosure of video by agreeing to privacy policy); *In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 1724344, at *17 (N.D. Cal. Apr. 28, 2014) (noting defendant's argument that plaintiffs consented to alleged disclosures under VPPA by consenting to general policies).

*Fifth*, the VPPA is overbroad because it punishes a disclosure even if the consumer herself has already made that information public, despite settled caselaw that "to censure an individual for the dissemination of facts about a private individual, the facts revealed must not already be in the public domain." *Coplin*, 111 F.3d at 1404; *see also Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1144 (S.D. Cal. 2005) ("Numerous cases hold that there is no privacy for a matter already in the public domain.") (citing cases); (Dkt. 48 at 21). In response, Plaintiffs cite *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 762 (1989), to argue that consumers have a continuing privacy interest – that trumps the First Amendment – even if the information is already public. But *Reporters Committee* is not a First Amendment case at all, it concerns government's own right not to disclose public records under the privacy exemption to FOIA. *See* 489 U.S. at 762-63. Actual First Amendment jurisprudence, in contrast, is clear – the government cannot restrict speech in the name of "privacy" when the information is already public. *See Fla. Star*, 491 U.S. at 539; *Cox Broadcasting Corp.*, 420 U.S.at 494-95; *Coplin*, 111 F.3d at 1404.

*Sixth*, the VPPA is overbroad because it is not limited to disclosures that a "reasonable person would find highly offensive," as the Supreme Court and other courts have required. *See Florida Star*, 491 U.S. at 539; *Coplin*, 111 F.3d at 1405. Plaintiffs argue that whether a disclosure is "highly offensive" is "fact-intensive" but that misses the point. Under the First Amendment, a statute cannot prohibit disclosure of private details unless they "would not be merely embarrassing and painful but deeply shocking to the average person." *Coplin*, 111 F.3d at 1405. The VPPA has no exclusion for these categories of constitutionally protected speech, and thus is overbroad. *See Ashcroft*, 535 U.S. at

247 (child pornography ban that did not exempt artistic works like Romeo and Juliet was overbroad); *Hansen*, 25 F.4th at 1108 (prohibition on encouraging unlawful alien from remaining in United States overbroad because it had no exemption for statements like telling an immigrant about available social services or telling a tourist that they will not face serious consequences for overstaying a visa).

**Seventh**, the VPPA violates the First Amendment by imposing $2500 in presumptive monetary damages even in the absence of harm. (Dkt. 48 at 22-23 (citing cases)). Plaintiffs' response is to argue that a violation of the VPPA is a violation of the "substantive right to privacy" so no further injury is required. Again Plaintiffs miss the mark. As the Ninth Circuit has held, in the case cited by Plaintiffs, "the VPPA permits consumers to obtain damages for a violation of § 2710(b)(1) without showing consequential harm." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017). And as Patreon argued in in its motion, imposition of $2500 in presumptive damages *for truthful speech* "without consequential harm" violates the First Amendment. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974).

### 6. The VPPA Cannot Satisfy Strict Scrutiny and Fails for Overbreadth

All of the applications of the VPPA described above are subject to strict scrutiny, with the sole exception of particular applications that actually meet the standard for commercial speech, of which there appear to be few. Thus, the question for the Court is whether a substantial number of those applications – i.e., the prohibition on disclosure of matters of public concern, the prohibition on reporting criminal behavior, the prohibition on disclosing a consumer's viewing history to interested or vulnerable persons, the prohibition on disclosing information even with express consent, the prohibition on disclosing information that is already public, the prohibition on disclosing information where doing so causes no privacy related harm, the imposition of substantial presumptive damages for accurate, non-commercial, authorized disclosures, *and* the imposition of liability for non-commercial disclosure to a single business partner that provides marketing analytics – fail to advance an interest in privacy by narrowly tailored means. They do. (Dkt. 51 at 23-25). Congress could have passed a narrower law that did not sweep up or impermissibly burden so much constitutionally protected speech; it did not. The VPPA is a blunderbuss, striking erratically and devastatingly at speech that causes no cognizable injury

1   to privacy, while leaving wide swaths of truly harmful disclosures untargeted and unscathed.  Liability

2   under the VPPA would violate the First Amendment, and Plaintiffs' VPPA claim must be dismissed.

3   **B.      Plaintiffs' UCL "Fraud" Prong And CLRA Claims Should Dismissed For Failure**
4   **         To Allege Fraud With Particularity As Required By Rule 9(b)**

5            In their Opposition, Plaintiffs do not dispute – and thus concede – the following facts:

6       •    Plaintiffs' UCL "fraud" prong claim and CLRA claim (collectively, the "Deception
7            Claims") are subject to the heightened pleading requirement of Rule 9(b), which requires
             circumstances of fraud be alleged "with particularity";

8       •    Plaintiffs' Deception Claims are based on a theory that Patreon made misleading "partial
9            representations" that were rendered misleading due to Patreon's omission of other
             information, but the Complaint does not allege *where* the "partial representations" were
10           made, *what* the "partial representations" were, or *when* they were made; and

11      •    Causation is an essential element of the Deception Claims, but the FAC nowhere alleges
             that any of the Plaintiffs ever *read* or *heard* the "partial representations" on which their
12           Deception Claims are based.  And although Plaintiffs allege Patreon "could have"
             disclosed the allegedly omitted information in its Terms of Use and Privacy Policy,
13           Plaintiffs do *not* allege they ever *read* Patreon's Terms of Use or Policy.

14           In view of these undisputed facts, Plaintiffs' Deception Claims should be dismissed for failure to

15   satisfy Rule 9(b)'s heightened pleading standard.

16           In their opposition, Plaintiffs advance four arguments.  None have merit.  ***First***, Plaintiffs assert

17   that they have complied with Rule 9(b) by alleging "Patreon's website, including its Terms of Use,

18   Privacy Policy, Data Practices, and Cookie Policy do not adequately inform users that Patreon shares

19   their personal information and video content with Meta and that it had a duty to disclose this true fact

20   because it ***made misleading partial representations regarding its privacy and data sharing***

21   ***practices***."  (Dkt. 51 at 24 (citing FAC ¶¶ 64, 104-07) (emphasis added)).  Plaintiffs are wrong.  To

22   satisfy Rule 9(b), "a pleading must identify 'the who, what, when, where, and how of the misconduct

23   charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it

24   is false.'"  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, Inc., 637 F.3d 1047, 1055 (9th Cir.

25   2011).  Plaintiffs do not meet this standard.  They allege that Patreon "made misleading partial

26   representations regarding its privacy and data sharing practices," but they do not identify ***where*** the

27   partial representations were made, ***what*** they were, or ***when*** they were made.

28

13

*Second*, Plaintiffs argue that they need not plead their Deception Claims with specificity because those claims are based on a theory of omission, and "a plaintiff cannot plead the specific time or place of a failure to act." (Dkt. 51 at 24-25). This is a strawman argument. Patreon does not assert that Plaintiffs must allege the specific time and place of the alleged *omission (failure to act)*. Instead, Patreon asserts – and the facts confirm – that Plaintiffs' allegations are inadequate because the Deception Claims are based on allegedly misleading "partial representations," and Plaintiffs do not identify *where* the *partial representations* were made, *what* they were, or *when* they were made.

Plaintiffs' cited authority confirms that their allegations do not satisfy Rule 9(b). In *Olosoni v. HRB Tax Grp., Inc.*, 2020 WL 11563095, at *8 (N.D. Cal. Mar. 24, 2020), for example, the court held that plaintiffs satisfied the requirements of Rule 9(b) because plaintiff specifically alleged (1) *where* defendants made the allegedly misleading representations ("on their website" (*id.* *8)); (2) *what* the misleading representations were (representations that tax programs offered by defendants were "free," and subsequent representations that plaintiffs "needed" to pay for defendants' services (*id.* *2)), and (3) *when* the misleading representations were made ("in or around January 2019," and "on or about April 15, 2019," when plaintiffs visited defendants' website, *see Olosoni v. HRB Tax Grp., Inc.*, No. 19-CV-03610-SK (N.D. Cal.) Dkt. 19 at paras. 86 and 92; *see also Olosoni*, 2020 WL 11563095, at *8 ("Plaintiffs have specifically alleged that Defendants' representations were misleading, as well as when, where, and how they were misleading.")). Here, in contrast, Plaintiffs have not alleged the relevant *where*, *what*, and *when* of the alleged misleading "partial representation," as discussed above.

*Third*, even though the FAC contains no allegation that Plaintiffs ever read or heard any alleged "partial representations" by Patreon, they nevertheless contend that their Deception Claims should survive because Patreon previously argued that Plaintiffs "consented" to Patreon's Terms of Use and Privacy Policy. (Dkt. 51 at 25 (citing Dkt. 21 at 11-12)). This argument fails for three independent reasons: (1) when Patreon asserted that Plaintiffs "consented" to Patreon's Terms and Use and Privacy Policy (which they did by clicking a button to manifest their consent), it was not asserting that Plaintiffs actually *read* Patreon's Terms of Use or Privacy Policy; (2) a motion to dismiss tests the sufficiency of the complaint, and nowhere in the FAC do Plaintiffs allege they read Patreon's Terms of Use or Privacy

Policy; and (3) nowhere in the FAC do Plaintiffs allege that Patreon's Terms of Use or Privacy Policy contain misleading "partial representations" that form the basis of their claims.

*Fourth*, Plaintiffs suggest they have adequately alleged causation because the FAC contains an allegation that "if Patreon had disclosed the truth about its information sharing practices with Meta, they would have learned about it (¶ 106)." (Dkt. 51 at 25). Plaintiffs are mistaken. FAC paragraph 106 does *not* contain the allegation described in the opposition brief. Rather, it states, "Patreon had ample means and opportunities to alert California Plaintiffs and Subclass members to the fact that it shares Users' FIDs and viewing content with Meta" and that "[f]or example, Patreon could have disclosed this information in its Terms of Use, Privacy Policy, Data Practices, or Cookie Policy." Although Plaintiffs allege that Patreon "could have" disclosed this information in its Terms of Use and Privacy Policy (Complaint ¶ 106), they do *not* allege they ever *read* Patreon's Terms of Use or Policy. Thus, Plaintiffs have not plausibly alleged that had the allegedly omitted information been disclosed, they would have learned about it.

Moreover, even if the FAC did contain an allegation that "if Patreon had disclosed the truth about its information sharing practices with Meta, they would have learned about it" (and it does not), Plaintiffs still would be required to allege *facts* to support that allegation – which they have not done. Further, Plaintiffs would be required to allege that they read (or heard) the alleged "partial representation" that was rendered misleading by the alleged omission, in order to plausibly allege (1) Patreon *owed to Plaintiffs a duty to disclose* facts based on the alleged misleading "partial misrepresentation," and (2) *causation* (*i.e.*, that Patreon's alleged "partial representation" and failure to disclose other information that made the partial representation misleading caused Plaintiffs harm). Again, Plaintiffs do not allege they read (or heard) the alleged partial representation.

Because Plaintiffs do not allege the *where*, *what*, and *when* of the alleged misleading "partial representation," and because they do not allege causation, the Deception Claims should be dismissed for failure to satisfy Rule 9(b)'s heightened pleading standard.

## III.   CONCLUSION

For all the foregoing reasons, the Court should dismiss Plaintiffs' claims under the VPPA, the CLRA, and the "fraud" prong of the UCL, with prejudice, under Rule 12(b)(6).

1    Dated:  January 20, 2023                    Respectfully submitted,

2                                                THE NORTON LAW FIRM PC

3                                                */s/ Fred Norton*
4                                                Fred Norton

5                                                Attorneys for Defendant
6                                                PATREON, INC.