# EXHIBIT 18



Fred Norton
fnorton@nortonlaw.com
510-906-4901

September 8, 2023

**VIA E-MAIL**

Brian M. Boynton
Lesley Farby
Leslie Cooper Vigen
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street NW
Washington, DC 20005

      Re:    *Stark v. Patreon, Inc., No. 3:22-cv-03131-JCS*

Leslie,

    We have reviewed the United States's objections and responses to defendants Patreon's Requests for Admissions and Requests for Production. The government has refused to provide any responses at all, other than to refer us to the Senate Report concerning the legislative history of the Video Privacy Protection Act.

    Please let me know when you are available next week to meet and confer on these responses by videoconference, as required by Judge Spero's standing order in civil cases. I will not try to address all of our disagreements with your objections in this letter – that is why Judge Spero requires a meet-and-confer in person or by video – but in the interests of meeting productively, I will address some of the more substantial issues here.

**Objections Concerning both RFAs and RFPs**

    *The United States is a party subject to party discovery.* With respect to both sets of discovery, the United States has taken the position that it has no obligation to respond to discovery in a case in which it has sought and obtained leave to intervene under Federal Rule of Civil Procedure 24 for the purpose of defending the constitutionality of a federal statute. In support, you cite 28 U.S.C. section 2403(a), note that it applies only to an action "to which the United States … is not a party," and argue that the United States thus need not respond to party discovery. But Section 2403 is the provision that allows the United States to choose to ***become a party***, as you have done here. Having intervened, is a party and parties must submit to discovery.

    I note that you cite no case law in support of your argument that Rule 24 intervention

L. Vigen
September 8, 2023
Page 2

does not subject the intervenor to discovery. In fact, the law is the opposite. "Intervenors become full-blown parties to litigation …." *Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1232 (D.C. Cir. 2018). Thus, as courts here in the Northern District have observed, "[o]nce a party has intervened, it is subject to discovery obligations under Rules 30 and 34 just like a party; thus, 'there is more ready availability of discovery' from an intervenor than a non-party." *Fujikura Ltd. v. Finisar Corp.,* No. 15MC80110HRLJSC, 2015 WL 5782351, at *4 (N.D. Cal. Oct. 5, 2015) (quoting *Nikon Corp. v. ASM Lithography B.V.*, 222 F.R.D. 647, 650 (N.D. Cal. 2004).) *See also Sec. & Exch. Comm'n v. Chen*, No. CV157425RGKPLAX, 2016 WL 3598108, at *4 (C.D. Cal. Feb. 4, 2016) ("as interveners, Zhao and Ally have full party status, including the right to engage in discovery — and to be subject to discovery"); *La Union Del Pueblo Entero v. Abbott*, No. SA-21-CV-00844-XR, 2022 WL 17574079, at *5 (W.D. Tex. Dec. 9, 2022) ("Having elected to enter this case as parties, rather than as amici, Defendant Intervenors cannot avoid their discovery obligations merely because participating in this litigation is inconvenient."). This is true of government entities that intervene under Rule 24 – as the United States did here – just like private persons who intervene under that same Rule. Please withdraw this objection.

*The United States of America, not just the "litigating components of the United States Department of Justice," is the party that intervened and must respond to discovery.* You have also objected to the definition of YOU and YOUR as "the United States of America," as "vague, ambiguous, unduly burdensome, and disproportionate to the needs of the case." We disagree. That is precisely how you referred to the intervening party in your notice of intervention, Dkt. 49-1. You propose to limit your response to "the litigating components of the United States Department of Justice." We do not agree to this limitation. *First*, it is unclear what you say the "litigating components" of DOJ are. *Second*, DOJ is not the intervening party; the "United States of America" is. It is no more appropriate for you to limit your responses to information held by the Department of Justice than it would be for Patreon to limit its responses to information held by its outside counsel, The Norton Law Firm. *Third*, the VPPA imposes limits on disclosures to government agencies, above and beyond DOJ, that have investigatory and subpoena powers, and the VPPA's limitations and burdens on those disclosures are relevant to the overbreadth argument Patreon raises.

*Your objections to burden are overstated in light of the narrowness of the requests, the availability of search terms, and the databases and resources available to the United States.* In addition, you have made repeated objections to burden, asserting that it is not possible for the United States to respond to RFAs or requests for documents that would show the extent to which the United States has obtained information subject to the VPPA through search warrants, court orders, and voluntary disclosures. Your burden objections are overstated.

*First*, the fact that a particular person viewed a particular video is likely relevant only to specific categories of crimes (e.g., child pornography, copyright infringement, support of terrorist organizations, bomb-making instructional videos). As a result, your searches can be tailored to investigations of crimes subject to specific statutes. Furthermore, for particular crimes you may be able to focus searches on specific units of federal agencies that are

L. Vigen
September 8, 2023
Page 3

responsible for investigating those crimes (*e.g.*, the Federal Bureau of Investigation Child Exploitation Operational Unit, the Violent Crimes Section Crimes Against Children and Human Trafficking Unit, the Criminal Division Child Exploitation and Obscenity Section, the Office of Justice Programs Office of Juvenile Justice and Delinquency Prevention (OJJDP), the U.S. Marshals Service Sex Offender Investigations Branch, the National Security Division Counterterrorism Section, etc.). This is not intended to be an exhaustive list as the United States, not Patreon, is charged with knowing which agencies and divisions of the government are likely to have responsive documents, and to search for them.

*Second*, only disclosures by video tape service providers are relevant, such that it should be possible to agree on a list of video distribution companies to use as search terms. While that list is necessarily long (it would include all electronic service providers that have made reports to NCMEC as identified on the NCMEC website, plus all defendants in pending VPPA class action lawsuits, plus a reasonable list of well known video rental and distribution companies), searches for those terms could be conducted using automated processes.

*Third*, the government can lawfully obtain information subject to the VPPA only by providing prior notice to the consumer and obtaining a court order pursuant to 18 U.S.C. § 2710(b)(3). This a sufficiently specific process that the United States should not encounter significant difficulty in identifying the occasions where it has invoked Section 2710(b)(3) to obtain information about a particular consumer's video-watching history.

*Fourth*, the United States has already developed – and boasted about – sophisticated software tools that it uses to "organiz[e] the huge amount of unstructured data from legal warrant returns" specifically to fight online child exploitation. *See* Department of Homeland Security, 2022 Year in Review, available at https://www.dhs.gov/science-and-technology/st-2022-year-review. There is no apparent reason why these tools – or similar ones – could not be used to respond to these requests.

*Fifth*, the government already has access to databases that collect and share information from child pornography investigations as well as other crimes. For example, the ICAC Data System is an automated system used by federal, state, and local law enforcement offices to investigate and prosecute child exploitation cases. The ICAC Data System allows users to contribute and access data (e.g. name, alias, email address, IP address of perpetrator and related information) to resolve case conflicts. This system alerts the registered user if information has been collected on a potential perpetrator in other systems that store information on crimes against children. The system also informs the user of other law enforcement agencies working on a case involving the perpetrator. This database was created pursuant to the PROTECT Our Children Act of 2008, which required the Attorney General to develop a National Internet Crimes Against Children Data System, an online data system to include information-sharing capacity, case deconfliction, and other capabilities. *See* United States Government Accountability Office, *Online Exploitation of Children*, GAO-23-105260 (December 2022), at 23 (available at https://www.gao.gov/assets/gao-23-105260.pdf). In addition, the GAO reports that federal agencies also have "specific case management systems to keep track of cases within their own

**299 Third Street, Suite 200, Oakland, California 94607**

L. Vigen
September 8, 2023
Page 4

agencies." *Id.*  As yet another example, the FBI maintains N-Dex, a database of criminal justice records submitted by agencies nationwide.  It includes, among other records, warrants, and includes a "keyword search feature that works like a search engine platform, combing through the database and returning all queries containing the queried keyword(s)."  *See* J. Fisher, N. Lemal-Stefanovich, "The National Data Exchange (N-Dex):  A Leader in Information Sharing," FBI Law Enforcement Bulletin (Feb. 8, 2022), available at https://leb.fbi.gov/articles/featured-articles/the-national-data-exchange-n-dex-a-leader-in-information-sharing.

*Sixth*, in some instances we have sought to further minimize the burden on the government by limiting the request to "documents sufficient to show" the number of particular disclosures or request for disclosures.  Such requests potentially can be satisfied with hit reports from sufficiently detailed searches of government document repositories.[1]

*Seventh*, even if a given request would be unduly burdensome to respond to despite all of the points made above, we are open to discussing reasonable limitations on scope and/or time frame.

**Objections Concerning Specific RFAs**

**RFAs 1-7.**  These Requests are relevant to Patreon's argument that the VPPA does not further a purported interest in privacy by narrowly tailored means.  Specifically, other federal statutes that concern consumer privacy as it relates to video-watching and electronic communications are adequate to protect any such asserted interest in privacy but do not impose the same burdens that the VPPA does.

- *First*, you object that these RFAs seek the admission of a legal conclusion; they do not.  Each seeks admission of facts.  As Rule 36 expressly states, an RFA may seek an admission as to "facts, the application of law to fact, or opinions about either."  In particular, we are asking whether specific statutes adequately protect consumer privacy interests – a question of fact – and whether those specific statutes include in them particular requirements for obtaining consent – also a question of fact.  This is nothing like the case you cite, *Music Grp. Macao Com. Offshore Ltd. v. Foote,* No. 14-cv-03078, 2015 WL 579688 (N.D. Cal. Feb. 11, 2015), where the propounding party asked for an admission that "the attack on your computer network and communication infrastructure referred to in the Complaint constituted an *illegal act*."

- *Second*, you object that these other consumer privacy statutes are irrelevant. We disagree.  The provisions of those laws demonstrate that the United States could further – and has furthered – interests in privacy by means less restrictive than the VPPA imposes, a factor

---

[1] These narrower requests also dispense with the government's privacy and secrecy objections, as there does not appear to be any need to produce warrant materials or grand jury matters where the request seeks only documents sufficient to show the number of occasions an event has occurred.

**299 Third Street, Suite 200, Oakland, California 94607**

L. Vigen
September 8, 2023
Page 5

    the Court must consider in this case on the constitutionality issue on which the United States has intervened.

- ***Third***, you object that the information sought by the RFAs is beyond the scope of the constitutionality of the VPPA, but for the reasons stated above, it is not.

- ***Fourth***, you object that we, like you, have access to these other statutes, but that is not grounds to object to an RFA. The purpose of an RFA is to eliminate matters from dispute to promote the efficiency of litigation and trial. The question is not whether we have access to the same information, but rather whether the United States disputes what that information shows.

**RFAs 8, 9.** Requests 8 and 9 ask for admissions that the VPPA is the only statute in the US Code that requires that consent be given in a particular form, much less a separate form. This is relevant to Patreon's argument that the VPPA is not narrowly tailored to the claimed interest in privacy but imposes excessive, unnecessary burdens on speech even when disclosure has been consented to.

- Once again, you object that this request calls for a legal conclusion; it does not. It asks for a comparison of the clauses of the VPPA with other federal privacy statutes that have consent requirements.

- ***Second***, you once again assert that we have equal access to the US Code. As explained above, this is not a proper objection to an RFA.

- ***Third***, you object that these requests would require the United States to review the entire US Code, which you object would be unduly burdensome. In fact, you would need only to search the US Code, which is easily accomplished and which Patreon has already done before propounding these requests. The United States can do the same.

**RFAs 10-12.** These requests seek admissions that the United States has in fact executed search warrants, executed grand jury subpoenas, and obtained court orders that seek "personally identifiable information" of "consumers" from "video tape service providers" as those terms are defined in 18 U.S.C. § 2710.

- Contrary to your objections, these requests for admission do not seek any search warrant materials, pre-indictment or otherwise, nor do they seek disclosure of material before a grand jury. They merely require the government to admit or deny that there was at least ***one*** such search warrant, grand jury subpoena, or court order – without disclosing any specifics – since the VPPA was enacted.

- ***Second***, you object on burden grounds that you cannot respond without searching 34 years of records from 94 judicial districts. Not so. It is true that a denial might require such a search, but if the United States is aware of a single such warrant, grand jury

L. Vigen
September 8, 2023
Page 6

- subpoena, or court order, in a single judicial district, in the last 34 years, it can admit without conducting any additional search. Moreover, as explained above, the United States has numerous databases and search tools it already uses to maintain this type of information, which it can rely upon to respond to these requests. To the extent the time frame is an obstacle to a response, we are willing to meet and confer to agree on a time frame for which the United States can admit or deny.

- *Third*, you object that the request is irrelevant because disclosures pursuant to search warrants, grand jury subpoenas, and court orders are not prohibited by the VPPA. That is not entirely correct. Disclosures pursuant to search warrants are not prohibited by the VPPA so long as the government complies with 18 U.S.C. § 2710(b)(3). But we believe that the government routinely does not comply with that subsection's requirements of prior notice to a consumer because of the burdens that compliance would impose on law enforcement, demonstrating yet another way in which the VPPA is unconstitutionally overbroad.

**RFA 13.** This request seeks an admission that the United States government has never, since January 1, 1989, sought a court order from any United States District Court pursuant to the procedures set forth in 18 U.S.C. § 2710(b)(3).

- *First*, you object that a response might impermissibly disclose investigative techniques and procedures. This objection makes no sense. Section 2710(b)(3) *requires* the government to obtain a court order when it applies – and requires the government to provide prior notice to the consumer of its request. If the government has sought PII subject to the VPPA, it either complied with Section 2710(b)(3) (in which case you would deny the RFA) or it has never complied with Section 2710(b)(3) (in which case you will admit the RFA). I note here we have conducted a search of all reported decisions, all unreported decisions on Westlaw, and all orders by federal courts available through Lex Machina (a search tool for PACER dockets). Our research has located *zero* court orders and motions under Section 2710(b)(3), and we expect that after a reasonable inquiry the United States will have to admit RFA 13.

- As with prior requests, you object on burden grounds that you cannot respond without searching 34 years of records from 94 judicial districts. As with RFAs 10-12, we do not agree. It is true that a denial might require such a search (assisted by the databases and tools we described above), but if the United States is aware of a single motion in a single judicial district, in the last 34 years, it can simply deny without conducting any additional search. As with RFAs 10-12, if time frame is an obstacle to a response, we are willing to meet and confer to agree on a time frame for which the United States can admit or deny this request.

- Again, you object that the disclosures subject to Section 2710(b)(3) are permitted by the VPPA and thus irrelevant to the First Amendment issue. Again, we disagree. While the VPPA does have permissible disclosures, they are permissible only if one complies with

L. Vigen
September 8, 2023
Page 7

       the other requirement of the VPPA, here the requirements of Section 2710(b)(3).  If, as we believe, the government never complies with Section 2710(b)(3), those permitted disclosures do not exist in the real world, and the VPPA unconstitutionally and unreasonably prohibits reasonable and socially valuable disclosures to law enforcement and regulatory agencies.  Moreover, if a motion under Section 2710(b) were *denied*, that would be yet another example of the VPPA prohibiting a disclosure that has a valuable social purpose that should be protected by the First Amendment.

**RFAs 14-19.**  In the interests of compromise, we withdraw these six requests.

**RFAs 20-23**.  Each of these request admissions related to the United States' inability to quantify the amount of commercial, non-commercial, and constitutionally protected speech that is subject to the VPPA.

- *First*, you object that these requests seek legal conclusions.  That is not correct.  As the Court has ruled, the overbreadth analysis requires a comparison between the amount of speech that the VPPA improperly prohibits, and the statute's legitimate sweep.  The United States has argued that –as a factual matter – most of the speech subject to the VPPA is commercial speech that the VPPA permissibly regulates, and that the unconstitutional applications of the statute are – as a factual matter – infrequent or nonexistent.  These requests seek admissions that the United States has no ability to quantify those claims.

- *Second*, you object that each request is "argumentative, vague, calls for speculation, and seeks an admission that is beyond the permissible scope of Rule 36."  We disagree with that (vague) boilerplate objection and look forward to a discussion of why you believe that objection is sound when we meet and confer.

## Objections Concerning Specific RFPs

**RFP 1.**  This request seeks the annual reports that 18 U.S.C. § 2702(d) requires the Attorney General of the United States to submit to the House and Senate Judiciary Committees.  You object that the request is irrelevant because it concerns a different section of the US Code than the VPPA, and claim that the request id beyond the scope of the United States' intervention in this case to defend the constitutionality of the VPPA.  Both assertions are mistaken.

Section 2702 generally prohibits disclosures of electronic communications by electronic communications providers (which in some cases may also be "video tape service providers" under the VPPA).  Section 2702(b)(8) allows such disclosures "if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of communications relating to the emergency."  Section 2702(d) requires the Attorney General to report how many such disclosures were made each year.  While Section 2702 sensibly has an exception for voluntary, good faith disclosures of private communications to avoid death or serious physical injury, the VPPA does not.  The

L. Vigen
September 8, 2023
Page 8

Section 2702(d) reports demonstrate that such voluntary disclosures of private communications happen in the real world and the frequency with which they happen, supporting Patreon's contention that the VPPA's prohibition on similar (or identical) disclosures that contain video is overbroad and not narrowly tailored to an interest in privacy. This information is relevant.

**RFPs 2-3.** These requests seek the actual motions filed by the United States pursuant to Section 2710(b)(3) concerning search warrants, as well as documents sufficient to show the number of such motions filed, over the last ten years.

As noted above, our research suggests that the United States has ***never*** filed such a motion, despite our belief that the United States has sought and obtained disclosures subject to the VPPA in many cases. For example, in *United States v. Dadamuratov*, No. 5:08CR18/RS, 2008 WL 11438269 (N.D. Fla. Aug. 13, 2008), a prosecution for felony copyright infringement, the government established the defendant's willfulness by offering, among other things, a "video rental log showing that Defendant rented movies" to a specific named person (not a defendant in the case), as well as "Defendant's DVD rental history at the Movie Gallery video rental store which shows that Defendant had a knowledge of what an authentic DVD looked like." *Id.* at *1.[2] Each of these exhibits was a disclosure, to the government, by a video store, of particular videos watched by a specific identified customer. Yet there is no suggestion anywhere in the docket of that case that the government ever complied with Section 2710(b)(3).

Turning to your objections:

- ***First***, you object again that such records "may" impermissibly reveal investigatory records, techniques, and procedures. Again, this makes no sense. Where Section 2710(b) applies, prior notice must be given to the consumer, so any disclosure made in the motion has already been made to the subject of the investigation. Furthermore, the Section 2710(b) motion is not the search warrant itself, nor does it necessarily include search warrant materials. In addition, your objection here appears to be solely directed to pre-indictment search warrants and search warrant materials, which would not prevent you from producing such motions filed in cases that have already reached the indictment stage.

- ***Second***, you object that the request is unduly burdensome because it "would potentially require the United States to gather information about every search warrant issued over a period of more than 10 years, related to any number of criminal investigations—both closed and open, and including those that resulted in indictments and those that did not— by countless judges in each of 94 federal judicial districts." The request is far narrower,

---

[2] *See also, e.g.*, *United States v. Williams*, No. ARMY9700167, 1999 WL 35021303, at *2 (A. Ct. Crim. App. June 14, 1999) ("During the government's presentation on the merits, the video store manager reviewed a two page 'rental history' linked to appellant.")

L. Vigen
September 8, 2023
Page 9

- and imposes a far smaller burden.  In addition to the arguments on burden above, the criminal division of each of the United States Attorneys presumably maintains electronic files of motions it has filed and there is only one Section 2710(b) in the United States Criminal Code.  Running a word search for 2710 or 2710(b) or 2710(b)(3) in the electronic repositories of those files is a minimal burden even for a third party responding to a subpoena; here the United States has voluntarily made itself a party.

- *Third*, you object that disclosures permitted by a court order after filing a Section 2710(b) motion are allowed under the VPPA, so these motions would be irrelevant.  Again, we disagree.  It is relevant if the United States never, or only rarely, files these motions despite frequently seeking information that the VPPA protects from disclosure.  It is also relevant if the United States files such motions believing that the disclosures serve an important law enforcement purpose, but the motions are denied and the VPPA prevents disclosure.

**RFPs 4-5.**  These requests seek the actual search warrants, and documents sufficient to show the number of search warrants, obtained by the United States in the last ten years that sought from a "video tape service provider" "personally identifiable information" concerning a "consumer."

- Once again you object that warrants, particularly pre-indictment warrants, are entitled to secrecy.  Once again, however, any responsive warrant would have been subject to Section 2710(b) requiring prior notice to the consumer and a court order finding that the requested information was relevant to a legitimate law enforcement purpose.  Once such notice had been given, a motion had been filed, and an order had issued, it is hard to see what would reman confidential as to the underlying warrant.  However, in the interest of compromise, Patreon will limit these requests to warrants for which an indictment had issued as of the date Patreon served its requests.

- You also repeat your burden objection.  Once again it is overstated.  In addition to the points we have already made on burden, if the United States has been complying with the VPPA, each time it has sought information protected by the VPPA through a warrant, it has also provided notice and sought an order under Section 2710(b).  It does not seem especially difficult for the criminal division of each of the United States Attorneys to search its files for Section 2710(b) motions related to warrants, and then identify those warrants.   To the extent that the United States has obtained responsive warrants without complying with Section 2710(b)(3), it would have done so only in specific types of cases described above, and could minimize the burden by conducting searches using agreed upon search terms that include major video tape service providers along with other terms that are likely to correspond to disclosures subject to the VPPA.

- Again, you object that the VPPA does not apply to search warrants; we contend that it applies to all search warrants for which the government has not complied with Section 2710(b)(3).

**299 Third Street, Suite 200, Oakland, California 94607**

L. Vigen
September 8, 2023
Page 10

**RFP 6.**  This request seeks documents sufficient to show the number of voluntary tips or reports that LAW ENFORCEMENT AGENCIES of the United States government received, from January 1, 2013 to the present, from any "video tape service provider" that included "personally identifiable information" concerning a "consumer" (as those terms are defined in 18 U.S.C. § 2710(a)(1)-(4)).  This information is relevant because voluntary tips or reports, as opposed to information obtained through a court order such as a warrant or grand jury subpoena in compliance with Section 2710(b)(3), are prohibited by the VPPA yet protected by the First Amendment, and thus are clear additional examples of the statute's overbreadth.

- You have objected that the definition of LAW ENFORCEMENT AGENCIES, which is taken verbatim from a federal statute (35 U.S.C. § 10534(c)(2)), is overbroad.  In reliance on that objection, you have sought to limit your response to "the litigating components of the United States Department of Justice."  As noted above, we do not agree to this objection or this limitation.  The United States of America intervened in this case and is now a party advocating a position on the merits.  To the extent that agencies of the United States government, other than "the litigating components of the United States Department of Justice," possess information that is contrary to that position, it is plainly discoverable and must be produced.

- *Second,* you have also objected that the request is "extraordinarily overly burdensome, entirely disproportionate to the needs of this case, and virtually impossible to comply with."  Once again, these objections are overstated, for the reasons we have given above.

**RFPs 7-10.**  These requests seek documents on which the United States will rely in opposition to Patreon's First Amendment challenge.  You refuse to provide any documents, other than to refer Patreon to the Senate Report that accompanied the original enactment of the VPPA.  This is not sufficient.

- In response, you first object to any production in response to on the grounds that a "facial challenge to the constitutionality of a statute is a question of law," citing *United States v. Bynum*, 327 F.3d 986, 990 (9th Cir. 2003).  However, *Bynum* was not a First Amendment case.  It involved a claim that 18 U.S.C. § 666, which concerns bribery related to federal funds, was unconstitutional because it did not require a connection between the alleged criminal conduct and the federal funds.  *See id.* at 989.  It did not involve a claim that a statute was overbroad under the First Amendment.  As the Court has already held in this case, Patreon's overbreadth challenge requires development of a factual record to show that the VPPA's unconstitutional applications are substantial in relation to its legitimate sweep.

- *Second*, you assert that the United States "relies upon legal principles, arguments, and case law, not documents, to argue in support of the constitutionality of the VPPA."  We take this as a binding concession that the United States will not and cannot offer any evidence, at summary judgment or at trial, to attempt to refute Patreon's showing on this element.

L. Vigen
September 8, 2023
Page 11

- ***Third***, you object to responding to RFP 7 because you claim that Patreon has the burden of proving that the law is overbroad.  We disagree.  The Court has already held that the VPPA is subject to strict scrutiny, such that the government has the burden of showing that the law is constitutional.  That is exactly what the case *you cite* holds.  "When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011).  The subsequent language you quote from that decision – that "[t]he party challenging the law … generally must at least 'describe the instances of arguable overbreadth of the contested law,'" *id.* – is ***not*** a burden of proof.  The opinion even specifically states – in the portion of the quote that you inexplicably excised – that the party making the challenge "need not necessarily introduce admissible evidence of overbreadth." *Id.*  A party that has no duty to offer admissible evidence has no burden of proof.

- ***Fourth***, it makes no difference who has the burden of proof.  If the government intends to offer documentary evidence on this issue, it must produce it in discovery.  If it refuses, it forfeits the right to contest Patreon's evidence.

The requests that Patreon served on the United States are important to our challenge to the constitutionality of the VPPA, are relevant, and do not impose any undue burdens on the United States.  The United States has made itself a party to the litigation, and in this particular case, the United States uniquely possess information that is relevant to disputed issues of fact that bear on that issue.  If the United States simply refuses to participate in discovery, as you have done to date, we will have no choice but to move to compel.  I do hope you will reconsider.

I look forward to your prompt response and our meet-and-confer next week.

                           Very truly yours,

                           Fred Norton
                           THE NORTON LAW FIRM PC



**U.S. Department of Justice**

Civil Division, Federal Programs Branch

---

Leslie Cooper Vigen  
Senior Trial Counsel

Tel: (202) 305-0727  
Email: leslie.vigen@usdoj.gov

September 22, 2023

<u>By Email</u>

Fred Norton  
The Norton Law Firm  
299 Third Street  
Suite 200  
Oakland, CA 94607

Re: *Stark v. Patreon*, Case No. 3:22-cv-3131 (N.D. Cal.)

Dear Fred,

I write in response to your letter of September 8, 2023. This letter provides additional information about the bases for the government's responses and objections to Defendant's Requests for Admission and Requests for Production, proposes possible compromise solutions with respect to certain of our objections and your requests, and attempts to identify areas that do not appear to present ongoing disputes. For ease of reference, unless otherwise noted, I address the points from your September 8 letter in turn. Although this letter is not intended as an exhaustive response to your September 8 letter, we hope the additional information provided will help to resolve continuing points of disagreement—or at least limit their number and scope.

**<u>Responses Regarding General Objections</u>**

*First*, Defendant broadly contends that the United States is a party to this case generally subject to party discovery. This is incorrect to the extent that you dispute that the United States' participation in this matter is limited to the issue of the constitutionality of a federal statute. The United States exercised its right to intervene pursuant to 28 U.S.C. § 2403(a), which permits it to intervene in a matter "for presentation of evidence . . . and for argument on the question of constitutionality" alone. 28 U.S.C. § 2403(a); *see also* ECF No. 49 at 1 ("the United States of America hereby intervenes in this case for the limited purpose of defending the constitutionality of the Video Privacy Protection Act"). When the United States intervenes pursuant to 28 U.S.C. § 2403(a), it has "all the rights of a party and [is] subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts of the law *relating to the question of constitutionality*." 28 U.S.C. § 2403(a) (emphasis added). Therefore, although the United States has provided specific responses and objections to discovery requests that pertain to the constitutionality of the statute at issue, we do not agree that the United States is a full party to

this action generally subject to party discovery.[1] Because the United States has not refused to respond to any discovery request solely on this basis, however, we do not believe it presents a ripe point of contention requiring further resolution at this time.

*Second*, Defendant maintains that the "United States of America" must respond to discovery in this matter. We continue to have difficulty understanding what you mean by this. Your letter provides no additional specificity about the governmental entity or entities from which Defendant seeks discovery. Nor does Defendant acknowledge the obvious and extreme burden and expense, entirely disproportionate to the needs of the case, that would result from requiring undersigned counsel to search the *entire Executive Branch*—or the *entire federal government*—to provide responses and objections to Defendant's discovery requests. For these reasons, we continue to believe Defendant's use of the term "the United States" is vague, ambiguous, unduly burdensome, and disproportionate to the needs of the case.

In the absence of any limiting principles from Defendant, our view is that the proper interpretation of the term "the United States" in this context is the litigating components of the U.S. Department of Justice. As explained, the Attorney General has authority to intervene in a matter for the purpose of defending the constitutionality of a federal statute, *see* Fed. R. Civ. P. 5.1(c); *see also* 28 U.S.C. § 2403(a), and the Solicitor General decides whether to exercise that authority, *see* 28 C.F.R. § 0.21. The statute at issue here does not contemplate governmental enforcement, *see* 18 U.S.C. § 2710(c) (providing for "civil actions" by "[a]ny person aggrieved by any act of a person in violation of [the VPPA]"); as such, this litigation concerns only the U.S. Department of Justice, and no other federal agency has had any involvement in it. Moreover, the majority of your requests involve legal conclusions (a point we address further below) or court documents. Accordingly, the litigating components of the Department of Justice are the logical entity to respond to these requests in a manner that is proportional to the needs of the case and does not impose an undue burden or expense that would outweigh any likely benefit. *See* Fed. R. Civ. P. 26(b).

The litigating components of the U.S. Department of Justice refers to the components of the Department responsible for enforcing federal criminal and civil laws and representing the interests of the United States in court. *See* U.S. Dep't of Just., *Organization, Missions, and Functions Manual*, https://www.justice.gov/doj/organization-mission-and-functions-manual (last visited Sept. 15, 2023). This is distinct from the major investigative agencies—such as the Federal Bureau of Investigations, the Drug Enforcement Administration, and the Bureau of Alcohol, Tobacco, Firearms, and Explosives—which prevent and deter crime and arrest criminal suspects; the Federal Bureau of Prisons; the U.S. Marshals Service; and other Department of Justice components that lack a litigation function. *See id.* In preparing our responses and objections, we also consulted with the Executive Office for U.S. Attorneys, Office of Legislative Affairs, and the National Security Division of the U.S. Department of Justice.

---

[1] None of the cases Defendant cites for this proposition involves intervention by a governmental entity—state or federal—pursuant to 28 U.S.C. § 2403(a).

That said, in the interest of compromise and taking into account the substance of Defendant's requests, we have also consulted with the Federal Bureau of Investigations (FBI) in preparing this letter, and intend to include the FBI in our definition of "the United States" moving forward.

Should Defendant wish to seek discovery from any federal agency other than the U.S. Department of Justice, it is free to issue third-party discovery requests to that agency pursuant to the agency's individual regulations governing such requests.

**Responses Regarding Objections to Specific RFAs[2]**

**RFAs 1-7.** Our position that these requests seek admission of legal conclusions remains unchanged. Certain requests in this bucket (RFAs 1, 3, 5) ask whether a statute adequately protects the privacy interests of certain individuals. This is a legal question. *See, e.g.*, *Whalen v. Roe*, 429 U.S. 589, 600–02, 605 (1977) (holding that a New York statute creating a computerized database of individuals who obtained prescriptions for controlled substances sufficiently protected patients' privacy interests). The other requests in this bucket (RFAs 2, 4, 6, 7) ask the United States to interpret the meaning of several statutes—plainly a question of law. *See, e.g.*, *Embotteladora Electropura S.A. de C.V. v. Accutek Packaging Equip. Co., Inc.*, No. 16-cv-0724, 2017 WL 1550048, at *6 (S.D. Cal. May 1, 2017) (sustaining objection to request for admission that "ask[ed] Plaintiff for its interpretation of . . . [a] statute"); *see also Disability Rts. Council v. Wash. Metro. Area*, 234 F.R.D. 1, 3 (D.D.C. 2006) (sustaining objections to requests for admissions "asking plaintiffs to state their understanding of federal law"). Defendant can, of course, make legal arguments to the Court if it wishes. But the United States is not required to admit or deny such legal arguments. We request that Defendant consider withdrawing these requests.

**RFAs 8, 9.** Our position that these requests seek admission of legal conclusions likewise remains unchanged. Similar to Requests 2, 4, 6, and 7, Requests 8 and 9 ask the United States to admit the meaning of a statute, along with whether other statutes are interpreted similarly, which are undoubtedly questions of law. *See, e.g.*, *Embotteladora*, 2017 WL 1550048, at *6; *see also Disability Rts. Council*, 234 F.R.D. at 3. These are not proper subjects of a request for admission. We also request that Defendant consider withdrawing them.

What is more, Federal Rule of Civil Procedure 26(b)(1) states that, in determining the scope of permissible discovery, courts must take into account "the parties' relative access to information" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b)(2)(C) permits courts to limit the frequency or extent of discovery where the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." As we stated, Defendant has the same access to the U.S. Code as the United States. Providing a substantive response to the legal questions posed in Requests 8 and 9 would be unduly burdensome for the United States due to the extensive size of the U.S. Code and the fact that counsel for the government would not only have search the entire U.S.

---

[2] Because the burden of responding to different requests differs, we respond to your concerns about our burden objections as they relate to specific requests.

Code provisions, but potentially also case law interpreting it.  By your own account, Defendant has already incurred the time and expense to obtain the information it needs to make the legal arguments it intends to advance.  Under Rule 26(b), these considerations also weigh heavily against the United States providing any response to Requests 8 and 9.

**RFAs 10–12.**  Our position regarding these Requests remains unchanged, and we incorporate by reference our original objections to explain the law enforcement and grand-jury secrecy rationales we believe are more than sufficient to justify the United States objecting to providing any response to these RFAs.

I reiterate that these discovery requests are irrelevant because they pertain only to disclosures that would not be prohibited by the Video Privacy Protection Act (VPPA) pursuant to 18 U.S.C. § 2710(b)(2)(C).  That provision provides that "[a] video tape service provider may disclose personally identifiable information concerning any consumer . . . to a law enforcement agency pursuant to a warrant[,] . . . a grand jury subpoena, or a court order." 18 U.S.C. § 2710(b)(2)(C).  That statement is unqualified.  Thus, although the statute imposes separate requirements on the government when it seeks "[c]ourt orders authorizing disclosure" under Section 2710(b)(2)(C), *see* 18 U.S.C. § 2710(b)(3), a video tape service provider would not be liable for complying with such an order had the government not complied with these directives.

Moreover, Section 2710(b)(3) applies only to "court orders," which are listed separately from "warrant[s]" and "grand jury subpoena[s]" in Section 2710(b)(2)(C).  Under generally accepted rules of statutory construction, Section 2710(b)(3) does not apply to warrants or grand jury subpoenas.  *See, e.g.*, *United States v. Lopez*, 998 F.3d 431, 437 (9th Cir. 2021) ("The canon of consistent usage requires a court to presume that 'a given term is used to mean the same thing throughout a statute.'" (citation omitted)).  Indeed, it would make little sense for Congress to require law enforcement to alert a consumer—presumably the subject of a search warrant or grand jury subpoena—about that warrant or subpoena in advance.  Finally, the government has been unable to find a *single case* in which a VPPA claim was brought—even unsuccessfully—after disclosure pursuant to a warrant, grand jury subpoena, or court order.  For all of these reasons, in addition to those stated in the United States' original objections, these requests seek irrelevant information.

Given the law enforcement concerns and the lack of relevance, the burden in obtaining any responses to these requests easily outweighs any possible benefit.

**RFA 13.**  For the same reasons explained in our additional response regarding Requests 11 and 12, this request seeks irrelevant information.

Obtaining an accurate understanding of whether the United States can admit or deny this request would entail an undue burden.  Although you point to the availability of publicly available databases to search for some court orders, the searches you describe would not capture motions or orders filed under seal, or in sealed dockets.  But most information gathering in criminal cases, particularly pre-indictment, is conducted under seal.  This compounds the difficulty in preparing an accurate response here, as does the fact that any such search would require reaching out to each of the litigating components of the U.S. Department of Justice, as

well as all 93 U.S. Attorney's Offices, about any motions filed over a period of 34 years. Even limiting the time frame involved would not resolve the burden of seeking information that is not maintained in a centralized database or a searchable format.

Given the lack of relevance of this information combined with the burden of obtaining it, the burden of providing a response here far outweighs any benefit.

**RFAs 14–19.** We appreciate and accept your offer to withdraw these requests.

**RFAs 20–23.** We continue to believe that each of these requests calls for admission of a legal conclusion. All of these requests are all premised on legal questions: whether certain speech is "commercial" or "non-commercial," *see, e.g.*, *Boelter v. Hearst Commc's, Inc.* (*Hearst I*), 192 F. Supp. 3d 427, 445–46 (S.D.N.Y. 2016) (deciding, as a matter of law, whether speech was commercial); in the case of Requests 20, 21, and 22, whether certain speech is subject to the VPPA or not, *see, e.g.*, *Eichenberger v. ESPN*, 876 F.3d 979, 986 (9th Cir. 2017) (deciding, as a matter of law, whether alleged disclosure was subject to the VPPA); and in the case of Request 22, whether certain speech is protected under the First Amendment, *see, e.g.*, *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 790–99 (2011) (deciding, as a matter of law, whether violent video games were protected under the First Amendment). The United States could neither admit nor deny any of these requests without first drawing conclusions—or making assumptions—about these legal questions.

We also maintain that Requests 20–23 are vague, call for speculation, are argumentative, and seek information that is beyond the scope of Federal Rule of Civil Procedure 36. As to vagueness and speculation, it is unclear what you seek in requesting that the United States "quantify the amount of speech," and each of these requests requires the United States to guess as to hypothetical situations, which is beyond the purview of Rule 36. *See, e.g.*, *Evans v. Tilton*, No. 07-cv-1814, 2010 WL 1610988, at *4 (E.D. Cal. Apr. 21, 2010) (declining to compel further responses to requests for admission that constituted incomplete hypotheticals); *Jones v. Crum & Forster Specialty Ins. Co.*, No. 22-cv-25, 2022 WL 17587568, at *2 (E.D.N.C. Nov. 18, 2022) ("When a request for admission asks a respondent to predict an outcome based on a mix of law and hypothetical facts . . . asks too much."). Request 23 is premised on the speculative assumption that any speech has been chilled by the VPPA. At bottom, requests that ask the United States to admit that it cannot provide a concrete answer to a vaguely worded hypothetical question premised on legal conclusions are argumentative and beyond the scope of Rule 36(a)(1). We request that Defendant withdraw them.

**Responses Regarding Objections to Specific RFPs**

**RFP 1.** Without waiver of the objection to the relevance of the requested documents, and in the spirit of compromise, the United States agrees to conduct a reasonable search for, and produce, reports submitted to Congress pursuant to 18 U.S.C. § 2702(d) from January 1, 2013 to the present.

**RFPs 2–3.** As explained, Section 2710(b)(3) applies to "court orders," not search warrants, consistent with the plain language of the VPPA. Moreover, search warrants are sought and obtained in filings docketed separately from indictments, which are typically sealed.[3] Finally, for the reasons explained above, these requests seek only irrelevant information because they concern information permitted to be disclosed under the VPPA.

**RFPs 4–5.** For the reasons explained in our response regarding RFAs 10–12 and in our responses and objections, we maintain our objection to providing any response to Requests 4 and 5 on the grounds of law enforcement concerns, relevancy, and undue burden.

**RFP 6.** Our position remains that the definition of "law enforcement agencies" Defendants provided—which would include not only federal agencies outside of the Department of Justice, but also state and local law enforcement agencies—is vague, extraordinarily burdensome, and entirely disproportionate to the needs of this case. As explained, however, we agree to include the FBI in our definition of "the United States" and have consulted with the FBI on the response to this RFP.

In order to assess the burden of obtaining any potentially responsive documents, the FBI has conducted a reasonably diligent inquiry to determine whether it could provide the number of voluntary tips or reports received, from January 1, 2013 to the present, from any "video tape service provider" that included "personally identifiable information" concerning a "consumer" (as those terms are defined in 18 U.S.C. § 2710(a)). No records reflecting any responsive tips or reports recorded by the FBI were located.

As part of the inquiry, FBI consulted with the divisions and units responsible for maintaining the FBI's central databases, case management systems, or other systems of records to determine if there was a mechanism for tracking or searching for the type of specific voluntary tips or reports containing the type of the information defined by 18 U.S.C. § 2710. This included the system referenced in the September 8 letter, the National Data Exchange (N-Dex), as well as other similar systems maintained by the FBI.[4] There is no reasonable way to centrally search or filter through those databases for the types of tips or reports described in Request 6.

In addition, FBI consulted with the units who are also most likely to have received external tips or reports, such as the National Threat Operations Center and the Internet Crime

---

[3] The two lone cases you cite for the proposition that the government obtains information about consumers' video viewing habits in violation of the VPPA demonstrate no such thing. Neither indicates how the video rental history introduced into evidence was obtained.

[4] You offer other suggestions for limiting our searches in responding to this and other requests, but these suggestions are unrealistic. For example, you point to the "ICAC Data System," which is an automated information system run by the West Virginia State Police that helps to resolve case conflicts involving potential perpetrators of crimes against children. *See* U.S. Gov't Accountability Office, *Online Exploitation of Children*, GAO-23-105260 (Dec. 2022). This system is not within the possession, custody, or control of the U.S. Department of Justice, and it is unclear what relevance it has here.

Complaint Center, and other similar units. Those units do not track the type of voluntary tips sought in the Request and indicated that they were not aware of any potentially responsive tips or reports received. Further, the FBI consulted with its divisions and units that are assigned to work on the specific types of investigations that the September 8 letter identified as most likely to involve the type of information covered by 18 U.S.C. § 2710, such as child exploitation, support of terrorist organizations, etc., as well as other similar units that conceivably may utilize such information, such as the Behavioral Analysis Unit or the Operational Technology Division. Every response indicated that the specific type of responsive information is not typically voluntarily provided to the FBI by video tape service providers, and that the FBI does not typically seek to obtain such information from video tape service providers voluntarily. No division or unit consulted with was aware of any potentially responsive tip or report received since January 1, 2013.

While the FBI conducted a reasonably diligent search as outlined above, it is conceivable that some employee has received "personally identifiable information," provided voluntarily, concerning a customer from a video tape service provider in the last decade. However, further inquiry to demonstrate that no responsive voluntary tips or reports existed would be extraordinarily burdensome and still unlikely to be conclusive. It would require the FBI to poll its 56 field offices to determine if any individual agent had received a responsive tip or report over more than a decade in any type of investigation—whether that information was utilized in a criminal investigation or not.

In addition, even if the burden did not outweigh the benefit in undertaking any further research into this inquiry, as explained in our responses and objections, any documentation of voluntary tips or reports provided to law enforcement that did exist would impermissibly reveal investigatory records compiled for law enforcement purposes, disclose investigative techniques and procedures the effectiveness of which would thereby be impaired, or potentially interfere with ongoing criminal investigations or other proceedings. *See* 28 C.F.R. § 16.26(b)(5). Any responsive document that existed may also be protected from disclosure by the law enforcement privilege.

**RFPs 7–10.** In response to Requests 7–10, the United States has informed Defendant that it intends to rely on legislative history indicating Congress's rationale for enacting the VPPA, along with legal principles, arguments, and case law to argue in support of the constitutionality of the VPPA. This is not a refusal to respond to this request. Nor is it a "binding concession that the United States will not and cannot offer any evidence." *Contra* Sept. 8 Ltr. at 10. Instead, the United States has indicated that it plans to rely upon the Senate Report cited in its responses and objections, along with legal arguments and relevant case law. This is the type of information courts look to when resolving facial challenges to the constitutionality of statutes under the First Amendment.[5] *See, e.g.*, *Moser v. F.C.C.*,

---

[5] First Amendment facial challenges, like other constitutional facial challenges, present questions of law. *See, e.g.*, *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1504 (10th Cir. 1995) ("[A] first amendment challenge to the facial validity of a statute is a strictly legal question; it does not involve the application of the statute in a specific factual setting." (citation

46 F.3d 970, 974 (9th Cir. 1995) (looking to case law and legislative history to adjudicate First Amendment facial challenge); *Boelter v. Hearst Commc's, Inc.* (*Hearst II*), 269 F. Supp. 3d 172, 197–98 (S.D.N.Y. 2017) (same). It is also what the United States anticipates relying on in response to any motion for summary judgment concerning the constitutionality of the VPPA under the First Amendment. Because we have responded to these requests substantively, we do not believe they present a subject of ongoing dispute.

      I hope the information provided in this letter will help to resolve our ongoing disputes—or at least to clarify any lingering points of disagreement and limit their number and scope. If it would be useful to meet and confer about any of these points, I would be happy to do so.

                                  Sincerely,

                                  /s/

                                  Leslie Cooper Vigen

---

omitted)); *Final Exit Network, Inc. v. Ellison*, 370 F. Supp. 3d 995, 1017 (D. Minn. 2019) (recognizing that whether a statute is facially unconstitutional under the First Amendment is a question of law); *Doe v. City of San Diego*, 313 F. Supp. 3d 1212, 1217 (S.D. Cal. 2018) ("a facial attack does not raise questions of fact related to the enforcement of the statute in a particular instance" (citing *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 133 n.10 (1992))).