# EXHIBIT 71

1  Nathan Walker (SBN 206128)
   nwalker@nortonlaw.com
2  Gil Walton (SBN 324133)
   gwalton@nortonlaw.com
3  THE NORTON LAW FIRM PC
   299 Third Street, Suite 200
4  Oakland, CA 94607
   Telephone: (510) 906-4900
5
   Attorneys for Plaintiff
6  PATREON, INC.

ELECTRONICALLY
F I L E D
Superior Court of California,
County of San Francisco

11/14/2022
Clerk of the Court
BY: JEFFREY FLORES
Deputy Clerk

7
8                SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                          COUNTY OF SAN FRANCISCO
10

11  PATREON, INC.,                          |  Case No.
12             Plaintiff,                   |  **COMPLAINT FOR:**
13       v.                                 |  CGC-22-602931
                                            |  1. Intentional Interference with Contractual
14  DOES 1-50,                              |     Relations
15             Defendants.                  |  2. Breach of Contract
16                                          |  3. Trespass to Chattels
17                                          |  4. Unfair Competition
                                            |     [Bus. & Prof. Code § 17200]
18                                          |  5. Unjust Enrichment
19                                          |
                                            |  **DEMAND FOR JURY TRIAL**
20

COMPLAINT

## I. INTRODUCTION

1. Patreon owns and operates a website and online platform[1] that allows artists (known on the Patreon site as "creators") to generate income by offering paid "memberships" to their most dedicated fans (known on the site as "patrons").

2. In exchange for purchasing memberships, patrons often receive exclusive member benefits such as access to a creator's non-public (or "paywalled") content on the Patreon website.

3. Much like an art gallery that limits entry to paid ticket holders, the Patreon business model requires the ability to establish and maintain *content exclusivity* – that is, the ability to allow paid members to access creator content and to prevent access by non-members.  Patreon has dedicated significant resources to developing a secure platform that protects content exclusivity.

4. Unfortunately, websites that host exclusive and valuable material are often targeted by thieves seeking to pirate content, and Patreon is not immune.

5. Defendants are content thieves who use a custom-built "scraping" tool to pirate Patreon content, which they import to their own website in order to generate advertising revenues and donations.

6. In addition to pirating Patreon content *themselves*, Defendants recruit and equip third-party Patreon users to steal and upload Patreon content *on their behalf*.  This stolen content is also funneled to Defendants' website, where it generates revenue for Defendants.

7. By their conduct, Defendants have engaged in intentional and tortious interference with the contracts between Patreon and its users, breached their own contracts with Patreon, committed tortious trespass to chattels, and engaged in unfair competition under Cal. Bus. & Prof. Code § 17200.

8. Defendants have been unjustly enriched by their conduct while causing significant and irreparable harm to Patreon, its creators, and its products.

9. As set forth in this complaint, Patreon is entitled to monetary damages, injunctive and equitable relief, and punitive damages against Defendants.

---

[1] Found at https://www.patreon.com.

## II. PARTIES

10. Patreon is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in San Francisco, California.

11. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as Does 1 through 50, inclusive, are unknown to Patreon, which sues said Defendants by fictitious names. Patreon is informed and believes, and on that basis alleges, that Defendants are liable to Patreon as a result of their participation in all or some of the conduct described in this complaint.

12. Patreon is informed and believes, and on that basis alleges, that at all times relevant to this complaint, each Defendant was the agent of the other Defendants, and, in engaging in the conduct described in this complaint, was acting within the course and scope of such agency.

## III. JURISDICTION AND VENUE

13. This Court has general subject matter jurisdiction over the claims asserted in this complaint and no statutory exceptions to jurisdiction exist.

14. This Court has personal jurisdiction over Defendants because they have contractually consented to the jurisdiction of California state courts to resolve this dispute. Specifically, Patreon is informed and believes, and on that basis alleges, that Defendants – themselves Patreon users – have agreed to Patreon's Terms of Use, which establishes that any disputes between Patreon and Defendants "will be resolved in the federal or state courts located in San Francisco, California."[2]

15. As an independent basis for personal jurisdiction, Defendants have purposefully directed their activities at California residents, including Patreon, with the knowledge that their conduct would cause harm in this state. Patreon's causes of action arise out of and are related to those activities.

16. Patreon is a Delaware corporation with its principal place of business in San Francisco, California. On information on belief, none of the Defendants resides in California, or the county in which they reside is unknown to Patreon. Venue therefore is proper in this County pursuant to Code of Civil Procedure § 395(a).

---

[2] Found at https://www.patreon.com/policy/legal.

IV.     FACTS

### The Patreon Website and Business Model

17.     The Patreon website and platform – found at www.patreon.com – allows creators to generate income by offering paid monthly memberships to patrons.  In exchange for purchasing memberships, patrons often receive exclusive benefits from creators that are only available to paid members, such as access to a creator's paywalled content on the Patreon website.

18.     Patreon creators can offer memberships at various tiers (*e.g.*, $5, $10, or $15 per month), with higher-value benefits often incentivizing membership at higher tiers.

19.     To purchase a membership, patrons provide their credit-card or banking information to Patreon and select their desired membership tier.  Patreon processes patrons' membership payments on a recurring monthly basis (until terminated by the patron) and distributes membership revenue to creators as taxable income.  Patreon retains a percentage of processed membership payments as a platform and payment-processing fee.

20.     In addition to facilitating payments, Patreon provides an online platform where creators can post, and patrons can access and enjoy, exclusive creator content.  For example, a creator working in visual arts may offer high-resolution downloads of her illustrations to her $5-per-month patrons.  The creator uploads her illustrations to the Patreon website then specifies that the work is available to her $5-per-month patrons.  When a patron initiates a $5-per-month membership, he is given access to the creator's feed, where he can access, download, and enjoy the creator's exclusive content.

21.     This value-for-value exchange between creators and patrons is the bedrock of Patreon's business, and the value offered by creators – *i.e.*, access to patron-only content – often depends entirely on the content's *exclusivity*.  Thus, if Patreon cannot control access to exclusive creator content, the content's value is dramatically (or entirely) diminished.

22.     For this reason, Patreon has dedicated significant resources to developing a secure platform that allows creators to share exclusive content with paying patrons while preventing access by non-patrons.

**Patreon's User Policies**

23. Patreon requires all users to affirmatively accept Patreon's Terms of Use,[3] Security Policy,[4] and Community Guidelines[5] (together, the Patreon "Policies"), first as part of the account-creation process, and periodically thereafter on an as-needed basis (*e.g.*, when Patreon updates its Policies).

24. The Policies form the contract between Patreon and its users, and establish, in relevant part, that users may not engage in "data mining," defined in the Security Policy as "crawl[ing], scrap[ing] or otherwise index[ing] information on Patreon."

25. Creators retain ownership of their content posted to the Patreon website, and they grant Patreon a "royalty-free, perpetual, irrevocable, non-exclusive, sublicensable, worldwide license to use, reproduce, distribute, perform, [and] publicly display" such content on the Patreon website.

**Defendants' Unlawful Activities**

26. Defendants are a consortium of individuals or entities that steal and distribute paywalled Patreon content for profit.

27. Defendants have registered,[6] own, and operate a publicly accessible website (referred to hereafter as the "Piracy Website").[7]

28. The Piracy Website functions primarily as a repository and "public archive" of paywalled Patreon content that Defendants and others have stolen using a custom-built "scraping" tool – *i.e.*, a piece of software that automatically, and *en masse*, harvests and imports paywalled Patreon content to

---

[3] Found at https://www.patreon.com/policy/legal.

[4] Found at https://www.patreon.com/policy/security.

[5] Found at https://www.patreon.com/policy/guidelines.

[6] Website domain registrars are required to collect basic identifying information regarding their customers. According to records obtained from domain registrar Namecheap, Defendants registered the Piracy Website domain using a fictitious name and address on or around June 24, 2020. Public records show the Piracy Website is hosted by a Russian internet infrastructure company called IQWeb FZ-LLC (d/b/a DDoS-Guard), which, on information and belief, specializes in hosting sites engaged in illegal activity.

[7] The Piracy Website's URL is known to Patreon but intentionally omitted here, since including the URL could drive traffic to the Piracy Website and compound Patreon's damages.

the Piracy Website.[8]

29. Once the stolen content has been imported to the Piracy Website, the Defendants have made, and continue to make, the stolen content available the general public, including to non-patrons (*i.e.*, those who have not paid to access the content).[9] As stated on the Piracy Website's homepage: "[Piracy Website] is a public archiver for [] Patreon … Contributors here upload content and share it here for easy searching and organization. To get started viewing content, either search for creators on the artists page, or search for content on the posts page. If you want to contribute content, head over to the import page."

30. To obtain content from the Patreon website, Defendants' scraping tool requires a Patreon "session key" associated with an active Patreon user account.

31. On information and belief, Defendants are registered Patreon users and use their Patreon accounts (and associated session keys) to access, scrape, and upload Patreon content to the Piracy Website.

32. On information and belief, Defendants also utilize session keys associated with hacked Patreon accounts – *i.e.*, accounts with compromised login credentials – to access, scrape, and upload paywalled Patreon content to the Piracy Website.

33. Beyond serving as a repository for stolen content, Defendants use the Piracy Website to recruit and equip third-party Patreon users to exploit *their own* Patreon accounts (and associated session keys) to access and scrape Patreon content, for distribution on the Piracy Website.

34. To facilitate this ***indirect*** content piracy, Defendants make their scraping tool readily accessible to Piracy Website visitors, along with detailed instructions and tutorials on how Patreon users can use the tool, as shown in the screenshots below.

---

[8] The "official twitter account for [Piracy Website]" describes the site as "a scraper for Patreon." On information and belief, Defendants control this twitter account.

[9] Visitors to the Piracy Website can search for pirated content from specific creators (called "Artists" on the Website), view recently imported content, and consume "random" content.



35. On information and belief, Defendants profit from the Piracy Website in at least two ways: (1) by selling advertising space on the Piracy Website; and (2) by soliciting donations from Piracy Website visitors.

36. Defendants have been unjustly enriched by their direct and indirect content piracy, and have caused significant and irreparable harm to Patreon, its creators, and its products. Specifically, and without limitation, Defendants' conduct diminishes or destroys the exclusivity (and value) of pirated Patreon content, damages Patreon's goodwill, causes users to leave or avoid the platform resulting in lost profits, and diverts valuable company resources to detecting and preventing content piracy.

## FIRST CAUSE OF ACTION
### Intentional Interference with Contractual Relations

37. Patreon realleges each and every allegation set forth in Paragraphs 1 through 36, inclusive, and incorporates them by reference herein.

38. As described herein, all Patreon users agree to Patreon's Policies to open and maintain a Patreon account. The Patreon Policies form a valid and enforceable contract between Patreon and its users.

39. In relevant part, the Patreon Policies prohibit users from engaging in "data mining," defined as "crawl[ing], scrap[ing] or otherwise index[ing] information on Patreon."

40. Patreon is informed and believes, and on that basis alleges, that Defendants are aware of the contracts between Patreon and its users, and also that Defendants, who are themselves Patreon members and subject to the Policies, are specifically aware of the Policies' prohibition on "data mining."

41. Nevertheless, Defendants have intentionally solicited, encouraged, and induced Patreon users to breach their contracts with Patreon by engaging in "data mining" (*i.e.*, scraping content) from the Patreon website, and Defendants have done so knowing that such activity is a breach of the contracts between Patreon and its users.

42. By inducing Patreon users to breach their contracts, Defendants have intentionally interfered with the contracts between Patreon and its users.

43. As a result of Defendants' actions, Patreon has suffered damage in an amount to be

proven at trial.

44. Defendants' intentional interference with Patreon's contractual relationship with its users is causing, and unless enjoined and restrained by this Court will continue to cause, irreparable injury to Patreon that cannot fully be compensated or measured in money. Patreon is entitled to temporary, preliminary, and permanent injunctions prohibiting further acts of interference by Defendants.

45. Further, Defendants are guilty of oppression, fraud, or malice, thus entitling Patreon to recover exemplary and punitive damages against Defendants, in addition to actual damages.

## SECOND CAUSE OF ACTION
### Breach of Contract

46. Patreon realleges each and every allegation set forth in Paragraphs 1 through 45, inclusive, and incorporates them by reference herein.

47. On information and belief, each Defendant has assented to, and is bound by, Patreon's Policies, which form the contract between Patreon and Defendants.

48. Patreon's Policies prohibit users, including Defendants, from engaging in "data mining," defined as "crawl[ing], scrap[ing] or otherwise index[ing] information on Patreon."

49. Defendants have breached their Patreon Policies contracts with Patreon by engaging in "data mining" (*i.e.*, scraping content) from the Patreon website.

50. Patreon has satisfied its own obligations to Defendants under the Patreon Policies.

51. As a result of Defendants' breaches, Patreon has suffered damage in an amount to be proven at trial.

52. Defendants' breaches are causing, and unless enjoined and restrained by this Court will continue to cause, irreparable injury to Patreon that cannot fully be compensated or measured in money. Patreon is entitled to temporary, preliminary, and permanent injunctions prohibiting further acts of breach by Defendants.

## THIRD CAUSE OF ACTION
### Trespass to Chattels

53. Patreon realleges each and every allegation set forth in Paragraphs 1 through 52, inclusive, and incorporates them by reference herein.

54. Patreon's Terms of Use establish that Patreon creators, by posting content on the Patreon

website, grant Patreon a "royalty-free, perpetual, irrevocable, non-exclusive, sublicensable, worldwide license to use, reproduce, distribute, perform, [and] publicly display" their content.

55. By scraping and uploading paywalled Patreon content to the Piracy Website, Defendants have intentionally, and without Patreon's consent, interfered with Patreon's right to possess such content, and have diminished or destroyed the value of the pirated content, resulting in damage to Patreon in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### Unfair Competition [Bus. & Prof. Code § 17200

56. Patreon realleges each and every allegation set forth in Paragraphs 1 through 55, inclusive, and incorporates them by reference herein.

57. The acts and conduct of Defendants described in this complaint constitute unfair competition under California Business & Professions Code § 17200.

58. As a direct and proximate result of Defendants' unfair competition, Patreon has suffered economic harm, and Defendants have been unjustly enriched, in an amount to be proven at trial.

59. Defendants' unfair competition entitles Patreon to damages, as well as an order that Defendants must restore to Patreon any money or property attributable to their unfair competition described in this complaint.

60. Defendants' unfair competition is causing, and unless enjoined and restrained by this Court will continue to cause, irreparable injury to Patreon that cannot fully be compensated or measured in money. Patreon is entitled to temporary, preliminary, and permanent injunctions prohibiting further acts of unfair competition.

61. Further, Defendants are guilty of oppression, fraud, or malice. For that reason, Patreon is also entitled to recover exemplary and punitive damages against Defendants.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment

62. Patreon realleges each and every allegation set forth in Paragraphs 1 through 61, inclusive, and incorporates them by reference herein.

63. Defendants have obtained an economic benefit in the form of proceeds attributable to their piracy and distribution of paywalled Patreon content.

64. Defendants' piracy and distribution of paywalled Patreon content has damaged Patreon's goodwill, caused users to leave and avoid the platform resulting in lost profits, diminished the value of Patreon content, and diverted valuable company resources to detecting and preventing content piracy.

65. Defendants' retention of proceeds attributable to their illegal and inequitable conduct constitutes unjust enrichment.

66. It would be inequitable and unjust for Defendants to be permitted to retain any of the proceeds attributable to their illegal and inequitable conduct.

67. Patreon is accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of the illegal and inequitable conduct alleged in this complaint.

## PRAYER FOR RELIEF

Patreon prays that this Court enter judgment in Patreon's favor on each and every claim for relief set forth above and award Patreon relief, including but not limited to an Order:

1. Preliminarily and permanently ordering Defendants, their officers, employees, agents, subsidiaries, representatives, distributors, dealers, members, affiliates, internet service providers, and all persons acting in concert or participation with them, to:
   a. immediately and permanently disable the Piracy Website, along with any other website(s) that are owned and/or controlled by Defendants and host pirated Patreon content, and provide the Court and Patreon proof of having taken such action;
   b. immediately and permanently destroy all pirated Patreon content in their possession or control, including but not limited to content that is posted on the Piracy Website and any similar website(s) owned and/or controlled by Defendants, and provide the Court and Patreon proof of having taken such action; and
   c. immediately and permanently cease violating Patreon's Policies, including its prohibition on "data mining", and instructing or encouraging others to do so.
2. Awarding Patreon monetary relief, including damages sustained by Patreon, in an amount to be determined at trial;
3. Awarding Patreon equitable relief, including restitution and/or disgorgement of all

1         revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of the illegal and inequitable conduct alleged in this complaint;

4. Requiring an accounting of any and all economic benefits obtained by Defendants and attributable to the illegal and inequitable conduct alleged in this complaint, and imposing a constructive trust in Patreon's favor over any and all such economic benefits;

5. Awarding Patreon punitive and exemplary damages in such amount as may be awarded at trial;

6. Awarding prejudgment interest according to law; and

7. Awarding such other and further relief as this Court may deem just and appropriate.

### JURY TRIAL DEMAND

Plaintiffs hereby demand trial by jury for all causes of action, claims, or issues in this action that are triable as a matter of right to a jury.

Dated: November 14, 2022

Respectfully submitted,

THE NORTON LAW FIRM PC

*/s/ Nathan Walker*
Nathan Walker

Attorneys for Plaintiff
PATREON, INC.