AARON MACKEY (SBN 286647)
amackey@eff.org
F. MARIO TRUJILLO (SBN 352020)
mario@eff.org
ADAM SCHWARTZ (SBN 309491)
adam@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333

SAMIR JAIN (SBN 181572)
sjain@cdt.org
CENTER FOR DEMOCRACY & TECHNOLOGY
1401 K Street, NW
Washington, DC 20005
Telephone: (202) 407-8843

JACOB A. SNOW (SBN 270988)
jsnow@aclunc.org
MATTHEW T. CAGLE (SBN 286101)
mcagle@aclunc.org
CHESSIE THACHER (SBN 296767)
cthacher@aclunc.org
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

*Counsel for Amici Curiae Electronic Frontier Foundation, Center for Democracy & Technology, American Civil Liberties Union Foundation of Northern California, and American Civil Liberties Union*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Brayden STARK, Judd OOSTYEN, Kevin BLACK, and Maryann OWENS, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>PATREON, INC.,<br><br>*Defendants*. | Case No. 3:22-cv-03131-JCS<br><br>**NOTICE OF MOTION AND MOTION OF ELECTRONIC FRONTIER FOUNDATION, CENTER FOR DEMOCRACY & TECHNOLOGY, THE AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA, AND THE AMERICAN CIVIL LIBERTIES UNION FOR LEAVE TO FILE AMICUS CURIAE BRIEF**<br><br>Date: March 15, 2024<br>Time: 9:30 a.m.<br>Judge: Hon. Joseph C. Spero |

PLEASE TAKE NOTICE that at 9:30 a.m. on March 15, 2024, the Electronic Frontier Foundation, the Center for Democracy & Technology, the American Civil Liberties Union of Northern California, and the American Civil Liberties Union (collectively "Amici") will move for leave to file a brief as amici curiae during the Court's consideration of Defendant Patreon's motion for summary judgment regarding the constitutionality of the Video Privacy Protection Act ("VPPA").

Amici respectfully move for leave to file a brief of amici curiae in the above captioned matter. The proposed brief is attached hereto as an exhibit to the motion. Before filing, counsel for amici conferred with respective counsel for Plaintiffs, Patreon, and the United States ("government"). Plaintiffs and the government consent to amici filing their brief. Patreon opposes the instant motion. Patreon raised two conditions before it would consent to amici filing their brief. First, Patreon requested that amici agree not to offer any evidence or factual argument, including publicly available material, outside the summary judgment record. Second, Patreon requested that the Plaintiffs, the government, and amici agree to Patreon filing an additional 10-page reply brief.

Amici did not agree to Patreon's first condition that their brief cite only to the summary judgment record. Amici played no role in developing that record, and Amici routinely file amicus briefs that are not thusly confined. To address Patreon's concerns, Amici identified six sources that were representative of the citations they intended to use, including news stories, opinion research, company disclosures, legislative history, and law review articles (some of which are cited in the attached). Patreon opposes the instant motion because Amici has refused to meet this condition.

Amici and Plaintiffs agreed that Patreon could file an additional reply to Amici's brief. The government asked Amici to represent its position on this aspect of Patreon's request as follows: The government presently opposes a 10-page additional brief for Defendant to respond to an amicus brief as premature and disproportional, but it is amenable to considering any future request by Defendant to extend the page limits for its reply after any amicus brief has been filed, provided that request is necessary, proportional, and reasonable.

For the reasons that follow, the motion should be granted.

## I. Identity And Interests Of Amici Curiae

EFF is a nonprofit civil liberties organization with nearly 30,000 active donors and has worked for more than 30 years to ensure that technology supports freedom, justice, and innovation for all people of the world. EFF is dedicated to protecting online users' free expression and privacy rights. We've fought for both in courts and legislatures across the country. We challenge laws that burden all internet users' rights to offer and access content on the internet. *E.g.*, *ACLU v. Reno*, 929 F. Supp. 824, 825 (E.D. Pa. 1996) (serving as a plaintiff challenging the Communications Decency Act); *ACLU v. Reno*, 31 F. Supp. 2d 473, 489 n.3 (E.D. Pa. 1999) (serving as a plaintiff challenging the Child Online Protection Act). We defend the constitutionality of well-crafted consumer data privacy laws. *E.g., In re Clearview AI Ltgn.*, 585 F. Supp. 3d 1111 (N.D. Ill. 2022); *ACA Connects v. Frey*, 471 F. Supp. 3d 318 (D. Me. 2020). We advocate in Congress and state legislatures to pass consumer data privacy laws. *E.g.*, H.R. 3420, My Body My Data Act of 2023; Cal. A.B. 1760, Privacy For All Act of 2019.

The Center for Democracy & Technology ("CDT") is a nonprofit public interest organization. For over twenty-five years, CDT has represented the public's interest in an open, decentralized Internet and worked to ensure that the constitutional and democratic values of free expression and privacy are protected in the digital age. CDT regularly advocates before legislatures, regulatory agencies, and courts in support of First Amendment rights on the Internet, including limits on governmental authority to compel or silence speech, and in support of privacy protections for online users.

The American Civil Liberties Union is a nationwide, nonprofit, nonpartisan organization dedicated to defending the principles embodied in the Federal Constitution and our nation's civil rights laws. The ACLU of Northern California is the Northern California affiliate of the ACLU. The ACLU and its affiliates share a longstanding commitment to freedom of speech and digital rights. In California, the ACLU's Technology and Civil Liberties Program works specifically on legal and policy issues at the intersection of new technology and privacy, free speech, and other civil liberties and civil rights. Since its founding in 1920, the ACLU has frequently appeared before the U.S. Supreme Court, this Court, and other federal courts in cases related to privacy, free

speech, and freedom of association, including exercise of those rights online. The ACLU supported the Video Privacy Protection Act as it passed through the United States Congress in 1988.

**II.     Amici's Brief Will Assist This Court's Review Of The VPPA's Constitutionality.**

The amici curiae brief will help assist this Court because it highlights the millions of Americans whose First Amendment and privacy interests are jeopardized by Patreon's argument that the VPPA is substantially overbroad. "The district court has broad discretion to appoint amici curiae." *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982), *abrogated on other grounds as recognized in Doe v. Kelly*, 878 F.3d 710, 720 (9th Cir. 2017). "District courts frequently welcome amicus briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved or if the amicus has 'unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.'" *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1016, 1067 (N.D. Cal. 2005) (internal citations and quotations omitted).

As Amici's brief explains, Patreon's challenge to the VPPA on First Amendment overbreadth grounds has vast potential ramifications on the free expression and privacy interests of millions of Americans who watch videos online. Video has become a ubiquitous source for internet users to consume news, art, films, and a diverse range of other content. The VPPA's protections against disclosing internet users' viewing habits to private parties and the government, absent customers' written consent or a valid statutory exemption, are essential to advancing their own First Amendment activity and protecting their privacy. The VPPA directly advances the First Amendment's protections for receiving information privately, giving people the space to autonomously develop their own views, and to engage in their own expressive activity. *See Stanley v. Georgia*, 394 U.S. 557, 564 (1969). Courts have repeatedly recognized the connections between privacy and expression, including by rigorously scrutinizing government demands to disclose people's reading history and their consumption of visual media. *See id*; *Tattered Cover, Inc. v. City of Thornton*, 44 P.3d 1044, 1052 (Colo. 2002). Further, the brief explains how internet users have a substantial privacy interest in preventing unwarranted disclosure of their viewing habits, precisely

4

because such information can be as revealing as reading a person's diary.

Amici's brief also offers the Court additional and unique perspective on the First Amendment and privacy issues that animate the VPPA. The brief demonstrates that in light of the VPPA's focus on protecting internet users from providers' commercial exploitation of their viewing habits, the statute is a commercial speech regulation. In this light, the VPPA serves a substantial and compelling state interest in protecting people's privacy and free expression and is narrowly tailored to speech that largely concerns matters of no public importance—what videos any individual internet user searched for or viewed. *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 762 & n.8 (1985). Considering the VPPA's narrow focus and protections for all internet users whose individual viewing habits are generally unlikely to be a matter of public concern, the VPPA's legitimate sweep is vast. Providers who seek to vindicate their First Amendment rights in the rare situation when disclosure of any specific customer's viewing history is a matter of public concern should do so through as-applied challenges to the VPPA. In those circumstances, providers could avail themselves of robust First Amendment protections in defense of such disclosures. *See, e.g.*, *Bartnicki v. Vopper*, 537 U.S. 514, 517–18 (2001); *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 104 (1979); *Shulman v. Group W Productions, Inc.*, 18 Cal.4th 200, 209-10 (Cal. 1998). That path ensures that providers can exercise their First Amendment rights while still permitting the VPPA to protect and advance video viewers' free expression and privacy interests.

Amici respectfully requests that this Court grant their motion for leave to file the attached amicus brief.

Dated: December 20, 2023

Respectfully submitted,

By:  /s/ *Aaron Mackey*

Aaron Mackey
F. Mario Trujillo
Adam Schwartz

ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone: (415) 436-9333
Email: amackey@eff.org, mario@eff.org,
adam@eff.org

*Counsel for Amicus Curiae*
*Electronic Frontier Foundation*

Samir Jain
CENTER FOR DEMOCRACY &
TECHNOLOGY
1401 K Street, NW
Washington, DC 20005
Telephone: (202) 407-8843
Email: sjain@cdt.org

*Counsel for Amicus Curiae Center for*
*Democracy & Technology*

Jacob A. Snow
Matthew T. Cagle
Chessie Thacher
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Email: jsnow@aclunc.org,
mcagle@aclunc.org, cthacher@aclunc.org

*Counsel for Amici American Civil Liberties*
*Union of Northern California and American*
*Civil Liberties Union*