BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

LESLIE COOPER VIGEN
Senior Trial Counsel (DC Bar No. 1019782)
CLAYTON L. BAILEY
Trial Attorney (DC Bar No. 1644867)
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW, Washington, DC 20005
Telephone: (202) 305-0727
Email: leslie.vigen@usdoj.gov

*Counsel for United States*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

Brayden STARK, Judd OOSTYEN,
Kevin BLACK, and Maryann OWENS,
individually and on behalf of all others
similarly situated,

      Plaintiffs,

      v.

PATREON, INC.,

      Defendant.

**No. 3:22-cv-03131-JCS**

**UNITED STATES OF AMERICA'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' VPPA CLAIMS ON THE GROUND THAT THE VPPA VIOLATES THE FIRST AMENDMENT**

Hon. Joseph C. Spero

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................1

I.      Relevant Facts ........................................................................................................1

II.     Procedural History .................................................................................................4

ARGUMENT ........................................................................................................................5

I.      The Court Should Not Consider a Constitutional Question Prematurely. ...........5

II.     If It Applies to Defendant, the VPPA Passes Intermediate Scrutiny....................8

III.    The VPPA Is Constitutional on Its Face........................................................... 14

        A.      Facial Challenges Are Disfavored. ........................................................ 14

        B.      Properly Interpreted, the Reach of the VPPA Is Limited. ..................... 16

        C.      The VPPA's Few Applications to Non-Commercial Speech Do Not
                Substantially Outweigh Its Many Legitimate Applications to Commercial
                Speech..................................................................................................... 20

                1.      The Vast Majority of the VPPA's Applications Are Commercial. ........... 21

                2.      The VPPA's Applications to Non-Commercial Speech Are
                        Minimal................................................................................................. 22

CONCLUSION..................................................................................................................... 25

i

Gov't Opp'n to Def.'s Mot. for Summ. J.                                    Case No. 3:22-cv-03131-JCS

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Amazon.com v. Lay,*
 758 F. Supp. 2d 1154 (W.D. Wash. 2010) ...................................................................... 12

*Ashwander v. Tenn. Valley Auth.,*
 297 U.S. 288 (1936) .................................................................................................................6

*Az. State Bd. for Charter Schs. v. U.S. Dep't of Educ.,*
 464 F.3d 1003 (9th Cir. 2006) ........................................................................................ 20

*Barnes-Wallace v. City of San Diego,*
 530 F.3d 776 (9th Cir. 2008) ...............................................................................................7

*Bartnicki v. Vopper,*
 532 U.S. 514 (2001) ............................................................................................................ 15

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico,*
 457 U.S. 853 (1982) ...............................................................................................................9

*Bd. of Trustees of State Univ. of N.Y. v. Fox,*
 492 U.S. 469 (1989) ..................................................................................... 12, 13, 15, 16

*Bell Atl. Md., Inc. v. Prince George's Cnty., Md.,*
 212 F.3d 863 (4th Cir. 2000) ...............................................................................................7

*Berman v. Freedom Financial Network,*
 30 F.4th 849 (9th Cir. 2022) ........................................................................................... 12

*Boetler v. Advance Magazine Publishers, Inc. (Advance Magazine),*
 210 F. Supp. 3d 579 (S.D.N.Y. 2016) ...................................................................... 9, 14

*Boetler v. Hearst Commc'ns, Inc. (Hearst I),*
 192 F. Supp. 3d 427 (S.D.N.Y. 2016) ...................................................................... 9, 11

*Bond v. United States,*
 572 U.S. 844 (2014) .................................................................................................................6

*Broadrick v. Oklahoma,*
 413 U.S. 601 (1973) ....................................................................................................... 15, 23

*Burson v. Freeman,*
 504 U.S. 191 (1992) ........................................................................................................ 9, 14

*Camfield v. City of Oklahoma City,*
 248 F.3d 1214 (10th Cir. 2001) ....................................................................................... 19

ii

*Cantu v. Tapestry, Inc.*,
  No. 22-cv-1974, 2023 WL 4440662 (S.D. Cal. July 10, 2023) ........................................ 17

*Cappello v. Walmart Inc.*,
  No. 18-cv-06678, 2019 WL 11687705 (N.D. Cal. Apr. 5, 2019)...................................... 13

*Carroll v. Gen. Mills, Inc.*,
  No. 23-cv-1746, 2023 WL 4361093 (C.D. Cal. June 26, 2023) ...................................... 17

*Carter v. Scripps Networks, LLC*,
  --- F. Supp. 3d ----, No. 22-cv-2031, 2023 WL 3061858 (S.D.N.Y. Apr. 24, 2023))................... 21

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*,
  447 U.S. 557 (1980) ......................................................................... 8, 11

*Counterman v. Colorado*,
  600 U.S. 66 (2023) ............................................................................ 19

*Czarnionka v. The Epoch Times Ass'n, Inc.*,
  No. 22-cv-6348, 2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022) ...................................... 21

*Daniel v. Cantrell*,
  375 F.3d 377 (6th Cir. 2004) .................................................................. 24

*Dep't of Com. v. U.S. House of Representatives*,
  525 U.S. 316 (1999) ............................................................................6

*Dirkes v. Borough of Runnemede*,
  936 F. Supp. 235 (D.N.J. 1996) ............................................................... 24

*Edenfield v. Fane*,
  507 U.S. 761 (1993) ....................................................................... 8, 11

*Eichenberger v. ESPN Inc.*,
  876 F.3d 979 (9th Cir. 2017)...................................................9-10, 13, 16, 18

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018).......................................................................... 20

*Escambia Cnty. v. McMillan*,
  466 U.S. 48 (1984).............................................................................6-7

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000)............................................................................ 20

*Feldman v. Star Tribune Media Co.*,
  659 F. Supp. 3d 1006 (D. Minn. 2023)......................................................... 21

*Fla. Bar v. Went for It, Inc.*,
  515 U.S. 618 (1995)........................................................................ 8, 13

Gov't Opp'n to Def.'s Mot. for Summ. J.                          Case No. 3:22-cv-03131-JCS

*Fox Television Stations, Inc. v. Aereokiller, LLC,*
   851 F.3d 1002 (9th Cir. 2017) .................................................................................. 6, 7

*French v. Jones,*
   876 F.3d 1228 (9th Cir. 2017) .................................................................................. 13-14

*Gakuba v. Hollywood Video, Inc.,*
   No. 15-cv-00496, 2015 WL 5737589 (D. Or. Sept. 30, 2015) ....................................... 24

*Ghanaat v. Numerade Labs, Inc.,*
   --- F. Supp. 3d ----, No. 23-cv-833, 2023 WL 5738391 (N.D. Cal. Aug. 28, 2023) .................... 18

*Giboney v. Empire Storage & Ice Co.,*
   336 U.S. 490 (1949) ............................................................................................ 19

*Gomez v. Campbell-Ewald Co.,*
   768 F.3d 871 (9th Cir. 2014) .................................................................................... 8

*Green v. Miss U.S. of Am., LLC,*
   52 F.4th 773 (9th Cir. 2022) ...................................................................................... 7

*Harris v. Pub. Broad. Serv.,*
   No. 22-cv-2456, 2023 WL 2583118 (N.D. Ga. Mar. 20, 2023) ..................................... 21

*Holt v. Facebook, Inc.,*
   240 F. Supp. 3d 1021 (N.D. Cal. 2017) .................................................................... 14

*Hunthausen v. Spine Media, LLC,*
   --- F. Supp. 3d ----, No. 22-cv-1970, 2023 WL 4307163 (S.D. Cal. June 21, 2023) .................. 17

*In re DMCA § 512(h) Subpoena to Twitter, Inc.,*
   608 F. Supp. 3d 868 (N.D. Cal. 2022) ...................................................................... 19

*In re Facebook, Inc. Consumer Privacy User Profile Litig.,*
   402 F. Supp. 3d 767 (N.D. Cal. 2019) ...................................................................... 21

*In re Hulu Privacy Litig.,*
   86 F. Supp. 3d 1090 (N.D. Cal. 2015) ...................................................................... 21

*In re Hulu Privacy Litig.,*
   No. 11-cv-3764, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ..................................... 12

*In re Nickelodeon Consumer Privacy Litig.,*
   827 F.3d 262 (3d Cir. 2016) ................................................................................. 2, 18

*In re Vizio, Inc., Consumer Privacy Litig.,*
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................................ 12, 17

*Jean v. Nelson,*
   472 U.S. 846 (1985) ............................................................................................ 6

*Jefferson v. Healthline Media, Inc,*
    --- F. Supp. 3d ----, No. 22-cv-05059, 2023 WL 3668522 (N.D. Cal. May 24, 2023) ................ 17

*Joseph Burstyn, Inc. v. Wilson,*
    343 U.S. 495 (1952) ................................................................................................................. 9

*Joseph v. City of San Jose,*
    No. 19-cv-1294, 2023 WL 1973222 (N.D. Cal. Feb. 13, 2023), *appeal filed* No. 23-15358
    (9th Cir. Mar. 13, 2023) .......................................................................................................... 7

*Klein v. City of San Clemente,*
    584 F.3d 1196 (9th Cir. 2009) ................................................................................................ 7

*Kuba v. 1–A Agric. Assoc.,*
    387 F.3d 850 (9th Cir. 2004) .................................................................................................. 7

*L.A. Police Dep't v. United Reporting Pub. Corp.,*
    528 U.S. 32 (1999) ................................................................................................................. 15

*Lebakken v. WebMD, LLC,*
    No. 22-cv-644, 2022 WL 16716151 (N.D. Ga. Nov. 4, 2022) ...................................... 21

*Lyng v. Nw. Indian Cemetery Protective Ass'n,*
    485 U.S. 439 (1988) ................................................................................................................ 6

*M.K. v. Google, LLC,*
    No. 21-cv-8465, 2023 WL 4937287 (N.D. Cal. Aug. 1, 2023) ................................ 18, 24

*Markels v. AARP,*
    --- F. Supp. 3d ----, No. 22-cv-5499, 2023 WL 6411720 (N.D. Cal. Aug. 29, 2023) ................. 17

*Marquez-Reyes v. Garland,*
    36 F.4th 1195 (9th Cir. 2022) ......................................................................................... 15, 16

*Members of City Council of L.A. v. Taxpayers for Vincent,*
    466 U.S. 789 (1984) .............................................................................................................. 15

*Mollett v. Netflix, Inc.,*
    795 F.3d 1062 (9th Cir. 2015) ................................................................................. 2, 18, 23

*Moser v. FCC,*
    46 F.3d 970 (9th Cir. 1995) .................................................................................................. 10

*N.J. Payphone Ass'n, Inc. v. Town of W. N.Y.,*
    299 F.3d 235 (3d Cir. 2002) .................................................................................................. 6

*NAACP v. Alabama ex rel. Patterson,*
    357 U.S. 449 (1958) ................................................................................................................ 9

*New York v. Ferber,*
    458 U.S. 747 (1982) .............................................................................................15, 16, 19

*Nguyen v. Barnes & Noble, Inc.,*
    763 F.3d 1171 (9th Cir. 2014) ................................................................................. 12

*Osheske v. Silver Cinemas Acquisition Co.,*
    No. 22-cv-9463, 2023 WL 8188464 (C.D. Cal. Oct. 31, 2023) .................................... 17

*Perry v. Schwarzenegger,*
    591 F.3d 1126 (9th Cir. 2009) ...................................................................................9

*Reno v. ACLU,*
    521 U.S. 844 (1997) ..................................................................................................9

*Retail Digital Network, LLC v. Prieto,*
    861 F.3d 839 (9th Cir. 2017) ....................................................................................8

*Robbins v. Lady Baltimore Foods, Inc.,*
    868 F.2d 258 (7th Cir. 1989) ....................................................................................7

*Roberts v. U.S. Jaycees,*
    468 U.S. 609 (1984) ..................................................................................................9

*Rodriguez v. Sony Computer Ent. Am., LLC,*
    801 F.3d 1045 (9th Cir. 2015) ........................................................................... 18, 23

*Rubin v. Coors Brewing Co.,*
    514 U.S. 476 (1995) ................................................................................................ 11

*Salazar v. Nat'l Basketball Ass'n,*
    --- F. Supp. 3d ----, No. 22-cv-7935, 2023 WL 5016968 (S.D.N.Y. Aug. 7, 2023) ...................... 21

*San Luis Obispo Coastkeeper v. Santa Maria Valley Water Conservation District,*
    49 F. 4th 1242 (9th Cir. 2022) ................................................................................ 20

*Schmidt v. Oakland Unified Sch. Dist.,*
    457 U.S. 594 (1982) ..................................................................................................7

*Sinclair v. TubeSockTedD,*
    596 F. Supp. 2d 128 (D.D.C. 2009) ...........................................................................9

*Slack v. McDaniel,*
    529 U.S. 473 (2000) ..................................................................................................6

*Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Engineers,*
    531 U.S. 159 (2001) ..................................................................................................7

*Sony BMG Music Ent. v. Tenenbaum,*
    660 F.3d 487 (1st Cir. 2011) ....................................................................................7

Gov't Opp'n to Def.'s Mot. for Summ. J.                                    Case No. 3:22-cv-03131-JCS

*Spector Motor Co. v. McLaughlin,*
    323 U.S. 101 (1944) ............................................................................................6

*St. Augustine Sch. v. Underly,*
    78 F.4th 349 (7th Cir. 2023) ...............................................................................6

*Stanley v. Georgia,*
    394 U.S. 557 (1969) ...........................................................................................10

*Tawam v. Feld Ent. Inc.,*
    --- F. Supp. 3d ----, No. 23-cv-357, 2023 WL 5599007 (S.D. Cal. July 28, 2023) ..................17

*Three Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g, P.C.,*
    467 U.S. 138 (1984) .............................................................................................6

*Torres v. Precision Indus., Inc.,*
    938 F.3d 752 (6th Cir. 2019) ................................................................................7

*Trans Union Corp. v. FTC,*
    245 F.3d 809 (D.C. Cir. 2001) .............................................................................9

*U.S. DOJ v. Reps. Comm. For Freedom of Press,*
    489 U.S. 749 (1989) ...........................................................................................22

*United States v. Fausto,*
    484 U.S. 439 (1988) ...........................................................................................20

*United States v. Hansen,*
    599 U.S. 762 (2023) ......................................................................................passim

*United States v. Mongol Nation,*
    56 F.4th 1244 (9th Cir. 2023) ..............................................................................7

*United States v. Sineneng-Smith,*
    140 S. Ct. 1575 (2020) .......................................................................................15

*United States v. Williams,*
    553 U.S. 285 (2008) ..........................................................................15, 16, 19, 23

*Valle Del Sol Inc. v. Whiting,*
    709 F.3d 808 (9th Cir. 2013) ..............................................................................24

*Van Hollen, Jr. v. Fed. Election Comm'n,*
    811 F.3d 486 (D.C. Cir. 2016) .............................................................................9

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
    455 U.S. 489 (1982) ...........................................................................................15

*Virginia v. Hicks,*
    539 U.S. 113 (2003) ...........................................................................................15

*Walters v. Nat'l Ass'n of Radiation Survivors,*
    473 U.S. 305 (1985) .................................................................................... 10

*Wash. State Grange v. Wash. State Republican Party,*
    552 U.S. 442 (2008) .................................................................................... 14

*White v. U.S. Pipe & Foundry Co.,*
    646 F.2d 203 (5th Cir. 1981) ......................................................................... 7

*Williams-Yulee v. Fla. Bar,*
    575 U.S. 443 (2015) .................................................................................... 13

*Yershov v. Gannett Satellite Info. Network, Inc.,*
    820 F.3d 482 (1st Cir. 2016) ............................................................... 11-12, 21

**Statutes**

5 U.S.C. § 552a(b)(11) ................................................................................... 23

15 U.S.C. § 1681n(a)(1)(B) ............................................................................ 13

18 U.S.C. § 2258A .......................................................................................... 20

18 U.S.C. § 2710 .......................................................................................... *passim*

18 U.S.C. § 2724(b)(1) ................................................................................... 13

47 U.S.C. § 338(i)(1) ...................................................................................... 13

47 U.S.C. § 551 ............................................................................................. 13

Protection of Children from Sexual Predators Act of 1998,
    Pub. L. No. 105-314, 112 Stat. 2983, Title VI, § 604(a) (1998) ...................... 20

**Legislative Materials**

S. Rep. No. 100-599 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342–1 ............................ *passim*

**Other Authorities**

Nat'l Conf. of State Legislatures, State Laws Related to Digital Privacy,
    https://perma.cc/XS76-4DNT ..................................................................... 14

*The Video Privacy Protection Act as a Model Intellectual Privacy Statute,*
    131 Harv. L. Rev. 1766 (April 2018) ............................................................. 10

Gov't Opp'n to Def.'s Mot. for Summ. J.                                    Case No. 3:22-cv-03131-JCS

**INTRODUCTION**

The Video Privacy Protection Act (VPPA), 18 U.S.C. § 2710, secures individuals' ability to watch whatever legal video content they wish privately and without fear of unwanted disclosure. The right to do so is grounded in the First Amendment, and Congress has a substantial interest in protecting the rights to privacy and intellectual freedom of American citizens by limiting companies' abilities to exploit their personal information for profit—as Defendant allegedly did here. Defendant's claims that the statute is unconstitutional because it prohibits a company from disclosing consumers' First-Amendment-protected activities for financial gain, without their permission, or that the statute is overbroad simply because it has been applied to non-commercial disclosures in a handful of instances, are erroneous. Properly interpreted, the VPPA protects only legal activities and primarily regulates commercial speech. Its commercial applications easily outweigh the few applications to non-commercial speech. The statute is constitutional.

But before reaching that issue, well-established principles of constitutional avoidance and judicial restraint counsel the Court to first consider potentially dispositive non-constitutional arguments that could obviate the need to decide a constitutional issue. Defendant has stated that it believes it has sufficient evidence to prevail on statutory grounds, and the Court should exercise its discretion and refrain from deciding this motion until it has considered all such arguments.

As explained further herein, the Court should decline to rule upon this motion until it has adjudicated any non-constitutional arguments that might resolve this litigation. If the Court does address the constitutional issues, it should deny Defendant's motion and affirm the constitutionality of the VPPA.

**BACKGROUND[1]**

I.      Relevant Facts

Congress enacted the VPPA in 1988 in response to the *Washington City Paper*'s publication of then-Supreme-Court-nominee Robert Bork's video rental history, obtained without his

---

[1] This section provides the undisputed facts the government views as relevant to the resolution of this motion. Defendant's purported "Statement of Undisputed Material Facts" consists largely of irrelevant factual assertions and misplaced legal argument. The government responds to those assertions and arguments to the extent they are relevant in the "Argument" section of this brief.

Gov't Opp'n to Def.'s Mot. for Summ. J.                                    Case No. 3:22-cv-03131-JCS

knowledge or consent. *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 278 (3d Cir. 2016). "Members of the Judiciary Committee 'denounced the disclosure,'" and Congress passed the VPPA soon after. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (quoting S. Rep. No. 100-599, at 5 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4342–1). Congress's intent in passing the statute was "[t]o preserve personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio visual materials." *Id.*

The importance of this legislation is made plain in an accompanying Senate report. The report notes that the VPPA "follows a long line of statutes passed by the Congress to extend privacy protection to records that contain information about individuals." *See* S. Rep. No. 100-599, at 2. It points out the "relationship between the right of privacy and intellectual freedom" and notes that "[p]rotecting an individual's choice of books and films is a . . . pillar of intellectual freedom under the first amendment." *Id.* at 4. Members of Congress and witnesses observed that particular harm stems from disclosing the films a person watches, as "films are the intellectual vitamins that fuel the growth of individual thought," and their disclosure would result in "a conformist society, in which individuals are chilled in their pursuit of ideas and their willingness to experiment with ideas outside of the mainstream." *Id.* at 7. Another Member observed that "[t]hese records are a window into our loves, likes, and dislikes," and yet another compared their release to "Big Brother." *Id.* at 6–7. The report recognizes the difficulty of maintaining the privacy of this information when "[e]very day Americans are forced to provide businesses and others personal information without having any control over where that information goes." *Id.* A witness observed that "new technologies not only foster more intrusive data collection, but make possible increased demands for personal, sensitive information," to be used for purposes like "better advertis[ing] . . . products." *Id.* at 7. The report also cites real-world situations in which individuals' privacy had been invaded by disclosure of their video-viewing habits, including the revelation of "the titles of 146 films" Judge Bork and his family rented, and release in a child custody proceeding of "every film rented by [a] husband in an effort to show that, based on his viewing habits, he was an unfit father." *Id.* at 5–6. The report also makes plain that the VPPA is intended to protect freedom of thought, not

1  to hamper legitimate law enforcement efforts. *See id.* at 12 (allowing PII to be disclosed if "relevant

2  to a legitimate law enforcement inquiry); *id.* at 15 (noting that the provision preventing improperly

3  disclosed PII from being received in evidence "is not intended to apply to any federal, state, or

4  local government official").

5       The resulting statute prohibits a "video tape service provider" from "knowingly"

6  disclosing "personally identifiable information concerning any consumer of such provider" to "any

7  person." 18 U.S.C. § 2710(b)(1). A "video tape service provider" is "any person, engaged in the

8  business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual

9  materials." *Id.* § 2710(a)(4). "Personally identifiable information" means "information which

10  identifies a person as having requested or obtained specific video materials or services from a video

11  tape service provider." *Id.* § 2710(a)(3). A "consumer" is defined as "any renter, purchaser, or

12  subscriber of goods or services from a video tape service provider." *Id.* § 2710(a)(3). It provides

13  several exceptions to this prohibition, permitting (1) disclosure to the consumer; (2) disclosure the

14  consumer has authorized via "informed, written consent" provided "in a form distinct and separate

15  from any form setting forth other legal or financial obligations"; (3) disclosure to a law enforcement

16  agency pursuant to a warrant, subpoena, or court order; (4) disclosure that is "solely the names and

17  addresses of consumers," provided the consumer had the ability to opt out and the disclosure does

18  not identify the subject matter of any material (unless the sole purpose is marketing directly to the

19  consumer); (5) disclosure "incident to the ordinary course of business of the video tape service

20  provider"; and (6) disclosure pursuant to a court order in a civil proceeding. *Id.* § 2710(b)(2).

21  "[O]rdinary course of business" is defined as "debt collection activities, order fulfillment, request

22  processing, and the transfer of ownership." *Id.* § 2710(a)(2). Consent from the consumer may be

23  obtained at the time of disclosure, or in advance for a period of up to two years, and consumers

24  must have the opportunity to withdraw consent. *Id.* § 2710(b)(2)(B)(ii)–(iii).

25       The VPPA creates a private right of action for any aggrieved person to bring a civil suit

26  against any person who violates its terms. *Id.* § 2710(c). Upon a finding of liability, a court may

27  award actual damages, but "not less than" $2,500 in liquidated damages, along with punitive

28

Gov't Opp'n to Def.'s Mot. for Summ. J.                                    Case No. 3:22-cv-03131-JCS

1   damages, attorneys' fees and costs, and other appropriate equitable relief.  *Id.* § 2701(c)(2)(A).  Any

2   such action must be brought within two years of the disclosure, or of its discovery.  *Id.* § 2701(c)(3).

3   The statute does not provide for civil or criminal enforcement by the government.

4   II.    <u>Procedural History</u>

5          Plaintiffs filed the initial complaint in this matter on May 27, 2022.  Compl., ECF No. 1.

6   On August 5, 2022, Defendant moved to dismiss that complaint, arguing that Plaintiffs had failed

7   to state a claim under the VPPA, and that the statute was unconstitutional under the First

8   Amendment as applied to Defendant and on its face.  Mot. to Dismiss, ECF No. 21.   On

9   October 13, 2022, the Court entered an order partially granting Defendant's motion to dismiss on

10  statutory grounds, with leave to amend.  MTD Order 1, ECF No. 40.  The Court found Plaintiffs

11  had not sufficiently alleged that Defendant "provided 'similar audio visual materials,'" *id.* at 11, but

12  found Plaintiffs' remaining allegations sufficient.  It noted that Defendant "remain[ed] free to

13  challenge on an evidentiary record" whether the VPPA applied to it.  *Id.* at 12, 14.

14         After Plaintiffs filed an amended complaint, on November 23, 2022, Defendant moved to

15  dismiss again, this time raising only a facial challenge to the VPPA under the First Amendment and

16  dropping its as-applied constitutional challenge.  2d Mot. to Dismiss, ECF No. 48.  The Court

17  denied that motion in a February 17, 2023 order.  2d MTD Order, ECF No. 59.

18         In that order, the Court made several determinations that are relevant here.  First, it held

19  that the VPPA is a content-based restriction on speech.  *Id.* at 14–16.  It next held that Defendant's

20  speech, as alleged in the complaint, and "most similar speech governed by the VPPA in the context

21  of corporate data collection and analysis," is commercial in nature.  *Id.* at 16–19.  The Court further

22  determined that the statute reaches at least some non-commercial speech.  *Id.* at 19–23.  Finally,

23  the Court concluded that although an overbreadth analysis was necessary, it would undertake that

24  exercise on a factual record, and deny the motion to dismiss.  *Id.* at 23–26.  In reaching that

25  conclusion, the Court noted that, in such analyses, the burden lies "on the party challenging the

26  law to demonstrate that it is substantially too broad."  *Id.* at 24.

27

28

4

1   Subsequent to that order, Plaintiffs and Defendant proposed, and the Court entered, a

2   schedule front-loading discovery and a motion for summary judgment on the question of

3   constitutionality.  ECF No. 67.  At a later CMC, the government requested that the Court revise

4   the schedule in order to allow the parties to brief summary judgment on potentially dispositive

5   non-constitutional issues along with Defendant's constitutional arguments.  Vigen Decl. ¶ 4.

6   Defendant's counsel objected to postponing briefing on the constitutional issue, but represented

7   that it had already obtained discovery sufficient to allow it to prevail on a statutory argument, and

8   suggested the parties might brief both issues together.  *Id.* ¶ 5.  Plaintiffs' counsel did not object to

9   postponing summary judgment until the end of discovery, but did not agree to brief summary

10  judgment on a limited statutory question before then.  *Id.* ¶ 6.  Ultimately, the Court indicated that

11  it was not inclined to alter the schedule, and neither the government nor Plaintiffs subsequently

12  pursued a motion to amend the scheduling order.  *Id.* ¶¶ 6–9; *see also* ECF Nos. 73, 74.

13  Defendant moved for summary judgment on November 17, 2023, raising both as-applied

14  and facial First Amendment challenges to the VPPA.  Def.'s Mot. for Summ. J. (Mot.), ECF No. 76.

## ARGUMENT

I.   The Court Should Not Consider a Constitutional Question Prematurely.

As an initial matter, the Court should not adjudicate the constitutional questions presented

in Defendant's motion until it has considered non-constitutional grounds upon which this case

may be resolved.  This approach adheres to well-established principles of judicial restraint and

accords with bedrock constitutional concepts, including separation of powers and the case-or-

controversy requirement.  On the other hand, ruling upon the constitutionality of a federal statute

before determining whether the statute, in fact, applies to the conduct at issue would be contrary

to Supreme Court and Ninth Circuit directives to decide constitutional issues only where necessary.

These precepts are particularly relevant here, where Defendant has already informed the Court that

it believes a basis exists for the Court to grant summary judgment in its favor on statutory grounds.

The Court should defer ruling on Defendant's motion until after it has considered non-

constitutional grounds upon which to decide this case—and avoid prematurely adjudicating a

constitutional question.  Statutory interpretation is also a necessary predicate to adjudicating a facial

5

constitutional challenge; the Court must decide what the statute means before determining if it passes constitutional muster.  *United States v. Hansen*, 599 U.S. 762, 770 (2023).

It is a "well established principle" that courts "will not decide a constitutional question if there is some other ground upon which to dispose of the case."  *Fox Television Stations, Inc. v. Aereokiller, LLC*, 851 F.3d 1002, 1013 (9th Cir. 2017) (quoting *Bond v. United States*, 572 U.S. 844, 855 (2014)).  The Supreme Court has stressed that the "one doctrine more deeply rooted than any other in the process of constitutional adjudication . . . is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable."  *Jean v. Nelson*, 472 U.S. 846, 854 (1985) (quoting *Spector Motor Co. v. McLaughlin,* 323 U.S. 101, 105 (1944)).  "[T]he doctrine of avoiding constitutional questions except as a last resort [is] grounded in fundamental constitutional principles—the 'great gravity and delicacy' of judicial review, separation of powers, the paramount importance of constitutional adjudication, the case or controversy requirement, and principles of federalism."  *N.J. Payphone Ass'n, Inc. v. Town of W. N.Y.*, 299 F.3d 235, 249 (3d Cir. 2002) (Alito, J., concurring).  For these reasons, "if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter."  *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 346–47 (1936) (Brandeis, J., concurring); *see also St. Augustine Sch. v. Underly*, 78 F.4th 349, 359 (7th Cir. 2023) ("where the non-constitutional theories are sufficient to provide a [party] with all the relief she seeks, the Supreme Court has instructed lower courts to avoid constitutional adjudication").

The Supreme Court and the Ninth Circuit have repeatedly reaffirmed these longstanding rules of judicial restraint.  *See, e.g.*, *Bond*, 572 U.S. at 855; *Slack v. McDaniel*, 529 U.S. 473, 485 (2000) (citing principles of judicial restraint to decide case on non-constitutional grounds); *Dep't of Com. v. U.S. House of Representatives*, 525 U.S. 316, 343 (1999) ("[W]e find it unnecessary to reach the constitutional question presented."); *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); *Three Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g, P.C.*, 467 U.S. 138, 157 (1984) (same); *Escambia Cnty. v.*

*McMillan*, 466 U.S. 48, 51 (1984) (per curiam) (same); *Fox Television*, 851 F.3d at 1013; *Klein v. City of San Clemente*, 584 F.3d 1196, 1200 (9th Cir. 2009) ("federal courts should not decide federal constitutional issues when alternative grounds yielding the same relief are available" (quoting *Kuba v. 1–A Agric. Assoc.*, 387 F.3d 850, 856 (9th Cir. 2004))); *Barnes-Wallace v. City of San Diego*, 530 F.3d 776, 787 (9th Cir. 2008) (same).

Conversely, both the Supreme Court and numerous federal courts of appeals have found reversible error where a lower court decided a constitutional question instead of resolving a case on available non-constitutional grounds. *See, e.g.*, *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Engineers*, 531 U.S. 159, 174 (2001) (reversing court of appeals decision grounded in constitutional analysis); *Schmidt v. Oakland Unified Sch. Dist.*, 457 U.S. 594, 595 (1982) (abuse of discretion to reach federal constitutional issue instead of deciding state law claim); *Torres v. Precision Indus., Inc.*, 938 F.3d 752, 756–57 (6th Cir. 2019) (reversible error for district court to decide constitutional issue before determining whether conduct violated state law); *Sony BMG Music Ent. v. Tenenbaum*, 660 F.3d 487, 508–09 (1st Cir. 2011) ("the district court erred when it prematurely reached a constitutional question"); *Bell Atl. Md., Inc. v. Prince George's Cnty., Md.*, 212 F.3d 863, 866 (4th Cir. 2000) ("by deciding the constitutional question . . . in advance of considering the state law questions upon which the case might have been disposed of, the district court committed reversible error"); *Robbins v. Lady Baltimore Foods, Inc.*, 868 F.2d 258, 263–64 (7th Cir. 1989) (district court erred by reaching constitutional question where unresolved factual issue might have made statute inapplicable); *White v. U.S. Pipe & Foundry Co.*, 646 F.2d 203, 206 (5th Cir. 1981) (abuse of discretion to decide constitutional question where case could be resolved on non-constitutional grounds).

Although the Ninth Circuit recently declined to reverse a district court ruling on the ground that it decided a constitutional issue prematurely, that decision is distinguishable.[2] *See Green v. Miss U.S. of Am., LLC*, 52 F.4th 773 (9th Cir. 2022). In *Green*, the defendant did not contest that the statute applied to it, purposefully choosing to make constitutional issues case-dispositive. *Id.*

---

[2] Moreover, courts in this Circuit have continued to adhere to constitutional avoidance principles after *Green. See, e.g.*, *United States v. Mongol Nation*, 56 F.4th 1244, 1252 (9th Cir. 2023); *Joseph v. City of San Jose*, No. 19-cv-1294, 2023 WL 1973222, at *11 (N.D. Cal. Feb. 13, 2023), *appeal filed* No. 23-15358 (9th Cir. Mar. 13, 2023).

7

at 795–98. Here, in contrast, Defendant has made plain that it does *not* concede its conduct violated the VPPA. *See* Mot. 1 ("If the Court does not grant the motion, Patreon will refute these assumed facts in subsequent proceedings."). Defendant's counsel informed the Court that Defendant would move for summary judgment on statutory grounds if given the opportunity. *See* Vigen Decl. ¶ 5. In these circumstances, principles of judicial restraint and constitutional avoidance obligate the Court to decide all potentially dispositive statutory questions first.

## II. If It Applies to Defendant, the VPPA Passes Intermediate Scrutiny.

Should the Court reach Defendant's constitutional arguments—only *after* considering statutory grounds upon which the case may be resolved—it should hold that the VPPA comports with the First Amendment as applied to Defendant. To begin, this Court has already determined that Defendant's "alleged speech at issue is commercial." 2d MTD Order 19. The constitutionality of the VPPA as applied to Defendant is thus analyzed under the intermediate scrutiny standard articulated in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980). *Id.* at 10. Because Defendant's alleged disclosures concern lawful activity and are not misleading, the constitutionality of the statute as applied here turns upon: (1) "whether the asserted governmental interest is substantial"; (2) "whether the regulation directly advances the governmental interest asserted"; and (3) "whether it is not more extensive than is necessary to serve that interest." *Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 844 (9th Cir. 2017) (en banc) (quoting *Cent. Hudson*, 447 U.S. at 566). The VPPA passes this test.

The initial inquiry is whether the governmental interest underlying the VPPA is "substantial." *Cent. Hudson*, 447 U.S. at 566. The VPPA advances governmental interests that are substantial at a minimum: protection of consumers' privacy and, in doing so, their intellectual freedom. It has long been recognized that "the protection of . . . privacy is a substantial state interest." *Fla. Bar v. Went for It, Inc.*, 515 U.S. 618, 625 (1995) (quoting *Edenfield v. Fane*, 507 U.S. 761, 769 (1993)); *see also Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876 (9th Cir. 2014) (affirming constitutionality of Telephone Consumer Protection Act and that "protection of privacy is a significant interest"). Courts have also specifically acknowledged the government's substantial

1    interest in protecting the privacy of consumer information.  *See Boetler v. Hearst Commc'ns, Inc.*

2    (*Hearst I*), 192 F. Supp. 3d 427, 448 (S.D.N.Y. 2016); *Boetler v. Advance Magazine Publishers, Inc.*

3    (*Advance Magazine*), 210 F. Supp. 3d 579, 599 (S.D.N.Y. 2016); *see also Trans Union Corp. v. FTC*, 245

4    F.3d 809, 818 (D.C. Cir. 2001) (finding that the government's "interest [in] protecting the privacy

5    of consumer credit information . . . is substantial").  Even Defendant "concede[d]" that "consumer

6    privacy [was] a substantial state interest" at the motion-to-dismiss stage.  2d MTD Order 23.

7          The government also has at least a substantial interest in regulating disclosures to protect

8    the expressive speech rights of consumers—including the right to view videos in privacy.  It is well-

9    established that "the Constitution protects the right to receive information and ideas."  *Bd. of Educ.,*

10   *Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 866–67 (1982) (citation omitted).  The

11   Supreme Court has long recognized the expressive value of motion pictures, *Joseph Burstyn, Inc. v.*

12   *Wilson*, 343 U.S. 495, 501 (1952), which has been extended to content on the internet, *Reno v.*

13   *ACLU*, 521 U.S. 844, 870 (1997).  There is therefore a right to access and associate with ideas

14   expressed in video materials, particularly where necessary to "shield[] dissident expression from

15   suppression."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984); *see also Perry v. Schwarzenegger*, 591 F.3d

16   1126, 1133 (9th Cir. 2009).  Courts have also recognized a right to "speak anonymously," including

17   on the internet.  *Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128, 131 (D.D.C. 2009) (collecting cases).

18   Disclosure can chill the exercise of speech rights.  *See NAACP v. Alabama ex rel. Patterson*, 357 U.S.

19   449, 462 (1958) ("This Court has recognized the vital relationship between freedom to associate

20   and privacy in one's associations."); *Van Hollen, Jr. v. Fed. Election Comm'n*, 811 F.3d 486, 488 (D.C.

21   Cir. 2016) ("Disclosure chills speech.").  And the government has a substantial, even compelling,

22   interest in guarding citizens' ability to engage in First-Amendment-protected activities.  *See Burson*

23   *v. Freeman*, 504 U.S. 191, 208 (1992) (plurality op.) (holding certain regulations on speech

24   permissible given "compelling interest in securing the right to vote freely and effectively").

25          These important interests underlie the VPPA.  Congress passed the statute "[t]o preserve

26   personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio

27   visual materials."  S. Rep. No. 100-599, at 1; *see also Eichenberger v. ESPN Inc.*, 876 F.3d 979, 983

28

9

(9th Cir. 2017) (explaining that the VPPA "protects privacy interests . . . by ensuring that consumers retain control over their personal information").  The accompanying Senate report observed that the VPPA "follow[ed] a long line of statutes passed by the Congress to extend privacy protection to records that contain information about individuals."  S. Rep. No. 100-599, at 2 (citing nearly a dozen statutes enacted for similar purposes).  It also pointed to testimony presenting concerns about the consequences of disclosure of video-viewing information specifically, and to real-world scenarios in which such information had been improperly disclosed.  *See supra* p. 2.  Such congressional findings are "entitled to a great deal of deference."  *Moser v. FCC*, 46 F.3d 970, 974 (9th Cir. 1995) (quoting *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 331 n.12 (1985)).

Nor was Congress's interest in protecting privacy for privacy's sake.  It specifically sought to safeguard the freedom to engage in expressive activity.  The drafters of the VPPA recognized that "the relationship between the right of privacy and intellectual freedom" is "a central part of the first amendment."  S. Rep. No. 100-599, at 4.  As the Senate report noted, "[p]rotecting an individual's choice of books and films is a . . . pillar of intellectual freedom under the first amendment."  *Id.* (citing *Stanley v. Georgia*, 394 U.S. 557, 565 (1969)).  The statute serves these interests by protecting against disclosure of viewing habits that are legal, *see infra* pp. 18–20, but with which consumers may not want to be publicly associated.  That protection necessarily encompasses videos concerning core political speech, along with violent movies, non-obscene pornography, and films expressing publicly disfavored views.  Academics have since recognized "the VPPA [as] a unique gap-filler, extending protection—if only in part—to the expressive activities recognized as vital to the First Amendment but left underprotected by the Fourth."  *The Video Privacy Protection Act as a Model Intellectual Privacy Statute*, 131 Harv. L. Rev. 1766 (April 2018).

Defendant now asserts that the government lacks a "substantial interest" in regulating the disclosures at issue here.  These arguments fail.  *First*, Defendant is incorrect that "there is generally no state interest in prohibiting a speaker like Patreon from disclosing lawfully acquired, accurate factual information about a consumer."  Mot. 17.  As explained, the state interest is in protecting consumers' privacy and intellectual freedom, as expressed through their private viewing choices.

10

1    Such an interest is not at issue in any of Defendant's cited cases.  *Second*, the alleged disclosure

2    here—titles of videos that consumers requested or obtained—is exactly what the statute was

3    enacted to prohibit.  *See* S. Rep. No. 100-599, at 5 (explaining that "[t]he impetus for this legislation"

4    was disclosure of "the titles of 146 films").  That is no basis upon which to distinguish Defendant's

5    alleged disclosure from any other.  *Third*, Congress chose to condition authorized disclosures on

6    consumers' "informed, written consent" to ensure *actual*, knowing consumer acquiescence.

7    18 U.S.C. § 2710(b)(2)(B).  According to their testimony, neither Plaintiff read the terms that

8    Defendant claims demonstrate they consented to the disclosure at issue here.  *See* Stark Dep. 32:9–

9    11, ECF No. 87-12; Oostyen Dep. 34:6–11, ECF No. 87-13.  Contrary to Defendant's assertions,

10   this point demonstrates the need for the specific terms included in the statute.  And *fourth*,

11   Defendant provides no support for the argument that the government lacks substantial interest in

12   a regulation because individuals may be able to engage in self-help to save themselves from harm

13   in certain, specific circumstances.[3]

14        The next question is whether the VPPA "directly advances" the government's interest in

15   protecting the privacy of individuals' video viewing choices.  *Cent. Hudson*, 447 U.S. at 566.  This

16   prong requires the government to "demonstrate that the harms it recites are real and that its

17   restriction will in fact alleviate them to a material degree."  *Rubin v. Coors Brewing Co.*, 514 U.S. 476,

18   487 (1995) (quoting *Edenfield*, 507 U.S. at 770–71).  On its face, the VPPA applies to individuals

19   who sell, rent, or deliver video recordings—the only individuals, other than the consumer, likely to

20   have access to the information the statute seeks to keep private.  *Accord Hearst I*, 192 F. Supp. 3d

21   at 449.  Restricting the ability of those who possess a consumer's video purchase, rental, or request

22   history to disclose such information directly advances the goal of keeping that information private

23   and protecting consumers' intellectual freedom.  *Id.*  And the lawsuits that have credibly alleged

24   VPPA violations over the years—and the explosion of recent VPPA cases—demonstrate that the

25   disclosures the statute seeks to prevent are a legitimate concern.  *See, e.g.*, *Yershov v. Gannett Satellite*

26

27   _____

     [3] In addition, the printed webpages Defendant points to in support of this argument do not
28   specifically explain whether their use would prevent the disclosure at issue here in practice.  *See, e.g.*,
     ECF No. 85-10; ECF No. 86-3.  It is also unclear whether these services charge consumers.  *See id.*

Gov't Opp'n to Def.'s Mot. for Summ. J.                                      Case No. 3:22-cv-03131-JCS

1    *Info. Network, Inc.*, 820 F.3d 482 (1st Cir. 2016) (plaintiffs adequately stated claim under the VPPA);

2    *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1221–26 (C.D. Cal. 2017) (same); *In re*

3    *Hulu Privacy Litig.*, No. 11-cv-3764, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) (same); *see also*

4    *Amazon.com v. Lay*, 758 F. Supp. 2d 1154, 1170–71 (W.D. Wash. 2010) (issuing declaratory judgment

5    that a requested disclosure would violate the VPPA).  Defendant does not appear to contest that

6    the VPPA directly advances Congress's interests here.

7            The final inquiry under *Central Hudson* is whether the challenged statute is sufficiently

8    narrowly drawn.  This requires a fit between the governmental interest and the statute's prohibitions

9    that is "not necessarily perfect," but rather "reasonable."  *Bd. of Trustees of State Univ. of N.Y. v. Fox*,

10   492 U.S. 469, 480 (1989).  Such a fit exists here.  As explained, the VPPA's disclosure prohibitions

11   target the commercial entities most likely to have, and thus, be in a position to make public,

12   information Congress intended to protect.  What is more, the statute includes limited exemptions

13   that allow consumers to make choices about their own information, and permit regulated entities

14   to conduct business and comply with law enforcement and judicial directives as necessary.  *See*

15   18 U.S.C. § 2710(b)(2).

16           Defendant argues that the VPPA's requirement that consumers consent in standalone,

17   written form to disclosure of their video request or purchase history is "more extensive than

18   necessary" to serve the government's interest.  Mot. 19.  Not so.  Congress determined that, given

19   the privacy interests at stake, an "informed, written consent" requirement was needed to prevent

20   businesses from using a "fine-print notice on the reverse side of a business form, or other notice

21   that the consumer is unlikely to see."  S. Rep. 100-599, at 13.  This concern is not theoretical.[4]  The

22   Ninth Circuit routinely confronts claims that businesses improperly imposed unwanted terms,

23   buried in fine-print agreements or hyperlinks, on consumers.  *See, e.g.*, *Berman v. Freedom Financial*

24   *Network*, 30 F.4th 849, 858 (9th Cir. 2022); *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1179 (9th

25   Cir. 2014).  The requirement is also not unique.  Two of the privacy statutes Defendant cites require

---

26   [4] Indeed, the "Privacy Policy" Defendant asserts provided Plaintiffs with notice that Defendant
27   would collect and disclose their video-viewing histories, *see* Mot. 2–3, was a hyperlink at the bottom
     of a sign-up screen, available to view only if Plaintiffs chose to click on it, *see* Byttow Decl. ¶ 15 &
28   Ex. 78, ECF No. 78.  Neither did.  Stark Dep. 32:9–11; Oostyen Dep. 34:6–11.

notice to consumers in a separate form, on a yearly basis, regarding all information they collect or disclose—in addition to requiring written or electronic consent to disclosures. *See* 47 U.S.C. § 551(a); 47 U.S.C. § 338(i)(1). And as another court in this District held, it would "not be burdensome to design a website whereby consumers must click a box confirming their consent to disclosures involving video purchases and click a separate box confirming their consent to all other applicable policies and terms." *Cappello v. Walmart Inc.*, No. 18-cv-06678, 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019). Finally, even if less-restrictive consent requirements could also advance the VPPA's objectives, *Central Hudson* does not require the least restrictive means of regulating commercial speech, but rather a "fit between the legislature's ends and the means chosen to accomplish those ends" that is "reasonable." *See Fla. Bar*, 515 U.S. at 632 (quoting *Fox*, 492 U.S. at 480). That standard is met.

Defendant is also incorrect that the damages provision of the VPPA is not narrowly tailored because "neither plaintiff suffered any injury." Mot. 19. This argument is squarely foreclosed by the Ninth Circuit's holding in *Eichenberger*, which recognized that "the VPPA identifies a *substantive* right to privacy that suffers *any time* a video service provider discloses otherwise private information." 876 F.3d at 983–84. It is also contradicted by Plaintiffs' testimony. *See* Stark Dep. 22:3–4 ("Them having the data period is what harms me."); Oostyen Dep. 20:5–7, 20:19–21:3, 22:24–25. What is more, the minimum penalty the VPPA imposes is in line with what Congress prescribed for violations of other privacy statutes. *See* 18 U.S.C. § 2724(b)(1) (minimum of $2,500 in damages for violation of Driver Privacy Protection Act); 47 U.S.C. § 551(f)(2)(A) (minimum of the higher of $100 per day of violation or $1,000 in damages for violation of Cable Communications Privacy Act); 15 U.S.C. § 1681n(a)(1)(B) (minimum of $1,000 in damages for obtaining a consumer report under false pretenses in violation of Fair Credit Reporting Act).

Finally, Defendant's contention that the VPPA is fatally underinclusive lacks merit. It is well settled that the government "need not address all aspects of a problem in one fell swoop" and is permitted to focus regulation on certain problems, even though other problems may exist. *See Williams-Yulee v. Fla. Bar*, 575 U.S. 443, 449 (2015); *see also, e.g., French v. Jones*, 876 F.3d 1228, 1238–

13

39 (9th Cir. 2017); *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1035 (N.D. Cal. 2017).  Moreover, states have enacted regulations that cover many of the situations to which Defendant points, and Congress is not required to pass laws redundant with existing regulation.  *Cf. Burson v. Freeman*, 504 U.S. 191, 207 (1992) ("The First Amendment does not require States to regulate for problems that do not exist.").  For example, all but two states and the District of Columbia have laws protecting the confidentiality of library records.  *See Advance Magazine*, 210 F. Supp. 3d at 599 (citing the American Library Association).  States have also enacted a variety of laws to protect digital privacy.  *See* Nat'l Conf. of State Legislatures, State Laws Related to Digital Privacy, https://perma.cc/XS76-4DNT (collecting state laws).  For all of these reasons, the VPPA is not fatally underinclusive.  *Accord Advance Magazine*, 210 F. Supp. 3d at 601.

The VPPA thus survives intermediate scrutiny and is constitutional as applied.

III.   <u>The VPPA Is Constitutional on Its Face.</u>

Defendant's facial challenge also fails.  As an initial matter, facial challenges are disfavored, and a proper interpretation of the VPPA shows its scope is far more tailored than Defendant suggests.  As demonstrated, the VPPA's commercial applications pass intermediate scrutiny—and the overbreadth doctrine does not apply to them.  These legitimate applications of the statute plainly outweigh its application to non-commercial disclosures.  That alone is sufficient to defeat an overbreadth challenge.  But were the Court to apply strict scrutiny to the VPPA's non-commercial applications, the statute withstands that analysis.

A.   <u>Facial Challenges Are Disfavored.</u>

The Supreme Court has made clear—including in the past term—that "[f]acial challenges are disfavored." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008); *see also Hansen*, 599 U.S. at 769–70; *id.* at 785–86 (Thomas, J., concurring) (expressing concern about "how far afield the facial overbreadth doctrine has carried the Judiciary from its constitutional role").  The First Amendment overbreadth doctrine represents "an exception to the traditional rule that 'a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the

Court.'" *L.A. Police Dep't v. United Reporting Pub. Corp.*, 528 U.S. 32, 39 (1999) (quoting *New York v. Ferber*, 458 U.S. 747, 767 (1982)).  Pursuant to this doctrine, litigants may challenge a statute based on "a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).  This is based on the concern that "[o]verbroad laws 'may deter or chill constitutionally protected speech.'" *Hansen*, 599 U.S. at 769–70 (quoting *Virginia v. Hicks*, 539 U.S. 113, 119 (2003)).  But the Supreme Court has repeatedly cautioned that "invalidation for overbreadth is 'strong medicine' that is not to be 'casually employed.'" *Id.* at 770 (quoting *United States v. Williams*, 553 U.S. 285, 293 (2008)); *see also, e.g., United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1581 (2020).  The Supreme Court has been particularly careful to avoid broad pronouncements in cases involving "clashes between the First Amendment and privacy rights" in light of the "sensitivity and significance of the interests presented." *Bartnicki v. Vopper*, 532 U.S. 514, 529 (2001) (citation and alteration omitted).  In such cases it has instead opted to "rely[] on limited principles that sweep no more broadly than the appropriate context of the instant case." *Id.*

"A statute is not overbroad just because 'one can conceive of some impermissible applications.'" *Marquez-Reyes v. Garland*, 36 F.4th 1195, 1201 (9th Cir. 2022) (quoting *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984)).  Instead, for a facial overbreadth challenge to succeed, the statute's unlawful applications must be "substantially disproportionate to the statute's lawful sweep." *Hansen*, 599 U.S. at 770.  "In the absence of a lopsided ratio, courts must handle unconstitutional applications as they usually do—case-by-case." *Id.* The Supreme Court has cautioned that for any unconstitutional applications to be relevant, they "must be realistic, not fanciful." *Id.*  To determine whether an application was "realistic," the Supreme Court in *Hansen* examined how the statute had been applied in practice, discounting "hypotheticals" conjuring situations in which it theoretically *could* apply. *Id.* at 742.

"[O]verbreadth analysis does not typically apply to commercial speech." *Fox*, 492 U.S. at 481; *see also, e.g., Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982) ("the overbreadth doctrine does not apply to commercial speech").  If a statute targeting commercial

1   speech also applies to non-commercial speech, however, overbreadth analysis may be used to

2   analyze the statute's non-commercial applications.  *See Fox*, 492 U.S. at 481–82.

3         B.  Properly Interpreted, the Reach of the VPPA Is Limited.

4         "The first step in overbreadth analysis is to construe the challenged statute; it is impossible

5   to determine whether a statute reaches too far without first knowing what the statute covers."[5]

6   *Williams*, 553 U.S. at 293; *see also Hansen*, 599 U.S. at 770.  Determining what a statute means "begins

7   with the text."  *Marquez-Reyes*, 36 F. 4th at 1201.  The Ninth Circuit has also looked to what

8   "Congress intend[ed] to cover" in interpreting the VPPA.  *Eichenberger*, 876 F.3d at 984.  Moreover,

9   courts are bound to "avoid" interpretations that "would raise serious constitutional questions."

10   *Marquez-Reyes,* 36 F. 4th at 1204 (citing *Ferber*, 458 U.S. at 769 n.24 ("When a federal court is dealing

11   with a federal statute challenged as overbroad, it should, of course, construe the statute to avoid

12   constitutional problems, if the statute is subject to such a limiting construction.")).  The Supreme

13   Court recently reaffirmed the importance of the canon of constitutional avoidance in a First

14   Amendment overbreadth challenge, explaining that "[w]hen legislation and the Constitution brush

15   up against each other, [courts'] task is to seek harmony, not to manufacture conflict."  *Hansen*, 599

16   U.S. at 781.  This initial inquiry demonstrates the targeted scope of the VPPA—and that it does

17   not cover many of Defendant's hypothetical applications.

18         On its face, the VPPA prohibits a specific, defined type of disclosure: knowing disclosures

19   by one category of business—"video tape service provider[s]"—that would reveal "personally

20   identifying information" exposing "specific video materials or services" that identified

21   "consumers" requested or obtained.   *See* 18 U.S.C. § 2710(a)(3) & (b)(1).  Many of the statute's

22   terms are defined and have been interpreted by courts.  Courts also continue to issue new decisions

23   analyzing the statutory text on a regular basis.

24         To start, a "video tape service provider" is one "engaged in the business . . . of rental, sale,

25   or delivery of prerecorded video cassette tapes or similar audio visual materials."  *Id.* § 2710(a)(4).

26   As this Court previously held, although the VPPA applies to businesses that supply online videos,

27

28   [5] This statutory analysis is presented to demonstrate that the VPPA is not unconstitutionally
     overbroad.  The government takes no position on the application of the statute in this case.

16

it does not cover provision of live videos.  MTD Order 10–11.  Other courts have consistently found that the VPPA does not apply to every business that creates or posts online video content; instead, it focuses on businesses whose products are both "substantially involved in the conveyance of video content" and "significantly tailored to serve that purpose."  *In re Vizio*, 238 F. Supp. 3d at 1221.  Multiple courts within this Circuit have dismissed VPPA claims filed against companies whose provision of video content is "ancillary" to their primary purpose.  *Markels v. AARP*, --- F. Supp. 3d ----, No. 22-cv-5499, 2023 WL 6411720, at *3 (N.D. Cal. Aug. 29, 2023); *see also, e.g., Carroll v. Gen. Mills, Inc.*, No. 23-cv-1746, 2023 WL 4361093, at *4 (C.D. Cal. June 26, 2023); *Cantu v. Tapestry, Inc.*, No. 22-cv-1974, 2023 WL 4440662, at *8 (S.D. Cal. July 10, 2023); *Tawam v. Feld Ent. Inc.*, --- F. Supp. 3d ----, No. 23-cv-357, 2023 WL 5599007, at *4 (S.D. Cal. July 28, 2023). Another court recently found that the VPPA does not apply to movie theatres because they "show" movies, rather than rent, sell, or deliver them.  *Osheske v. Silver Cinemas Acquisition Co.*, No. 22-cv-9463, 2023 WL 8188464, at *3 (C.D. Cal. Oct. 31, 2023).

A "consumer" is a "renter, purchaser, or subscriber of goods" from a video tape service provider.  18 U.S.C. § 2710(a)(1).  District courts in the Ninth Circuit have interpreted this term narrowly. *See In re Vizio*, 238 F. Supp. 3d at 1222 ("the statute's definition of 'consumer is somewhat narrower than the word's ordinary meaning").  Several have held that individuals are not consumers within the meaning of the VPPA simply because they viewed a video on a publicly available website, *see, e.g., Markels*, 2023 WL 6411720, at *3; because they provided their names and addresses to a website,  *see, e.g., Jefferson v. Healthline Media, Inc.*, --- F. Supp. 3d ----, No. 22-cv-05059, 2023 WL 3668522, at *3 (N.D. Cal. May 24, 2023); or because they signed up for a mailing list, *see, e.g., Tawam*, 2023 WL 5599007, at *5.  And at least one court has held that indirect payments to a third party are insufficient to make an individual a consumer of a video tape service provider for VPPA purposes.  *Hunthausen v. Spine Media, LLC*, --- F. Supp. 3d ----, No. 22-cv-1970, 2023 WL 4307163, at *3 (S.D. Cal. June 21, 2023).

The term "personally identifiable information" has a specific meaning in this Circuit.  *See* MTD Order 13.  It "means only that information that would 'readily permit an ordinary person to

identify a specific individual's video-watching behavior.'" *Eichenberger*, 876 F.3d at 985 (quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 267).  This excludes information that "cannot identify an individual unless it is combined with other data" that the recipient possesses.  *Id.* at 986.  It is an open question in this Circuit whether revealing information like a Facebook ID, or a URL that does not identify that a webpage contains a video, is sufficient to constitute disclosure of PII.  *See* MTD Order 13–14; *see also, e.g.*, *Ghanaat v. Numerade Labs, Inc.*, --- F. Supp. 3d ----, No. 23-cv-833, 2023 WL 5738391, at *4 (N.D. Cal. Aug. 28, 2023).

The VPPA also includes reasonable, limited exceptions to allow disclosures to and disclosures authorized by the consumer, *see* 18 U.S.C. § 2710(b)(2)(A) & (B); to accommodate the needs of law enforcement entities or courts, *see id.* § 2710(b)(2)(C) & (F); and to account for the practicalities of running a business, *see id.* § 2710(b)(2)(D) & (E).  Courts in this Circuit have rejected unnaturally cramped interpretations of the VPPA's exceptions.  For example, the Ninth Circuit has held that incidental disclosures to third parties that are tangential to a permitted disclosure to a consumer do not violate the VPPA.  *Mollett*, 795 F.3d at 1066–67.  It also held that "intra-corporate disclosures are not unauthorized disclosures under the Act."  *Rodriguez v. Sony Computer Ent. Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015).  Another court in this District recently recognized that sharing of video viewing histories with educational institutions where such disclosures are explicitly part of the service a company provides might fall under the exception for disclosure in the "ordinary course of business."  *See M.K. v. Google, LLC*, No. 21-cv-8465, 2023 WL 4937287, at *6 (N.D. Cal. Aug. 1, 2023) (recognizing that this argument could be "meritorious" on summary judgment, but denying motion to dismiss because the pleadings did not support it).

The VPPA does not define the term "video materials," and it does not appear to have been interpreted by other courts.  But the term has not been—and cannot reasonably be—construed to prohibit disclosure of a consumer requesting or obtaining *illegal* materials.  Such an interpretation would be inconsistent with the Congress's intent in passing the VPPA, decades of precedent, and the canon of constitutional avoidance.  As discussed, the purpose of the VPPA is to safeguard personal privacy and the right to intellectual freedom.  *See supra* pp. 2–3, 8–10.  Congress clearly

intended to prohibit disclosure of individuals requesting or obtaining video materials that would themselves be protected by the First Amendment.  *See id.*  The act of viewing such materials also enjoys First Amendment protection.  *See id.*  Whether that act is private "directly affect[s] the ability of people to express their opinions, to join in association with others, and to enjoy the freedom and independence that the Constitution was established to safeguard."  S. Rep. No. 100-599, at 6.  But "[i]t rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute."  *Ferber*, 458 U.S. at 761–62 (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949)).  More bluntly put, "[s]peech intended to bring about a particular unlawful act has no social value; therefore, it is unprotected."  *Hansen*, 599 U.S. at 783.  For example, "offers to give or receive what it is unlawful to possess . . . enjoy no First Amendment protection."  *Williams*, 553 U.S. at 298.  Child pornography is "outside the protection of the First Amendment."  *Ferber*, 458 U.S. at 763.  Similarly, "the First Amendment does not protect copyright infringement,"  *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 877 (N.D. Cal. 2022)—or defamation, incitement, obscenity, or true threats, *see, e.g.*, *Counterman v. Colorado*, 600 U.S. 66, 73–74 (2023).  It would be inconsistent with congressional intent (and common sense) to interpret the VPPA to prohibit disclosure of requests for or procurement of illegal materials that are unprotected by the First Amendment.  The government is unaware of *any* case in which the VPPA was held to prohibit disclosure that a consumer requested or obtained videos containing child pornography or copyright infringement, or another type of video that was "intended to bring about a particular unlawful act."[6]

---

[6] The government knows of only a single case that comes close.  In *Camfield v. City of Oklahoma City*, 248 F.3d 1214 (10th Cir. 2001), an individual brought a successful VPPA challenge to the disclosure of his rental of a commercially available, Academy-Award-winning film that local police nonetheless suspected constituted child pornography.  *Id.* at 1218–21.  The district court determined that the film fell within an exception to the state's child pornography statute; the statute was later amended, clarifying that the film fell outside of its reach.  *Id.* at 1222–23.  One could certainly hypothesize other cases in which the illicit nature of a video could be subject to legal debate.  But the point remains that the term "video materials" cannot reasonably be interpreted to cover illegal content.

19

*Hansen*, 599 U.S. at 783.  And if this interpretation were somehow plausible, the Court would be obligated to eschew it if it created constitutional problems.  *See id.* at 781.

Even if the VPPA were—incorrectly—interpreted to prohibit disclosures that individuals requested or obtained child pornography on its face, that interpretation would be wrong because another, later-enacted federal statute specifically requires such disclosures.  *See* 18 U.S.C. § 2258A. Section 2258A mandates that electronic communications service providers report the identity of any individual who appears to have violated federal laws criminalizing child pornography to the CyberTipline of the National Center for Missing & Exploited Children (NCMEC), along with the material constituting the suspected violation.  *See id.* § 2258A(b).  The predecessor of Section 2258A was originally enacted in 1998—ten years after the VPPA.  *See* Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105-314, 112 Stat. 2983, Title VI, § 604(a) (1998).  The VPPA must therefore be interpreted to ensure it "make[s] sense in combination" with Section 2258A, recognizing that "the implications of a statute may be altered by the implications of a later statute." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000) (quoting *United States v. Fausto*, 484 U.S. 439, 453 (1988)).  This interpretive tool is particularly apt where the earlier statute is broader in scope "but the subsequent statute more specifically address[es] the topic at hand."  *Id.* Courts also have a "duty to interpret Congress's statutes as harmonious rather than at war with one another."[7]  *San Luis Obispo Coastkeeper v. Santa Maria Valley Water Conservation District*, 49 F. 4th 1242, 1248 (9th Cir. 2022) (quoting *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018)).  For all of these reasons, the VPPA cannot be interpreted to prohibit reports made pursuant to Section 2258A.

C.  The VPPA's Few Applications to Non-Commercial Speech Do Not Substantially Outweigh Its Many Legitimate Applications to Commercial Speech.

Properly interpreted, the VPPA is not unconstitutionally overbroad under the First Amendment.  The overwhelming majority of the VPPA's applications cover commercial speech. Such applications pass intermediate scrutiny, *see supra* pp. 8–14, and are not considered as part of

---

[7] Defendant's argument that the VPPA's lack of a specific carve-out for disclosures to NCMEC indicates that the statute prohibits such required disclosures, Mot. 22, should be rejected as absurd, *see Az. State Bd. for Charter Schs. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1008 (9th Cir. 2006) ("statutory interpretations which would produce absurd results are to be avoided" (citation omitted)).

an overbreadth analysis, *see supra* pp. 15–16.  As the Court correctly pointed out, "the VPPA would not be invalid if it only regulated speech like Patreon's alleged disclosures to Meta." 2d MTD Op. 23.  And as *Hansen* made clear, it is also not invalid unless any unconstitutional applications are "substantially disproportionate to the statute's lawful sweep," resulting in a "lopsided ratio." 599 U.S. at 770.  Defendant has the burden of establishing that.  *See* 2d MTD Op. 24 ("the burden [is] on the party challenging [a] law to demonstrate that it is substantially too broad").  To do so, it must show "realistic" applications to non-commercial speech that are both unconstitutional and "substantially disproportionate to the statute's lawful sweep." *Hansen*, 599 U.S. at 770.  Defendant comes nowhere close to showing such a "lopsided ratio" here.  *Id.*

### 1. The Vast Majority of the VPPA's Applications Are Commercial.

First, on one side of the scale are the statute's legitimate applications to commercial speech. The cases cited herein, along with many others, show that the vast majority of alleged violations of the VPPA involve commercial disclosures similar to those Defendant allegedly made here.  *See, e.g., supra* pp. 16–18 (citing cases); *see also, e.g., Yershov.*, 820 F.3d at 485 (disclosure of video viewing history to analytics company); *Salazar v. Nat'l Basketball Ass'n*, --- F. Supp. 3d ----, No. 22-cv-7935, 2023 WL 5016968, at *2 (S.D.N.Y. Aug. 7, 2023) (disclosure of video viewing history by sports league through Facebook pixel); *Carter v. Scripps Networks, LLC*, --- F. Supp. 3d ----, No. 22-cv-2031, 2023 WL 3061858, at *1 (S.D.N.Y. Apr. 24, 2023) (similar); *Feldman v. Star Tribune Media Co.*, 659 F. Supp. 3d 1006, 1012 (D. Minn. 2023) (similar); *Harris v. Pub. Broad. Serv.*, No. 22-cv-2456, 2023 WL 2583118, at *1 (N.D. Ga. Mar. 20, 2023) (similar); *Czarnionka v. The Epoch Times Ass'n, Inc.*, No. 22-cv-6348, 2022 WL 17069810, at *1 (S.D.N.Y. Nov. 17, 2022) (similar); *Lebakken v. WebMD, LLC*, No. 22-cv-644, 2022 WL 16716151, at *2 (N.D. Ga. Nov. 4, 2022) (similar); *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 798 (N.D. Cal. 2019) (disclosure of video viewing history by social media company to app developers and others); *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1093–94 (N.D. Cal. 2015) (disclosure of video viewing history by provider of on-demand video content to social media company).  In fact, according to defense counsel, "since January 1, 2022, over 200 lawsuits have been filed alleging violations of the VPPA

1    on account of an online video distributor's alleged use of a tracking pixel."  Norton Decl. ¶ 89,

2    ECF No. 83.

3         Defendant does not dispute that significant numbers of VPPA claims have been brought

4    over commercial disclosures, but seems to argue that these applications cannot be considered part

5    of the statute's "legitimate sweep."  Mot. 21.  That is incorrect.  As explained, the VPPA passes

6    intermediate scrutiny when it is applied to commercial speech.  *See supra* pp. 8–14.  Nor are the

7    statute's legitimate applications undermined by Defendant's various complaints about the VPPA's

8    consent requirements, the private character of the information disclosed, the harm that results from

9    disclosing private information, and the liquidated damages clause.  *See* Mot. 23–24.  The

10   government has already addressed Defendant's arguments about the consent requirement, the

11   harm caused by disclosure, and the damages clause.  *See supra* pp. 12–13.  Defendant also posits the

12   hypothetical application of the VPPA to the disclosure of information a consumer already shared

13   makes the statute overbroad.  Mot. 23–24.  But there is an obvious distinction between consumers

14   themselves willingly disclosing private information to persons of their choosing, and a company

15   disclosing that information indiscriminately, without their consent.  The VPPA accounts for

16   consumer choice appropriately.  *See* 18 U.S.C. § 2710(b)(2)(B).  Nor is it true that all privacy

17   interests are lost when information is made public.  *U.S. DOJ v. Reps. Comm. For Freedom of Press*,

18   489 U.S. 749, 770 (1989) (in FOIA context, "[t]he fact that 'an event is not wholly "private" does

19   not mean that an individual has no interest in limiting disclosure or dissemination'").

20        In sum, the VPPA's applications to commercial speech are concrete, numerous, and valid.

21        *2. The VPPA's Applications to Non-Commercial Speech Are Minimal.*

22        On the other side of the scale rest no more than a smattering of potential applications to

23   non-commercial speech.  To be sure, Defendant conjures up several outlandish examples of

24   supposed applications of the statute.  But "unconstitutional applications must be realistic, not

25   fanciful."  *Hansen*, 599 U.S. at 770.  In *Hansen*, the Court discounted a "string of hypotheticals" and

26   looked to how the statute had actually been applied.  *See id.* at 782 (noting the lack of "a single

27   prosecution for ostensibly protected expression").  Here, Defendant's scattershot hypotheticals fall

28

into three categories: (1) examples where the VPPA does not apply; (2) examples that are, in fact, commercial speech; and (3) examples that occur rarely or never. The first and second have no place in an overbreadth analysis; the third fails to outweigh the numerous legitimate applications.

*First*, the VPPA, when properly construed, does not apply to disclosure of requests or procurement of video materials unprotected by the First Amendment, including reports of child pornography or true threats. *See supra* pp. 18–20. Defendant spills considerable ink walking through hypothetical disclosures of criminal activity that it contends would violate the VPPA. But it offers no concrete examples of this happening. Moreover, the number of such disclosures that Defendant asserts occur demonstrates that (1) video tape service providers do not believe this conduct is covered by the VPPA, and (2) the VPPA is not chilling speech. *See, e.g.*, Mot. 7 (representing that "NCMEC receives nearly a million reports . . . each year"). Millions of disclosures readily dispel the concern underlying the overbreadth doctrine, "that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick*, 413 U.S. at 612. Accordingly, these purported applications do not call for the "strong medicine" of invalidation for overbreadth. *See Williams*, 553 U.S. at 293.

Defendant also argues that disclosures to consumers themselves—which would not be prohibited by the VPPA—may become violations of the statute if those disclosures are inadvertently overheard by others. Mot. 13. But such disclosures are not violations of the VPPA under Ninth Circuit law. *See Mollett*, 795 F.3d at 1066–67. It is similarly not a violation of the VPPA for employees of a video tape service provider to discuss a consumer's viewing habits with each other. *Rodriguez*, 801 F.3d at 1054. And Defendant is simply wrong that the VPPA contains no exceptions for disclosures in connection with litigation. *Contra* Mot. 10. It plainly does, *see* 18 U.S.C. § 2710(b)(2)(C) & (F), and the fact that it requires a court order to permit such disclosures is consistent with other privacy statutes, *see, e.g.*, 5 U.S.C. § 552a(b)(11) (exception to Privacy Act for disclosure "pursuant to the order of a court of competent jurisdiction"). This requirement seems particularly wise in VPPA litigation, lest those sued for violating the VPPA retaliate by repeating their offending conduct, chilling potential plaintiffs from vindicating their privacy rights.

*Second*, disclosures by continuing education providers, traffic schools, and educational software programs all appear to be commercial speech, and thus would not be considered in an overbreadth analysis. Such disclosures constitute a part of the service that these businesses promise to provide to their consumers and are entirely transactional. They therefore represent "speech necessary to the consummation of a commercial transaction" and would be considered commercial. *See Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 818 (9th Cir. 2013). It is also unsettled whether some or all such disclosures are exempted from the VPPA's reach altogether under the "ordinary course of business" exception. *See* 18 U.S.C. § 2710(b)(2)(E); *see also M. K.*, 2023 WL 4937287, at *6.

*Third*, the concrete situations that Defendant points to in which the VPPA has applied to non-commercial speech are few—and those would survive strict scrutiny. For one, although Defendant is theoretically correct that the VPPA prohibits disclosures concerning public officials' video viewing habits, the only real example is the 35-year-old disclosure of Judge Bork's rental history from before the VPPA was passed. Mot. 5. Contrary to Defendant's assertions, a video tape service provider does not appear to have *ever* monitored rank-and-file government employees at work to ensure they are not watching (otherwise legal) pornography and disclosed that to the public. *Id.* at 5–6. Nor would it be realistic or desirable for private businesses to routinely monitor what government employees do online at work—assuming that is discernable—and to report on it publicly. This would likely violate other privacy statues and also present serious security concerns. Instead, society reasonably relies on the government to police its employees.

There are also a handful of cases in which criminal defendants have moved to suppress evidence of specific (legal) video materials an individual rented, obtained in connection with criminal investigations, allegedly in violation of the VPPA. *See Daniel v. Cantrell*, 375 F.3d 377, 380 (6th Cir. 2004); *Gakuba v. Hollywood Video, Inc.*, No. 15-cv-00496, 2015 WL 5737589, at *1–2, *6–7 (D. Or. Sept. 30, 2015); *Dirkes v. Borough of Runnemede*, 936 F. Supp. 235 (D.N.J. 1996). These are a few actual examples of the VPPA's application to non-commercial speech. But these limited instances are negligible as compared to the statute's legitimate applications to commercial speech. Such scenarios are also unlikely to be repeated because law enforcement entities can legally obtain

24

information otherwise protected under the VPPA by following the appropriate procedures, 18 U.S.C. § 2710(b)(2)(C), and the instances in which the titles of specific *legal* videos an individual requested or obtained are relevant to a criminal investigation—and a business proactively provides those to law enforcement—are demonstrably and logically few.[8]

*\*\*\**

At the close of this balancing exercise, the Court has before it hundreds of instances of legitimate applications of the VPPA to commercial speech, and—at most—a handful of applications to non-commercial speech.  Because this does not even begin to approach the "lopsided ratio" demanded for a successful overbreadth challenge, *Hansen*, 599 U.S. at 770, the Court should end its analysis there and deny the facial challenge, allowing "as-applied challenges [to] take it from here," *id.* at 785.  As *Hansen* made clear, courts should reject such arguments even if a statute "reaches some protected speech" and "its application to all of that speech is unconstitutional" where "the ratio of unlawful-to-lawful applications is not lopsided enough."  *Id.* at 784.  But if the Court were to apply strict scrutiny to the non-commercial applications of the VPPA, the statute's non-commercial applications survive that analysis.  Protecting privacy and intellectual freedom are compelling interests that the statute is narrowly tailored to advance.  *See supra* pp. 8–12.

## CONCLUSION

For the foregoing reasons, the Court should defer ruling on Defendant's constitutional challenge until it has considered potentially dispositive, non-constitutional bases for resolving this case.  If the Court reaches the constitutional issues, it should deny Defendant's motion.

---

[8] Of note, in response to a discovery request, the United States conducted inquiries within multiple U.S. Department of Justice components seeking voluntary tips submitted by video tape service providers about specific video materials an individual requested or obtained.  None of these components—including the Federal Bureau of Investigation, the Drug Enforcement Administration, and the Bureau of Alcohol, Tobacco, Firearms, and Explosives, all of which maintain searchable, centralized databases of voluntary tips—located any responsive materials.  *See* Vigen Decl. ¶ 10 & Ex. A 11–12.

Dated: December 21, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Leslie Cooper Vigen*
LESLIE COOPER VIGEN
Senior Trial Counsel (D.C. Bar No. 1019782)
CLAYTON L. BAILEY
Trial Attorney (DC Bar No. 1644867)
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, NW, Washington, D.C. 20005
Telephone: (202) 305-0727
Email:  leslie.vigen@usdoj.gov

*Counsel for United States*

Gov't Opp'n to Def.'s Mot. for Summ. J.                    Case No. 3:22-cv-03131-JCS