Adam E. Polk (SBN 273000)
Simon Grille (SBN 294914)
Trevor T. Tan (SBN 280145)
Reid Gaa (SBN 330141)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
apolk@girardsharp.com
sgrille@girardsharp.com
ttan@girardsharp.com
rgaa@girardsharp.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| BRAYDEN STARK, JUDD OOSTYEN, ISAAC BELENKIY, VALERIE BURTON, LAURA GOODFIELD, and DENOVIAS MACK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PATREON, INC.,<br><br>Defendant. | Case No. 3:22-cv-03131-JCS<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO SUPPLEMENT THE SUMMARY JUDGMENT RECORD**<br><br>Judge: Hon. Joseph C. Spero<br>Date:  March 29, 2024<br>Time: 9:30 a.m. |

**REDACTED - FILED UNDER SEAL**

## I. INTRODUCTION

Patreon's opposition to supplementing the record with five new exhibits generates more heat than light. The recently obtained evidence further rebuts Patreon's claim that it could not have reasonably followed the consent provision of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). Congress tailored the statute so that a video provider can neutralize any chilling of speech by obtaining consumer consent to the otherwise prohibited disclosures. The reality here is that Patreon could have found a way to obtain consent when users signed up—such one-time, initial consent allows two years of permissible disclosures under the VPPA—and then allowed them to opt out through their account settings. Patreon still stops short of asserting such a solution could not be implemented. The evidence instead shows that, faced with the need to comply with various privacy laws, Patreon, like other internet firms, actively experimented with and developed methods for notifying and obtaining consent from consumers. Further, Patreon not only knew of these options but discussed them internally as regards the Meta Pixel. *See* Dkt. No. 128-7. Thus Plaintiffs' newly obtained evidence confirms the triable issues on Patreon's ability to obtain consent, and thereby avoid liability, under the VPPA.

None of Patreon's arguments for restricting the record at summary judgment hold up. Narrowly focused on the capabilities of its vendor's software, Patreon argues that it concluded the vendor was not up to the consent tasks for which it was hired. Even if that were true, Plaintiffs' supplemental evidence demonstrates compliance with the VPPA's consent protocol was possible and that Patreon knew of the need to obtain consent to its use of the Meta Pixel. While Patreon criticizes Plaintiffs' efforts to pursue this information from Mr. Smith and Mr. Bilog, it was *Patreon's* counsel who provided Plaintiffs with those former employees' dates of availability to testify. Patreon also invokes hindsight, contending Plaintiffs should have foreseen the significance of the testimony and sought it earlier. But Patreon's assertions of dilatory conduct ignore that the relevance of this testimony was not apparent to Plaintiffs until it was given. The new evidence, in contrast, is no surprise to Patreon, and Patreon's submission to this Court obviates any conceivable prejudice from admitting this evidence. Patreon's arguments provide no reason to decide its challenge to the VPPA on anything less than a full record. The Court should, therefore, grant the motion.

## II. ARGUMENT

### A. The Court Should Determine Summary Judgment with the Benefit of a Complete Record.

Patreon seeks to limit the scope of the summary judgment record and deprive the Court of evidence relevant to Patreon's constitutional challenge. Yet the Federal Rules favor deciding cases on the merits and "disposition of a case on a more complete record must be preferred to disposition on a less complete record." *Block v. Solis*, 2010 WL 2079688, at *9 (W.D. Wash. May 20, 2010) (citing *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1228 (9th Cir. 2006) (en banc)).

For this reason, courts faced with additional evidence in ruling on summary judgment generally favor an inclusive approach that considers all relevant evidence. *See, e.g.*, *George v. Nw. Mut. Life Ins. Co.*, 2011 WL 3881476, at *4 (W.D. Wash. Sept. 1, 2011) (granting motion to supplement, for "to disregard [evidence] simply because it was discovered outside the discovery period would not serve the interests of justice nor the Court's duty to provide a fair and full adjudication . . . on the merits"); *Jitrade Inc. v. Alexia Admor French Designer Grp. Ltd.*, 2019 WL 1652006, at *3 n.5 (C.D. Cal. Feb. 20, 2019) (considering evidence in plaintiff's supplemental opposition to summary judgment "[i]n the interests of justice and to facilitate a decision on the merits based on a complete record"). Patreon's opposition does not acknowledge this principle of adjudication. *Innovative Fabrication Sch., Inc. v. Am. Fabrication Acad., Inc.*, 2022 WL 20273282, at *2 (C.D. Cal. Nov. 17, 2022) ("[T]he [C]ourt does not wish to decide [the merits] on other than a complete record.") (alteration in original) (citation omitted).

### B. Plaintiffs' Supplemental Evidence Rebuts Patreon's Assertion That It Could Not Feasibly Obtain Consent in Compliance with the VPPA as a Matter of Law.

Mr. Bilog's and Mr. Smith's testimony, and the related deposition exhibits, rebut Patreon's claim that it would have been "essentially impossible" to use a VPPA-compliant consent procedure. With their summary judgment opposition, Plaintiffs introduced evidence showing that internet companies frequently communicate with users to obtain their consent using technological solutions like pop-up windows. *See* Tan Decl., Exs. K-R. The new, Patreon-specific evidence relates to the software provided by its vendor ████, showing that Patreon ████████████████████████ ████████████████████████████████████████████████████████. *See* Dkt. No.

128-4.  These are material facts because they reflect the ability to collect user consent in a manner contemplated by the VPPA, as amended by Congress in 2013.  *See* 18 U.S.C. § 2710(b)(2)(B) (permitting consent via "electronic means using the Internet").  Again, Patreon could have avoided all VPPA liability with such a practice, obviating any asserted constitutional burden.[1]

While nowhere denying that following the VPPA's consent regime was technically feasible, Patreon's opposition blasts ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  *See* Opp. at 5, 9-10.  The appropriate inquiry is not whether ▮▮▮▮▮▮▮▮, specifically, could be employed to obtain VPPA consent, but whether it was possible to obtain VPPA consent at all.  Patreon's decision to ▮▮▮▮▮▮▮▮ also raises further questions regarding the subsequent steps Patreon took to comply with privacy laws and secure the consent required by various jurisdictions.  Plainly, Patreon's obligations under various privacy laws ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Patreon does not divulge what better option it enlisted to obtain user consent as mandated by various state laws.

C.  **Plaintiffs Diligently Obtained the Additional Evidence.**

Plaintiffs cannot be charged with having failed to vigorously develop the record in opposition to summary judgment.  Plaintiffs submitted 22 exhibits reflecting the statute's constitutionality along with the expert report of privacy scholar Neil Richards, whose analysis is geared to assist the Court by situating the VPPA in historical and legal context.  As often happens, moreover, relevant proof continued to come to light during and after the briefing cycle.  Although scheduling the depositions of the two former employees entailed some logistical coordination and resulting delay, Plaintiffs promptly recognized and moved to supplement the record with these witnesses' testimony and deposition exhibits relevant to the issue of consent.  *See, e.g.*, *Udd v. City of Phoenix*, 2020 WL 1904638, at *3 (D. Ariz. Apr. 17, 2020) ("Moving to supplement the record to include this new evidence less than a month after discovery suggests [plaintiffs] were diligent.").

---

[1] Patreon starts out by arguing that "the VPPA fails strict scrutiny" "[w]ith respect to the as-applied challenge" Patreon now seeks to revive (Opp. at 1)—but, because the as-applied challenge only concerns Patreon's commercial speech, it is subject to *intermediate* rather than strict scrutiny.  *See Stark v. Patreon, Inc.*, 656 F. Supp. 3d 1018, 1027, 1032 (N.D. Cal. 2023).  The Court thus held, based on the conclusion "that Patreon's own alleged speech at issue is commercial, or at least similarly subject to reduced First Amendment protection, the VPPA would not be invalid if it only regulated speech like Patreon's alleged disclosures to Meta." *Id.* at 1037.

1    Mr. Smith and Mr. Bilog testified on January 12, 2024, and February 2, 2024, respectively.
Plaintiffs moved to supplement on February 23 based on the new testimony regarding ▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ information Plaintiffs did not previously possess.  Patreon insists that
Plaintiffs could have visited ▇▇▇ website to "understand the product" (Opp. at 7), but doing so would
not have revealed anything about how *Patreon* used it.  Not until Mr. Smith's and Mr. Bilog's testimony
did the meaning of the deposition exhibits, and the nature of what ▇▇▇ was doing for Patreon, become
clear.  Plaintiffs could not have known before filing their summary judgment opposition that Mr. Smith
and Mr. Bilog would provide this testimony.

    Nor could Plaintiffs have known to question Patreon's declarant Mr. Byttow about these
deposition exhibits, as Patreon proposes.  *See* Opp. at 7.  Two of the documents are Slack
communications between Mr. Bilog and other Patreon employees that do not even mention Mr. Byttow.
Dkt. Nos. 128-7, 128-8.  Although Mr. Byttow's name appears in the third document, Mr. Byttow is not
the custodian and the text indicates it was edited by Mr. Bilog, making him the appropriate person to ask
about its contents.  Dkt. No. 128-6.  Likewise, because it was only through the testimony of Mr. Smith
and Mr. Bilog that Plaintiffs learned of ▇▇▇ role, Plaintiffs did not know that these documents, or
issues concerning ▇▇▇, fell within the scope of the 30(b)(6) topics for which Patreon designated Mr.
Byttow to testify.  *See* Opp. at 3, 7.

    Patreon's diligence argument not only appears to attribute all-knowing powers to Plaintiffs but
also overlooks that they must use the period of fact discovery to develop the other elements of their
proof, not limited to defeating Patreon's First Amendment defense.  For example, Mr. Smith is an
engineer whom Plaintiffs expected would knowledgeably testify as to Patreon's implementation of the
Pixel and how it coded pages with video content.  Plaintiffs expected that Mr. Bilog, a data operations
and marketing operations manager, would provide information about why Patreon implemented the
Pixel and what it did with the Pixel data.  Given that Plaintiffs "participated affirmatively in discovery
since it opened," *Volvo Const. Equip. N. Am., LLC v. Clyde/W., Inc.*, 2014 WL 5365454, at *3 (W.D.
Wash. Oct. 20, 2014), Patreon's diligence contentions are misplaced.  *See, e.g.*, *Nazomi Commc'ns, Inc.
v. Nokia Corp.*, 2012 WL 892334, at *3 (N.D. Cal. Mar. 14, 2012) ("[D]espite defendants' contention
that plaintiff has been on notice of their intention to file the instant motion for more than fifteen months,

it appears that plaintiff has been diligent in its discovery efforts throughout the course of this litigation.").

Patreon's description of Plaintiffs' efforts to schedule Mr. Smith's and Mr. Bilog's depositions omits specific facts showing diligence. Plaintiffs noticed these depositions on November 10—nearly six weeks before their deadline to oppose Patreon's summary judgment motion. *See Anticancer, Inc. v. Perry Sci., Inc.*, 2008 WL 11337378, at *3 (S.D. Cal. Jan. 25, 2008) (finding that the plaintiff acted diligently where depositions were noticed prior to the summary judgment opposition deadline but the parties could not agree on dates). On November 30, Patreon advised that Mr. Smith and Mr. Bilog were available in January or February 2024. As a result, Plaintiffs scheduled the depositions for those time periods and on the specific dates that Patreon offered for these witnesses, to avoid any undue burden. Plaintiffs diligently obtained their testimony and then promptly requested that it be added to the record. *See, e.g., Shijiazhuang Hongray Grp. v. World Trading 23 Inc.*, 2023 WL 6370924, at *3 (C.D. Cal. Aug. 14, 2023) (motion to supplement "was made in good faith and . . . Plaintiff has been diligent both in obtaining additional evidence and in promptly presenting" it); *Pac. Surv. Grp., LLC v. Tyche High Seas Cap. Corp.*, 2023 WL 3178002, at *3 (W.D. Wash. May 1, 2023) (where discovery period remained open, plaintiff was diligent even though he could have noticed "these depositions earlier").

By contrast, in *Courkamp v. Fisher-Price Incorporated*, cited by Patreon, the plaintiff sought to supplement the record in February 2022 with documents she had possessed since 2019. 2022 WL 4448323, at *2 (D. Ariz. Sept. 23, 2022). Similarly, in *E.E.O.C. v. Peabody Western Coal Company*, 773 F.3d 977, 989–90 (9th Cir. 2014), the Ninth Circuit upheld the denial of a motion to supplement when "there [was] no discernible reason why the EEOC could not have sought to introduce this evidence much earlier in the proceedings." And in *Stucky v. Department of Education*, 337 F. App'x 611, 613 (9th Cir. 2009), there was no evidence the deposition could not have been taken sooner. Here, Plaintiffs acted on Patreon's counsel's representations regarding Mr. Smith's and Mr. Bilog's availability and could not have realistically deposed them any earlier.

**D.     Supplementing the Record Will Not Cause Any Unfair Prejudice.**

Patreon will not be prejudiced by consideration of this testimony regarding information previously known to Patreon. The new evidence pertains to an argument Patreon itself raised in

advocating summary judgment, and Patreon was able to oppose Plaintiffs' motion to supplement and submit an additional declaration. Patreon's prejudice argument also is logically inconsistent. According to Patreon, Plaintiffs' supplemental evidence on consent is insufficient to call into question Mr. Byttow's original declaration, even absent further declarations that Patreon's counsel might procure with more time. Opp. at 8-9. But either Plaintiffs' supplemental evidence undermines Mr. Byttow's original declaration, demonstrating a genuine issue of material fact at summary judgment, or it does not, eliminating any possible prejudice to Patreon. Regardless, Patreon can renew its objections at trial. *See, e.g.*, *Udd*, 2020 WL 1904638, at *3 (holding that "this decision [supplementing the discovery record with new evidence] is without prejudice to Defendants' ability to seek exclusion of the evidence at trial.").

Lastly, while Patreon complains more generally about having to respond "on a record that may be incomplete and lack context," such a record is exactly what the Court will avoid by admitting the five new exhibits. At bottom, summary judgment should be decided on a complete record.

### III.  CONCLUSION

Plaintiffs therefore respectfully request that the Court accept the supplemental exhibits into the summary judgment record.

Dated: March 6, 2024

Respectfully submitted,

/s/ *Simon Grille*

Adam E. Polk (SBN 273000)
Simon Grille (SBN 294914)
Trevor T. Tan (SBN 281045)
Reid Gaa (SBN 330141)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
apolk@girardsharp.com
sgrille@girardsharp.com
ttan@girardsharp.com
rgaa@girardsharp.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record. I also certify that I caused the under seal documents to be served on counsel *via electronic mail*.

/s/ *Simon S. Grille*
Simon S. Grille