Adam E. Polk (SBN 273000)
Simon Grille (SBN 294914)
Trevor T. Tan (SBN 280145)
Reid Gaa (SBN 330141)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
apolk@girardsharp.com
sgrille@girardsharp.com
ttan@girardsharp.com
rgaa@girardsharp.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAYDEN STARK, JUDD OOSTYEN, ISAAC BELENKIY, VALERIE BURTON, LAURA GOODFIELD and, DENOVIAS MACK, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>PATREON, INC.,<br><br>        Defendant. | Case No. 3:22-cv-03131-JCS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:     Hon. Joseph C. Spero<br>Date:      September 11, 2024<br>Time:      9:30 am<br>Courtroom: Courtroom D – 15th Floor |

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................1

II.    STATEMENT OF THE ISSUE TO BE DECIDED ...........................................2

III.   FACTUAL AND PROCEDURAL BACKGROUND.........................................2

    A.   Plaintiffs' Allegations ..............................................................................2

    B.   Patreon's Challenges to Plaintiffs' Complaints. ......................................2

    C.   Fact and Expert Discovery........................................................................3

    D.   Summary Judgment and Class Certification.............................................3

    E.   The Settlement Negotiations.....................................................................4

IV.    SUMMARY OF SETTLEMENT TERMS .........................................................4

    A.   The Class...................................................................................................4

    B.   Settlement Consideration..........................................................................5

    C.   Distribution of Settlement Fund. ..............................................................5

    D.   Class Notice and CAFA Notice. ...............................................................7

    E.   Release of Claims. ....................................................................................7

    F.   Attorneys' Fees and Expenses, and Service Awards for the Class
        Representatives. .........................................................................................7

    G.   The Claims Administrator. ........................................................................8

V.     ARGUMENT .......................................................................................................9

    A.   The Settlement is Fair, Reasonable, and Adequate. .................................9

        1.   The Proposed Settlement Is the Product of Arm's Length Negotiations
            Among Experienced Counsel. ..........................................................10

        2.   The Settlement Treats All Class Members Equitably.......................11

        3.   The Relief Under the Proposed Settlement is Adequate...................12

    B.   The Court Will Be Able to Certify the Class for Purposes of Settlement. ......................15

        1.   Class Members Are Too Numerous to Be Joined.............................15

2.    There Are Common Questions of Law and Fact. ...............................................16

3.    Plaintiffs' Claims Are Typical of the Class. ......................................................16

4.    Plaintiffs and Plaintiffs' Counsel Will Fairly and Adequately Protect the Interests of the Class. .........................................................................................17

5.    The Requirements of Rule 23(b)(3) Are Met. ...................................................17

    a.    Common Issues of Law and Fact Predominate for Settlement Purposes. .................................................................................................17

    b.    A Class Action is a Superior Means of Resolving This Controversy..........................................................................................18

C.    The Proposed Class Notice and Plan for Dissemination Are Reasonable and Should be Approved. .................................................................................................19

VI.    CONCLUSION..................................................................................................................20

ii

# TABLE OF AUTHORITIES

**Cases**

*Aarons v. BMW of N. Am., LLC*,
2014 WL 4090564 (C.D. Cal. 2014) ................................................................. 13

*Alcazar v. Fashion Nova, Inc.*,
2022 WL 19975445 (N.D. Cal. Sept. 6, 2022) ............................................. 18, 19

*Allen v. Bedolla*,
787 F.3d 1218 (9th Cir. 2015) ........................................................................... 9

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......................................................................................... 15

*Carlotti v. ASUS Computer Int'l*,
2020 WL 3414653 (N.D. Cal. 2020) ................................................................... 6

*Castro v. ABM Indus., Inc.*,
325 F.R.D. 332 (N.D. Cal. 2018) ....................................................................... 17

*Chess v. Volkswagen Grp. of Am., Inc.*,
2021 WL 5507177 (N.D. Cal. Nov. 24, 2021) ..................................................... 9

*Date v. Sony Elecs., Inc.*,
2013 WL 3945981 (E.D. Mich. July 31, 2013) .................................................... 7

*Ellis v. Harder Mech. Contractors, Inc.*,
2022 WL 3638165 (N.D. Cal. Aug. 23, 2022) ..................................................... 9

*Evans v. Linden Rsch., Inc.*,
2014 WL 1724891 (N.D. Cal. Apr. 29, 2014) .................................................... 20

*Fed. Ins. Co. v. Caldera Med., Inc.*,
2016 WL 5921245 (C.D. Cal. Jan. 25, 2016) .................................................... 10

*Feldman v. Star Trib. Media Co. LLC*,
2024 WL 3026556 (D. Minn. June 17, 2024) .................................................... 14

*Foster v. Adams & Assocs., Inc.*,
2021 WL 4924849 (N.D. Cal. Oct. 21, 2021) .................................................... 14

*Gascho v. Global Fitness Holdings, LLC*,
2014 WL 1350509 (S.D. Ohio Apr. 4, 2014) ....................................................... 7

*Gatchalian v. Atl. Recovery Sols., LLC*,
2023 WL 8007107 (N.D. Cal. Nov. 16, 2023) ..................................................... 9

*Gold v. Lumber Liquidators, Inc.*,
323 F.R.D. 280 (N.D. Cal. 2017) ....................................................................... 18

*Haney v. Recall Ctr.*,
282 F.R.D. 436 (W.D. Ark. 2012) ...................................................................... 18

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................................... 16

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. 2018) ............................................................................... 11

*Hendricks v. StarKist Co.*,
  2015 WL 4498083 (N.D. Cal. 2015) ............................................................................... 14

*Hodges v. Akeena Solar, Inc.*,
  274 F.R.D. 259 (N.D. Cal. 2011) .................................................................................... 16

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ............................................................... 9, 16

*In re Facebook Biometric Info. Priv. Litig.*,
  326 F.R.D. 535 (N.D. Cal. 2018) .................................................................................... 19

*In re Haier Freezer Consumer Litig.*,
  2013 WL 2237890 (N.D. Cal. 2013) ............................................................................... 15

*In re Lenovo Adware Litig.*,
  2019 WL 1791420 (N.D. Cal. April 24, 2019) ............................................................... 17

*In re Linkedin User Priv. Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015) .................................................................................... 20

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .......................................................................................... 15

*In re Oracle Sec. Litig.*,
  1994 WL 502054 (N.D. Cal. 1994) ................................................................................. 11

*In re PFA Ins. Mktg. Litig.*,
  2024 WL 1145209 (N.D. Cal. Feb. 5, 2024) .................................................................. 17

*In re Toys R Us-Delaware, Inc.*,
  300 F.R.D. 347 (C.D. Cal. 2013) .................................................................................... 18

*In re Wells Fargo Loan Processor Overtime Pay Litig.*,
  2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) ................................................................. 14

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
  2016 WL 3648478 (N.D. Cal. 2016) ............................................................................... 12

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
  2016 WL 6778406 (N.D. Cal., 2016) .............................................................................. 11

*J.L. v. Cissna*,
  2019 WL 415579 (N.D. Cal. 2019) ................................................................................. 16

*Kacsuta v. Lenovo (U.S.) Inc.*,
  2014 WL 12585783 (C.D. Cal. 2014) ........................................................................ 11, 18

*Kulesa v. PC Cleaner, Inc.*,
  2014 WL 12581769 (C.D. Cal. 2014) ............................................................................. 11

*LaGarde v. Support.com, Inc.*,
  2012 WL 13034899 (N.D. Cal. Nov. 2, 2012) ............................................................... 10

iv

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ................................................................................. 10, 14

*Martinez v. Blu Prod., Inc.*,
  2019 WL 12838199 (C.D. Cal. Oct. 3, 2019) ........................................................... 16

*Mendoza v. Hyundai Motor Co., Ltd*,
  2017 WL 342059 (N.D. Cal. 2017) .......................................................................... 12

*Mergens v. Sloan Valve Co.*,
  2017 WL 9486153 (C.D. Cal. Sept. 18, 2017) .......................................................... 17

*Mollett v. Netflix, Inc.*,
  795 F.3d 1062 (9th Cir. 2015) .................................................................................. 18

*Norcia v. Samsung Telecommunications Am., LLC*,
  2021 WL 3053018 (N.D. Cal. 2021) ........................................................................... 6

*One Unnamed Deputy Dist. Attorney v. Cty. of Los Angeles*,
  2011 WL 13128375 (C.D. Cal. 2011) ....................................................................... 18

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) .................................................................................... 16

*Rael v. Children's Place, Inc.*,
  2021 WL 1226475 (S.D. Cal. Mar. 31, 2021) ........................................................... 20

*Ramirez v. Trans Union, LLC*,
  2022 WL 2817588 (N.D. Cal. July 19, 2022) .......................................................... 9, 11

*Richards v. Chime Fin., Inc.*,
  2020 WL 6318713 (N.D. Cal. Oct. 28, 2020) ........................................................... 19

*Roberts v. Source for Pub. Data*,
  2009 WL 3837502 (W.D. Mo. Nov. 17, 2009) .......................................................... 18

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) .................................................................................. 16

*Rogers v. BNSF Ry. Co.*,
  680 F. Supp. 3d 1027 (N.D. Ill. 2023) ...................................................................... 12

*Schaffer v. Litton Loan Servicing, LP*,
  2012 WL 10274679 (C.D. Cal. 2012) ....................................................................... 13

*Shin v. Plantronics, Inc.*,
  2020 WL 1934893 (N.D. Cal., 2020) ....................................................................... 15

*Spann v. J.C. Penney Corp.*,
  314 F.R.D. 312 (C.D. Cal. 2016) ............................................................................. 13

*St. Louis, I.M. & S. Ry. Co. v. Williams*,
  251 U.S. 63 (1919) ................................................................................................... 13

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .................................................................................... 17

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELMINARY APPROVAL
CASE NO. 3:22-cv-03131-JCS

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ............................................................................................ 17

*Van Lith v. iHeartMedia + Entm't, Inc.*,
  2017 WL 1064662 (E.D. Cal. 2017) ....................................................................... 11

*Wakefield v. ViSalus, Inc.*,
  51 F.4th 1109 (9th Cir. 2022) ................................................................................. 13

*West v. California Servs. Bureau, Inc.*,
  323 F.R.D. 295 (N.D. Cal. 2017) ............................................................................ 15

*Wilcox v. Swapp*,
  330 F.R.D. 584 (E.D. Wash. 2019) ........................................................................ 18

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ................................................................................ 18

**Statutes**

18 U.S.C. § 2710(b)(2)(B) .................................................................................... 5, 16

18 U.S.C. § 2710(c)(2)(A) ......................................................................................... 12

28 U.S.C. § 1715 ........................................................................................................ 7

Cal. Bus. Prof. Code § 17200 ..................................................................................... 2

Cal. Civ. Code § 1750 ................................................................................................. 2

**Rules**

Fed. R. Civ. P. 23 ......................................................................................... 1, 13, 19

Fed. R. Civ. P. 23(a) ................................................................................................ ix, 15

Fed. R. Civ. P. 23(a)(1) ............................................................................................ 15

Fed. R. Civ. P. 23(a)(2) ............................................................................................ 16

Fed. R. Civ. P. 23(a)(3) ............................................................................................ 16

Fed. R. Civ. P. 23(a)(4) ............................................................................................ 17

Fed. R. Civ. P. 23(b)(3) ........................................................................................... ix, 19

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................... 19

Fed. R. Civ. P. 23(e) ................................................................................................ ix, 15

Fed. R. Civ. P. 23(e)(1) ............................................................................................ 15

Fed. R. Civ. P. 23(e)(1)(B) ................................................................................. 2, 9, 19

Fed. R. Civ. P. 23(e)(2) ................................................................................. 9, 10, 11, 12

Fed. R. Civ. P. 23(e)(3) ............................................................................................ 12

Fed. R. Civ. P. 23(e)(B) .............................................................................................. 9

Fed. R. Civ. P. 30(b)(6) .............................................................................................. 3

Fed. R. Civ. P. 9(b) ..................................................................................................... 3

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELMINARY APPROVAL
CASE NO. 3:22-cv-03131-JCS

| Guidance Section | Guidance Topic | Location Where Guidance Topic is Discussed |
|---|---|---|
| 1(a) | Differences Between Settlement Class and Classes in Complaint | Page 4 |
| 1(b) | Difference Between Released Claims and Claims in Complaint | Page 7<br>Grille Decl., ¶ 47 |
| 1(c) | Recovery Under Settlement; Potential Exposure; Discount | Pages 4-5, 11-14<br>Grille Decl., ¶¶ 20-22 |
| 1(d) | Other Cases Affected by Settlement | Grille Decl., ¶ 23 |
| 1(e) | Proposed Allocation Plan | Pages 5-6, 10-11<br>Grille Decl., ¶¶ 24-34 |
| 1(f) | Claims Rate | Page 6 |
| 1(g) | Reversion | Pages 1, 4<br>Grille Decl., ¶ 21 |
| 2(a) | Settlement Administrator | Pages 7-8<br>Grille Decl., ¶¶ 35-37 |
| 2(b) | Class Member Data; Costs of Administration | Brunner Decl., ¶¶ 4-18 |
| 3 | Notice | Pages 7, 18-19<br>Grille Decl., ¶¶ 43-46,<br>Settlement Agreement, Exs. 2, 3<br>Brunner Decl., ¶¶ 21(a)-(d) |
| 4 | Opt-outs | Settlement Agreement, Ex. 3<br>Brunner Decl., ¶¶ 21(e), (g) |
| 5 | Objections | Settlement Agreement, Exs. 2-4<br>Brunner Decl., ¶¶ 21(e), (g) |
| 6 | Fees and costs | Pages 7-8<br>Grille Decl., ¶¶ 48-53 |
| 7 | Service awards | Pages 5, 7 |
| 8 | *Cy Pres* | Pages 5-6 |
| 9 | Timeline | viii |
| 10 | CAFA Notice | Page 7 |
| 11 | Comparable Outcomes | Grille Decl., Ex. 2 |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on September 11, 2024 at 9:30 am, before the Honorable Joseph C. Spero of the United States District Court for the Northern District of California, Plaintiffs Brayden Stark, Judd Oostyen, Isaac Belenkiy, Valerie Burton, Laura Goodfield, and Denovias Mack, will and do hereby move the Court, pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (e), for entry of the proposed Preliminary Approval Order, and request that the Court set the following schedule:

| Event | [Proposed] Deadline |
|---|---|
| Class Action Fairness Act notice to state and federal officials, under 28 U.S.C. § 1715 | Within 10 days after filing of the motion for preliminary approval |
| Notice Date | No later than 25 days after entry of preliminary approval order |
| Plaintiffs to move for final approval of the settlement | 65 days after entry of preliminary approval order |
| Plaintiffs to move for attorneys' fees, expenses, and service awards | 65 days after entry of preliminary approval order |
| Deadline to file a claim | 100 days after entry of preliminary approval order |
| Deadline for the submission of objections and requests for exclusion | 100 days after entry of preliminary approval order |
| Reply briefs in support of final approval and motion for attorneys' fees, expenses, and service awards | 115 days after entry of preliminary approval order |
| Final Fairness Hearing | At least 130 days after entry of preliminary approval order |

The Motion is based on this Notice of Motion, the incorporated memorandum of points and authorities, the Declarations of Simon S. Grille ("Grille Decl.") and Meagan Brunner ("Brunner Decl.") filed herewith, the record in this action, the argument of counsel, and any other matters the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs seek preliminary approval of a Settlement[1] that would require Defendant Patreon, Inc. to pay $7,250,000.00 to create a non-reversionary cash fund to compensate Class Members and cease use of the Meta Pixel unless such use complies with the Video Privacy Protection Act ("VPPA"). The Settlement would fully resolve this litigation, which arises out of claims that Patreon violated the VPPA by disclosing its subscriber's viewing choices and personal information to Meta without obtaining their consent in the form required under the VPPA. Class Members who submit a valid claim will be eligible to receive a *pro rata* share of the Net Settlement Fund. The Settlement meets all the criteria for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure and the Northern District's Procedural Guidance for Class Action Settlements ("Guidelines").[2]

The Settlement was reached after nearly a year of arm's length negotiations supervised by the Hon. Jeremy D. Fogel. The Settlement follows two motions to dismiss, a motion for summary judgment on a novel constitutional issue, extensive written discovery, work with experts on complex computer science and online advertising issues, and ten depositions, including eight depositions of current and former Patreon employees and two non-party depositions. This well-developed record facilitated a comprehensive understanding of the strengths and weaknesses of the Parties' respective positions and informed Plaintiffs' Counsel's settlement strategy and negotiations.

The Settlement provides an excellent result for the Class, as continued litigation carried considerable risk of a lesser recovery or none at all. Patreon vigorously denies liability and contends that the VPPA violates the First Amendment. Moreover, Patreon's class certification arguments, including the potential application of an arbitration clause in its Terms of Use, could reduce the number of individuals eligible to recover through this litigation or preclude recovery on a class-wide basis altogether. The Settlement also avoids the numerous uncertainties associated with trial, including dueling experts who would offer conflicting and highly technical opinions about the internet technology

---

[1] Unless otherwise noted, capitalized terms have the meaning ascribed to them in the Settlement Agreement, filed concurrently herewith as Exhibit 1.

[2] https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/

at the center of this litigation. The Settlement is thus a successful outcome for Class Members and meets all criteria for preliminary approval.

Therefore, as set forth in further detail below, Plaintiffs respectfully request that the Court enter the proposed order to authorize notice to the class and schedule further settlement proceedings.

## II.   STATEMENT OF THE ISSUE TO BE DECIDED

Should the Court, pursuant to Fed. R. Civ. P. 23(e)(1)(B), preliminarily approve the parties' Settlement, authorize notice to the proposed class, and schedule further settlement proceedings?

## III.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Plaintiffs' Allegations

Plaintiffs filed an initial Class Action Complaint on May 27, 2022, alleging that Patreon disclosed to Meta the specific video materials its subscribers requested or obtained from its website without first obtaining their consent in the form required under the VPPA. Plaintiffs also asserted claims against Patreon for unjust enrichment and violations of California's Unfair Competition Law ("UCL"), Cal. Bus. And Prof. Code § 17200, *et seq.* and Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* ECF No. 1.

### B.   Patreon's Challenges to Plaintiffs' Complaints.

Patreon moved to dismiss the initial Complaint on August 5, 2022, challenging the sufficiency of Plaintiffs' allegations in support of their VPPA, UCL, and CLRA claims and arguing that the VPPA violates the First Amendment to the United States Constitution. ECF No. 21. On October 13, 2022, the Court granted in part and denied in part the motion to dismiss with leave to amend. ECF No. 40. The Court dismissed Plaintiffs' VPPA claim on the basis that Plaintiffs failed to allege that the video material on Patreon's website was prerecorded, but determined Plaintiffs' other VPPA allegations were sufficient. *Id.* The Court also dismissed Plaintiffs' claim under the unlawful prong of the UCL to the extent it was based on a violation of the VPPA, but otherwise denied Patreon's motion and deferred ruling on Patreon's First Amendment challenge until after the deadline for the United States to intervene elapsed. *Id.*

Plaintiffs filed a First Amended Complaint ("FAC") on October 27, 2022, addressing the Court's October 13 motion to dismiss order. ECF No. 41. On November 23, 2022, Patreon moved to

2

dismiss the FAC, again raising its constitutional challenge to the VPPA and arguing that Plaintiffs failed to plead their fraud claims with the particularity required by Rule 9(b). ECF No. 48. The Court dismissed Plaintiffs' claims under the CLRA and the fraud prong of the UCL with leave to amend, and Plaintiffs elected not to replead these claims. ECF No. 59. The Court denied Patreon's constitutional challenge with leave to reassert this argument once the Parties developed a more complete factual record on this issue. *Id.*

On January 30, 2024, Plaintiffs filed a Second Amended Complaint to add four new Plaintiffs, but the allegations and claims asserted against Patreon remained unchanged. ECF No. 121.

### C.     Fact and Expert Discovery.

The Parties' settlement negotiations were informed by extensive discovery. Plaintiffs propounded five sets of document requests, two sets of interrogatories, and two sets of requests for admission to Patreon. Grille Decl., ¶ 16. The Parties negotiated Patreon's document productions, including extensive discussions regarding the search terms Patreon used to identify responsive documents, leading Patreon to produce approximately 38,000 documents. *Id.* Plaintiffs' Counsel reviewed and analyzed Patreon's documents, which provided critical information about Patreon's operations and use of the Meta Pixel and informed Plaintiffs' strategy for depositions, summary judgment, class certification, expert analysis, and settlement. *Id.* Plaintiffs' Counsel also deposed eight current and former Patreon employees, including three separate Rule 30(b)(6) designees, and defended the depositions of Plaintiffs Brayden Stark and Judd Oostyen. *Id.* Each Plaintiff also responded to three sets of document requests, two sets of interrogatories, and two sets of requests for admission. *Id.*

Plaintiffs also issued a subpoena seeking critical documents and testimony from Meta. Grille Decl., ¶ 17. Following protracted negotiations and a motion to compel Meta's compliance with the subpoena, Plaintiffs ultimately obtained eight productions from Meta and deposed Meta's corporate designee in a proceeding consolidated with a separate VPPA matter. *Id.*

### D.     Summary Judgment and Class Certification.

Following the Court's order on Patreon's motion to dismiss the FAC, Plaintiffs served discovery on numerous third-parties to develop the underlying factual record for Patreon's challenge to the VPPA under the First Amendment. Grille Decl., ¶ 10. Additionally, Plaintiffs retained an expert on

3

privacy and the First Amendment and worked with him to produce an expert report regarding the expectations of privacy in intellectual activities and the history and purpose of the VPPA. *Id.* Plaintiffs also produced a rebuttal expert report responding to the technical opinions offered in Patreon's expert's report. Grille Decl., ¶ 11. After the Parties finished briefing Patreon's constitutional challenge, Plaintiffs, over Patreon's objection, supplemented the summary judgment record with additional facts elicited through the depositions of Patreon witnesses. Grille Decl., ¶ 12. The Court then heard oral argument on Patreon's motion on April 12, 2024. Shortly thereafter—and before the Court ruled on Patreon's summary judgment motion—the Parties reached an agreement in principle to settle this action. *Id.* Plaintiffs had fully drafted their motion for class certification and prepared the evidence in support at the time of the Parties' agreement in principle to resolve this action. Grille Decl., ¶ 15.

### E.    The Settlement Negotiations.

Following a period of initial discovery, the Parties began discussing settlement in summer 2023 when they first mediated before the Honorable Jeremy D. Fogel (Ret.) on June 27, 2023. Grille Decl., ¶ 18. The Parties continued their discussions over the next year, mediating before Judge Fogel again on November 20, 2023, March 5, 2024, and April 16, 2024. *Id.* The Parties continued discussions until they reached an agreement in principle on April 26, 2024. Grille Decl., ¶ 19. The Parties then negotiated the settlement agreement in the following weeks and executed it on August 1, 2024. *Id.*

## IV.    <u>SUMMARY OF SETTLEMENT TERMS</u>

### A.    The Class.

The Class consists of all persons in the United States who, between April 1, 2016, to and through the Preliminary Approval date, requested or obtained video content on the Patreon website (patreon.com) while in the United States and at a time the person had a Facebook account and also had a Patreon account. Grille Decl., ¶ 20; SA at § 1.9. The Class is coextensive with the nationwide class proposed in Plaintiffs' operative complaint with only minor stylistic changes. *See* ECF No. 121 at ¶¶ 89-90. The class definition uses the VPPA's "requested or obtained" language rather than "viewed."

The Class excludes Patreon, its parents, subsidiaries, affiliates, officers, directors, and employees; any entity in which Patreon has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their staff and immediate family members. SA at § 1.9.

**B.     Settlement Consideration.**

Under the Settlement, Patreon will pay $7,250,000.00 to create a non-reversionary cash fund for Class Members. SA at §§ 1.39, 2.1. Notice costs, administration expenses, attorneys' fees and costs, and service awards awarded by the Court will be deducted from the fund and the balance (the "Net Settlement Fund") will be applied to pay claims. *Id.* at § 1.21. Plaintiffs will seek up to 30% of the fund in attorneys' fees, up to $485,000 in reimbursement of expenses, and a service award of up to $7,500 for each Class Representative. Grille Decl., ¶¶ 49, 51-52; SA at §§ 8.1-8.8.

Class Members also receive non-monetary relief through Patreon's removal or disabling of the Meta Pixel on any Patreon web page that includes video content, with Patreon agreeing not to re-install or operate the Meta Pixel on any patreon.com web page that includes video content, except if: (a) the VPPA is amended in relevant part, repealed, or otherwise invalidated; (b) Patreon obtains consent in the form required by the VPPA, 18 U.S.C. § 2710(b)(2)(B); or (c) the Meta Pixel on the relevant Patreon web page otherwise complies with the VPPA. Grille Decl., ¶ 22; SA at §§ 2.4-2.5.

**C.     Distribution of Settlement Fund.**

To be eligible for payment, Class Members must submit a Claim attesting that the Class Member accessed video content on Patreon.com while the Claimant had an active Facebook account, and provide a link to their Facebook profile. Grille Decl., ¶¶ 25-26; SA at §§ 3.2-3.3. The Claim Form is designed to be simple and easily understandable. Grille Decl., ¶ 27. Instructions for completing the Claim Form are provided on the Claim Form, in the Notice, and on the Settlement website. Grille Decl., ¶ 26. This claims process is designed to ensure recovery is limited to Class Members. Grille Decl., ¶ 27. The Claim Form requires potential Class Members to submit information that serves as a reasonable proxy for Class Membership when combined with Patreon's records. *Id.* It further offers Class Members a simple way to participate while expediting payment to Class Members by avoiding the delay and expense of a forensic data retrieval exercise over the objections of nonparty Meta. *Id.* The claims process thus ensures the Settlement is limited to the intended recipients and provides a simple, efficient means of limiting the recovery to Class Members.

The Claims Administrator will audit a sample of claims. SA at § 3.4. If the Claims Administrator determines a Claim is inadequately supported, suspicious, or contains indicia of fraud,

the Claims Administrator may request additional supporting documentation. *Id.* The Claims Administrator will provide Claimants with a reasonable opportunity to cure defective claim submissions during a period of up to 60 days ("Cure Period"). Grille Decl., ¶ 29; SA at § 3.5. After the expiration of the Claim Period and Cure Period, the Claims Administrator will determine the total number of valid claims and distribute an equal share of the Net Settlement Fund to each eligible Claimant. Grille Decl., ¶ 31; SA at § 3.8.

Payments will be made electronically, with PayPal as the default payment mechanism. Grille Decl., ¶ 31. All cash payments to Approved Claimants that have not been claimed within 90 days after the date of issuance will be redistributed *pro rata*, after deducting necessary settlement administration expenses from such uncashed funds, to all Class Members who were paid by electronic payment during the initial distribution. If a *pro rata* redistribution would result in each such Class Member receiving less than $10, the uncashed funds will be distributed, subject to Court approval, to a non-profit organization focused on consumer privacy protection that has not filed an amicus brief in this Action or in any other action alleging claims under the Video Privacy Protection Act. SA at § 3.11.

Based on discussions with the Claims Administrator and claims rates in similar VPPA-Pixel class action settlements, Class Counsel anticipate a claims rate of 1-10%. The projected claims rate is consistent with Class Counsel's experience, which includes cases with claims rates ranging from less than 1% to 25%, as well as rates in comparable VPPA-Pixel cases. *See Fiorentino v. FloSports, Inc.*, Case No. 1:22-cv-11502 (D. Mass 2022), ECF No. 72 (3.3% claims rate); *Ambrose v. Boston Globe Media Partners, LLC*, Case No. 1:22-cv-10195-RGS (D. Mass 2022), ECF Nos. 63, 67 (estimated 2.6% claims rate); *Beltran, Jr., et al. v. Sony Pictures Entertainment Inc., d/b/a CrunchyRoll*, Case No. 1:22-cv-04858 (N.D. Il. 2022), ECF No. 53 (1.75% claims rate); *see also Carlotti v. ASUS Computer Int'l*, 2020 WL 3414653, at *4 (N.D. Cal. 2020) (noting several cases where the claims rate was between 4.7 to 10.9% and approving settlement with 4% claims rate); *Norcia v. Samsung Telecommunications Am., LLC*, 2021 WL 3053018, at *3 (N.D. Cal. 2021) (approving settlement involving smartphones with 2% claims rate); *see also* Grille Decl., Ex. 2 (Chart Summarizing Comparable Class Settlements). Claim rates are driven by factors such as the nature of the case, the severity of the issue, the methods for notice, and the accessibility of the claim form. *See Date v. Sony*

6

*Elecs., Inc.*, 2013 WL 3945981, at *9-10 (E.D. Mich. July 31, 2013) ("[M]any factors affect response rates and this ratio should not be given great significance.") (citation omitted); *Gascho v. Global Fitness Holdings, LLC*, 2014 WL 1350509, at *30 (S.D. Ohio Apr. 4, 2014). Class Counsel have worked to simplify and streamline the claims process, recognizing the need both to limit recovery to eligible Claimants to prevent fraud while also optimizing simplicity to maximize participation.

### D. Class Notice and CAFA Notice.

Patreon has represented it has email addresses for approximately 99.97% of its account holders who played a video (or engaged with a video post) on the Patreon website (patreon.com) while in the United States[3] during the time period in which the Meta Pixel was enabled on the Patreon website. Patreon will provide the Claims Administrator with a list of email addresses for these account holders. Grille Decl., ¶ 43; SA at § 6.1. The Claims Administrator will send direct notice to each Class Member for whom Patreon has a valid email address and, where feasible, the Claims Administrator will make a second attempt to re-send the email notice if the initial transmission results in a "bounce-back." Grille Decl., ¶ 44; SA at § 6.2. Notice will also be posted on the settlement website and the Claims Administrator will establish a toll-free telephone number and email address Class Members can contact for assistance. Grille Decl., ¶ 46. The Claims Administrator will provide notice to the Attorneys General of each state in which Class Members reside, the Attorney General of the United States, and any other required government officials, consistent with 28 U.S.C. § 1715. SA at § 5.2.

### E. Release of Claims.

The proposed release applies to claims arising from the facts underlying the claims and allegations in this action. SA at §§ 1.33, 4.1-4.5. In accordance with the Northern District's Procedural Guidance for Class Action Settlements, the release tracks the claims in the SAC.

### F. Attorneys' Fees and Expenses, and Service Awards for the Class Representatives.

Plaintiffs' Counsel will apply for an award of attorneys' fees and reimbursement of litigation costs, together with service awards for the class representatives, at least 35 days before the due date for

---

[3] Patreon has represented that it generally determined the account holders' location based on the location of the account holder's IP address, and, if no IP address data was available for a given event, the user's most-common IP country was used as a proxy to determine whether the event occurred in the United States.

objections. SA at § 8.3. Plaintiffs' Counsel expect to apply for a fee of up to 30% of the common fund. Grille Decl., ¶ 49. Plaintiffs' Counsel's total lodestar, through July 15, 2024, is approximately $3,826,304.50 using current rates and representing 5,354.5 hours of work on this matter. *Id.* Class Counsel's lodestar reflects the hard-fought nature of this litigation and the dedicated work necessary to achieve resolution. Grille Decl., ¶ 50. Patreon's counsel mounted a sophisticated defense requiring extensive motion practice on potentially dispositive issues, and extensive negotiations and motion practice was necessary to obtain critical information from nonparty Meta. *Id.* Thus, if Plaintiffs' Counsel were to submit their fee application now, there would be no multiplier on the fee award given the substantial amounts of time dedicated by Plaintiffs' counsel to this matter. Grille Decl., ¶ 49. Plaintiffs' Counsel also will seek reimbursement of case expenses, which include expert witness fees, in an amount not to exceed $485,000. Grille Decl., ¶ 51. The Parties have reached no agreement on the amount of fees and expenses that Plaintiffs' Counsel will seek and Patreon takes no position as to the amount of fees and expenses to be sought. Grille Decl., ¶ 53.

Plaintiffs' Counsel also intend to apply for service awards of up to $7,500 for each of the Class Representatives. SA at § 8.6. Each Plaintiff devoted substantial time to this case, including in preparing the complaints, communicating with Plaintiffs' Counsel about case developments, responding to written discovery requests, gathering and producing documents, and, with respect to Plaintiffs Brayden Stark and Judd Oostyen, sitting for a deposition.

### G.     The Claims Administrator.

Plaintiffs' Counsel sent requests for proposal to six leading class action administrators and receiving proposals from each of them. Grille Decl., ¶ 35. After reviewing the proposals, and subject to the Court's approval, Plaintiffs' Counsel selected Simpluris based on its qualifications and competitive bid. Grille Decl., ¶ 36.  The administrator will be paid from the settlement fund. Based on information provided by the parties to date, the Claims Administrator anticipates notice and administration expenses in the range of $300,000-$350,000. Grille Decl., ¶ 41. In addition to managing the notice program and receiving and processing claims and opt-outs, Simpluris will maintain a dedicated settlement website containing links to the Notice, Claim Form, and all other relevant Settlement documents. Grille Decl., ¶ 39.

## V. __ARGUMENT__

"The approval of a settlement is a multi-step process. At the preliminary approval stage, the court should grant such approval only if it is justified by the parties' showing that the court will likely be able to (1) 'certify the class for purposes of judgment on the proposal' and (2) 'approve the proposal under Rule 23(e)(2).'" *Ramirez v. Trans Union, LLC*, 2022 WL 2817588, at *3 (N.D. Cal. July 19, 2022) (quoting Fed. R. Civ. P. 23(e)(B)); *see Gatchalian v. Atl. Recovery Sols., LLC*, 2023 WL 8007107, at *3 (N.D. Cal. Nov. 16, 2023). The Court should grant preliminary approval because the Settlement is fair and reasonable and the product of extensive arm's length negotiations, and because the Court is likely to be able to certify the Class for purposes of judgment.

### A.      The Settlement is Fair, Reasonable, and Adequate.

Plaintiffs readily satisfy the requirements for preliminary approval. "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 536661, at *5 (N.D. Cal. Feb. 11, 2019) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)). Rule 23(e)(2) directs the Court to consider whether "the class representatives and class counsel have adequately represented the class"; "the proposal was negotiated at arm's length"; "the relief provided for the class is adequate"; and "the proposal treats class members equitably relative to each other." These enumerated factors under Rule 23(e)(2) "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." FED. R. CIV. P. 23(e)(2) advisory committee's note (2018).

Thus, at preliminary approval, courts generally ask whether "the proposed settlement (1) appears to be the product of serious informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies." *Chess v. Volkswagen Grp. of Am., Inc.*, 2021 WL 5507177, at *7 (N.D. Cal. Nov. 24, 2021) (citation omitted); *see also* FED. R. CIV. P. 23(e)(1)(B). Because the Court cannot fully assess these factors until the final approval hearing, "a full fairness analysis is unnecessary at this stage." *Ellis v. Harder Mech. Contractors, Inc.*, 2022 WL 3638165, at *4 (N.D. Cal. Aug. 23, 2022) (citation omitted). Application of these factors demonstrates

that the settlement here is fair, reasonable, and adequate, in the best interests of the class, and will likely merit final approval.

      **1.**      **The Proposed Settlement Is the Product of Arm's Length Negotiations Among Experienced Counsel.**

Under Rule 23(e)(2), the Court considers whether the class representatives and class counsel adequately represented the class and whether the settlement proposal was negotiated at arm's length. To negotiate a fair and reasonable settlement, "the parties [must] have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

This Settlement follows several years of hard-fought litigation where Plaintiffs and their counsel demonstrated their adequacy, including two motions to dismiss and a fully briefed motion for summary judgment. The Settlement was also reached only after nearly a year of rigorous negotiations and four formal mediation sessions supervised by a retired judge. *See* Grille Decl., ¶ 18; FED. R. CIV. P. 23(e)(2) advisory committee's note to 2018 amendment (stating that "involvement of a neutral" in negotiations "may bear on whether they were conducted in a manner that would protect and further the class interests."); *see also Fed. Ins. Co. v. Caldera Med., Inc.*, 2016 WL 5921245, at *5 (C.D. Cal. Jan. 25, 2016) (whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations" is one factor in determining whether preliminary approval is appropriate). Further, as discussed in Section III(C), the Parties settled this matter following extensive discovery from Patreon and nonparties regarding the functionality of Patreon's Pixel, Patreon's knowledge of the Meta Pixel's implementation and capabilities, and how the Meta Pixel was integrated into Patreon's marketing efforts. Moreover, the Parties conducted discovery related to Patreon's constitutional challenge to the VPPA to establish a comprehensive factual record on which this issue could be decided. *See, e.g.*, *LaGarde v. Support.com, Inc.*, 2012 WL 13034899, at *7 (N.D. Cal. Nov. 2, 2012) (existence of robust discovery indicates plaintiffs were sufficiently informed during settlement negotiations). Plaintiffs' experts also investigated the technical operation of Patreon's Pixel and its impact on Patreon subscribers, preparing reports that detailed how they tested Patreon's website to confirm the alleged conduct occurred. *See Kacsuta v. Lenovo (U.S.) Inc.*, 2014 WL 12585783, at *5

---

10

1  (C.D. Cal. 2014) (that class counsel hired engineering experts to test and analyze the computers at

2  issue weighed in favor of the settlement).

3      Plaintiffs' Counsel's discovery and expert work enabled them to "enter[] the settlement

4  discussions with a substantial understanding of the factual and legal issues from which they could

5  advocate for their respective positions and which are necessary for a robust negotiation." *Kulesa v. PC

6  Cleaner, Inc.*, 2014 WL 12581769, at *10 (C.D. Cal. 2014); *Van Lith v. iHeartMedia + Entm't, Inc.*,

7  2017 WL 1064662, at *16 (E.D. Cal. 2017) ("The adversarial nature of these negotiations and the

8  discovery performed by the parties indicate that the settlement process is procedurally adequate.").

9  Plaintiffs thus satisfy the first factor of Rule 23(e)(2).

10     In sum, because the Settlement is "the product of serious, informed, non-collusive

11 negotiations" conducted by experienced counsel, this factor weighs in favor of preliminary approval.

12 *Ramirez*, 2022 WL 2817588, at *4.

13                    **2.      The Settlement Treats All Class Members Equitably.**

14     "Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the

15 same standards of review applicable to approval of the settlement as a whole: the plan must be fair,

16 reasonable and adequate." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 6778406, at *3

17 (N.D. Cal., 2016) (quoting *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1-2 (N.D. Cal. 1994)).

18 Plaintiffs' proposal for allocation of the Settlement Fund readily satisfies this standard because all

19 Class Members are treated equally and those who submit a valid claim will receive a proportional

20 share of the Net Settlement Fund. *See* Grille Decl., ¶ 31; SA at § 3.8. *Hefler v. Wells Fargo & Co.*,

21 2018 WL 6619983, at *12 (N.D. Cal. 2018) ("The allocation plan disburses the Settlement Fund to

22 class members on a pro rata basis based on the relative size of the potential claims that they are

23 compromising. This type of pro rata distribution has frequently been determined to be fair, adequate,

24 and reasonable.") (citation omitted) (internal quotation marks omitted). The proposed method of

25 distributing the Settlement Fund avoids unnecessary distinctions between Claimants who have suffered

26 nearly identical injuries by distributing an equal share of the Net Settlement Fund to all Class Members

27 with a valid claim, underscoring the reasonableness of the proposed Settlement. *See Hefler*, 2018 WL

28 6619983, at *12.

### 3.     The Relief Under the Proposed Settlement is Adequate.

In determining whether the class-wide relief is adequate under Rule 23(e)(2), the Court considers "the costs, risks, and delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)."[4] Approval of a class settlement is appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'" *Mendoza v. Hyundai Motor Co.*, *Ltd*, 2017 WL 342059, at *6 (N.D. Cal. 2017) (citation omitted). Further, "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478, at *6 (N.D. Cal. 2016) (cleaned up).

According to Patreon's records, approximately 6 million Patreon account holders accessed video content on patreon.com while in the United States during the Class Period. Grille Decl., ¶ 42. But not all of these people are Class Members because they did not all simultaneously maintain a Facebook account such that the Meta Pixel would pass their video viewing choices and personal information to Meta. Based on publicly available data regarding web browsing habits, use of cookie blockers or private browsing, and Facebook login rates, Plaintiffs estimate that about 20% of the 6 million, or 1.2 million people are Class members. *Id.* If Plaintiffs prevailed at trial and in a post-trial appeal, Patreon would in theory be exposed to a judgement in excess of $1 billion, applying the VPPA's statutory damage measure of $2,500 per violation. While the Settlement represents less than 1% of these potential trial damages, the prospects for recovering a billion judgment are remote. Setting aside Patreon's ability to pay, Patreon would argue that damages under the VPPA are discretionary. *See* 18 U.S.C. § 2710(c)(2)(A) (A "court *may* award actual damages but not less than liquidated damages in an amount of $2,500) (emphasis added; *Rogers v. BNSF Ry. Co.*, 680 F. Supp. 3d 1027, 1041 (N.D. Ill. 2023) (finding that the Illinois Biometric Information Privacy Act's use of "may" meant that damages were discretionary). Second, Patreon would argue that a $3 billion

---

[4] There are no side agreements to disclose under Rule 23(e)(3).

judgment violates its due process rights because aggregated statutory damages, even if constitutional on a per-violation basis, may be limited when they become "wholly disproportioned" and "obviously unreasonable" in relation to the statute's goals and prohibited conduct. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1123 (9th Cir. 2022) (quoting *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919)).

Moreover, "[e]stimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." *Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679, at *11 (C.D. Cal. 2012). While Plaintiffs are confident in the strength of their case, Patreon has vigorously denied liability from the outset. *See, e.g.*, *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 326 (C.D. Cal. 2016) ("The settlement the parties have reached is even more compelling given the substantial litigation risks in this case."). As discussed, Patreon's has raised numerous defenses, including technical arguments and a constitutional challenge to the VPPA. Taken together, these arguments and the challenges with sustaining class certification through trial indicate Plaintiffs face substantial risk if they continued to litigate this matter. *See Aarons v. BMW of N. Am., LLC*, 2014 WL 4090564, at *10 (C.D. Cal. 2014) (risk of "battle of the experts" at trial weighed in favor of settlement approval).

Claims applying the VPPA to the use of the Meta Pixel are relatively untested and thus inherently risky. Patreon has vigorously challenged its liability under the VPPA, disputing that it "knowingly" disclosed its subscribers' personal information to Meta via the Meta Pixel, and denying that the information disclosed to Meta via Patreon's Pixel sufficiently identifies the affected subscribers. *See, e.g.*, ECF No. 21 at 6-9. Although Plaintiffs prevailed on these issues at the pleading stage, Patreon likely would have reasserted these arguments at summary judgment and trial. Rebutting Patreon's argument regarding its knowledge of the Meta Pixel's capabilities would require Plaintiffs to explain complex computer science and website coding concepts to a lay jury. In addition, Patreon would likely continue to deny that the information transmitted by the Pixel is sufficient to identify individual Patreon subscribers or the video material they requested or obtained. Patreon's class certification arguments also pose a threat to a successful resolution for the Class. In addition to opposing Plaintiffs the elements of Rule 23, Plaintiffs anticipate Patreon would argue that a large

13

1    segment of the class is bound by an arbitration clause that was present in Patreon's terms of use until

2    October 15, 2021, and must therefore be excluded from the class.

3        Patreon has further argued that the VPPA violates the First Amendment. *See, e.g.*, ECF No. 76.

4    Because an adverse ruling would dispose of Plaintiffs' VPPA claim, either terminating the litigation or

5    resulting in an appeal, the Settlement here mitigates the considerable risk presented by Patreon's First

6    Amendment challenge. *See In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 WL 3352460,

7    at *5 (N.D. Cal. Aug. 2, 2011) ("[F]act-intensive inquiries and developing case law present significant

8    risks to Plaintiffs' claims and potential recovery.").

9        In light of Patreon's defenses, as well as the fact that a trial date is not set and thus it is

10   unknown when, if any, resolution through trial would occur, the Settlement delivers a timely and

11   substantial recovery for the class. *See Linney*, 151 F.3d at 1242 (settlement amounting to a fraction of

12   the potential total recovery was reasonable given the significant risks of going to trial); *Hendricks v.*

13   *StarKist Co.*, 2015 WL 4498083, at *7 (N.D. Cal. 2015) (settlement representing "only a single-digit

14   percentage of the maximum potential exposure" was reasonable given the risks). The settlement

15   amount also falls within the range of recovery in other comparable VPPA cases. *See, e.g.*, *Feldman v.*

16   *Star Trib. Media Co. LLC*, 2024 WL 3026556, at *6 (D. Minn. June 17, 2024) (approving $2.9 million

17   settlement in VPPA case); *Ambrose v. Boston Globe Media Partners, LLC*, Case No. 1:22-cv-10195-

18   RGS (D. Mass 2022), ECF No. 70 (entering final judgment and approving $4,000,000.00 settlement of

19   VPPA claim); *Beltran, Jr., et al. v. Sony Pictures Entertainment Inc., d/b/a CrunchyRoll*, Case No.

20   1:22-cv-04858 (N.D. Il. 2022), ECF No.57 (entering final judgment and approving $16,000,000.00

21   settlement of VPPA claim); *Fiorentino v. FloSports, Inc.*, Case No. 1:22-cv-11502 (D. Mass 2022),

22   ECF No. 76 (entering final judgment and approving $2,625,000.00 settlement of VPPA claim); *see*

23   *also Foster v. Adams & Assocs., Inc.*, 2021 WL 4924849, at *7 (N.D. Cal. Oct. 21, 2021) (the fact the

24   settlement amount was "consistent" with those in other similar cases favored approving the

25   settlement).

26       In contrast to the significant risks and further delays after two years of hard-fought litigation,

27   the Settlement here ensures eligible Class Members will receive monetary compensation for their

28   injuries. SA at § 2.1. Moreover, all Class Members will be afforded relief through Patreon's removal of

1    the Meta Pixel from any web page on the Patreon website that includes video content and its

2    agreement not to re-install or operate the Meta Pixel on a Patreon web page with video content except

3    under specific circumstances. SA at §§ 2.4-2.5. The settlement "relief is directly targeted to the harm

4    suffered by the class and adequately redresses their injuries." *Shin v. Plantronics, Inc.*, 2020 WL

5    1934893, at *3 (N.D. Cal., 2020). The parties' Settlement provides certain relief to the Class Members,

6    including "a significant, easy-to-obtain benefit to class members" in the form of a cash payment to any

7    Class Member with a valid claim. *In re Haier Freezer Consumer Litig.*, 2013 WL 2237890, at *4

8    (N.D. Cal. 2013); *see In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("difficulties

9    in proving the case" favored settlement approval).

10           Thus, the settlement falls well within the range of reasonableness for preliminary approval.

11           **B.     The Court Will Be Able to Certify the Class for Purposes of Settlement.**

12           Rule 23(e)(1) provides that preliminary approval should be granted (and notice disseminated)

13    where the Court "will likely be able to" certify the class for purposes of judgment on the proposed

14    settlement. Fed. R. Civ. P. 23(e); *see also id.* 2018 Amendment Advisory Committee Notes. When

15    "[c]onfronted with a request for a settlement-only class certification, a district court need not inquire

16    whether the case, if tried, would present intractable management problems . . . for the proposal is that

17    there [will] be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

18           **1.     Class Members Are Too Numerous to Be Joined.**

19           The numerosity requirement of Rule 23(a) is met because "joinder of all members is

20    impracticable." Fed. R. Civ. P. 23(a)(1); *see also West v. California Servs. Bureau, Inc.*, 323 F.R.D.

21    295, 303 (N.D. Cal. 2017) (court may make "common-sense assumptions" regarding numerosity)

22    (citation omitted). Plaintiffs estimate that the Settlement Class consists of approximately 1.2 million

23    people. Grille Decl., ¶ 42. This estimate is derived from Patreon's records, which show that

24    approximately 6 million Patreon subscribers accessed video content on patreon.com while in the

25    United States during the Class Period, and publicly available data indicating that about 20% of the 6

26    million subscribers simultaneously maintained a Facebook account and other browser settings such

27    that the Meta Pixel would pass their video viewing choices and personal information to Meta. *Id.*

28

1

### 2.      There Are Common Questions of Law and Fact.

2

Commonality under Rule 23(a)(2) "is construed 'permissively' and is satisfied when class

3

members share 'some . . . legal issues or a common core of facts.'" *J.L. v. Cissna*, 2019 WL 415579, at

4

\*9 (N.D. Cal. 2019) (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010)). The common

5

questions include: (1) whether Patreon is a "video tape service provider"; (2) whether Patreon

6

intentionally installed the Meta Pixel on its website, (3) whether during the class period, the Meta Pixel

7

on Patreon's website was configured to transmit information constituting "personally identifying

8

information" under the VPPA; and (4) whether Patreon's transmission of its subscribers' personally

9

identifying information was done without consent in the form required by 18 U.S. Code §

10

2710(b)(2)(B). The answers to these questions, which are at the heart of every Class Member's VPPA

11

claim, are capable of class-wide resolution and would "resolve an issue that is central to the validity of

12

each one of the claims in one stroke." *In re Chrysler- Dodge-Jeep*, 2019 WL 536661, at \*5 (citation

13

omitted); *Martinez v. Blu Prod., Inc.*, 2019 WL 12838199, at \*3 (C.D. Cal. Oct. 3, 2019) ("[T]here

14

appears to be a number of sufficiently-important common questions here including: Did the phones in

15

question include firmware that continuously captured and transmitted Plaintiffs' personally identifiable

16

information?"). Hence, commonality is satisfied.

17

### 3.      Plaintiffs' Claims Are Typical of the Class.

18

Representative claims are 'typical' if they are reasonably co-extensive with those of absent

19

class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

20

1020 (9th Cir. 1998). "The test of typicality" under Rule 23(a)(3) is "whether other members have the

21

same or similar injury, whether the action is based on conduct which is not unique to the named

22

plaintiffs, and whether other class members have been injured by the same course of conduct."

23

*Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted). Here, Plaintiffs and Class

24

Members have the same types of claims stemming from the same alleged violations concerning

25

Patreon's transmission of their personal information to Meta via the Pixel, thus satisfying typicality.

26

*Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 267 (N.D. Cal. 2011) (typicality met when "[a]ll

27

members of the putative class were allegedly injured by the same course of conduct[.]").

28

4.      **Plaintiffs and Plaintiffs' Counsel Will Fairly and Adequately Protect the Interests of the Class.**

Two questions are relevant to adequacy of representation under Rule 23(a)(4): "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Plaintiffs and their counsel do not have any conflicts with Class Members and have vigorously prosecuted this case. Plaintiffs agreed to serve in a representative capacity, communicated with their attorneys, fulfilled their discovery obligations and have acted in the best interests of the other Class Members. *See Mergens v. Sloan Valve Co.*, 2017 WL 9486153, at *6 (C.D. Cal. Sept. 18, 2017) (adequacy requirement met where plaintiff had no interests antagonistic to the class); *Castro v. ABM Indus., Inc.*, 325 F.R.D. 332, 342 (N.D. Cal. 2018) (plaintiffs were adequate when they "have been active participants in the litigation").

Plaintiffs' Counsel also have extensive experience successfully representing plaintiffs and classes in complex class action litigation, including matters involving privacy violations. *See, e.g.*, *In re U.S. Office of Personnel Management Data Security Litig.*, Case No. 1:15-mc-01394-ABJ (D.D.C. Oct. 26, 2022), ECF No. 208 (approving $63 million settlement); *In re Lenovo Adware Litig.*, 2019 WL 1791420 (N.D. Cal. April 24, 2019) (approving $7.3 million settlement)("Plaintiffs have ensured a favorable recovery for the class"); *In re PFA Ins. Mktg. Litig.*, 2024 WL 1145209, at *25 (N.D. Cal. Feb. 5, 2024) ((approving settlement for $4.24 million)("Class Counsel represented the class with skill and diligence over the course of several years and achieved remarkable success"); *See also* Grille Decl., ¶ 54, Ex. 1 (firm resume).

5.      **The Requirements of Rule 23(b)(3) Are Met.**

a.      **Common Issues of Law and Fact Predominate for Settlement Purposes.**

The predominance inquiry tests the cohesion of the class, "ask[ing] whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). Predominance is ordinarily satisfied, for settlement purposes, when the claims arise out of the defendant's common conduct. *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D.

17

280, 288 (N.D. Cal. 2017) (predominance satisfied where claims were based on "the same deceptive conduct"); *Kacsuta*, 2014 WL 12585783, at *3 (common issues "significantly outweigh any individual questions" where the claims arise out of the "same alleged course of conduct" by the defendant).

This Class is cohesive. To establish liability under the VPPA, a plaintiff must show that "(1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Each Class Member's personal information was allegedly transmitted to Meta via Patreon's Pixel without consent in violation of the VPPA. So, whether Patreon violated the VPPA in its implementation of the Meta Pixel can be determined in a single class proceeding. Predominance is thus met. *See Alcazar v. Fashion Nova, Inc.*, 2022 WL 19975445, at *2 (N.D. Cal. Sept. 6, 2022) ("Whether Fashion Nova's website complies with those laws or whether it violates them can be answered in one fell swoop."). Predominance has similarly been found in cases alleging violations of statutes analogous to the VPPA. *See, e.g., Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 537 (E.D. Mich. 2015) (certifying class as to Michigan Video Rental Privacy Act claim); *Wilcox v. Swapp*, 330 F.R.D. 584 (E.D. Wash. 2019) (granting class certification for Driver's Privacy Protection Act claim); *Haney v. Recall Ctr.*, 282 F.R.D. 436 (W.D. Ark. 2012) (same); *Roberts v. Source for Pub. Data*, 2009 WL 3837502, at *1 (W.D. Mo. Nov. 17, 2009) (same). Predominance is further met because the VPPA's statutory damages obviate the need for complex, individualized damages calculations. *See In re Toys R Us-Delaware, Inc.*, 300 F.R.D. 347, 377 (C.D. Cal. 2013) ("Courts have been more willing to find predominance where, as here, the class seeks only statutory damages.").

> **b.     A Class Action is a Superior Means of Resolving This Controversy.**

The superiority inquiry "requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair." *One Unnamed Deputy Dist. Attorney v. Cty. of Los Angeles*, 2011 WL 13128375, at *4 (C.D. Cal. 2011). When, as in this case, individual recoveries would be relatively small and individual litigation would needlessly duplicate discovery and expert work, it is "an inferior method of adjudication." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010). Class members have little incentive to pursue their own VPPA claims

against Patreon—and there have not been any other cases to date—when it will entail litigating highly technical issues over the implementation of the Metal Pixel on Patreon's website and Patreon has strenuously defended itself at every stage of the case. The amount of each Class member's potential recovery is also dwarfed by the costs necessary to individually litigate Class Members' claims. *See In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 548 (N.D. Cal. 2018) (statutory damages not enough to incentivize individual litigation due to high cost of discovery and Facebook's vigorous defense); *Alcazar*, 2022 WL 19975445, at \*4 (availability of $4,000 in statutory damages was not enough to incentivize individual litigation because "that sum pales in comparison with the cost of pursuing litigation") (citation omitted).

Therefore, consistent with Rule 23(e)(1)(B), the Court will likely be able to certify the Settlement Class in this case.

**C.      The Proposed Class Notice and Plan for Dissemination Are Reasonable and Should be Approved.**

Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Under Rule 23(b)(3), the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The notices here comport with Rule 23 and the due process mandates. Using plain language, these proposed notices provide all information required under Rule 23(c)(2)(B). The proposed notice program provides for direct email notice as well as follow-up mechanisms for directly notifying Class Members of the settlement. The settlement website will also be a useful resource for Class Members—consistent with the Guidelines, it will post the Claim Form, the long-form notice, and key documents in the case including Class Counsel's attorneys' fee application once it is filed. The Claims Administrator will also establish an email inbox and a toll-free number for Class Members to contact with questions. Email is the best practical means of providing notice in this case given the online nature of Patreon's business and because it is the primary way Patreon communicated with Class Members. *See Richards v. Chime Fin., Inc.*, No. 19-CV-06864-HSG, 2020 WL 6318713, at \*10 (N.D. Cal. Oct. 28, 2020) (approving email only notice plan because it was one of the "primary" ways the defendant communicated with class members);

1    *see, e.g., In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 586 (N.D. Cal. 2015) (noting "the Court

2    approved a notice plan involving direct email notice, a settlement website and a toll-free telephone

3    number, as consistent with Rule 23(c)(2)(B)"); *Rael v. Children's Place, Inc.*, No. 16-CV-370-GPC-LL,

4    2021 WL 1226475, at *14 (S.D. Cal. Mar. 31, 2021) (approving notice plan primarily relying on email

5    and settlement website); *Evans v. Linden Rsch., Inc.*, No. C-11-01078 DMR, 2014 WL 1724891, at *3

6    (N.D. Cal. Apr. 29, 2014) (similar).

7    **VI.    <u>CONCLUSION</u>**

8           For the foregoing reasons, Plaintiffs respectfully request that the Court (1) grant preliminary

9    approval of the proposed Settlement, (2) direct notice to the Class, and (3) set a schedule for settlement

10   proceedings, including the final fairness hearing.

11

12   Dated: August 2, 2024                         Respectfully submitted,

13                                                  */s/ Simon S. Grille*
                                                    Adam E. Polk (SBN 273000)
14                                                  Simon S. Grille (SBN 294914)
                                                    Trevor T. Tan (SBN 280145)
15                                                  Reid Gaa (SBN 330141)
16                                                  **GIRARD SHARP LLP**
                                                    601 California Street, Suite 1400
17                                                  San Francisco, CA 94108
                                                    Telephone: (415) 981-4800
18                                                  Facsimile: (415) 981-4846
19                                                  apolk@girardsharp.com
                                                    sgrille@girardsharp.com
20                                                  ttan@girardsharp.com
                                                    rgaa@girardsharp.com
21
22                                                  *Attorneys for Plaintiffs*

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELMINARY APPROVAL
CASE NO. 3:22-cv-03131-JCS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

/s/ Simon S. Grille
Simon S. Grille