# EXHIBIT 1

1
2
3
4
5
6
7
8 **UNITED STATES DISTRICT COURT**
9 **FOR THE DISTRICT OF NORTHERN CALIFORNIA**
10 **SAN FRANCISCO DIVISION**
11

12 | BRAYDEN STARK, JUDD OOSTYEN, | Case No. 3:22-CV-03131-JCS
13 | ISAAC BELENKIY, VALERIE BURTON, |
  | LAURA GOODFIELD, and DENOVIAS | **CLASS ACTION SETTLEMENT**
14 | MACK, individually and on behalf of all others | **AGREEMENT AND RELEASE**
  | similarly situated, |
15 | | The Honorable Joseph C. Spero
  | Plaintiffs, |
16 | v. |
17 |
  | PATREON, INC., |
18 |
  | Defendant. |
19 |
20
21
22
23
24
25
26
27
28

This Class Action Settlement Agreement and Release dated August 2, 2024 (the "Agreement"), is made and entered into by and among: (i) Plaintiffs Brayden Stark, Judd Oostyen, Isaac Belenkiy, Valerie Burton, Laura Goodfield, and Denovias Mack ("Plaintiffs") on behalf of themselves and each of the members of the Class (as defined herein), and (ii) Defendant Patreon, Inc. ("Patreon" or "Defendant") (collectively, the "Parties"). The Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein) as against the Releasing Defendant (as defined herein) and compensate Plaintiffs and Class Members for claimed damages, subject to the approval of the Court and the terms and conditions set forth in this Agreement.

## I.     RECITALS

WHEREAS, on May 27, 2022, Plaintiffs Brayden Stark and Judd Oostyen filed a class action complaint against Patreon in the United States District Court for the Northern District of California, captioned *Stark et al. v. Patreon, Inc.*, Case No. 3:22-CV-03131-JCS, asserting claims, including claims for alleged violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA") (Dkt. No. 1);

WHEREAS, on October 13, 2022, the Court issued an Order granting in part and denying in part a motion by Patreon to dismiss the class action complaint (Dkt. No. 40);

WHEREAS, on October 27, 2022, Plaintiffs Brayden Stark and Judd Oostyen filed a First Amended Complaint (Dkt. No. 41);

WHEREAS, on February 17, 2023, the Court issued an Order granting in part and denying in part a motion by Patreon to dismiss the First Amended Complaint (Dkt. No. 59);

WHEREAS, on January 30, 2024, Plaintiffs filed a Second Amended Complaint adding Plaintiffs Isaac Belenkiy, Valerie Burton, Laura Goodfield, and Denovias Mack (Dkt. No. 121), a copy of which is attached as Exhibit 1;

WHEREAS, the Parties mediated before the Honorable Jeremy D. Fogel (Ret.) on June 27, 2023, November 20, 2023, March 5, 2024, and April 16, 2024;

WHEREAS, the parties fully briefed and argued a motion filed by Patreon seeking summary judgment on the grounds that the VPPA violates the First Amendment of the U.S. Constitution, which motion was taken under submission by the Court at the close of the motion hearing on April 12, 2024;

1   WHEREAS, Plaintiffs represent that they were prepared to file their class certification motion
2   with associated expert reports by April 29, 2024;

3   WHEREAS, the Parties reached an agreement in principle to settle this litigation on April 26,
4   2024, shortly before Plaintiffs' motion for class certification otherwise would have been due, and when
5   Patreon's aforementioned motion for summary judgment had been taken under submission and was
6   pending before the Court;

7   WHEREAS, Plaintiffs have conducted discovery, including depositions of eight Patreon then-
8   current or former employees and two nonparties, 48 document requests, 11 interrogatories, and 17
9   requests for admission, and engaged expert witnesses and consultants;

10  WHEREAS, in entering into this Agreement, Plaintiffs recognize and acknowledge the expense
11  and time it would take to prosecute this action through trial and any subsequent appeals, and the risk that
12  this action could ultimately be unsuccessful in light of Patreon's defenses;

13  WHEREAS, Patreon has asserted and would assert numerous defenses to the claims alleged by
14  Plaintiffs, and expressly denies each of the claims asserted by Plaintiffs against Patreon and any and all
15  liability arising out of the conduct alleged by Plaintiffs;

16  WHEREAS, Patreon acknowledges that further litigation of this action could be protracted and
17  expensive, and has taken into account the uncertainty and risks inherent in any litigation, including a
18  proposed class action;

19  WHEREAS, by entering into this Agreement, Patreon does not admit any wrongdoing, and this
20  Agreement is not and will not constitute an admission of liability by Patreon; and

21  WHEREAS, Plaintiffs and Patreon have therefore each independently determined that it is
22  desirable and beneficial for this action to be fully and finally resolved in the manner and upon the terms
23  and conditions set forth in this Agreement.

24  NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiffs
25  (for themselves and the Class Members) and Patreon, by and through its counsel, that, subject to the
26  approval of the Court, the Litigation and the Released Claims will be finally and fully compromised,
27  settled, and released, and the Litigation will be dismissed with prejudice, as to all Parties and their Related
28  Parties (as defined below), upon and subject to the terms and conditions of the Agreement, as follows.

## II.    TERMS OF AGREEMENT

### 1.    Definitions

As used in the Agreement, the following terms have the meanings specified below:

1.1    "Action" or "Litigation" means *Stark et al. v. Patreon, Inc.*, Case No. 3:22-CV-03131-JCS, pending in the United States District Court for the Northern District of California.

1.2    "Agreement," "Settlement Agreement," or "Settlement" means this Class Action Settlement Agreement and Release.

1.3    "Approved Claim" means a Claim Form submitted by a Class Member that: (a) is submitted timely and in accordance with the directions on the Claim Form; (2) is fully and truthfully completed by a Class Member with all of the information requested on the Claim Form; (3) is signed by the Class Member, physically or electronically; and (4) is approved by the Claims Administrator under the provisions of this Agreement, including its incorporated exhibits.

1.4    "Approved Claimant" means any Class Member whose claim has been allowed as an Approved Claim.

1.5    "Claimant" means a person who submits a Claim.

1.6    "Claims Administrator" means Simpluris Inc., or such other notice and claims administrator as the Court approves.

1.7    "Claims Deadline" means 100 days after Preliminary Approval.

1.8    "Claim Form" means a document, substantially in the form of Exhibit 2 hereto, that a Class Member must complete and submit to receive a payment from the Net Settlement Fund.

1.9    "Class" means all persons who, between April 1, 2016, to and through the Preliminary Approval date, requested or obtained video content on the Patreon website (patreon.com) while in the United States and at a time the person had a Facebook account and also had a Patreon account. The Class excludes Patreon, its parents, subsidiaries, affiliates, officers, directors, and employees; any entity in which Patreon has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their staff and immediate family members.

1.10    "Class Member" means a person who falls within the definition of the Class and does not exercise his or her right to opt out of the Settlement before the Opt-Out Deadline.

1.11   "Class Counsel" means Girard Sharp LLP.

1.12   "Court" means the United States District Court for the Northern District of California.

1.13   "Defendant" means Patreon, Inc.

1.14   "Defendant's Counsel" means The Norton Law Firm PC.

1.15   "Effective Date," or the date upon which this Settlement becomes "effective," means the date the Court has entered the Final Order and Judgment and the Final Order and Judgment has been upheld through the resolution of all appeals and writs of certiorari, if any, and through the expiration of all time to appeal and file writs of certiorari, except that the Effective Date will not be delayed or modified by an appeal from those parts of the Final Order and Judgment that pertain solely to any award of attorneys' fees or expenses.

1.16   "Escrow Account" means the interest-bearing account constituting a qualified settlement fund, as defined in Treasury Regulation § 1.468B-1 *et seq.*, to be mutually selected by the Parties and opened by the Claims Administrator and maintained by the Escrow Agent, subject to the continuing jurisdiction of the Court.

1.17   "Escrow Agent" means Huntington Bank, NA.

1.18   "Fee and Expense Award" means the order awarding attorneys' fees and reimbursement of litigation expenses incurred by Class Counsel in the Litigation.

1.19   "Final Approval Hearing" means the hearing before the Court where the Parties will request that the Court enter the Final Order and Judgment, approving the Settlement Agreement, the Plan of Allocation, the Fee and Expense Award, and the Service Awards to the Class Representatives.

1.20   "Final Order and Judgment" or "Final Approval Order" means an order, substantially in the form of Exhibit 5 hereto, to be entered by the Court in this Action granting final approval of this Settlement Agreement and dismissing the Litigation with prejudice.

1.21   "Net Settlement Fund" means the Settlement Fund, less attorneys' fees and expenses and Class Representative Service Awards that may be approved by the Court, less Notice and Administration Expenses, less any taxes due on earnings on the Settlement Fund, less any expenses related thereto, and less any other Court-approved deductions.

1.22   "Notice" means the Notice of Proposed Settlement of Class Action, which, subject to approval of the Court, will be substantially in the form attached as Exhibit 3 hereto.

1.23   "Notice Date" means 25 calendar days after Preliminary Approval.

1.24   "Notice and Administration Expenses" means reasonable costs and expenses incurred by the Claims Administrator in connection with providing Notice (including CAFA notice), processing and distributing claims, responding to inquiries from members of the Class, and related services.  For the avoidance of doubt, no portion of the Notice and Administration Expenses shall include fees of Class Counsel.

1.25   "Objection or Opt-Out Deadline" means 100 days after Preliminary Approval.

1.26   "Patreon" means Defendant Patreon, Inc.

1.27   "Person" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, joint venture, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, any business or legal entity, and any of their heirs, successors, representatives, or assigns.

1.28   "Plaintiffs" or "Class Representatives" means Brayden Stark, Judd Oostyen, Isaac Belenkiy, Valerie Burton, Laura Goodfield, and Denovias Mack.

1.29   "Plan of Allocation" means the plan for allocating the Net Settlement Fund as described in Section 3 of this Agreement.

1.30   "Preliminary Approval Order" means the Order Preliminarily Approving Settlement and Providing for Notice, substantially in the form attached as Exhibit 4 hereto.

1.31   "Preliminary Approval" means the date on which the Preliminary Approval Order is entered.

1.32   "Related Parties" means, as applicable, each of a person or entity's respective present and former parents, subsidiaries, divisions, affiliates, and each of their and a person or entity's respective present and former employees, members, partners, principals, agents, officers, directors, controlling shareholders, attorneys, agents, related or affiliated entities, predecessors, successors, spouses, estates,

heirs, executors, trusts, trustees, administrators, representatives, and assigns, in their capacity as such, and any entity in which such a person or entity has a controlling interest.

1.33   "Released Claims" means all claims by Class Members, whether federal or state, known or unknown, asserted or unasserted, regardless of legal theory, arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions and failures to act regarding the alleged disclosures of the Class Members' personally identifiable information and video viewing or requesting behavior that were brought or could have been brought in the Action, including but not limited to claims under the VPPA, claims under California's Unfair Competition Law, and claims for unjust enrichment.

1.34   "Released Defendant" and "Releasing Defendant" means Patreon and its Related Parties.

1.35   "Released Plaintiffs" and "Releasing Plaintiffs" means Plaintiffs and each Class Member.

1.36   "Releasing Defendant's Claims" means all claims and causes of action, whether known or unknown, whether arising under federal, state, common, or foreign law, solely to the extent that such claims arise out of or relate to the institution, prosecution, or settlement of the Litigation or the Released Claims against the Released Defendant. Notwithstanding the foregoing, "Releasing Defendant's Claims" does not include claims relating to the enforcement of the Settlement.

1.37   "Releasing Parties" means the Releasing Defendant and the Releasing Plaintiffs.

1.38   "Service Awards" mean the awards sought by Class Representatives, subject to Court approval, in consideration for their service during the course of the Action.

1.39   "Settlement Amount" means $7,250,000.00, which amount was deposited by Defendant into an interest-bearing direct deposit account on May 13, 2024, which interest accrued for the  benefit of the Class, and was then transferred (along with earned interest) to a separate account ("Holding Account") and invested in a money market mutual fund (namely, FSIXX) on or about June 13, 2024, and has been maintained thereafter in that account for the benefit of the Class, and which continues to accrue interest (through the money market mutual fund) for the benefit of the Class, and which Defendant will transfer (along with earned interest) to the Escrow Account within 7 days after the Court enters the Final Order and Judgment granting final approval of this Settlement Agreement.

1.40    "Settlement Fund" means the non-reversionary cash fund consisting of the Settlement Amount, together with accrued interest thereon, less the advance for Notice and Administration Expenses (paragraph 2.2). The Parties agree that the Settlement Fund is intended to be at all times a "qualified settlement fund" within the meaning of Section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended, from the earliest date possible, and further agree to any relation-back election (as described in Treas. Reg. §1.468B-1(j)) required to treat the Settlement Fund as a "qualified settlement fund" from the earliest date possible. The Settlement Fund will be maintained by the Escrow Agent with permissions granted to the Claims Administrator to access said funds until such time as the payments set forth herein are made. The Settlement Fund includes all interest that will accrue on the sums deposited in the Escrow Account. The Claims Administrator, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), will be responsible for all tax filings with respect to any earnings on the Settlement Fund and the payment of all taxes that may be due on such earnings. Counsel for Defendant agrees to provide promptly to the Claims Administrator the statement described in Treasury Regulation § 1.468B-3(e). Neither the Class Representatives, Class Counsel, Defendant, nor Defendant's Counsel will have any liability or responsibility for any tax arising with respect to the Settlement Fund.

1.41    "Unknown Claims" means claims that could have been raised in the Action and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by him or her, might affect his or her agreement to release the Released Parties or the Released Claims or might affect his or her decision to agree, object or not to object to the Settlement. Upon the Effective Date, the Releasing Parties will be deemed to have, and will have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, which provides as follows:

**A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

Upon the Effective Date, the Releasing Parties also will be deemed to have, and will have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States,

or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to Section 1542 of the California Civil Code. The Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

**2.      Settlement Relief**

2.1      Defendant deposited the Settlement Amount ($7,250,000.00) into an interest-bearing account on May 13, 2024, and then transferred such amount (including interest earned) into a separate trading account and invested the funds in a money market mutual fund (namely, FSIXX) on or about June 13, 2024, and Defendant will maintain the money market mutual fund shares in the Holding Account for the benefit of the Class, subject to Paragraphs 2.2 and 2.3 below.  Within 7 days after the Court enters the Final Order and Judgment, Defendant will sell the money market mutual fund shares in the Holding Account for U.S. dollars and then transfer the funds (with all earned interest) to the Escrow Account.  Defendant will make no further payments in connection with this Agreement.

2.2      Upon Preliminary Approval, an amount totaling $58,953.20 for initial costs associated with Notice and Administration Expenses will be disbursed by Defendant from the Holding Account to the Claims Administrator. To the extent the disbursement thereafter is actually expended on Notice and Administration Expenses, the amount expended will not be returned to Defendant, and Defendant will have no claim for reimbursement of that amount.

2.3      If Final Approval is granted, no portion of the Settlement Fund or Net Settlement Fund will revert to Defendant; but if Final Approval is not granted, the balance of the Holding Account, plus any interest earned, will be returned to Defendant within 10 days after the Court enters its order denying Plaintiffs' motion for final approval of the settlement.

2.4      In addition to agreeing to pay the Settlement Amount, Patreon has removed or disabled the Meta Pixel from any web page on the Patreon website that includes video content as of the Effective Date.

2.5    Patreon further agrees not to re-install or operate the Meta Pixel on any web page on the Patreon website that includes video content, except if: (a) the VPPA is amended in relevant part, repealed, or otherwise invalidated; (b) Patreon obtains consent in the form required by the VPPA, 18 U.S.C. § 2710(b)(2)(B); or (c) the installed Meta Pixel otherwise complies with the VPPA.

**3.    Allocation of the Settlement Fund**

3.1    Class Members will have until the Claims Deadline to submit a Claim.

3.2    There will be one Claim Form, and each Class Member may submit one claim. The Claim Form will require an attestation under oath that the Claimant accessed video content on Patreon.com while the Claimant had an active Facebook account and that all information provided is true and correct to the best of the Claimant's knowledge.

3.3    The Claim Form will require that a Class Member support their claim by providing the link associated with the Class Member's Facebook profile. The Notice and Settlement Website will provide instructions to Class Members regarding how to access this information.

3.4    The Claims Administrator will audit a sample of claims. If the Claims Administrator determines a Claim is inadequately supported, suspicious, or contains indicia of fraud, the Claims Administrator may disallow the claim or request additional supporting documentation, including documentation showing that the Claimant accessed video content on patreon.com while he or she had a Facebook account.

3.5    The Settlement Administrator will give Claimants a reasonable opportunity to cure defective claim submissions during a period of up to 60 days ("Cure Period").

3.6    The Claims Administrator will have the discretion (but not the obligation) to accept late-submitted claims for processing by the Claims Administrator, provided the distribution of the Net Settlement Fund to Approved Claimants will not be materially delayed thereby.

3.7    For each claim, the Claims Administrator will make the final determination as to whether the claim is an Approved Claim. The parties will have no role in, nor will they be held liable in any way for, the determination of monetary relief to be accorded each Claimant.

Docusign Envelope ID: DBECDAC9-4D62-4699-8554-3E607EE61924

3.8     After review of all claims and after expiration of the Cure Period, the Claims Administrator will determine the total number of Approved Claims, divide the Net Settlement Fund by the number of Approved Claims, and distribute equal shares to each Approved Claimant.

3.9     The determination of the validity of Claims and the proper amount of the payment to a Claimant is the sole responsibility of the Claims Administrator. No Party to this Agreement will be deemed in default of its obligations due to a dispute between a Claimant and the Claims Administrator, including a dispute over the amount of a payment or the return of a payment due to the death or unavailability of a Class Member. If a Class Member believes that a determination made by the Claims Administrator requires correction, the Class Member may seek correction pursuant to the following process:

a)     A Claimant who objects to the Claims Administrator's determination of his or her claim must so notify the Claims Administrator within thirty (30) days after the date that the Claims Administrator mailed or emailed the determination to the Claimant.  The Claimant must provide a written statement setting forth the basis for his or her disputed claim.  Any disputed claim that is not postmarked or emailed within that thirty (30) day period will be waived.

b)     Upon the timely submission of a disputed claim, the Claims Administrator, and the objecting Claimant, will have thirty (30) days to attempt to resolve the disputed claim by agreement.  At the end of this thirty (30) day period, the Claims Administrator will provide the Claimant with its written notice of its decision regarding the disputed claim.  The decision of the Claims Administrator will be binding and not subject to further review or appeal.

c)     No person will have any claim against the Parties or their counsel or the Claims Administrator, or any other person designated by Class Counsel, based on conduct or communications substantially in accordance with this Settlement Agreement or further order(s) of the Court.

3.10    The Claims Administrator will provide the Parties with weekly written reports, beginning on the Notice Date and continuing until submission of the final post-distribution accounting (and thereafter upon request), summarizing all statistics and actions taken by the Claims Administrator in connection with administering the Settlement.

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**
CASE NO. 3:22-CV-03131-JCS

3.11   All cash payments to Approved Claimants that have not been deposited within 90 days after the date of issuance will be redistributed *pro rata*, after deducting necessary settlement administration expenses from such uncashed funds, to all Class Members who deposited a check or were paid by electronic payment (*e.g.*, Venmo, Zelle, etc.) during the initial distribution; but if such a *pro rata* redistribution would result in each such Class Member receiving less than $10, the uncashed funds will be distributed, subject to Court approval, to a non-profit organization focused on consumer privacy protection that has not filed an amicus brief in this Action or in any other action alleging claims under the Video Privacy Protection Act.

**4.      Releases**

4.1   Upon the Effective Date, all Releasing Plaintiffs and anyone claiming through or on behalf of any of them, will be deemed to have fully, finally, and forever released, relinquished, and discharged all Released Claims (including Unknown Claims) against the Released Defendant. Upon the Effective Date, the Releasing Plaintiffs will be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting any Released Claim against any Released Defendant. Releasing Plaintiffs are aware of California Civil Code § 1542 and expressly waive and relinquish any rights or benefits available to them under this statute.

4.2   Upon the Effective Date, the Releasing Defendant will be deemed to have fully, finally, and forever released, relinquished, and discharged all Releasing Defendant's Claims (including Unknown Claims) against Released Plaintiffs, and Class Counsel, whether arising under federal, state, common or foreign law. Upon the Effective Date, the Releasing Defendant will be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting the Releasing Defendant's Claims against any of the Released Plaintiffs, and Class Counsel.

4.3   All Persons granting any release pursuant to sections 4.1 and 4.2 above covenant not to sue with respect to all Claims released by such Person.

4.4   All Persons granting any release pursuant to sections 4.1 and 4.2 above will be permanently barred and enjoined from asserting, commencing, prosecuting, instituting, assisting,

instigating, or in any way participating in the commencement or prosecution of any action or other

proceeding, in any forum, asserting any claim released by them under the releases in sections 4.1 and

4.2, in any capacity, against any of the Released Parties.

4.5     No person will have any claim of any kind against the Parties or their counsel or the

Claims Administrator with respect to the Settlement and the matters set forth herein, or based on

determinations or distributions made substantially in accordance with this Agreement, the Final Order

and Judgment, or further order(s) of the Court.

**5.      Obtaining Court Approval of the Agreement**

5.1     Promptly after execution of the Agreement, Plaintiffs will submit the Agreement,

including its incorporated Exhibits, to the Court and will apply for entry of the Preliminary Approval

Order.

5.2     Pursuant to 28 U.S.C. § 1715, within ten days after this Agreement is filed with the

Court, the Claims Administrator will cause notice of the Settlement to be sent to the Attorneys General

of each State in which Class Members reside, the Attorney General of the United States, and any other

required government officials.

5.3     In accordance with the schedule set under the Preliminary Approval Order, Class Counsel

will draft the motion for final approval, and the Fee and Expense Application, and will appear at the

Final Approval Hearing.

5.4     Any order or proceeding relating to the Plan of Allocation, or to the Fee and Expense

Application, will not operate to terminate or cancel the Agreement or affect the finality of the Court's

Final Order and Judgment.

5.5     If the Settlement is not approved by the Court or otherwise fails to become effective in

accordance with its terms, the Parties will be restored to their respective positions in the Litigation as of

April 26, 2024 and will jointly propose a revised schedule for briefing Plaintiffs' class certification

motion and other case deadlines. In such event, the terms and provisions of the Agreement (with the

exception of Paragraphs 2.2 and 2.3) will be null and void and will not be used in the Litigation or in

any other proceeding for any purpose, and any judgment or order entered by the Court in accordance

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**
CASE NO. 3:22-CV-03131-JCS

with the terms of the Agreement will be treated as vacated, *nunc pro tunc*, and will not be used in the Litigation or in any other proceeding for any purpose.

**6.      Notice and Settlement Administration**

6.1      Within seven business days after Preliminary Approval, Patreon will provide the Claims Administrator with reasonably necessary Class Member information for purposes of effecting the Notice (to the extent Patreon has such information). This information provided by Patreon will include names and email addresses that Patreon has for all potential Class Members. Prior to providing this information, Patreon will have an opportunity to verify and approve the information security protocol of the Claims Administrator, which approval will not be unreasonably withheld.

6.2      Following Preliminary Approval, no later than the Notice Date, the Claims Administrator will send Notice via email substantially in the form attached as Exhibit 6, along with an electronic link to the Claim Form, substantially in the form attached as Exhibit 2, to all potential Class Members for whom a valid email address is available. To the extent such transmission of email notice results in "bounce-backs," the Claims Administrator will make a second attempt to re-send the email notice where feasible.

6.3      At the election of Class Counsel, and at least seven days prior to the Claims Deadline, the Claims Administrator may, on one to three occasions, send Notice via email substantially in the form attached as Exhibit 6 (with minor, non-material modifications to indicate this is a reminder email), along with an electronic link to the Claim Form, substantially in the form attached as Exhibit 2, to all potential Class Members for whom a valid email address is available.

**7.      Objections and Opt-Outs**

7.1      Any objections from Class Members regarding the Settlement must be submitted in writing to the Court no later than the Objection or Opt-Out Deadline, in accordance with the procedures set forth in the Preliminary Approval Order.

7.2      The Parties may file responses to any timely written objections no later than 15 days after the Objection or Opt-Out Deadline, or such later time as the Court may allow.

7.3     Any opt-out notice from a Class Member regarding the Settlement must be submitted in writing no later than the Objection or Opt-Out Deadline, in accordance with the procedures set forth in the Preliminary Approval Order.

7.4     This Settlement Agreement will not bind a Class Member who timely and validly opts out of the Class. The Settlement Agreement will, however, bind any Class Member who does not timely and validly opt out of the Class. Group opt-outs, including "mass" or "class" opt-outs, are prohibited.

7.5     Within 14 days after the Objection and Opt-Out Deadline, the Claims Administrator will provide Class Counsel and Defendant's Counsel with the number of persons who have timely and validly excluded themselves from the Settlement.

7.6     Defendant shall have the right, but not the obligation, in its sole discretion, to terminate this Agreement by providing written notice to Class Counsel within twenty-five (25) days of the following event:  individuals comprising more than one percent (1%) of the total number of persons who were sent Notice have timely and validly opted out of the Agreement.  If the Agreement is terminated, the Parties will be restored to their respective positions in the Litigation as of April 26, 2024 and will jointly propose a revised schedule for briefing Plaintiffs' class certification motion and other case deadlines.  In such event, the terms and provisions of the Agreement (with the exception of Paragraphs 2.2 and 2.3) will be null and void and will not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Agreement will be treated as vacated, *nunc pro tunc*, and will not be used in the Litigation or in any other proceeding for any purpose.

**8.     Attorneys' Fees and Expenses; Service Awards**

8.1     Pursuant to Fed. R. Civ. P. 23(h), Defendant agrees that Class Counsel will be entitled to an award of reasonable attorneys' fees and expenses to be paid exclusively out of the Settlement Fund in an amount to be determined by the Court.

8.2     The Parties have reached no agreement on the amount of fees and expenses that Class Counsel will seek. Defendant takes no position as to the amount of fees and expenses to be sought.

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**
CASE NO. 3:22-CV-03131-JCS

8.3     Class Members will have at least 35 days to object to and oppose Class Counsel's Fee and Expense Application by filing with the Court, and serving on Class Counsel, any objections relating to such application.

8.4     Any Fee and Expense Award will be paid from the Settlement Fund within 10 days after the Court enters the Final Order and Judgment and an order of such fees and expenses, notwithstanding any timely objections or potential for appeal therefrom, or collateral attack on the Settlement or any part hereof. If, however, the Final Judgment is reversed or rendered void as a result of an appeal, Class Counsel will return such funds to the Settlement Fund.

8.5     Procedures connected with the application by Class Counsel for attorneys' fees and expenses form no part of this Settlement Agreement, and the application will be considered separately from the Court's consideration of the fairness, reasonableness, and adequacy of this Settlement Agreement. Any order or proceeding relating to the application for attorneys' fees and expenses, the pendency of the application, or any appeal from any such order, will not operate to terminate or cancel this Settlement or to affect or delay the finality effected by entry of the Final Order and Judgment.

8.6     Class Counsel may apply for Service Awards not to exceed $7,500 for each Class Representative. This amount is not a measure of damages, but instead solely an award for the Class Representatives' services, time, and effort on behalf of Class Members. Class Counsel will provide a Form W-9 to each Class Representative who may be awarded a Service Award, and the Claims Administrator will issue an IRS Form Misc. 1099 for such a Service Award to each such Class Representative.

8.7     The Class Representatives' approval of this Settlement Agreement is not contingent on Class Counsel applying for Service Awards or the Court approving any such application. Any order or proceeding relating to the application for Service Awards, the pendency of the application, or any appeal from such an order will not operate to terminate or cancel this Settlement Agreement, or to affect or delay the finality effected by entry of the Final Order and Judgment.

8.8     Any fees and/or expenses, including the Fee and Expense Award, and/or Service Awards awarded by the Court will be paid solely from the Settlement Fund. Defendant and its Related Parties

15

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**
CASE NO. 3:22-CV-03131-JCS

will have no responsibility for any payment of attorneys' fees and/or expenses to Class Counsel, or any Service Award to any Plaintiff.

**9.      Miscellaneous Provisions**

9.1      The Parties acknowledge that it is their intent to consummate this Agreement, and agree to cooperate as necessary to secure Court approval of the Agreement and to implement all terms and conditions of the Agreement, and to exercise their best efforts to accomplish the foregoing terms and conditions. The Parties and their respective counsel agree that they will act in good faith and will not engage in any conduct that could frustrate the purposes of this Agreement. The Parties and their respective counsel will not make any public statement that disparages the Settlement.

9.2      This Agreement is deemed to have been prepared by counsel for all Parties. Because all Parties have contributed substantially and materially to the preparation of this Agreement, it will not be construed more strictly against one Party than another, nor will the Agreement be construed against any Party on grounds that it was the drafter.

9.3      The Settlement Amount and the other terms of the Settlement Agreement were negotiated in good faith by the Parties, as a result of arms' length negotiations, and reflect a Settlement that was reached voluntarily after consultation with competent legal counsel. The Parties will not assert in any forum that the Action was brought by Plaintiff or defended by Defendant, or each or any of them, in bad faith or on a frivolous basis.

9.4      The Parties acknowledge that the Action concerns allegations which, if proven, are directly connected with, and proximately result from, the customary practices of Defendant's business. The Parties further acknowledge that the payments by Defendant under this Agreement are not paid or incurred (whether by suit, agreement, or otherwise): (a) to, or at the direction of, a government or governmental entity in relation to the violation of any law or the investigation or inquiry by such government or entity into the potential violation of any law; (b) for permanent improvements or betterments made to increase the value of any property or estate; or (c) to acquire or produce any asset (including without limitation real or personal property) or to defend or perfect title thereto.

9.5      If, at any time prior to Final Approval, any Party is in material breach of the terms hereof and fails to cure such material breach within 14 days of notice, any other Party, provided that it is in

1   substantial compliance with the terms of this Agreement, may terminate the Agreement on notice to the

2   Party. If the Agreement is terminated, the Parties will be restored to their respective positions in the

3   Litigation as of April 26, 2024 and will jointly propose a revised schedule for briefing Plaintiffs' class

4   certification motion and other case deadlines. In such event, the terms and provisions of the Agreement

5   (with the exception of Paragraphs 2.2 and 2.3) will be null and void and will not be used in the

6   Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in

7   accordance with the terms of the Agreement will be treated as vacated, *nunc pro tunc*, and will not be

8   used in the Litigation or in any other proceeding for any purpose.

9        9.6     Neither this Agreement nor the Settlement contained herein, nor any act performed or

10  document executed pursuant to or in furtherance of the Agreement or the Settlement: (a) is or may be

11  deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, the

12  truth of any of the allegations in the Litigation of any wrongdoing, fault, or liability of Defendant or its

13  Related Parties, or that Plaintiffs or any Class Members have suffered any damages, harm, or loss; or (b)

14  is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission on

15  the part of Defendant or its Related Parties in any civil, criminal, or administrative proceeding in any

16  court, administrative agency, or other tribunal.

17       9.7     Defendant may file this Agreement and/or the Final Order and Judgment in any other

18  action that may be brought against it in order to support a defense or counterclaim based on principles of

19  res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory

20  of claim or issue preclusion or similar defense or counterclaim.

21       9.8     All agreements made and orders entered during the course of the Litigation relating to the

22  confidentiality of information will survive this Agreement.

23       9.9     All of the Exhibits to the Agreement are material and integral parts hereof and are fully

24  incorporated herein by this reference. This Agreement and its Exhibits constitute the entire agreement

25  between the Parties related to the Settlement. No covenants, agreements, representations, or warranties

26  of any kind have been made by any Party hereto, except as provided for herein.

27       9.10    Where this Agreement requires notice to the Parties, such notice will be sent to the

28  undersigned counsel: for Class Counsel, Simon Grille, Girard Sharp LLP, 601 California Street, Suite

1  1400, San Francisco, CA 94108; for Defendant, Fred Norton, The Norton Law Firm PC, 299 Third

2  Street, Suite 200, Oakland, CA 94607.

3      9.11    The headings herein are used for the purpose of convenience only and are not meant to

4  have legal effect.

5      9.12    The Agreement may be amended or modified only by a written instrument signed by or

6  on behalf of all Parties or their respective successor(s)-in-interest.

7      9.13    This Agreement may be executed in one or more counterparts. Signature by digital

8  means, facsimile, or in PDF format will constitute sufficient execution of this Agreement. All executed

9  counterparts, and each of them, will be deemed to be one and the same instrument.

10     9.14    This Settlement Agreement will be binding upon, and inure to the benefit of, the

11  successors and assigns of the Parties hereto and the Released Parties.

12     9.15    This Settlement Agreement will be governed by and construed in accordance with the

13  laws of the State of California.

14     9.16    The Court will retain jurisdiction with respect to implementation and enforcement of the

15  terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of

16  implementing and enforcing the Settlement embodied in this Agreement.

17      IN WITNESS WHEREOF, each of the parties hereto have caused the Agreement to be executed,

18  by their respective duly authorized representatives, on August 2, 2024.

19

20  *Simon Grille*

Adam E. Polk (SBN 273000)

21  Simon Grille (SBN 294914)
Trevor T. Tan (SBN 280145)

22  Reid Gaa (SBN 330141)
**GIRARD SHARP LLP**

23  601 California Street, Suite 1400

24  San Francisco, CA 94108
Telephone: (415) 981-4800

25  apolk@girardsharp.com

26  sgrille@girardsharp.com
ttan@girardsharp.com

27  rgaa@girardsharp.com

28      Attorneys for Plaintiffs

PATREON, INC.

By: *Ty Layton*

Ty Layton,
Director and Associate General
Counsel

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**
CASE NO. 3:22-CV-03131-JCS

# EXHIBIT 1

1  Adam E. Polk (SBN 273000)
   Simon Grille (SBN 294914)
2  Trevor T. Tan (SBN 281045)
   Reid Gaa (SBN 330141)
3  **GIRARD SHARP LLP**
4  601 California Street, Suite 1400
   San Francisco, CA 94108
5  Telephone: (415) 981-4800
   apolk@girardsharp.com
6  sgrille@girardsharp.com
7  ttan@girardsharp.com
   rgaa@girardsharp.com
8
9  *Attorneys for Plaintiffs*

10

11                  **UNITED STATES DISTRICT COURT**

12                  **NORTHERN DISTRICT OF CALIFORNIA**

13

14
   BRAYDEN STARK, JUDD OOSTYEN,            Case No. 3:22-cv-03131-JCS
15 ISAAC BELENKIY, VALERIE BURTON,
   LAURA GOODFIELD and DENOVIAS           **SECOND AMENDED CLASS ACTION**
16 MACK, individually and on behalf of all others   **COMPLAINT**
17 similarly situated,

18            Plaintiffs,                   **JURY TRIAL DEMANDED**

19
          v.
20                                         Hon. Joseph C. Spero
   PATREON, INC.,
21
22            Defendant.

23

24

25

26

27

28

Docusign Envelope ID: DBECDAC9-4D62-4699-8554-3E607EE61924

Plaintiffs, on behalf of themselves and all others similarly situated, allege as follows against Defendant Patreon, Inc. ("Patreon"):

**INTRODUCTION**

1.      This is a consumer privacy action against Patreon for disclosing its digital subscribers' identities and video-viewing preferences to Meta Platforms Inc. ("Meta"), which owns the social networking website and app Facebook, in violation of the Video Privacy Protection Act ("VPPA" or "the Act") and state law.

2.      The VPPA prohibits "video tape service providers," such as Patreon, from knowingly disclosing a consumer's personally identifiable information ("PII")—in particular, "information which identifies a person as having requested or obtained specific video materials or services from a video tape provider"—unless the consumer expressly consented to the disclosure in a standalone consent form.

3.      Patreon collects and shares users' personal information with Meta using a "Meta Pixel" or "Pixel"—a snippet of programming code that, once installed on a webpage, sends information to Meta.[1] The Meta Pixel sends information to Meta in a data packet containing PII, such as the users' IP address, name, email, or phone number. Meta then stores this data on its own servers.

4.      The information that Patreon shares with Meta includes the user's unique Facebook ID ("FID") and the titles of prerecorded videos that Patreon delivered to the user for viewing. A user's FID is linked to their Facebook profile, which generally contains a wide range of demographic and other information about the user, including pictures, personal interests, work history, relationship status, and other details.

5.      Patreon discloses the user's FID and viewing content to Meta together in a single transmission. Because the user's FID uniquely identifies an individual's Facebook account, Meta—and any other ordinary person—can use the FID to quickly and easily locate, access, and view the user's corresponding Facebook profile. In simplest terms, the Pixel allows Meta to know what video content one of its users viewed on Patreon's website.

---

[1] While Plaintiffs' prior Class Action Complaint used the term "Facebook Pixel," Meta refers to this code sequence as the "Meta Pixel." *See* https://developers.facebook.com/docs/meta-pixel/ (last visited Oct. 24, 2022).

1

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-CV-03131-JCS

Docusign Envelope ID: DBECDAC9-4D62-4699-8554-3E607EE61924

6. At no point are Patreon users informed about Patreon's dissemination of their individual video-watching preferences to a third party. Nor do Patreon users consent to such sharing through a standalone consent form, as required by the VPPA. As a result, Patreon violates the VPPA by disclosing this information to Meta.

7. On behalf of a Class of similarly situated Patreon users, Plaintiffs seek appropriate relief through this action. Plaintiffs also assert causes of action arising out of the same practice under California law. Based on the facts set forth in this Complaint, Patreon violates the Unfair Competition Law ("UCL") and is liable for unjust enrichment.

## PARTIES

8. Each Plaintiff used his or her Internet-connected device and Web-browsing software ("browser") installed on that device to visit and watch video content on Defendant's website, http://www.Patreon.com, during the Class Period as defined herein.

9. Plaintiff Brayden Stark is a citizen and resident of Van Nuys, California.

10. Plaintiff Judd Oostyen is a citizen and resident of Kaysville, Utah.

11. Plaintiff Isaac Belenkiy is a citizen and resident of Ithaca, New York.

12. Plaintiff Valerie Burton is a citizen and resident of Tacoma, Washington.

13. Plaintiff Laura Goodfield is a student and employed in Washington D.C., where she primarily resides. Ms. Goodfield also maintains a legal address in Boston, Massachusetts for purposes of certain government records.

14. Plaintiff Denovias Mack is a citizen and resident of Denton, Texas.

15. Defendant Patreon is a Delaware corporation headquartered at 600 Townsend Street, Suite 500, San Francisco, California 94103.

## DIVISIONAL ASSIGNMENT

16. Pursuant to Civil L.R. 3-5(b), assignment to the San Francisco Division is appropriate under Civil L.R. 3-2(c) because Patreon is headquartered in San Francisco and a substantial part of the conduct at issue in this case occurred in San Francisco County.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-CV-03131-JCS

**JURISDICTION AND VENUE**

17.     This Court has original jurisdiction under 28 U.S.C. § 1331 based on Plaintiffs' claims under the Video Privacy Protection Act, 18 U.S.C. § 2710. The Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367.

18.     This Court also has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a proposed class action in which: (1) there are at least 100 Class members; (2) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Defendant and at least one Class member are domiciled in different states.

19.     This Court has personal jurisdiction over Patreon because its principal place of business is within this District and it has sufficient minimum contacts in California to render the exercise of jurisdiction by this Court proper and necessary.

20.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

**PLAINTIFF-SPECIFIC ALLEGATIONS**

**Brayden Stark**

21.     Plaintiff Stark is a Patreon member and a Facebook user. He has been a Patreon member since 2019 and is therefore a "subscriber" to Patreon under the VPPA.

22.     Mr. Stark's Facebook profile includes his name and other personal details.

23.     Mr. Stark has consistently paid Patreon approximately $15.00 per month in subscription fees.

24.     When he initially subscribed to Patreon, Mr. Stark watched prerecorded video content on patreon.com daily. He continues to watch prerecorded video content on the Patreon website, though not as frequently as before.

25.     Mr. Stark visited Patreon's website to request and watch prerecorded video content using the same browser that he uses to log in to Facebook, including while he was logged in to Facebook. He also uses the same device to request and watch prerecorded videos on Patreon that he uses for Facebook.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-CV-03131-JCS

**Judd Oostyen**

26.     Plaintiff Oostyen is a Patreon member and a Facebook user. He has been a Patreon member since 2021 and is therefore a "subscriber" to Patreon under the VPPA.

27.     Mr. Oostyen's Facebook profile includes his name and other personal details.

28.     Mr. Oostyen has consistently paid Patreon approximately $5.00 per month in subscription fees.

29.     When he initially subscribed to Patreon, Mr. Oostyen watched prerecorded video content on patreon.com daily. He continues to watch prerecorded video content on the Patreon website, though not as frequently as before.

30.     Mr. Oostyen visited Patreon's website to request and watch prerecorded video content using the same browser that he uses to log in to Facebook, including while he was logged in to Facebook. He also uses the same device to request and watch prerecorded videos on Patreon that he uses for Facebook.

**Isaac Belenkiy**

31.     Plaintiff Belenkiy is a Patreon member and a Facebook user. He has been a Patreon member since 2020 and is therefore a "subscriber" to Patreon under the VPPA.

32.     Mr. Belenkiy's Facebook profile includes his name and other personal details.

33.     Mr. Belenkiy has consistently paid Patreon approximately $28.00 per month in subscription fees.

34.     When he initially subscribed to Patreon, Mr. Belenkiy watched prerecorded video content on patreon.com monthly. He continues to watch prerecorded video content on the Patreon website, though not as frequently as before.

35.     Mr. Belenkiy visited Patreon's website to request and watch prerecorded video content using the same browser that he uses to log in to Facebook, including while he was logged in to Facebook. He also uses the same device to request and watch prerecorded videos on Patreon that he uses for Facebook.

36.     Mr. Belenkiy watched prerecorded video content on Patreon's website on a webpage dedicated to the individual video(s) he viewed.

**Valerie Burton**

37.     Plaintiff Burton is a Patreon member and a Facebook user. She has been a Patreon member since around 2018 and is therefore a "subscriber" to Patreon under the VPPA.

38.     Ms. Burton's Facebook profile includes personal details sufficient to identify her.

39.     Ms. Burton has consistently paid subscription fees to Patreon to access content on Patreon's website, including prerecorded video content.

40.     When she initially subscribed to Patreon, Ms. Burton watched prerecorded video content on patreon.com weekly. She continues to watch prerecorded video content on the Patreon website, though not as frequently as before.

41.     Ms. Burton visited Patreon's website to request and watch prerecorded video content using the same browser that she uses to log in to Facebook, including while she was logged in to Facebook. She also uses the same device to request and watch prerecorded videos on Patreon that she uses for Facebook.

42.     Ms. Burton watched prerecorded video content on Patreon's website on a webpage dedicated to the individual video(s) she viewed**.**

**Laura Goodfield**

43.     Plaintiff Goodfield is a Patreon member and a Facebook user. She has been a Patreon member since 2022 and is therefore a "subscriber" to Patreon under the VPPA.

44.     Ms. Goodfield's Facebook profile includes her name and other personal details.

45.     Ms. Goodfield has consistently paid subscription fees to Patreon to access content on Patreon's website, including prerecorded video content. Ms. Goodfield paid Patreon approximately $50.00 per year in subscription fees and previously paid a monthly subscription to Patreon.

46.     When she initially subscribed to Patreon, Ms. Goodfield watched prerecorded video content on patreon.com regularly. She continues to watch prerecorded video content on the Patreon website, though not as frequently as before.

47.     Ms. Goodfield visited Patreon's website to request and watch prerecorded video content using the same browser that she uses to log in to Facebook, including while she was logged in to

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-CV-03131-JCS

Facebook. She also uses the same device to request and watch prerecorded videos on Patreon that she uses for Facebook.

48. Ms. Goodfield watched prerecorded video content on Patreon's website on a webpage dedicated to the individual video(s) she viewed.

**Denovias Mack**

49. Plaintiff Mack is a Patreon member and a Facebook user. He has been a Patreon member since 2020 and is therefore a "subscriber" to Patreon under the VPPA.

50. Mr. Mack's Facebook profile includes his name and other personal details.

51. Mr. Mack has consistently paid Patreon approximately $120.00 per month in subscription fees.

52. When he initially subscribed to Patreon, Mr. Mack watched prerecorded video content on patreon.com daily. He continues to watch prerecorded video content on the Patreon website, though not as frequently as before.

53. Mr. Mack visited Patreon's website to request and watch prerecorded video content using the same browser that he uses to log in to Facebook, including while he was logged in to Facebook. He also uses the same device to request and watch prerecorded videos on Patreon that he uses for Facebook.

54. Mr. Mack watched prerecorded video content on Patreon's website on a webpage dedicated to the individual video(s) he viewed.

\*   \*   \*

55. Patreon sent Plaintiffs' PII, including their FIDs, as well as the title of each prerecorded video they viewed, to Meta without obtaining their consent through a standalone consent form.

56. Plaintiffs value their privacy while web-browsing and watching videos.

57. Plaintiffs' viewing preferences constitute personal information of a private and confidential nature and are assets to which no third party has a presumptive right to access.

Docusign Envelope ID: DBECDAC9-4D62-4698-8554-3E607EE61924

# COMMON ALLEGATIONS

**A.     Patreon Disclosed Plaintiffs' and Class Members' Private Viewing Information to Meta.**

58.     Patreon's members ("Users") can access a variety of content on Patreon's website, including music, podcasts, and video content posted by content creators.

59.     Patreon provides and delivers prerecorded audiovisual content to its users.

60.     Patreon allows content creators to upload or share prerecorded videos which Patreon users can then view on the content creator's page. Plaintiffs requested and viewed prerecorded audiovisual content from Patreon.

61.     While Plaintiffs and Class members were viewing prerecorded video content on Patreon's website, Patreon transmitted their viewing choices to Meta.

62.     Patreon's transmission of viewing information to Meta includes the specific names of video content viewed by Users, as well as the User's FID—a string of numbers unique to each Facebook profile that personally identifies the User.

63.     Anyone who possesses an FID may use this number to quickly and easily locate, access, and view the corresponding Facebook profile, which contains personal information, often in large quantities.

64.     A Facebook profile typically shows the Facebook user's name, gender, place of residence, career, educational history, a multitude of photos, and the content of the user's posts. This information may reveal even more sensitive personal information—for instance, posted photos may disclose the identity of family members, and written posts may disclose religious preferences, political affiliations, personal interests and more.

65.     Just as Meta can easily identify any individual on its Facebook platform with only their unique FID, so too can any ordinary person who comes into possession of a FID. Facebook admits as much on its website. Thus, equipped with a FID and the video content name and URL—all of which Patreon knowingly provides to Meta without appropriate consent from its subscribers—any ordinary person could determine the identity of the Patreon subscriber and the specific video or media content they viewed on Patreon's website.

66.     Patreon transmits the FID and video title to Meta in a single transmission, through an
invisible tracking tool called a "Meta Pixel." A Meta Pixel is a snippet of a programming code that, once
installed on a webpage, sends information to Meta. This transmission occurs when a User views a
prerecorded video on Patreon's website.

67.     The transmission is shown in the screenshots below:



68.     In the exemplar scenario above, when a Patreon subscriber visits the Patreon page of a
local news channel and requests and watches a prerecorded video, the Pixel transmits both the title of the
video and the subscriber's FID (highlighted in the red boxes) to Meta.

69.     The Pixel is an advertising tool that allows website owners to track visitor actions on
their websites for purposes of sending the corresponding information to Meta; websites use the Pixel in
hopes of better targeting their products and services on Facebook to interested consumers. Thus, a
business such as Patreon chooses to install the Pixel on its website in order to increase its profits.

70.     According to Meta's website, the Pixel allows it "to match your website visitors to their

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-CV-03131-JCS

respective Facebook User accounts" and that "[o]nce matched, we can tally their actions in the Facebook Ads Manager so you can use the data to analyze your website's conversion flows and optimize your ad campaigns."[2]

71.     Patreon knew that by installing the Pixel on its website, the Pixel would send Meta information identifying its Users and their video-watching habits.

72.     Meta's website explains that, to begin using the Meta Pixel, a business must first "install" the Pixel "by placing the Meta Pixel base code on all pages of your website[.]"[3] Patreon made the conscious decision to undertake this installation process.

73.     Further demonstrating that Patreon knowingly placed the Pixel in its website code, Meta's website states that "[d]evelopers and marketers can *optionally choose* to send information about" a visitor's activity on its website. (Emphasis added).[4]

74.     Meta offers its Pixel tool to websites across the internet. As of January 2022, more than 30 percent of popular websites have an embedded Facebook Pixel.

75.     Meta benefits from websites like Patreon installing its Pixel. When the Pixel is installed on a business's website, the business has a greater incentive to advertise through Facebook or other Meta-owned platforms, like Instagram. In addition, even if the business does not advertise with Facebook, the Pixel assists Meta in building more fulsome profiles of its own users, which in turn allows Meta to profit from providing more targeted ads. The Pixel is installed on websites all over the internet and, accordingly, provides Meta with information about its users' preferences, other distinguishing traits, and web-browsing activities outside of Meta-owned platforms.

76.     Using the Meta Pixel likewise benefits Patreon's business by improving its ability to promote its content and services to its Users, thereby increasing its profits.

77.     Through use of the Meta Pixel, Patreon discloses to Meta the full name of each video a User watched, together with the User's FID, thus linking Users' viewing content choices and preferences to their Facebook profiles. In other words, this single transmission connects a User's viewing content with their FID.

---

[2] https://developers.facebook.com/docs/meta-pixel/get-started (last visited October 24, 2022).
[3] *Id.*; https://www.facebook.com/business/tools/meta-pixel/get-started (last visited October 24, 2022).
[4] https://developers.facebook.com/docs/meta-pixel (last visited October 24, 2022).

78.     Patreon violates and invades the privacy rights of Users with its practice of sending their FIDs, together with their viewing content, to Meta. Plaintiffs and Class members neither knew of nor authorized, nor otherwise consented to, Patreon's disclosure of their prerecorded video and video-services requests and their identities to Meta.

**B.     Patreon's Terms of Use, Privacy Policies, and Data Practices Do Not Disclose Patreon's Use of the Facebook Pixel.**

79.     Patreon's website includes its Terms of Use, a Privacy Policy, Data Practices, and a Cookie Policy. None of these informs Users of Patreon's use of the Meta Pixel or its practice of sharing Users' personal information and video content choices with Meta in a way that allows Meta to identify their specific video-watching preferences.

80.     The VPPA requires that consent be obtained in a form "distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710. At no point were Plaintiffs or other Patreon Users given a standalone or any consent form disclosing Patreon's practices at issue and requesting User consent. Hence, no User knew of or consented to Patreon's offending practice of sharing video preferences with third parties.

**C.     Plaintiffs and the Class Were Harmed by Patreon's Privacy Invasions.**

81.     Patreon shared with Meta the personal information of Plaintiffs and Class members, including their video-viewing histories and associated FIDs, which they reasonably expected would be kept private.

82.     The personal information Patreon obtained from Plaintiffs and Class members constitutes valuable data in the digital advertising-related market for consumer information. Patreon's wrongful acquisition and use of their personal and private information deprived Plaintiffs and Class members of control over that information, and prevented them from realizing its full value for themselves.

83.     Patreon's conduct caused economic harm to Plaintiffs and Class members who were Patreon subscribers during the Class Period in that they have paid subscription fees to Patreon for services that they reasonably did not expect would subject them to the practices described herein, thereby diminishing the value of services for which they paid Defendant, and constituting loss. Plaintiffs and Class members didn't get what they paid for.

84.     Plaintiffs and Class members paid for access to Patreon's website, and not another competitor's website, because they trusted that Patreon's privacy practices comported with their privacy preferences.

85.     If Plaintiffs and Class members had known that Patreon discloses to Meta the personal information of its Users, including their video-viewing histories and associated FIDs, Plaintiffs and Class members would not have subscribed for Patreon's services or would have paid less for the subscription.

86.     Patreon's practice of sharing Users' personal information and prerecorded video content with Facebook without their consent, and its failure to disclose this practice, caused Patreon to profit from membership fees it would otherwise not have received.

87.     Plaintiffs and Class members' experiences and injuries are consistent with and borne out by research showing that consumers prefer to transact with online retailers that better protect their privacy, and are willing to pay a premium to purchase goods and services from websites that afford greater privacy protection. *See* J. Tsai, S. Egelman, L. Cranor & A. Acquisiti [Carnegie Mellon Univ.], "The Effect of Online Privacy Information on Purchasing Behavior: An Experimental Study" (June 2007), Information Systems Research, Vol. 22 at 254–268, available at: https://www.researchgate.net/publication/220079706_The_Effect_of_Online_Privacy_Information_on_Purchasing_Behavior_An_Experimental_Study.

88.     The harms described above are aggravated by Patreon's continued retention and commercial use of Plaintiffs' and Class members' personal information, including their private video-viewing histories.

### CLASS ACTION ALLEGATIONS

89.     Plaintiffs bring this lawsuit under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), and/or (c)(4) as representatives of the following Class and constituent Subclass:

> **Nationwide Class**: All persons in the United States who subscribed to Patreon.com, viewed prerecorded video content on Patreon.com, and used Facebook during the time Meta's Pixel was active on Patreon.com.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-CV-03131-JCS

1 | **California Subclass**: All persons in California who subscribed to
2 | Patreon.com, viewed prerecorded video content on Patreon.com, and used
| Facebook during the time Meta's Pixel was active on Patreon.com.

3 | 90.   The "Class Period" is from April 1, 2016 to the present.

4 | 91.   Excluded from the Class are Defendant, its employees, agents and assigns, and any

5 | members of the judiciary to whom this case is assigned, their respective court staff, the members of their

6 | immediate families, and Plaintiffs' counsel. Plaintiffs reserve the right to modify, change, or expand the

7 | Class definition based upon discovery and further investigation.

8 | 92.   **Numerosity**: The Class consists of at least hundreds of thousands of individuals, making

9 | joinder impractical.

10 | 93.   **Commonality and Predominance**: Common questions of law and fact exist with regard

11 | to each of the claims and predominate over questions affecting only individual Class members.

12 | Questions common to the Class include:

13 | a.   Whether Patreon's use of the Meta Pixel was without User consent or

14 | authorization;

15 | b.   Whether Patreon obtained and shared or caused to be obtained and shared

16 | Plaintiffs and Class members' personal information through tracking using the Meta Pixel, which

17 | Patreon installed on its webpages;

18 | c.   Whether third parties obtained Plaintiffs and Class members' personal

19 | information as a result of Patreon's conduct described herein;

20 | d.   Whether Patreon's conduct violates the Video Privacy Protection Act, 18 U.S.C.

21 | § 2710, *et seq.*;

22 | e.   Whether Patreon's conduct violates California consumer protection law;

23 | f.   Whether Patreon's acquisition and transmission of Plaintiffs and Class members'

24 | personal information resulted in harm; and

25 | g.   Whether Patreon should be enjoined from engaging in such conduct in the future.

26 | 94.   **Typicality**: Plaintiffs' claims are typical of the claims of the Class members in that

27 | Plaintiffs, like all Class members, have been injured by Patreon's misconduct at issue—i.e., disclosing

28 | Users' PII and viewing content to Meta without appropriate consent.

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-CV-03131-JCS

95.     **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, including privacy protection cases. Plaintiffs do not have any interests antagonistic to those of the Class.

96.     **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Patreon to comply with applicable law. Moreover, because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and because of Patreon's financial resources, Class members are unlikely to pursue legal redress individually for the violations detailed in this Complaint. A class action will allow these claims to be heard where they would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

97.     **Injunctive relief**: Patreon has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION
### Violation of the Electronic Communications Privacy Act (Video Privacy Protection Act), 18 U.S.C. § 2710, *et seq.* (On Behalf of the Nationwide Class)

98.     Plaintiffs incorporate and reallege the above factual allegations by reference.

99.     The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally-identifying information" concerning any consumer to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C. § 2710.

100.     As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials." Patreon is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it engaged in the business of delivering audiovisual materials—including the prerecorded videos that Plaintiffs viewed—through its online platform that are

13

1  similar to prerecorded video cassette tapes and those sales affect interstate or foreign commerce.

2       101.    As defined in 18 U.S.C. § 2710(a)(3), "personally identifiable information" is defined to

3  include "information which identifies a person as having requested or obtained specific video materials

4  or services from a video tape service provider."

5       102.    Patreon knowingly caused personal viewing information, including FIDs, concerning

6  Plaintiffs and Class members to be disclosed to Meta. This information constitutes personally

7  identifiable information under 18 U.S.C. § 2710(a)(3) because it identified each Plaintiff and Class

8  member to Meta as an individual who viewed Patreon's video content, including the specific

9  prerecorded video materials each such individual watched on Patreon's website. This information

10  allowed Meta to identify each Plaintiff and Class members' specific individual video-viewing

11  preferences and habits.

12       103.    As defined in 18 U.S.C. § 2710(a)(1), a "consumer" means "any renter, purchaser, or

13  subscriber of goods or services from a video tape service provider." As alleged above, Plaintiffs are

14  subscribers to Patreon's services providing video content to Users on its website and viewed prerecorded

15  videos provided on Patreon's platform. Hence, Plaintiffs are "consumers" under this definition.

16       104.    As set forth in 18 U.S.C. § 2710(b)(2)(B), "informed, written consent" must be (1) in a

17  form distinct and separate from any form setting forth other legal or financial obligations of the

18  consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or

19  is given in advance for a set period of time not to exceed two years or until consent is withdrawn by the

20  consumer, whichever is sooner. Patreon failed to obtain informed, written consent under this definition.

21       105.    Additionally, the VPPA creates an opt-out right for consumers in 18 U.S.C.

22  § 2710(2)(B)(iii). The Act requires video tape service providers to "provide[] an opportunity, in a clear

23  and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from

24  ongoing disclosures, at the consumer's election." Patreon failed to provide an opportunity to opt out as

25  required by the Act.

26       106.    Patreon was aware that the disclosures to Meta that were shared through the Pixel

27  identified Plaintiffs and Class members. Patreon also knew that Plaintiffs' and Class members' personal

28  viewing content was disclosed to Meta because Patreon programmed the Meta Pixel into its website

1  code, knowing that Meta would receive video titles and the subscriber's FID when a user watched a

2  prerecorded video.

3      107.   By knowingly disclosing Plaintiffs' and Class members' personal viewing content,

4  Patreon violated Plaintiffs' and Class members' statutorily protected right to privacy in their prerecorded

5  video-watching habits. *See* 18 U.S.C. § 2710(c).

6      108.   As a result of the above violations, Patreon is liable to Plaintiffs and Class members for

7  actual damages related to their loss of privacy in an amount to be determined at trial or, alternatively, for

8  "liquidated damages not less than $2,500 per plaintiff." 18 U.S.C. § 2710(c)(2)(A). Under the Act,

9  Patreon also is liable for reasonable attorney's fees, other litigation costs, injunctive and declaratory

10  relief, and punitive damages in an amount to be determined by a jury and sufficient to prevent and deter

11  the same or similar conduct by Patreon in the future.

12  

**SECOND CAUSE OF ACTION**

13  **Violation of California's Unfair Competition Law (the "UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq.***

14  **(On Behalf of the California Subclass)**

15      109.   California Plaintiffs incorporate and reallege the above factual allegations by reference.

16      110.   The UCL proscribes "any unlawful, unfair or fraudulent business act or practice." Cal.

17  Bus. & Prof. Code § 17200.

18  **Unlawful**

19      111.   A business practice is "unlawful" under the UCL if it violates any other law or regulation.

20      112.   Patreon's business acts and practices are unlawful because they violate the Video Privacy

21  Protection Act as set forth above. They also violate California's Consumers Legal Remedies Act, for the

22  reasons stated below. Patreon is therefore in violation of the "unlawful" prong of the UCL.

23  **Unfair**

24      113.   Patreon's conduct is unfair in violation of the UCL because it violates California's and

25  the nation's legislatively declared public policy in favor of protection of consumer privacy. *See* S. Rep.

26  No. 100-500 at 7-8 (1988) (finding that "the trail of information generated by every transaction that is

27  now recorded and stored in sophisticated record-keeping systems . . . create[s] privacy interests that

28  directly affect the ability of people to express their opinions, to join in association with others, and to

15

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-CV-03131-JCS

1    enjoy the freedom and independence that the Constitution was established to safeguard."); California

2    Bill Analysis, A.B. 375 Assem. (June 27, 2017) (noting that "[t]he unregulated and unauthorized

3    disclosure of personal information and the resulting loss of privacy can have devastating effects for

4    individuals, ranging from financial fraud, identity theft, and unnecessary costs to personal time and

5    finances, to the destruction of property, harassment, reputational damage, emotional stress, and even

6    potential physical harm.").

7        114.    Further, Patreon's conduct is unfair because it is unethical, unscrupulous, offensive, and

8    substantially injurious. The gravity of harm resulting from Patreon's unfair conduct outweighs any

9    potential utility therefrom. The disclosure of California Plaintiffs' and Subclass members' personal

10   information without their express consent raises significant privacy concerns, and any potential utility

11   from these disclosures (such as increased Patreon revenue due to more targeted advertising) is

12   outweighed by their considerable harm to California Plaintiffs and the Subclass.

13       115.    Patreon's unfair business practices include disclosing California Plaintiffs' and Subclass

14   members' FIDs and viewing content to Meta without authorization or consent, causing harm to

15   California Plaintiffs and Subclass members.

16       116.    Patreon actually and proximately caused harm to California Plaintiffs and Subclass

17   members in that, among other things, they suffered economic injury by overpaying for their

18   subscriptions.

19       117.    For these reasons, Patreon is in violation of the "unfair" prong of the UCL.

20       118.    California Plaintiffs and Subclass members accordingly seek appropriate relief, including

21   (1) restitution under the UCL; and (2) such orders or judgments as may be necessary to enjoin Patreon

22   from continuing its unfair and unlawful practices. There is no adequate remedy at law that would

23   provide redress to California Plaintiffs and the Subclass or ensure that Patreon will not engage in the

24   same data practices in the future. California Plaintiffs also seek reasonable attorneys' fees and costs

25   under applicable law, including under California Code of Civil Procedure section 1021.5.

**THIRD CAUSE OF ACTION**

26   **Unjust Enrichment**

27   **(On Behalf of the Nationwide Class)**

28       119.    Plaintiffs incorporate and reallege the above factual allegations by reference.

16

120.    Plaintiffs and Class members conferred a benefit on Patreon by paying it membership fees for online subscription services.

121.    Patreon acted wrongfully by sharing Users' FIDs and viewing content to Meta without their consent.

122.    Patreon's practice of sharing Users' personal information and viewing content with Meta without their consent, and its failure to disclose this practice, caused Patreon to profit from membership fees it would otherwise not have received.

123.    Patreon's retention of these ill-gotten gains is unjust and inequitable.

124.    Plaintiffs, on behalf of themselves and the Class, accordingly seek restitution, restitutionary disgorgement, and all other appropriate relief permitted by the law of unjust enrichment, including reasonable attorneys' fees and costs. There is no adequate remedy at law that would provide redress to Plaintiffs and the Class or ensure that Patreon will not deploy the same data practices in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court:

A.    Certify this case as a class action, and appoint Plaintiffs as Class Representatives and the undersigned attorneys as Class Counsel;

B.    Enter judgment in favor of Plaintiffs and the Class;

C.    Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiffs and Class members, including reformation of practices and an accounting and purging of wrongfully obtained personal information;

D.    Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages and/or restitution to which Plaintiffs and Class members are entitled;

E.    Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

1          F.      Award Plaintiffs and Class members pre- and post-judgment interest as provided

2  by law;

3          G.      Enter such other orders as may be necessary to restore to Plaintiffs and Class

4  members any money and property acquired by Defendant through its wrongful conduct;

5          H.      Award Plaintiffs and Class members reasonable litigation expenses and attorneys'

6  fees as permitted by law; and

7          I.      Award such other and further relief as the Court deems necessary and appropriate.

8                       **DEMAND FOR JURY TRIAL**

9      Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all issues

10  triable as of right.

11

12  Dated: January 30, 2024          Respectfully submitted,

13

14                    By: */s/ Simon S. Grille*

                    Adam E. Polk (SBN 273000)

15                    Simon Grille (SBN 294914)

                    Trevor T. Tan (SBN 281045)

16                    Reid Gaa (SBN 330141)

                    **GIRARD SHARP LLP**

17                    601 California Street, Suite 1400

                    San Francisco, CA 94108

18                    Telephone: (415) 981-4800

19                    apolk@girardsharp.com

                    sgrille@girardsharp.com

20                    ttan@girardsharp.com

                    rgaa@girardsharp.com

21

22                    *Attorneys for Plaintiffs*

23

24

25

26

27

28

Docusign Envelope ID: DBECDAC9-4D62-4699-8554-3E607EE61924

# EXHIBIT 2

*Stark v. Patreon*
c/o Settlement Administrator
ADDRESS
[email address]
[www. _____.com]

## CLAIM FORM

**YOUR CLAIM MUST BE SUBMITTED BY: [DATE]**

| CLAIM FORM INSTRUCTIONS |
|---|
| **— IMPORTANT —**<br><br>**PLEASE READ THE INSTRUCTIONS BELOW**<br>**TO COMPLETE THIS CLAIM FORM**<br><br><br>**FOR MORE INFORMATION, READ THE NOTICE AND FAQ AVAILABLE**<br>**AT WWW.PATREONSETTLEMENT.COM OR CALL THE SETTLEMENT**<br>**ADMINISTRATOR AT 1-######.** |

*Stark v. Patreon*
c/o Settlement Administrator
ADDRESS
[email address]
[www._____.com]

| SECTION A:  NAME AND CONTACT INFORMATION |
|---|

Please provide your name and contact information below. If your name or contact information changes after you submit this Claim Form, please notify the Claims Administrator of the new information by visiting www._____.com or emailing [address].

| FIRST NAME | LAST NAME |
|---|---|
|  |  |

| EMAIL ADDRESS | PHONE NUMBER |
|---|---|
|  |  |

| SECTION B:  PAYMENT INFORMATION |
|---|

Payment for valid claims will be made via **Paypal** using the email address provided above. If you wish to receive payment via a different method or if you would like to specify a different email address for your PayPal account, please mark the check box next to your preferred method and provide the requested information.

| Selection | Payment Method | Verification Method |
|---|---|---|
| ☐ | <<Zelle>> | Phone number: |
| ☐ | <<Venmo>> | Phone number: |
| ☐ | <<PayPal>> | Email: |

| SECTION C:  UNIQUE ID NUMBER |
|---|

1. Please provide the Unique ID located on the notice of the Settlement you received. The Unique ID you received is required to validate your claim.

Questions? Visit www._____.com or call toll-free 1-#####

*Stark v. Patreon*
c/o Settlement Administrator
ADDRESS
[email address]
[www._____.com]

| SECTION D:  PROOF OF FACEBOOK ACCOUNT |
|---|

Your claim must include proof of your Facebook account. Copy and paste the link to your Facebook profile page in the box below:

**How to obtain your Facebook profile link on a web browser**

1. **Log in to Facebook.** Open your web browser and go to facebook.com. Log in with your username and password.

2. **Go to your profile.** Click on your profile picture in the top right corner and then click your name to go to your profile page. If you are using a web browser on a mobile device, you must first click the three horizontal lines in the top right corner of the screen and then your name in the top left corner.

3. **Identify the link.** Look at the address bar in your browser. The link for your Facebook profile page is located here. If you are using a web browser on a mobile device, you will need to tap the address bar to see the full link. Below are examples of how the link may appear:

   **a.** https://www.facebook.com/profile.php?id=1234567890

   **or**

   **b.** https://www.facebook.com/username

4. **Insert the link in the box below.**


**How to obtain your Facebook profile link from the mobile Facebook App**

1. **Open the Facebook app.** Open the Facebook app on your mobile device. If necessary, log in with your username and password.

2. **Go to your profile.** Tap the three horizontal lines above the word "Menu" in the bottom right corner. Then click on your name or profile picture in the top left corner to go to your profile page.

3. **Copy profile link.** Tap the button with three dots (it appears next to the "Edit profile" button). Scroll to the bottom of the list of options and tap "Copy profile link."

4. **Insert the link in the box below.**


**Facebook Profile URL:** [                                            ]

**It is important to provide accurate information in this form because a sample of claims will be audited by the Claims Administrator.** If the Claims Administrator cannot verify your claim based on your initial submission, you may be asked for more information. The Claims Administrator will provide you with further instructions in the event you are required to submit this information.

3

Questions? Visit www._____.com or call toll-free 1-#####

Docusign Envelope ID: DBECDAC9-4D62-4699-8554-3E607EE61924

*Stark v. Patreon*
c/o Settlement Administrator
ADDRESS
[email address]
[www._____.com]

| SECTION D:  VERIFICATION AND DECLARATION |
|---|

| ☐ | **I declare under oath that between April 1, 2016 and [PA DATE], I requested or obtained video content on the Patreon website (patreon.com) while in the United States and at a time when I had a Facebook account and also had a Patreon account.** |
|---|---|

| SIGNATURE | DATE |
|---|---|
| | |

| PRINTED NAME |
|---|
| |

4

Docusign Envelope ID: DBECDAC9-4D62-4699-8554-3E607EE61924

# EXHIBIT 3



United States District Court for the Northern District of California

*Stark et al. v. Patreon, Inc.*

Case No. 3:22-CV-03131-JCS

# Class Action Notice

## Authorized by the U.S. District Court for the Northern District of California

**Did you have a Patreon account and access videos on Patreon.com while you had a Facebook account between April 2016 and [PRELIMINARY APPROVAL DATE]?**

*A class action Lawsuit and a Settlement of that Lawsuit could affect your rights.*

*You may be eligible to receive payment from this Settlement.*

**Your Options:**

**1. Submit a claim.** Get a payment.

**2. Do nothing.** You will be bound by the Settlement and the Lawsuit and you will get no payment.

**3. Opt out of the Settlement.**

**4. Object to the Settlement.**

**You are not being sued.**

*This notice explains the Lawsuit, the Settlement, and your legal rights and options.*

*Please read the entire notice carefully.*

Important things to know:

- You **must submit a claim** to receive money from the settlement

- You do nothing, you will still be bound by the Settlement and the Lawsuit and your rights will be affected.

- If you want to opt out or object you must do so by [DATE].

- You can learn more at: [website].

# Table of Contents

**Table of Contents**......................................................................................... 3

**Key Information** ............................................................................................. 5

What is happening in this lawsuit?.................................................................5

Why did I get this notice?..............................................................................5

What are my options?....................................................................................6

What are the most important dates?.............................................................6

**Learning About the Lawsuit** ........................................................................ 6

What is this lawsuit about?............................................................................6

Why is there a settlement?............................................................................7

What happens next in this lawsuit?...............................................................7

**Important Facts About How the Settlement Might Affect You**...........................7

How do I know if I am a member of the Settlement Class? ..............................7

What if I'm still not sure if I'm included in the Settlement Class? ....................8

What are the benefits of the Settlement? ......................................................8

How can I verify or update my mailing address? ............................................8

**Your Options as a Settlement Class Member** .................................................. 8

What are my options if I am a Settlement Class Member?................................8

Do I need to do anything to get paid?............................................................9

How do I submit a form? ...............................................................................9

How much will my payment be?...................................................................10

When will I get my payment? ......................................................................11

What do I give up by making a Settlement Claim? .........................................11

What are the consequences of doing nothing?.............................................11

What if I don't want to be a part of the Settlement Class?..............................11

How do I opt out? .......................................................................................12

What are the consequences of excluding myself? .........................................12

How do I tell the Court if I don't like the Settlement? ....................................13

How do I submit an objection to the Settlement?..........................................13

What information must be included in an objection? .....................................14

What's the difference between objecting and excluding?..........................................14

**The Final Approval Hearing** ................................................................................ **15**

When and where will the Court decide whether to approve the Settlement? .......15

Do I have to come to the Final Approval Hearing?....................................................15

May I speak at the hearing?..........................................................................................15

**The Lawyers Representing You** ............................................................................ **16**

Do I have a lawyer in this lawsuit?...............................................................................16

How will the lawyers be paid?......................................................................................16

Should I get my own lawyer?........................................................................................17

**Key Resources** ........................................................................................................ **17**

How can I get more information?.................................................................................17

# Key Information

## What is happening in this lawsuit?

A group of people (called Plaintiffs) filed a class action lawsuit against Patreon, Inc. ("Patreon")—the defendant in this lawsuit. These Plaintiffs claimed that Patreon disclosed its users' identities and video-viewing preferences without consent in violation of federal law. Patreon denies these allegations.

### What is a class action lawsuit?

A class action is a lawsuit in which one or more people sue on behalf of a larger group, called the Class.

In April 2024, Patreon agreed to pay $7.25 million to settle the claims against it. The group of people that Patreon has agreed to pay is called the Settlement Class and it includes everyone who, between April 2016 and [PRELIMINARY APPROVAL DATE], requested or obtained video content on the Patreon website (patreon.com) while in the United States and at a time the person had a Facebook account and a Patreon account. If you are in this group and want to get paid, **you must submit a claim**. Details on how to submit a claim are provided below.

## Why did I get this notice?

A court authorized this Notice because you have the right to know about the proposed settlement in the class action lawsuit, *Stark et al. v. Patreon, Inc.* **You received this notice because you may be a member of the group of people whose rights are affected by the proposed settlement.** This notice gives you information about the case and tells you how to opt out if you don't want to be part of it.

It is an important legal document, and we recommend that you read all of it. If you have questions or need assistance, please go to [website] or call [phone number].

5

## What are my options?

| | |
|---|---|
| Submit A Claim Form | The only way to get a payment |
| Exclude Yourself by Opting Out | Get no payment.<br><br>This is the only option that allows you to keep your right to bring any other claim against Patreon related to the subject matter of the claims in this case. |
| Object to the Settlement and/or Attend a Hearing | You can write to the Court about why you like or do not like the Settlement. The Court cannot order a different settlement.<br>You can also ask to speak to the Court at the hearing on _____, 2024 about the fairness of the Settlement, with or without your own attorney. |
| Do Nothing | Get no payment. Give up rights and be bound by the Settlement. |

## What are the most important dates?

The deadline to submit a claim for a payment from the Settlement is [DATE].

The deadline to opt out of the Settlement is [DATE].

The deadline to object to the Settlement is [DATE].

# Learning About the Lawsuit

## What is this lawsuit about?

Plaintiffs claim that Patreon violated the Video Privacy Protection Act ("VPPA") by disclosing its subscribers' identities and video-viewing preferences without lawful consent. The lawsuit contends that Patreon

6

transmitted this information to Meta
Platforms, Inc. ("Meta")— the owner of
Facebook—through use of a web tracking
tool called the Meta Pixel. The case is *Stark et
al. v. Patreon, Inc.*, Case No. 3:22-CV-03131-JCS
(N.D. Cal.)

Patreon denies the allegations made in the
lawsuit and denies that it did anything
improper or unlawful.

The Court has not determined who is right.
The proposed settlement to resolve this case is not an admission of
guilt or wrongdoing by Patreon.

| **Where can I learn more?** |
| --- |
| You can get a complete copy of the key documents in this lawsuit by visiting: [website] |

## Why is there a settlement?

The Court did not decide in favor of the Plaintiffs or the Defendant.
Instead, both sides agreed to a Settlement. That way, they avoid the
costs and risks of a trial, and the affected Class Members can get
benefits or compensation. The class representatives and their
attorneys think the Settlement is best for the Class.

## What happens next in this lawsuit?

The Court in charge of this case will decide whether to approve the
Settlement. Payments will be made if the Court approves the
Settlement and after any appeal is resolved

# Important Facts About How the Settlement Might Affect You

## How do I know if I am a member of the Settlement Class?

The Settlement Class includes all persons who, between April 1, 2016,
to and through [Preliminary Approval date], requested or obtained
video content on the Patreon website (patreon.com) while in the
United States and at a time the person had a Facebook account and

7

also had a Patreon account.

If you are in this group, you are a member of the Settlement Class and you must submit a claim in order to receive payment.

## What if I'm still not sure if I'm included in the Settlement Class?

If you are not sure whether you are included in the class, you can ask for free help by calling Simpluris (the Claims Administrator) at XXX-XXX-XXXX for more information. You can also visit www.XXXX.com.

## What are the benefits of the Settlement?

Patreon will pay $7,250,000 into a Settlement Fund. Patreon has also agreed not to operate the Meta Pixel on any web page on the Patreon website that includes video content unless: (a) the VPPA is amended in relevant part, repealed, or otherwise invalidated; (b) Patreon obtains consent in the form required by the VPPA; or (c) the Meta Pixel on the relevant Patreon web page otherwise complies with the VPPA.

Eligible claimants under the Settlement will receive a pro rata (or equal) portion of the Settlement Fund after deductions for administration expenses, attorneys' fees and costs, and service award payments to the Plaintiffs.

## How can I verify or update my mailing address?

You can update your contact information by visiting www.XXXXX.com or emailing [email address].

# Your Options as a Settlement Class Member

## What are my options if I am a Settlement Class Member?

You have three options as a member of the Settlement Class. You can:

(1)  submit a claim to get paid from the Settlement;

8

(2) opt out of the Settlement Class and retain your right to sue Patreon; or

(3) do nothing and remain in the Settlement Class. If you do nothing and do not submit a claim, you will not receive a payment. You can also object to any part of the Settlement that you do not like, if you don't opt out of the Settlement Class.

## Do I need to do anything to get paid?

YES. To receive a payment from the Settlement you MUST submit a claim.

**The deadline to submit a claim is [DATE].**

## How do I submit a form?

If you are a class member (see pages 7-8) and you want to receive a payment, you can submit a claim by filling out and submitting the claim form available at www.XXXXX.com.

You must provide the link for your Facebook profile page on the claim form, so that the Claims Administrator can verify that you are a Class Member. The link you provide must correspond with a Facebook profile that includes your personal information. To find your Facebook profile page link, you can use the following steps:

**How to obtain your Facebook profile link on a web browser**

(1) **Log in to Facebook.** Open your web browser and go to Facebook. Log in with your username and password.

(2) **Go to your profile.** Click on your profile picture in the top right corner and then click your name to go to your profile page. If you are using a web browser on a mobile device, you must first click the three horizontal lines in the top right corner of the screen and then your name in the top left corner.

(3) **Identify the link.** Look at the address bar in your browser. The link for your Facebook profile page is located here. If you are using a

9

web browser on a mobile device, you will need to tap the address bar to see the full link. Below are examples of how the link may appear:

   (a) https://www.facebook.com/profile.php?id=1234567890

   **or**

   (b) https://www.facebook.com/username

**How to obtain your Facebook profile link on the mobile phone Facebook App**

(1) **Open the Facebook app.** Open the Facebook app on your mobile device. If necessary, log in with your username and password.

(2) **Go to your profile.** Tap the three horizontal lines above the word "Menu" in the bottom right corner. Then click on your name or profile picture in the top left corner to go to your profile page.

(3) **Copy profile link.** Tap the button with three dots (it appears next to the "Edit profile" button). Scroll to the bottom of the list of options and tap "Copy profile link."

The Claim Form requires that you attest under oath that you accessed video content on Patreon.com while you had a Facebook account.

It is important to provide accurate information in the Claim Form because a sample of claims will be audited by the Claims Administrator. If the Claims Administrator cannot verify your claim based on your initial submission, you may be asked for more information. The Claims Administrator will provide you with further instructions in the event you are required to submit this information.

If you have questions, you can contact the Claims Administrator by telephone (XXX-XXX-XXXX) or email [insert email address].

**The deadline to submit a claim form is [DATE].**

## How much will my payment be?

After deduction of the costs of notice and settlement administration,

10

any Court-approved award of attorneys' fees (up to 30% of the Settlement Fund), litigation costs, and any service awards for the Class Representatives (up to $7,500 to each of the six individual Class Representatives), the Settlement Fund will be divided equally among eligible class members.

We will not know the final amount that each class member will receive until all claims are completed. Based on claims rates in similar cases, eligible class members may receive between $35 and $175 each. The actual amount that each class member receives will be determined once all claims are evaluated, and may be higher or lower than these estimates.

## When will I get my payment?

Payments will be made if the Court approves the Settlement after the Final Approval Hearing and there is no appeal from the order approving the Settlement. For updates please visit www.website.com or follow @GirardSharp on X (Twitter).

## What do I give up by making a Settlement Claim?

Unless you exclude yourself with an opt-out request (see page 12), you cannot sue, continue to sue, or be part of any other lawsuit against Patreon about the issues in this case. The "Releases" section in the Settlement Agreement describes the legal claims that you give up if you remain a Settlement Class Member.

The Settlement Agreement is available at www.XXXX.com.

## What are the consequences of doing nothing?

If you do nothing, you won't be able to start, continue, or be part of any other lawsuit against Patreon for alleged violation of the VPPA during the Class Period.

## What if I don't want to be a part of the Settlement Class?

You can opt out of the Settlement Class.

11

Information about how to opt out of the Settlement Class is on page 12.

## How do I opt out?

You can opt out of the Settlement Class by going to www.XXXX.com and filling out the online form, or by sending a letter via first class U.S. mail saying that you want to opt out of the Settlement in *Stark et al. v. Patreon, Inc.*, Case No. 3:22-CV-03131-JCS (N.D. Cal.) to the Claims Administrator at the below address:

> Simpluris Inc.
> 3194-C Airport Loop Drive
> Costa Mesa, CA 92626
> [Phone Number]

You must include your name, address, telephone number, and your signature. If you are under 18 years old and do not want your name included on the list of optouts filed with the Court, your letter must state that you are under 18. The deadline to opt out is [DATE].

## What are the consequences of excluding myself?

If you are a class member (see page 7-8 above), unless you opt out, you give up the right to sue Patreon for the claims resolved by the Settlement. If you are a class member and you want to pursue your own lawsuit, you must opt out. You will be responsible for the cost of any services provided by your lawyer.

This is your only opportunity to opt out of the Settlement Class.

**What happens if I opt out of the Settlement Class?**

If you opt out of the Settlement Class, you will:

- Not be eligible to receive payment from the Settlement;

- Not have any rights as a member of the class under the Settlement;

- Not be bound by any further orders or judgments in this case; and

- Keep the right, if any, to file a lawsuit against (or continue to sue) Patreon about the legal claims brought on behalf of the Settlement Class.

## How do I tell the Court if I don't like the Settlement?

If you are a Settlement Class Member and do not opt out of the Settlement, you have the right to object to the Settlement, the Plan of Allocation, or Class Counsel's request for attorneys' fees, expenses and service awards. You can't ask the Court to order a different settlement. The Court can only approve or reject the Settlement.

If the Court denies approval of the Settlement, no money will be paid to class members and the lawsuit will continue

## How do I submit an objection to the Settlement?

To object to the Settlement, you (or your lawyer if you have one) must submit a written objection to the Court and send the objection to the Claims Administrator at the addresses on page 12. You must submit your objection on or before [DATE]. Your objection can include any supporting materials, papers, or briefs that you want the Court to consider.

If you submit a timely written objection, you may (but are not required to) appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. If you wish to appear at the Settlement Hearing, you must also include a statement of intention to appear in your objection.

All written objections and supporting papers must clearly identify the case name and number (Stark v. Patreon, No. 3:22-CV-03131-JCS (N.D. Cal.). You can file the objection electronically at https://www.cand.uscourts.gov/cm-ecf or mail the objection by First Class U.S. Mail, so that it is submitted electronically or postmarked no later than [DATE], to the following address:

```
Clerk of the Court
U.S. District Court for the
Northern District of
California
450 Golden Gate Avenue
San Francisco, CA 94102
Case No. 3:22-CV-03131-JCS
```

## What information must be included in an objection?

An objection must include:

(a) a written statement identifying your name, address, and signature, and, if represented by counsel, the name, address of counsel;

(b) a written statement that you had a Patreon account and a Facebook account between April 1, 2016 through [Preliminary Approval date] and requested or obtained video content on the Patreon website during that time;

(c) a written statement of your objection and the reasons for your objection;

(d) a written statement whether the objection applies only to you, to a specific subset of the Class, or to the entire Class; and

(e) any documentation or authorities in support of your objection.

If you do not mail or electronically file the objection, you must have it delivered in person to the above address, no later [DATE].

## What's the difference between objecting and excluding?

Objecting is telling the Court that you don't like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is opting out and telling the Court that you don't want to be part of the Settlement. If you opt out of the Settlement, you cannot object to it because it no longer affects you.

# The Final Approval Hearing

## When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing on _____, 2024 at ____, in Courtroom D on the 15th Floor of the San Francisco federal courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to Class Members who have asked to speak at the hearing.

The Court will also decide how much Class Counsel should receive in fees, expense reimbursements and service awards. After the hearing, the Court will decide whether to approve the Settlement.

The Court may reschedule the Final Approval Hearing, or hold the hearing via Zoom Webinar, or change any of the deadlines described in this Notice. The date of the Final Approval Hearing may change without further notice to Class Members. Be sure to check the website, www._____.com, for news of any such changes. You can also access the case docket via the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov.

## Do I have to come to the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. You may attend at your own expense if you wish.

If you send an objection, you do not have to come to the hearing. If you submitted your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but that is not necessary.

## May I speak at the hearing?

You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must include a statement in your written objection (see pages 12-13) that you intend to appear at the hearing, with your name, address, and signature.

# The Lawyers Representing You

## Do I have a lawyer in this lawsuit?

Yes. In a class action, the court appoints class representatives and lawyers to work on the case and represent the interests of all the class members. For purposes of the case, the Court has appointed Simon Grille and Reid Gaa of Girard Sharp LLP to serve as Class Counsel for the Settlement Class.

> Simon S. Grille
> Reid Gaa
> **Girard Sharp LLP**
> 601 California Street, Suite 1400
> San Francisco, CA 94108
> Telephone: (415) 981-4800
> patreonvppa@girardsharp.com

**You will not be charged for Class Counsel's services**, although their fees may be paid with the Court's approval from the settlement negotiated on behalf of the class.

Class Counsel does not represent you individually, only as a member of the Class.

If you want to be represented by your own lawyer, you may hire one at your own expense.

## How will the lawyers be paid?

Class Counsel, who have not been paid for their services in this case since it began, will ask the Court for an award of attorneys' fees of up to 30% of the Settlement Fund. Class Counsel will also seek reimbursement of costs and expenses (1) advanced in litigating the case and (2) for providing notice and administering the settlement, as

16

well as service awards to the Class Representatives of up to $7,500 each.

All of these amounts, as well as the costs associated with notice and administering the settlement, will be paid from the Settlement Fund.

All awards for attorneys' fees and expenses are subject to Court approval and will be paid from the Settlement Fund only after the Court approves them.

A copy of Class Counsel's Motion for Attorneys' Fees and Expenses and for Plaintiff Service Awards will be available at www.XXXX.com by [DATE].

You do not individually have to pay any attorneys' fees or expenses in connection with the lawsuit.

## Should I get my own lawyer?

You do not need to hire your own lawyer.

If you want your own lawyer, you may hire one, but you will be responsible for any payment for that lawyer's services. For example, you can ask your own lawyer to appear in court if you want someone other than Class Counsel to speak for you.

You may also appear for yourself without a lawyer.

# Key Resources

## How can I get more information?

This Notice summarizes the proposed Settlement—more details are in the Settlement Agreement and other case documents. To get a copy of the case documents you can:

- contact the lawyers who represent the class (information below);
- visit the case website at [website];
- access the Court Electronic Records (PACER) system online at:

> https://ecf.cand.uscourts.gov; or

- by visiting the Clerk of the Court for the United States District Court for the Northern District of California at any of the Court's locations between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays (addresses below).

| Resource | Case Information |
|---|---|
| **Case website** | [website] |
| **Toll Free Number** | [phone number] |
| **Claims Administrator** | Simpluris Inc.<br>3194-C Airport Loop Drive<br>Costa Mesa, CA 92626<br>[Phone Number] |
| **Class Counsel** | Simon Grille<br>Reid Gaa<br>**Girard Sharp LLP**<br>601 California Street<br>Suite 1400<br>San Francisco, CA 94108<br>(415) 981-4800<br>patreonvppa@girardsharp.com |
| **Court (DO NOT CONTACT)** | PLEASE DO NOT CALL THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS:<br><br>Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102<br><br>Robert F. Peckham Federal Building and United States Courthouse, 280 South 1st Street, San Jose, CA 95113<br><br>Ronald V. Dellums Federal Building & United States Courthouse, 1301 Clay Street, Oakland, CA 94612 |

18

| | United States Courthouse, 3140 Boeing Avenue, McKinleyville, CA 95519 |
|---|---|

# EXHIBIT 4

1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**
9          **NORTHERN DISTRICT OF CALIFORNIA**
             **SAN FRANCISCO DIVISION**
10

11   BRAYDEN STARK, JUDD OOSTYEN, ISAAC          Case No. 3:22-cv-03131-JCS
     BELENKIY, VALERIE BURTON, LAURA
12   GOODFIELD, and DENOVIAS MACK, on            **[PROPOSED] ORDER GRANTING**
     behalf of themselves and all others similarly   **PLAINTIFFS' MOTION FOR PRELIMINARY**
13   situated,                                   **APPROVAL OF CLASS ACTION**
                                                 **SETTLEMENT AND PROVIDING FOR**
14              Plaintiffs,                       **NOTICE**
15        v.
16   PATREON, INC.,
17
                Defendant.
18

19

20

21

22

23

24

25

26

27

28

Docusign Envelope ID: DBECDAC9-4D62-4699-8554-3E607EE61924

1    This matter comes before the Court on Plaintiffs' Motion for Preliminary Approval of Class

2    Action Settlement for consideration of whether the Court should grant preliminary approval of the

3    proposed Settlement Agreement[1] entered into by Plaintiffs Brayden Stark, Judd Oostyen, Isaac

4    Belenkiy, Valerie Burton, Laura Goodfield, and Denovias Mack, on behalf of themselves and the Class,

5    and Defendant Patreon, Inc. (collectively, the "Parties").

6    The Court is familiar with the record and has read and considered Plaintiffs' Motion, and all

7    supporting documents submitted therewith, including the Settlement Agreement and Declaration of

8    Simpluris Inc ("Simpluris Decl.") describing the Parties' proposed method of giving notice to Class

9    Members. The Court finds that there are sufficient grounds to preliminarily approve the Settlement under

10   Federal Rule of Civil Procedure 23, that the Court will likely be able to certify the Class for settlement

11   purposes only, and directs notice of the Settlement to be disseminated to the proposed Class.

12   Accordingly, it is **HEREBY ORDERED** that:

13   ## Preliminary Approval of the Settlement

14   1.    The proposed Settlement Agreement is preliminarily approved as likely to be finally

15   approved under Federal Rule of Civil Procedure 23(e)(2) and as meriting notice to the Settlement Class

16   for its consideration. This determination is not a final finding that the Settlement is fair, reasonable, and

17   adequate, but it is a determination that good cause exists to disseminate notice to Class Members in

18   accordance with the Settlement Agreement and plan for notice described in the Simpluris Decl. and to

19   hold a hearing on final approval of the proposed Settlement.

20   2.    Considering the factors set forth in Rule 23(e)(2), the Court preliminarily finds as follows:

21       a.  Plaintiffs and Class Counsel have adequately represented the Class;

22       b.  The Class Settlement Agreement was negotiated at arm's length with the assistance

23           of the Hon. Jeremy D. Fogel (Ret.), a former District Judge of the Northern District

24           of California and experienced private mediator;

25       c.  The monetary relief provided to the Settlement Class is adequate given the risks,

26           delay, and uncertainty of continued litigation and trial, the effectiveness of the

27   _____

28   [1] Unless otherwise specified, all capitalized terms used herein that are defined in the Settlement
     Agreement have the same meanings as set forth in that agreement.

1

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO. 3:22-cv-03131-JCS

proposed method of distributing relief to the class, the terms of the proposed award

of attorney's fees, and any agreement required to be identified under Rule 23(e)(3);

and

d.  The Settlement Agreement and proposed method of distributing the relief treat all

Class Members equitably relative to each other.

**Certification of the Class**

3.  The Court finds, upon preliminary evaluation and for purposes of the Settlement only, that

the Court will likely be able to certify the following proposed class pursuant to Federal Rule of Civil

Procedure 23:

> All persons who, between April 1, 2016, to and through the Preliminary
> Approval date, requested or obtained video content on the Patreon website
> (patreon.com) while in the United States and at a time the person had a
> Facebook account and also had a Patreon account.

Excluded from the Class are Defendant Patreon, Inc., its parents, subsidiaries, affiliates, officers,

directors, and employees; any entity in which Patreon has a controlling interest; and all judges assigned

to hear any aspect of this litigation, as well as their staff and immediate family members.

4.  The Court preliminarily finds that:

a.  Members of the Class are so numerous as to make joinder impracticable;

b.  There are questions of law and fact common to the Class, and such questions

predominate over any questions affecting only individual Class Members for purposes

of the Settlement;

c.  Plaintiffs' claims and the defenses thereto are typical of the claims of the Class

Members and the defenses thereto for purposes of the Settlement;

d.  Plaintiffs and their counsel have, and will continue to, fairly and adequately protect

the interests of the Settlement Class Members in this action with respect to the

Settlement; and

e.  A class action is superior to all other available methods for fairly and efficiently

resolving this action.

2

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO. 3:22-cv-03131-JCS

5.      The Court further finds, for the reasons stated in the Motion, that Plaintiffs and Class Counsel should be conditionally appointed to represent the Class.

6.      This provisional certification of the Class shall be solely for settlement purposes, without prejudice to the parties in the event the Settlement Agreement is not finally approved by this Court or otherwise does not take effect.  If the Settlement Agreement is not finally approved, this provisional certification shall be vacated and shall have no effect.

**Manner and Form of Notice**

7.      The Court approves, as to their form and content, the Notice and Claim Form substantially in the form of Exhibits 2 and 3 to the Settlement Agreement. The notice plan outlined in the Settlement Agreement and Simpluris Declaration, which includes direct notice via email and a settlement website, will provide the best notice practicable under the circumstances. The Notice and its manner of transmission is reasonably calculated, under the circumstances, to apprise the Class of the pendency of the Action, the proposed Settlement and its effects (including the Released Claims), the anticipated motion for attorneys' fees, costs, and expenses and for service awards, and their rights, including to participate in, opt out of, or object to any aspect of the proposed Settlement; constitute due, adequate and sufficient notice to the Class; and satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and all other applicable law and rules.  The date and time of the Final Fairness Hearing shall be included in the Notice before dissemination.

8.      The Court hereby appoints Simpluris Inc. to serve as the Claims Administrator to supervise and administer the notice procedures, establish and operate a settlement website (the "Settlement Website"), administer the claims processes, distribute cash payments according to the processes and criteria set forth in the Settlement Agreement, and perform any other duties of the Claims Administrator that are reasonably necessary or provided for in the Settlement Agreement.

9.      All reasonable expenses incurred in identifying and notifying members of the Class, as well as in administering the Settlement Fund, shall be paid from the Settlement Fund as set forth in the Settlement Agreement.  In the event the Settlement is not approved by the Court or otherwise fails to become effective, Class Counsel shall not be obligated to repay amounts paid to, or that are billed by, the

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO. 3:22-cv-03131-JCS

1   Claims Administrator for Notice or administering the Settlement, as set forth in the Settlement

2   Agreement.

3      10.   No later than 25 days after entry of this Order, the Claims Administrator will complete

4   distribution of the Notice, substantially in the form of Exhibit 2 to the Settlement Agreement, along with

5   an electronic link to the Claim Form, via email to all members of the Class for whom a valid email address

6   is available. To the extent such transmission of email notice results in "bounce-backs," the Claims

7   Administrator will make a second attempt to re-send the email notice to the extent feasible.

8      11.   Under the Settlement, all Class Members who wish to participate in the Settlement shall

9   complete and submit a Claim Form in accordance with the instructions contained therein.  All Claim

10  Forms must be postmarked or submitted electronically within 100 days after entry of this Order as set

11  forth in the Settlement Agreement, which provides Class Members 75 days from the Notice Date to

12  submit a Claim.

13     12.   The Claims Administrator shall also establish and maintain the Settlement Website and

14  post the Notice, the Settlement Agreement, the operative Complaint, and other relevant case documents,

15  as well as contact information for Class Counsel and the Claims Administrator.

16     13.   The dates provided for herein may be extended by Order of the Court, for good cause

17  shown, without further notice to the Class.

18                              **The Final Fairness Hearing**

19     14.   The Court will hold a Final Fairness Hearing on _____, at the United States

20  District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA

21  94102, Courtroom D – 15th Floor for the following purposes: (i) to finally determine whether the Class

22  satisfies the applicable requirements for certification under Federal Rules of Civil Procedure 23(a) and

23  23(b)(3); (ii) to determine whether the Settlement should be approved as fair, reasonable, and adequate

24  and in the best interests of the Class; (iii) to consider Class Counsel's application for an award of

25  attorneys' fees, costs, and expenses and for service awards to the representative Plaintiffs; and (iv) to

26  consider any other matters that may properly be brought before the Court in connection with the

27  Settlement.

28

15.     Class Counsel's application for an award of attorneys' fees, expenses, and costs and for service awards will be considered separately from the fairness, reasonableness, and adequacy of the Settlement.  Any appeal from any order relating solely to Class Counsel's application for an award of attorneys' fees, costs, and expenses, and/or to Class Counsel's application for service awards, or any reversal or modification of any such order, shall not operate to terminate or cancel the Settlement or to affect or delay the finality of a judgment approving the Settlement.

16.     Papers in support of final approval of the Settlement and Class Counsel's application for attorneys' fees, expenses and costs and for service awards shall be filed no later than 65 days after entry of this Order.   Any Reply in support of final approval of the Settlement or Class Counsel's application for attorneys' fees, expenses and costs and for service awards shall be filed no later than 115 days after entry of this Order.

### Objections and Appearances at the Final Fairness Hearing

17.     Any Class Member may appear at the Final Fairness Hearing and show cause why the proposed Settlement should or should not be approved as fair, reasonable, and adequate; why judgment should or should not be entered; or to comment on or oppose Class Counsel's application for attorneys' fees, costs, and expenses or Class Counsel's application for service awards.  No person or entity shall be heard or entitled to contest the approval of the Settlement, or if approved, the judgment to be entered approving the Settlement, or Class Counsel's application for an award of attorneys' fees, costs, and expenses and for service awards, unless that person's objection is received by the Clerk of the United States District Court for the Northern District of California within 100 days after entry of this Order (the "Objection Deadline"), which provides Class Members 75 days from the Notice Date to object.

18.     To object, such Class Member must submit copies of: (a) a written statement identifying such Person's name, address, and signature, and, if represented by counsel, the name, and address of counsel; (b) a written statement attesting that the Class Member had a Patreon account and a Facebook account between April 1, 2016 through the Preliminary Approval date and requested or obtained video content on the Patreon website during that time; (c) a written statement of the Class Member's objection and the reasons for such objection; (d) a written statement of whether the objection applies only to the Class Member, to a specific subset of the Class, or to the entire Class; and (e) any documentation or

authorities in support of such objection.  All written objections and supporting papers must clearly

identify the case name and number (*Stark v. Patreon*, No. 3:22-CV-03131-JCS (N.D. Cal.). If the Class

Member wishes to appear at the Settlement Hearing, he or she must also include a statement of intention

to appear at the Settlement Hearing.  Objections must be submitted to the Court either by filing

electronically or in person at any location of the United States District Court for the Northern District

of California or by mailing it to the Clerk, United States District Court for the Northern District of

California, at the following address:

> Northern District of California, San Francisco Division
> United States District Court
> 450 Golden Gate Avenue, Box 36060
> San Francisco, CA 94102-3489
> Case No. 3:22-cv-03131-JCS

19.    Any Class Member who does not make their objection in the time and manner provided

for herein shall be deemed to have waived such objection and shall forever be barred from making any

objection to the fairness, reasonableness, or adequacy of the proposed Settlement, and to Class Counsel's

application for an award of attorneys' fees, costs, and expenses and for service awards.  By objecting,

or otherwise requesting to be heard at the Final Fairness Hearing, a person shall be deemed to have

submitted to the jurisdiction of the Court with respect to the objection or request to be heard and the

subject matter of the Settlement, including but not limited to enforcement of the terms of the Settlement.

20.    Attendance at the Final Fairness Hearing is not necessary, but persons wishing to be heard

orally in connection with approval of the Settlement, including the proposed method of distribution,

and/or the application for an award of attorneys' fees, costs, and expenses and for service awards must

indicate in their written objection their intention to appear at the hearing.  If an objector hires an attorney

for the purpose of making an objection, the attorney must file a notice of appearance with the Court and

serve it on Class Counsel and Defendant's Counsel by the Objection Deadline.

### **Exclusion from the Class**

21.    Any requests for exclusion are due no later than 100 days after entry of this Order

("Exclusion Deadline").  Any person or entity who would otherwise be a member of the Class who

wishes to be excluded from the Class must notify the Claims Administrator in writing of that intent by

6

either (i) by U.S. mail postmarked no later than the Exclusion Deadline; or (ii) by submission of an opt-out request on the Settlement Website no later than the Exclusion Deadline. Any person or entity who is a member of the Class and who validly and timely requests exclusion from the Settlement shall not be a Class Member; shall not be bound by the Settlement Agreement; shall not be eligible to apply for or receive any benefit under the terms of the Settlement Agreement; and shall not be entitled to submit an Objection to the Settlement.

22. Any member of the Class who does not notify the Claims Administrator of their intent to be excluded from the Class in the manner stated herein shall be deemed to have waived his or her right to be excluded from the Class. If the Court finally approves the Settlement, any such person or entity shall forever be barred from requesting exclusion from the Class in this or any other proceeding, and shall be bound by the Settlement and the judgment, including the releases provided for in the Settlement Agreement, and the Final Order and Judgment.

## Termination of the Settlement

23. If the Settlement fails to become effective in accordance with its terms, or if the Final Order and Judgment is not entered or is reversed or vacated on appeal, this Order shall be null and void, the Settlement Agreement shall be deemed terminated, and the Parties shall return to their positions without any prejudice, as provided for in the Settlement Agreement.

## Limited Use of This Order

24. The fact and terms of this Order or the Settlement, all negotiations, discussions, drafts and proceedings in connection with this Order or the Settlement, and any act performed or document signed in connection with this Order or the Settlement, shall not, in this or any other Court, administrative agency, arbitration forum, or other tribunal, constitute an admission, or evidence, or be deemed to create any inference (i) of any acts of wrongdoing or lack of wrongdoing, (ii) of any liability on the part of Defendant to Plaintiffs, the Class, or anyone else, (iii) of any deficiency of any claim or defense that has been or could have been asserted in this Action, (iv) of any damages or absence of damages suffered by Plaintiffs, the Class, or anyone else, or (v) that any benefits obtained by the Class under the Settlement represent the amount that could or would have been recovered from Defendant in this Action if it were not settled at this time. The fact and terms of this Order and the Settlement, and all negotiations,

7

discussions, drafts, and proceedings associated with this Order and the Settlement, including the judgment and the release of the Released Claims provided for in the Settlement Agreement, shall not be offered or received in evidence or used for any other purpose in this or any other proceeding in any court, administrative agency, arbitration forum, or other tribunal, except as necessary to enforce the terms of this Order, the Final Order and Judgment, and/or the Settlement.

**Reservation of Jurisdiction**

25.     The Court retains exclusive jurisdiction over the Action to consider all further matters arising out of or connected with the Settlement.

26.     All discovery and pretrial and trial proceedings and deadlines are vacated until further notice from the Court, except for such actions as are necessary to implement the Settlement Agreement and this Order.

**Schedule and Deadlines**

27.     The Court sets the following schedule for further Settlement-related proceedings:

| Event | [Proposed] Deadline |
|---|---|
| Class Action Fairness Act notice to state and federal officials, under 28 U.S.C. § 1715 | Within 10 days after filing of the motion for preliminary approval |
| Notice Date | No later than 25 days after entry of preliminary approval order |
| Plaintiffs to move for final approval of the settlement | 65 days after entry of preliminary approval order |
| Plaintiffs to move for attorneys' fees, expenses, and service awards | 65 days after entry of preliminary approval order |
| Deadline to file a claim | 100 days after entry of preliminary approval order |
| Deadline for the submission of objections and requests for exclusion | 100 days after entry of preliminary approval order |
| Reply briefs in support of final approval and motion for attorneys' fees, expenses, and service awards | 115 days after entry of preliminary approval order |
| Final Fairness Hearing | At least 130 days after entry of preliminary approval order |

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO. 3:22-cv-03131-JCS

1  **IT IS SO ORDERED.**

2

3  DATED: _____   _____

4                                     THE HONORABLE JOSEPH C. SPERO
                                       UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
CASE NO. 3:22-cv-03131-JCS

Docusign Envelope ID: DBECDAC9-4D62-4699-8554-3E607EE61924

# EXHIBIT 5

1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

8
9
10

11 | BRAYDEN STARK, JUDD OOSTYEN, ISAAC
12 | BELENKIY, VALERIE BURTON, LAURA
GOODFIELD, and DENOVIAS MACK, on
13 | behalf of themselves and all others similarly
situated,
14
15 |             Plaintiffs,
      v.
16
PATREON, INC.,
17
18 |             Defendant.

Case No. 3:22-cv-03131-JCS

**[PROPOSED] FINAL JUDGMENT AND
ORDER OF DISMISSAL WITH PREJUDICE**

19
20
21
22
23
24
25
26
27
28

This matter came before the Court for hearing pursuant to the Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, dated _____ ("Preliminary Approval Order"), on the motion of Plaintiffs Brayden Stark, Judd Oostyen, Isaac Belenkiy, Valerie Burton, Laura Goodfield, and Denovias Mack for approval of proposed class action settlement with Defendant Patreon, Inc.  Due and adequate notice having been given of the Settlement as required by the Preliminary Approval Order, the Court having considered all papers filed and proceedings conducted herein, and good cause appearing therefor, it is hereby **ORDERED**, **ADJUDGED** and **DECREED** as follows:

1.      This Judgment incorporates by reference the definitions in the Class Action Settlement Agreement and Release with Defendant dated August 2, 2024 (the "Settlement Agreement"), and all defined terms used herein that are defined in the Settlement Agreement have the same meanings ascribed to them in the Settlement Agreement.

2.      This Court has jurisdiction over the subject matter of the Action and over all Parties thereto, and venue is proper in this Court.

3.      The Court reaffirms and makes final its provisional findings, rendered in the Preliminary Approval Order, that, for purposes of the Settlement only, all prerequisites for maintenance of a class action set forth in Federal Rules of Civil Procedure 23(a) and (b)(3) are satisfied. The Court accordingly certifies the following Settlement Class:

> All persons who, between April 1, 2016, to and through the Preliminary Approval date, requested or obtained video content on the Patreon website (patreon.com) while in the United States and at a time the person had a Facebook account and also had a Patreon account.

4.      Excluded from the Settlement Class are Defendant Patreon, Inc., its parents, subsidiaries, affiliates, officers, directors, and employees; any entity in which Patreon has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their staff and immediate family members.

5.      The Court finds that notice of this Settlement was given to Settlement Class Members in accordance with the Preliminary Approval Order and constituted the best notice practicable of the proceedings and matters set forth therein, including the Settlement, to all Persons entitled to such notice,

[PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE
CASE NO. 3:22-cv-03131-JCS

Docusign Envelope ID: DBECDAC9-4D62-4699-8554-3E607EE61924

and that this notice satisfied the requirements of Federal Rule of Civil Procedure 23 and of due process. The Court further finds that the notification requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, have been met.

6.     Pursuant to Federal Rule of Civil Procedure 23(e), the Court hereby grants final approval of the Settlement and finds that it is, in all respects, fair, reasonable, and adequate and in the best interests of the Settlement Class.

7.     Except as to any individual claim of those Persons identified in Exhibit 1, if any, who have validly and timely requested exclusion from the Class, the Action and all claims contained therein, as well as all of the Released Claims (including Unknown Claims), are dismissed on the merits and with prejudice. It is hereby determined that all Class Members who did not timely and properly elect to exclude themselves from the Class by a written Request for Exclusion delivered on or before the date set forth in the Preliminary Approval Order and the Notice are bound by this Judgment.

8.     The persons and entities identified in Exhibit 1 hereto requested exclusion from the Class as of the Exclusion Deadline.  These persons and entities shall not share in the benefits of the Settlement and this Judgment does not affect their legal rights to pursue any claims they may have against Patreon. All other members of the Class are hereinafter barred and permanently enjoined from prosecuting any Released Claims against Patreon in any court, administrative agency, arbitral forum, or other tribunal.

9.     Upon the Effective Date, Releasing Plaintiffs shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Released Defendant from all Released Claims.

10.     Neither Class Counsel's application for attorneys' fees, reimbursement of litigation expenses, and service awards for Plaintiffs, nor any order entered by this Court thereon, shall in any way disturb or affect this Judgment, and all such matters shall be treated as separate from the Judgment entered herein.

11.     The Parties shall bear their own costs and attorneys' fees, except as set forth in the Settlement Agreement, in this Judgment, or any Order regarding Plaintiffs' request for attorneys' fees, expenses, and service awards.

12.     Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement, is or may be deemed to be or may be used as an admission of, or evidence of, (a) the validity of any Released Claim, (b) any wrongdoing or liability of Patreon, or (c) any fault or omission of Patreon in any proceeding in any court, administrative agency, arbitral forum, or other tribunal. To the extent permitted by law, neither the Settlement Agreement, the Settlement, the Judgment, any of their terms or provisions, nor any of the negotiations or proceedings connected with them, shall be offered as evidence or received in evidence or used in any way in any pending or future civil, criminal, or administrative action or any other proceeding to establish any liability or wrongdoing of, or admission by Patreon. Notwithstanding the foregoing, nothing in this Judgment shall be interpreted to prohibit the use of this Judgment in a proceeding to consummate or enforce the Settlement Agreement or Judgment, or to defend against the assertion of Released Claims in any other proceeding. All other relief not expressly granted to Class Members is denied.

13.     No Class Member or any other person will have any claim against Patreon, Plaintiffs, Class Counsel, or the Claims Administrator arising from or relating to the Settlement or any actions, determinations or distributions made substantially in accordance with the Settlement or Orders of the Court.

14.     Without affecting the finality of this Judgment, this Court reserves exclusive jurisdiction over all matters related to administration, consummation, enforcement, and interpretation of the Settlement and this Judgment, including (a) distribution or disposition of the Settlement Fund; (b) further proceedings, if necessary, on the application for attorneys' fees, reimbursement of litigation expenses, and service awards for Plaintiffs; and (c) the Parties for the purpose of construing, enforcing, and administering the Settlement.  If any Party fails to fulfill its obligations under the Settlement, the Court retains authority to vacate the provisions of this Judgment releasing, relinquishing, discharging, barring and enjoining the prosecution of, the Released Claims against the Releasees, and to reinstate the Released Claims against the Releasees.

15.     If the Settlement does not become effective, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement and shall be vacated

[PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE
CASE NO. 3:22-cv-03131-JCS

and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement.

16.    Without further order of the Court, the Parties may unanimously agree to reasonable extensions of time or other reasonable amendments, modifications, and expansions of the Settlement Agreement necessary to carry out any of the provisions of the Settlement Agreement, provided that such amendments, modifications, and expansions of the Settlement Agreement are not materially inconsistent with this Judgment and do not materially limit the rights of Class Members or the Released Defendant or Released Plaintiffs under the Settlement Agreement.

17.    Judgment shall be, and hereby is, entered dismissing the Action with prejudice and on the merits. There is no just reason for delay in the entry of Judgment and immediate entry by the Clerk of the Court is expressly directed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

DATED: _____    _____
                                THE HONORABLE JOSEPH C. SPERO
                                UNITED STATES MAGISTRATE JUDGE

Docusign Envelope ID: DBECDAC9-4D62-4699-8554-3E607EE61924

# EXHIBIT 6

**To:**    **[Class Member Email Address]**
**From: Stark v. Patreon Settlement Administrator**
**Subject: Stark v. Patreon Settlement**

## If you had a Patreon account and accessed videos on Patreon.com while you had a Facebook account, you may be eligible for payment from a class action settlement

| You may be a Settlement Class Member | | | |
|---|---|---|---|
| **Unique ID:** | <<Unique_ID>> | **PIN:** | <<PIN>> |

Dear <<Name>> *or if no name* Class Member:

A Settlement has been reached with Patreon, Inc. ("Patreon") in a class action lawsuit alleging that Patreon violated the Video Privacy Protection Act ("VPPA") by disclosing its subscribers' identities and video-viewing preferences without lawful consent. The lawsuit contends that Patreon transmitted this information to Meta Platforms, Inc. ("Meta")— the owner of Facebook— through use of a web tracking tool called the Meta Pixel.

Patreon denies all of the allegations made in the lawsuit, denies that it violated the VPPA, and denies that Patreon did anything improper or unlawful.  The proposed Settlement is not an admission of guilt or wrongdoing of any kind by Patreon.  The United States District Court for the Northern District of California approved this notice.

| Why am I receiving this notice? |
|---|

You might be a Settlement Class member.  Patreon's records indicate that you had a Patreon account between April 2016 and [PRELIMINARY APPROVAL DATE] and accessed video content on Patreon.com. To be eligible for payment, you must demonstrate that you also had a Facebook account when you accessed video content on Patreon.com.

**You can submit a claim to be paid from the Settlement using the claim form available here.**

**For more information and to review the full notice, please visit www._____.com.**

| What does the Settlement provide? |
|---|

Patreon will pay $7,250,000 into a Settlement Fund. Patreon has also agreed not to operate the Meta Pixel on any web page on the Patreon website that includes video content unless: (a) the VPPA is amended in relevant part, repealed, or otherwise invalidated; (b) Patreon obtains consent in the form required by the VPPA; or (c) the Meta Pixel on the relevant Patreon web page otherwise complies with the VPPA.  For a full copy of the Settlement Agreement, including all other

Settlement terms, please visit www._____.com.   For more information about how distributions will be made to Settlement Class Members, please visit www._____.com.

| **What are the expected payments?** |
|---|

After deduction of the costs of notice and settlement administration, any Court-approved award of attorneys' fees (up to 30% of the Settlement Fund), litigation costs, and any service awards for the Class Representatives (up to $7,500 to each of the six individual Class Representatives), the Settlement Fund will be distributed *pro rata* to eligible class members. We will not know the final amount that each class member will receive until all claims are evaluated. Based on claims rates in similar cases, eligible class members might receive between $35 and $175 each. The actual amount that each class member receives will be determined once all claims are evaluated, and may be higher or lower than these estimates. Please be patient.

| **How can I get a payment?** |
|---|

If you are a class member and you want to receive a payment, you can make a claim by filling out and submitting the claim form available at www._____.com.

You must provide the link for your Facebook profile page on the claim form, so that the Claims Administrator can verify that you are a Class Member. The link you provide must correspond with a Facebook profile that includes your personal information. Instructions for how you can find your Facebook profile page link are available at www._____.com.

The Claim Form will also ask you to attest under oath that you accessed video content on Patreon.com while you had an active Facebook account.

If you have questions, you can contact the claims administrator by telephone (8XX-XXX-XXXX) or email _____@_____.com.

| **When is the deadline to submit a claim form?** |
|---|

To be eligible for payment, claim forms must be submitted no later than [DATE].

| **What are my other options?** |
|---|

You can do nothing, exclude yourself or object.  If you do nothing, your rights will be affected and you won't get a payment.

If you don't want to be legally bound by the Settlement, you must exclude yourself from it by [DATE].  You may opt out online at www._____.com. Click on the "Opt Out" tab and provide the requested information. You may also opt out by calling 1-800-____ or mailing the Opt-Out form available at _____ to the Claims Administrator at:

Docusign Envelope ID: DBECDAC9-4D62-4699-8554-3E607EE61924

Simpluris Inc.
3194-C Airport Loop Drive
Costa Mesa, CA 92626

Unless you exclude yourself, you won't be able to sue or continue to sue Patreon for any claim regarding the subject matter of the claims in this case.

If you stay in the Settlement (i.e., don't exclude yourself), you may object to it or ask for permission for you or your own lawyer to appear and speak at the Final Approval Hearing—at your own cost—but you don't have to. Objections and requests to appear are due by [DATE].

The Final Approval Hearing will be held on [DATE], at [TIME], in Courtroom D on the 15th Floor of the San Francisco federal courthouse, located at 450 Golden Gate Avenue, San Francisco, CA 94102, or via Zoom Webinar.

More information about your options is in the detailed notice available at www._____.com, or you may contact Class Counsel with any questions:

- **Simon S. Grille.** Telephone: (415) 981-4800; email: patreonvppa@girardsharp.com

You may also access the docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California at any of the Court's locations between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

PLEASE DO NOT CALL THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.

**BY ORDER OF THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

To unsubscribe from this list, please click on the following link: Unsubscribe