Adam E. Polk (SBN 273000)
Simon Grille (SBN 294914)
Trevor T. Tan (SBN 280145)
Reid Gaa (SBN 330141)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
apolk@girardsharp.com
sgrille@girardsharp.com
ttan@girardsharp.com
rgaa@girardsharp.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| BRAYDEN STARK, JUDD OOSTYEN, ISAAC BELENKIY, VALERIE BURTON, LAURA GOODFIELD, and DENOVIAS MACK on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>PATREON, INC.,<br><br>        Defendant. | Case No. 3:22-cv-03131-JCS<br><br>**DECLARATION OF SIMON S. GRILLE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Joseph C. Spero<br>Date: September 11, 2024<br>Time: 9:30 am<br>Courtroom: Courtroom D – 15th Floor |

1   I, Simon S. Grille, declare as follows:

2       1.    I am an attorney at the law firm of Girard Sharp LLP ("Girard Sharp"), and one of the

3   attorneys of record for Plaintiffs.

4       2.    I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of

5   Class Action Settlement. I submit this declaration based on personal knowledge, and if called to do so,

6   could testify to the matters contained herein.

7   **THE LITIGATION**

8       3.    On May 27, 2022, Girard Sharp filed the initial class action complaint ("Complaint")

9   against Patreon Inc. ("Patreon") on behalf of Plaintiffs Brayden Stark and Judd Oostyen, and others,

10  alleging that Patreon violated the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710, by

11  disclosing information about the video content Patreon users requested or obtained on Patreon's

12  website to Meta Platforms, Inc. ("Meta") via Patreon's Meta Pixel ("Patreon's Pixel") without those

13  users' lawful consent. ECF No. 1.

14      4.    After filing the initial complaint, Girard Sharp continued to investigate and develop the

15  case. Our continuing investigation included interviewing numerous Patreon users who accessed

16  prerecorded video content on Patreon's website while logged into their Facebook account. We also

17  retained and consulted with experts in computer science and online advertising, and researched the

18  Meta Pixel's operation on Patreon's website and its impact on Plaintiffs and class members.

19      5.    On July 20, 2022, Plaintiffs served Patreon with an initial set of document requests. We

20  then negotiated with Patreon a stipulated protective order and an order governing the production and

21  use of electronically stored information produced in this litigation. *See* ECF Nos. 29, 30.

22      6.    Patreon moved to dismiss the Complaint on August 5, 2022. ECF No. 21. Plaintiffs filed

23  an opposition brief on September 9, 2022; Patreon replied on September 30. ECF No. 31, 35. The Court

24  issued an Order Granting in Part and Denying in Part the Motion to Dismiss on October 13, 2022,

25  dismissing Plaintiffs' VPPA claim for failing to allege the video material on Patreon's website was

26  prerecorded as well as Plaintiffs' claim under the unlawful prong of California's Unfair Competition

27  Law ("UCL") to the extent it was based on a violation of the VPPA. ECF No. 40. The Court otherwise

28

1

DECLARATION OF SIMON S. GRILLE IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:22-cv-03131-JCS

denied Patreon's motion and granted leave to file an amended complaint by October 27, 2022. ECF No. 40.

7.       On October 27, 2022, Plaintiffs filed a First Amended Complaint ("FAC") addressing the Court's October 13 motion to dismiss order and incorporating newly developed facts and evidence regarding the technical process by which Patreon's Pixel transmitted Patreon users' information to Meta. ECF No. 41.

8.       Patreon then moved to dismiss the FAC on November 23, 2022, re-asserting its earlier challenge to the VPPA as unconstitutional under the First Amendment. ECF No. 48. Plaintiffs filed an opposition brief on December 21, 2022; Patreon replied on January 20, 2023; and the Court heard oral argument on February 10, 2023. ECF Nos. 51, 54, 56. The Court issued an Order Granting in Part and Denying in Part the Motion to Dismiss on February 17, 2023, dismissing Plaintiffs' claims under California's Consumers Legal Remedies Act and UCL and instructing the parties to develop a more complete factual record with respect to Patreon's constitutional challenge. ECF No. 59.

9.       Patreon answered the FAC on March 17, 2023. ECF No. 63.

10.       Consistent with the Court's February 17 motion to dismiss order, Plaintiffs served and negotiated numerous subpoenas to obtain evidence relevant to Patreon's challenge to the VPPA under the First Amendment. Additionally, we retained Neil Richards, an expert on the intersection of privacy and the First Amendment, who produced an expert report on September 22, 2023, regarding the expectations of privacy in intellectual activities and the history and purpose of the VPPA.

11.       On September 22, 2023, Patreon also produced an expert report from Andrew Shaxted in support of its First Amendment challenge. To respond to the technical opinions expressed in that report, we retained a digital marketing and internet technology expert, Jonathan Hochman, who prepared a rebuttal report wherein he opined on the functionality of Patreon's Pixel and Patreon's control over it. The Rebuttal Report of Jonathan Hochman was produced to Patreon on October 20, 2023.

12.       Patreon filed its Motion for Summary Judgment on Plaintiffs' VPPA Claims on the Ground that the VPPA Violates the First Amendment on November 17, 2023. ECF No. 76. Plaintiffs filed an opposition brief on December 21, 2023; Patreon replied on January 19, 2024; over Patreon's opposition, Plaintiffs supplemented the summary judgment record with additional evidence on

DECLARATION OF SIMON S. GRILLE IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:22-cv-03131-JCS

February 23, 2024; Patreon responded to the supplemental summary judgment evidence on March 20, 2024; and the Court heard oral argument on April 12, 2024. ECF Nos. 100, 117, 129, 151, 157.

13.     On January 30, 2024, after the Court granted Plaintiffs' motion to add new plaintiffs to the litigation, Plaintiffs filed a Second Amended Complaint ("SAC") and added Denovias Mack, Isaac Belenkiy, Laura Goodfield, and Valerie Burton. ECF No. 121.

14.     Patreon answered the SAC on March 14, 2024. ECF No. 146.

15.     Plaintiffs were prepared to file a class certification motion by April 29, 2023. *See* ECF No. 163. In addition to drafting the underling motion and compiling the exhibits with relevant evidence in support, we retained and worked closely with an expert in computer science and online advertising to draft a report in support of Plaintiffs' class certification motion. We also obtained declarations from each Plaintiff attesting to certain facts relevant to the class certification analysis.

16.     Further, Girard Sharp conducted extensive discovery throughout this litigation, including:

    a.     serving forty-eight document requests, eleven interrogatories, and seventeen requests for admission on Patreon;

    b.     negotiating document productions with Patreon's counsel, including with regard to search terms to query for the production of custodial information;

    c.     conducting three Rule 30(b)(6) depositions of Patreon corporate designees;

    d.     deposing five current and former Patreon employees;

    e.     serving subpoenas on two non-party media agencies that Patreon retained to perform work related to the Meta Pixel, deposing one and negotiating a production of documents and a deposition from the other;

    f.     setting up an electronic document review platform and reviewing documents produced by Patreon and the subpoenaed non-parties;

    g.     preparing responses to Patreon's discovery requests on behalf of each Plaintiff, including thirty-five document requests, ten interrogatories, and 182 requests for admission;[1]

---

[1] At the time the Parties reached an agreement in principle to resolve this action, the deadline to respond to Patreon's Second Set of Requests for Admission to Plaintiffs had not yet elapsed. Although responses

DECLARATION OF SIMON S. GRILLE IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:22-cv-03131-JCS

h.      gathering, reviewing, and producing Plaintiffs' documents in response to Patreon's document requests; and

i.      defending the depositions of Plaintiffs Brayden Stark and Judd Oostyen.

17.     Plaintiffs also took critical discovery of non-party, Meta. On February 1, 2023, we served Meta with a subpoena noticing a deposition and seeking data and documents related to the transmission of Patreon users' personal information to Meta via Patreon's Pixel. Between February and September 2023, we negotiated the scope of the subpoena with Meta to alleviate any undue burden, and received an initial production on September 22, 2023. We continued to negotiate the production of responsive material from Meta, as well as the parameters of a deposition, subsequently moving to compel Meta on December 13, 2023, to produce class-wide data and designate a deponent pursuant to Rule 30(b)(6). *Stark, et al. v. Meta Platforms, Inc.*, 3:23-mc-80326-JCS, ECF No. 1. The Court heard oral argument on January 26, 2024, and ordered Meta to produce a subset of class data and designate a witness to sit for a deposition. *Stark, et al. v. Meta Platforms, Inc.*, 3:23-mc-80326-JCS, ECF No. 16. Ultimately, Plaintiffs obtained eight sets of document productions from Meta and deposed Meta's corporate designee in a proceeding consolidated with a separate VPPA matter.

## SETTLEMENT NEGOTIATIONS

18.     The Parties first mediated before the Honorable Jeremy D. Fogel (Ret.) on June 27, 2023. The Parties continued to mediate before Judge Fogel on November 20, 2023, March 5, 2024, and April 16, 2024, and continued their settlement discussions following the April 16 mediation session.

19.     After exchanging multiple proposals and counter-proposals, the Parties reached an agreement in principle on April 26, 2024, and agreed to a final term sheet on April 27. The Parties then negotiated the settlement agreement in the following weeks in preparation for Plaintiffs' motion for preliminary approval. The Parties then negotiated the settlement agreement in the following weeks and executed it on August 1, 2024.

---

to these requests for admission were not served, we had prepared responses and objections on behalf of each Plaintiff and were prepared to serve them by the deadline established in Rule 36.

DECLARATION OF SIMON S. GRILLE IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:22-cv-03131-JCS

**SETTLEMENT TERMS**

20.     The proposed Class means all persons who, between April 1, 2016, to and through the Preliminary Approval date, requested or obtained video content on the Patreon website (Patreon.com) while in the United States and at a time the person had a Facebook account and also had a Patreon account. The Class excludes Patreon, its parents, subsidiaries, affiliates, officers, directors, and employees; any entity in which Patreon has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their staff and immediate family members.

21.     Under the Settlement, Patreon will pay $7,250,000.00 to create a non-reversionary cash fund for Class Members. Notice costs, administration expenses, attorneys' fees and costs, and service awards awarded by the Court will be deducted from the fund. The balance (the "Net Settlement Fund") will be applied to pay Settlement Class Member claims.

22.     Patreon will also remove or disable the Meta Pixel from any web page on the Patreon website that includes video content as of the Effective Date. Patreon has agreed not to re-install or operate the Meta Pixel on any web page on the Patreon website that includes video content, except if: (a) the VPPA is amended in relevant part, repealed, or otherwise invalidated; (b) Patreon obtains consent in the form required by the VPPA, 18 U.S.C. § 2710(b)(2)(B); or (c) the Meta Pixel on the relevant Patreon web page otherwise complies with the VPPA.

23.     The resolution of this litigation does not affect any other pending case.

**DISTRIBUTION OF THE SETTLEMENT FUND**

24.     The Net Settlement Fund will be allocated according to Section 3 of the Settlement Agreement.

25.     There will be a single Claim Form, and any Class Member can submit a claim. The Claim Form will require an attestation under oath that the Claimant accessed video content on Patreon.com while the Claimant had an active Facebook account and that all information provided is true and correct to the best of the Claimant's knowledge.

26.     The Claim Form will require that a Class Member support their claim by providing the link associated with the Class Member's Facebook profile. The Notice and Settlement Website will provide instructions to Class Members regarding how to access this information.

27.     A Claim Form is required to ensure recovery is limited to Class Members.  Only Patreon accountholders who accessed video content on Patreon.com while they had an active Facebook account are eligible to participate in the settlement.  Patreon's records show whether a person had a Patreon account and requested or obtained video content on the Patreon website.  While Meta has extensive data received through Patreon's Pixel transmissions, undertaking a forensic retrieval exercise over Meta's objections would result in further delays and substantial additional expense, and the expedient of simply requiring an attestation and link to a Facebook account serves as a reasonable proxy for proof of class membership, balancing the need to limit payments to class members with the imperative of offering an easy to understand, streamlined way for Class Members to participate.  The Claim Form also elicits the information required to confirm contact and payment details. The Claim Form can be completed online in less than five minutes with no more effort than was required to create a Patreon account.

28.     The Claims Administrator will audit a sample of claims. If the Claims Administrator determines a Claim is inadequately supported, suspicious, or contains indicia of fraud, the Claims Administrator may disallow the claim or request additional supporting documentation.

29.     The Settlement Administrator will give Claimants a reasonable opportunity to cure defective claim submissions during a period of up to 60 days ("Cure Period").

30.     The Claims Administrator will have the discretion (but not the obligation) to accept late-submitted claims for processing by the Claims Administrator, provided the distribution of the Net Settlement Fund to Approved Claimants will not be materially delayed thereby.

31.     After review of all claims and after expiration of the Cure Period, the Settlement Administrator will determine the total number of Approved Claims, divide the Net Settlement Fund by the number of Approved Claims, and distribute to each Approved Claimant their respective share. Payments will be made electronically, with PayPal as the default payment mechanism.

32.     For each claim, the Settlement Administrator will make the final determination as to whether the claim is an Approved Claim. The parties will have no role in, nor will they be held liable in any way for, the determination of monetary relief to be accorded each Claimant.

33.     Any dispute regarding the validity of a Claim submission or eligibility for payment will be referred to the administrator.

34.     The Claims Administrator will provide the Parties with weekly written reports, beginning on the Notice Date and continuing until submission of the final post-distribution accounting (and thereafter upon request), summarizing all statistics and actions taken by the Claims Administrator in connection with administering the Settlement

## THE CLAIMS ADMINISTRATOR

35.     Class counsel sent requests for proposals to six leading class action administrators and received proposals from each of them.

36.     After reviewing all the proposals, Class counsel selected Simpluris Inc. based on its qualifications and pricing.

37.     In the past two years, Girard Sharp has worked with Simpluris in one matter: *In re Planned Parenthood Los Angeles Data Incident Ligation* ("*PPLA*"), No. 21STCV44106 (Los Angeles Sup. Ct.). Simpluris has effectively administered the notice and claims process in that case.

38.     The Claims Administrator's procedures for securely handling class member data and its acceptance of responsibility and maintenance of insurance in case of error is addressed in the Declaration of Meagan Brunner ("Brunner Decl.") submitted in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. *See* Brunner Decl. ¶¶ 4-18.

39.     The Claims Administrator will establish and maintain a Settlement Website with a mutually acceptable domain name. The Settlement Website will be optimized for viewing on both mobile devices and personal computers. The Settlement Website will include, without limitation, the Notice, this Agreement, the operative Complaint, other relevant case documents, a set of frequently asked questions, and information on how to object or opt out, as well as contact information for Class Counsel and the Claims Administrator. The Settlement Website will include a readily accessible means for Class members to submit a Claim Form electronically.

40.     The Claims Administrator will establish a toll-free telephone number where members of the Class Members can obtain assistance and receive instructions for accessing settlement-related information, the Claim Form, and case documents.

41.     Administrative costs will be paid from the Settlement Fund. Based on information provided by the parties to date, the Claims Administrator anticipates notice and administration expenses in the range of $300,000-$350,000.

### CLASS NOTICE

42.     According to Patreon's records, approximately 6 million Patreon account holders accessed video content on Patreon.com while in the United States during the Class Period. Not all of these people are Class Members, however, because they did not all simultaneously maintain a Facebook account such that the Meta Pixel would pass their video viewing choices and personal information to Meta. Based on publicly available data regarding web browsing habits, use of cookie blockers or private browsing, and Facebook login rates, Plaintiffs estimate that about 20% of the 6 million, or 1.2 million people are Class members.

43.     Patreon represents that it has email addresses for 99.97% of its account holders who accessed video content on Patreon.com while their subscription was active. Patreon will provide the Claims Administrator with the email addresses of these subscribers.

44.     The Claims Administrator will provide direct notice via email. The Claims Administrator will format these emails to maximize the likelihood they will be received and understood by Class Members. To the extent the transmission of email notice results in "bounce-backs," the Claims Administrator will make a second attempt to re-send the email notice.

45.     The Claims Administrator will send three email reminders of the Claims Deadline and Objection and Opt-Out Deadline to all potential Class Members for whom a valid email address is available. The reminder emails will include links to the Notice and the electronic Claim Form.

46.     Notice will also be posted on the Settlement Website, and the Claims Administrator will provide a toll-free telephone number that Class Members can use to receive assistance for filing a claim.

### SETTLEMENT RELEASE

47.     The release is limited to claims arising from the facts underlying the claims and allegations in this action. In accordance with the Procedural Guidance, the release appropriately tracks the claims in the SAC.

**ATTORNEYS' FEE AWARD AND SERVICE AWARD**

48.     Class Counsel will apply for an award of attorneys' fees and reimbursement of litigation expenses, together with service awards for the class representatives, at least 35 days before the due date for objections. The fee application will be promptly posted on the settlement website.

49.     Plaintiffs will seek up to 30% of the fund in attorneys' fees. Class Counsel's total lodestar, through July 15, 2024, is approximately $3,826,304.50 using current rates and representing 5,354.5 hours of work on this matter. There will be no multiplier on the fee award, given the substantial amounts of time dedicated by Plaintiffs' counsel to this matter.

50.     Class Counsel's lodestar reflects the determined and sophisticated defense mounted by Patreon and its experienced counsel.  In addition, Plaintiffs were dependent on nonparty Meta for essential information, requiring extensive conferences, technical support from industry experts, and two motions to compel production of data and testimony relevant to their claims. The parties reached settlement only after several mediation sessions, multiple rounds of motion to dismiss briefing, a fully briefed summary judgment motion, and on the eve of Plaintiffs filing their class certification motion.

51.     Plaintiffs also will seek reimbursement of case expenses, which include expert witness fees, in an amount not to exceed $485,000.

52.     In addition, Plaintiffs intend to apply for service awards of up to $7,500 for each of the Class Representatives. Each Plaintiff devoted considerable time to this case, including by assisting counsel in preparing the complaints, communicating with Class Counsel about case developments, responding to written discovery requests, gathering and producing documents, and, with respect to Plaintiffs Brayden Stark and Judd Oostyen, giving a deposition.

53.     The Parties have reached no agreement on the amount of fees and expenses to be sought by Class Counsel.  There is no "clear sailing" agreement.

**RECOMMENDATION OF COUNSEL**

54.     Girard Sharp's resume is attached as Exhibit A.  The firm has considerable experience in the prosecution of data privacy class actions. We believe that, considering the relative benefits of settlement at this time on the terms offered, in comparison to the risk of a less favorable outcome, taking into account the prospects of prevailing at trial and on appeal, the proposed settlement meets the

standard for preliminary approval in that the Court "will likely be able to" approve the settlement as fair, reasonable, and adequate under Rule 23(e)(2).

55.     The Settlement provides Class Members with the opportunity for an immediate recovery with the benefit of a claimant-friendly procedure supervised by an experienced claims administrator. The Settlement also ensures that Patreon will cease use of Pixel on webpages with video content, unless such usage complies with the VPPA. By contrast, continued litigation carries considerable risk of no recovery at all. Patreon vigorously denied liability under the VPPA.  Patreon's experienced counsel have attacked virtually every aspect of Plaintiffs' VPPA claims, and Patreon's challenge to the VPPA on First Amendment grounds remains unresolved. Plaintiffs anticipate Patreon will strenuously oppose class certification, including arguing that whether the Pixel transmitted any particular users' PII and video information to Meta is a highly fact-intensive issue, preventing a finding of predominance. Patreon also has pointed to an arbitration clause in its Terms of Use, which could reduce the number of individuals eligible to recover through this litigation or preclude recovery on a class-wide basis altogether. Moreover, even if Plaintiffs prevailed in the District Court on the arbitration issue, Patreon would be entitled to a stay pending appeal, creating further delay and appellate risk. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 143 S. Ct. 1915, 216 L. Ed. 2d 671 (2023).  The Settlement avoids the numerous uncertainties associated with trial, including a battle of experts who would offer conflicting and highly technical opinions about the internet technology at the center of this litigation. Finally, the VPPA landscape is rapidly shifting, and the case law Plaintiffs rely on could erode before this action reaches a final judgment.  The Settlement is thus a hard-fought and favorable outcome for Class Members and meets all criteria for preliminary approval.

56.     The Settlement also complies in all respects with this District's Procedural Guidance for Class Action Settlements. We therefore respectfully request that the Court grant preliminary approval so that notice can be given and Settlement Class members have the opportunity to exercise their rights under Rule 23 and the terms of the Settlement.

57.     Attached as Exhibit B is a chart submitted in compliance with the Northern District of California's Procedural Guidance for Class Action Settlements. The charts contain true and accurate information regarding analogous settlement we have negotiated on behalf of other classes.

1
                         *           *           *

2        I declare under penalty of perjury under the laws of the United States that the foregoing is true

3  and correct. Executed August 2, 2024, in San Francisco, California.

4

5                                            /s/ Simon S. Grille_____
                                          Simon S. Grille

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF SIMON S. GRILLE IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:22-cv-03131-JCS

1

**CERTIFICATE OF SERVICE**

2

     I hereby certify that on August 2, 2024, I electronically filed the foregoing document using the

3

CM/ECF system, which will send notification of such filing to all counsel of record registered in the

4

CM/ECF system.

5

                              */s/ Simon S. Grille*

6

                              Simon S. Grille

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF SIMON S. GRILLE IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 3:22-cv-03131-JCS