Adam E. Polk (SBN 273000)
Simon Grille (SBN 294914)
Trevor T. Tan (SBN 280145)
Reid Gaa (SBN 330141)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
apolk@girardsharp.com
sgrille@girardsharp.com
ttan@girardsharp.com
rgaa@girardsharp.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAYDEN STARK, JUDD OOSTYEN, ISAAC BELENKIY, VALERIE BURTON, LAURA GOODFIELD and, DENOVIAS MACK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PATREON, INC.,<br><br>Defendant. | Case No. 3:22-cv-03131-JCS<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:      Hon. Joseph C. Spero<br>Date:       February 19, 2025<br>Time:       9:30 a.m.<br>Courtroom:  Via Zoom |

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     STATEMENT OF THE ISSUE TO BE DECIDED .......................................2

III.    BACKGROUND AND PROCEDURAL HISTORY ......................................2

        A.    Plaintiffs' Allegations and Patreon's Motions to Dismiss. ....................2

        B.    Fact and Expert Discovery. ....................................................................3

        C.    Summary Judgment and Class Certification. ..........................................3

        D.    The Settlement Negotiations. ..................................................................4

        E.    Settlement Terms and Preliminary Approval. .........................................4

IV.     NOTICE AND SETTLEMENT ADMINISTRATION ...................................5

        A.    The Class Notice. ....................................................................................5

              1.    Direct Notice by Email ...................................................................5

              2.    The Settlement Website and Toll-Free Number .............................6

        B.    Claims, Objections, and Requests for Exclusion. ..................................6

        C.    Notice and Administration Expenses .......................................................7

V.      ARGUMENT .....................................................................................................7

        A.    The Proposed Class Should be Certified. ...............................................7

              1.    Class Members Are Too Numerous to Be Joined ..........................8

              2.    There Are Common Questions of Law and Fact ............................8

              3.    Plaintiffs' Claims Are Typical of the Class ....................................9

              4.    Plaintiffs and Class Counsel Will Fairly and Adequately Protect the
                    Interests of Class Members. ............................................................9

        B.    Rule 23(b)(3) is Satisfied For Settlement Purposes. ............................10

              1.    Common Questions of Fact and Law Predominate. .....................10

              2.    A Class Action is a Superior Means of Resolving This Case. ......11

        C.    The Settlement is Fair, Reasonable and Adequate. ..............................12

1.    Class Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class ....................................................................................13

2.    The Settlement Is the Product of Arm's Length Negotiations Among Experienced Counsel. ...............................................................................13

3.    The Relief Under the Proposed Settlement is Adequate......................................14

       i.    The Strengths of Plaintiffs' Case, Balanced Against the Risks of Continuing Litigation, Weigh in Favor of Approval. ...........................14

       ii.    Method of Distribution of Settlement Funds. ..........................................17

       iii.    Attorneys' Fees and Expenses ...............................................................18

       iv.    Other Agreements. ..................................................................................18

4.    The Settlement Treats All Class Members Equitably..........................................18

5.    The Settlement Satisfies the Remaining Ninth Circuit Approval Factors. ..........19

       i.    Class Members' Response Has Been Positive.......................................19

       ii.    Class Counsel Endorses the Settlement ..................................................20

       iii.    The Presence of a Government Participant..............................................20

D.    The Class Notice Satisfied Due Process and Rule 23.....................................................21

VI.    CONCLUSION.............................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Hawaii State Dep't of Educ.*,
30 F.4th 828 (9th Cir. 2022) ..................................................................................... 8

*Aarons v. BMW of N. Am., LLC*,
2014 WL 4090564 (C.D. Cal. 2014) ........................................................................ 15

*Alcazar v. Fashion Nova, Inc.*,
2022 WL 19975445 (N.D. Cal. Sept. 6, 2022) ......................................................... 11

*Allen v. Bedolla*,
787 F.3d 1218 (9th Cir. 2015) .................................................................................. 12

*Black v. T-Mobile USA, Inc.*,
2019 WL 3323087 (N.D. Cal. July 24, 2019) ............................................................. 7

*Brown v. Google, LLC*,
2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) .......................................................... 8

*Chinitz v. Intero Real Est. Servs.*,
2020 WL 7391299 (N.D. Cal. July 22, 2020) ............................................................. 8

*Churchill Village, L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) .............................................................................. 12, 19

*Coulter-Owens v. Time, Inc.*,
308 F.R.D. 524 (E.D. Mich. 2015) ............................................................................. 8

*Cruz v. Sky Chefs, Inc.*,
2014 WL 7247065 (N.D. Cal. Dec. 19, 2014) .......................................................... 20

*Ehret v. Uber Techs., Inc.*,
148 F. Supp. 3d 884 (N.D. Cal. 2015) ...................................................................... 10

*Evans v. Linden Rsch., Inc.*,
2014 WL 1724891 (N.D. Cal. Apr. 29, 2014) ........................................................... 21

*Fraley v. Facebook, Inc.*,
966 F. Supp. 2d 939 (N.D. Cal. 2013), *aff'd sub nom*; *Fraley v. Batman*, 638 F. App'x 594
(9th Cir. 2016) .......................................................................................................... 16

*Free Range Content, Inc. v. Google, LLC*,
2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) .......................................................... 22

*G. F. v. Contra Costa Cty.*,
2015 WL 4606078 (N.D. Cal. July 30, 2015) ........................................................... 13

*Gold v. Lumber Liquidators, Inc.*,
323 F.R.D. 280 (N.D. Cal. 2017) .............................................................................. 11

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .................................................................................. 14

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 17, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x
  285 (9th Cir. 2020)................................................................................................................. 12, 13, 19

*Hendricks v. StarKist Co.*,
  2015 WL 4498083 (N.D. Cal. 2015) .................................................................................................. 17

*Hodges v. Akeena Solar, Inc.*,
  274 F.R.D. 259 (N.D. Cal. 2011) ........................................................................................................ 9

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2019 WL 536661 (N.D. Cal. Feb. 11, 2019) .................................................................................... 12

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019) ................................................................................... 14

*In re Facebook Biometric Info. Priv. Litig.*,
  326 F.R.D. 535 (N.D. Cal. 2018) ...................................................................................................... 11

*In re Google Referrer Header Priv. Litig.*,
  2023 WL 6812545 (N.D. Cal. Oct. 16, 2023) ................................................................................... 16

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ................................................................................................... 10, 18, 21

*In re Linkedin User Priv. Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015) ...................................................................................................... 21

*In re Nexus 6P Prod. Liab. Litig.*,
  2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ................................................................................. 21

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ............................................................................................................... 20

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................................................... 19

*In re Toys R Us-Delaware, Inc.*,
  300 F.R.D. 347 (C.D. Cal. 2013) ...................................................................................................... 11

*In re Volkswagen "Clean Diesel" Mkt'g, Sales Pracs., and Prods. Liab. Litig.*,
  2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ................................................................................... 20

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
  2016 WL 3648478 (N.D. Cal. 2016) ................................................................................................. 14

*In re: Vizio, Inc., Consumer Privacy Litig.*,
  2019 WL 12966638 (C.D. Cal. July 31, 2019) ................................................................................. 17

*Just Film v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) ............................................................................................................. 9

*Kacsuta v. Lenovo (United States) Inc.*,
  2014 WL 12585783 (C.D. Cal. Sept. 15, 2014) ......................................................................... 11, 16

*Lilly v. Jamba Juice Co.*,
  2015 WL 2062858 (N.D. Cal. May 4, 2015)..................................................................................... 15

iv

*Linney v. Cellular Alaska P'ship*,
 151 F.3d 1234 (9th Cir. 1998) .................................................................................................. 17

*Martinez v. Blu Prod., Inc.*,
 2019 WL 12838199 (C.D. Cal. Oct. 3, 2019) ............................................................................ 9

*Mendoza v. Hyundai Motor Co., Ltd*,
 2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ............................................................................ 14

*Mollett v. Netflix, Inc.*,
 795 F.3d 1062 (9th Cir. 2015) .................................................................................................. 11

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
 339 U.S. 306 (1950) .................................................................................................................. 21

*Mullins v. Premier Nutrition Corp.*,
 2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) .......................................................................... 12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
 221 F.R.D. 523 (C.D. Cal. 2004) .............................................................................................. 20

*Opperman v. Path, Inc.*,
 2016 WL 3844326 (N.D. Cal. July 15, 2016) ............................................................................ 8

*Rael v. Children's Place, Inc.*,
 2021 WL 1226475 (S.D. Cal. Mar. 31, 2021) .......................................................................... 21

*Richards v. Chime Fin., Inc.*,
 2021 WL 2075689 (N.D. Cal. May 24, 2021) .......................................................................... 21

*Rogers v. BNSF Ry. Co.*,
 680 F. Supp. 3d 1027 (N.D. Ill. 2023) ...................................................................................... 15

*Schaffer v. Litton Loan Servicing, LP*,
 2012 WL 10274679 (C.D. Cal. 2012) ...................................................................................... 15

*St. Louis, I.M. & S. Ry. Co. v. Williams*,
 251 U.S. 63 (1919) .................................................................................................................... 15

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) ...................................................................................................... 9

*Torres v. Mercer Canyons Inc.*,
 835 F.3d 1125 (9th Cir. 2016) .................................................................................................... 9

*Valentino v. Carter-Wallace, Inc.*,
 97 F.3d 1227 (9th Cir. 1996) .................................................................................................... 11

*Wakefield v. ViSalus, Inc.*,
 51 F.4th 1109 (9th Cir. 2022) .................................................................................................. 15

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) .................................................................................................................... 8

*Wolin v. Jaguar Land Rover N. Am., LLC*,
 617 F.3d 1168 (9th Cir. 2010) .................................................................................................. 11

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
CASE NO. 3:22-cv-03131-JCS

*Zepeda v. PayPal, Inc.*,
  2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) ............................................................... 20

**Statutes**

18 U.S.C. § 2710(b)(2)(B) ............................................................................................... 4, 8

18 U.S.C. § 2710(c) ............................................................................................................. 4

18 U.S.C. § 2710(c)(2)(A) ............................................................................................... 15

28 U.S.C. § 1715 ............................................................................................................... 20

Cal. Bus. And Prof. Code § 17200 ..................................................................................... 2

Cal. Civ. Code § 1750 ......................................................................................................... 2

**Other Authorities**

Newberg on Class Actions § 3:31 (5th ed.) ........................................................................ 9

**Rules**

Fed. R. Civ. P. 23 ................................................................................................... 7, 19, 21

Fed. R. Civ. P. 23(a) ................................................................................................... vii, 7

Fed. R. Civ. P. 23(a)(1) ....................................................................................................... 8

Fed. R. Civ. P. 23(a)(4) ....................................................................................................... 9

Fed. R. Civ. P. 23(b) ............................................................................................................ 7

Fed. R. Civ. P. 23(b)(3) ............................................................................................. vii, 10

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................... 21

Fed. R. Civ. P. 23(e) .................................................................................................... vii, 2

Fed. R. Civ. P. 23(e)(1)(B) ......................................................................................... 12, 21

Fed. R. Civ. P. 23(e)(1)(B)(i-ii) ......................................................................................... 7

Fed. R. Civ. P. 23(e)(2) ............................................................................................... 12, 13

Fed. R. Civ. P. 23(e)(2)(C) ............................................................................................... 19

Fed. R. Civ. P. 23(e)(2)(C)(i) ........................................................................................... 14

Fed. R. Civ. P. 23(e)(2)(C)(iv) ......................................................................................... 18

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................... 18

Fed. R. Civ. P. 23(e)(3) ..................................................................................................... 18

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
CASE NO. 3:22-cv-03131-JCS

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on February 19, 2025, at 9:30 a.m., before the Honorable Joseph C. Spero of the United States District Court for the Northern District of California, Plaintiffs Brayden Stark, Judd Oostyen, Isaac Belenkiy, Valerie Burton, Laura Goodfield and, Denovias Mack, will and do hereby move the Court, pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (e), for entry of the proposed Final Approval Order and Judgment granting final approval of the proposed settlement of this action.

The Motion is based on this Notice of Motion, the incorporated memorandum of points and authorities, the Declaration of Simon S. Grille ("Grille Decl."), the Declaration of Settlement Administrator Simpluris, Inc. ("Simpluris Decl."), the record in this action, the argument of counsel, and any other matters the Court may consider.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
CASE NO. 3:22-cv-03131-JCS

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs respectfully request the Court grant final approval of their non-reversionary $7,250,000 cash settlement with Patreon, Inc. The settlement has been well received. Consistent with the Court's September 23, 2024 preliminary approval order, Simpluris disseminated over 8 million e-mail notices to Class Members. Nearly 100,000 Class members submitted claims, there are no objections, and only 328 opt outs.[1] Out of an estimated 1.6 million eligible Class Members, at least 6% have made claims so far, exceeding the claims rate for similar VPPA-Pixel settlements to date. Class Counsel expect net payments to fall within their estimated range and all Class Members will benefit from Patreon's disabling of the Pixel from its website, consistent with the VPPA's objective of protecting consumer privacy interests.

This settlement followed heavily contested litigation that included two motions to dismiss, a motion for summary judgment on a novel constitutional issue, extensive written discovery, work with experts on complex computer science and online advertising issues, and ten depositions, including eight depositions of current and former Patreon employees and two non-party depositions. The Honorable Jeremy D. Fogel (Ret.) supervised the parties' negotiations, which lasted nearly a year. The well-developed record gave the parties a sound understanding of the strengths and weaknesses of their positions, and the settlement will provide meaningful relief to Class Members.

Class Members are persons who, between April 1, 2016, and September 23, 2024, requested or obtained video content on the Patreon website (patreon.com) while in the United States and at a time the person had a Facebook account and also had a Patreon account. The settlement provides for business practice changes and cash payment to Class Members and avoids the risks, expense, delay and uncertainty of continued litigation. Patreon vigorously denies liability and contends that the VPPA violates the First Amendment. Patreon's class certification arguments, including the potential application of an arbitration clause in its Terms of Use, could reduce the number of individuals eligible

---

[1] The deadline to submit claims, object, or opt out is January 15, 2025. ECF No. 195. Plaintiffs will update the Court on the final number of claims and opt-outs, and respond to any objections in their reply brief due January 30, 2025. *Id.*

to recover through this litigation or preclude a class-wide recovery altogether. The Settlement avoids the numerous uncertainties associated with trial, including dueling experts who would offer conflicting and highly technical opinions about the internet technology at issue. The settlement satisfies the Northern District's Procedural Guidance for Class Action Settlements and meets all criteria for final approval. Therefore, for the reasons discussed further below, Plaintiffs respectfully ask that the Court enter the proposed Final Approval Order and Judgment.

## II.     STATEMENT OF THE ISSUE TO BE DECIDED

Should the Court grant final approval of the Parties' Settlement under Fed. R. Civ. P. 23(e)?

## III.    BACKGROUND AND PROCEDURAL HISTORY

### A.     Plaintiffs' Allegations and Patreon's Motions to Dismiss.

Plaintiffs filed a Class Action Complaint on May 27, 2022, alleging that Patreon disclosed to Meta the specific video materials its subscribers requested or obtained from its website without first obtaining their consent in the form required under the VPPA. Plaintiffs also asserted claims against Patreon for unjust enrichment and violations of California's Unfair Competition Law ("UCL"), Cal. Bus. And Prof. Code § 17200, *et seq*. and Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*. ECF No. 1.

Patreon moved to dismiss the initial Complaint on August 5, 2022, challenging the sufficiency of Plaintiffs' allegations in support of their VPPA, UCL, and CLRA claims and arguing that the VPPA violates the First Amendment to the United States Constitution. ECF No. 21. On October 13, 2022, the Court granted in part and denied in part Patreon's motion to dismiss with leave to amend and deferred ruling on Patreon's First Amendment challenge until after the deadline for the United States to intervene elapsed. ECF No. 40. Plaintiffs filed a First Amended Complaint ("FAC") on October 27, 2022 (ECF No. 41), which Patreon moved to dismiss on November 23, 2022 (ECF No. 48). The Court rejected Patreon's challenge to Plaintiffs' claims under the VPPA and denied Patreon's constitutional challenge with leave to reassert this argument once the Parties developed a more complete factual record on this issue. ECF No. 59. On January 30, 2024, Plaintiffs filed a Second Amended Complaint to add four new Plaintiffs, but the allegations and claims asserted against Patreon remained unchanged. ECF No. 121.

### B.     Fact and Expert Discovery.

Plaintiffs propounded five sets of document requests, two sets of interrogatories, and two sets of requests for admission to Patreon. Grille Decl., ¶ 13. The Parties negotiated Patreon's document productions, including extensive discussions regarding the search terms Patreon used to identify responsive documents, leading Patreon to produce approximately 38,000 documents. *Id.* Class Counsel reviewed and analyzed Patreon's documents, which provided critical information about Patreon's operations and use of the Meta Pixel and informed Plaintiffs' strategy for depositions, summary judgment, class certification, expert analysis, and settlement. *Id.* Class Counsel also deposed eight current and former Patreon employees and defended the depositions of Plaintiffs Brayden Stark and Judd Oostyen. *Id.* Each Plaintiff also responded to three sets of document requests, two sets of interrogatories, and two sets of requests for admission. *Id.*

Plaintiffs also issued a subpoena seeking critical documents and testimony from Meta relevant to the information Meta extracted. *Id.*, ¶ 14. Following protracted negotiations and a motion to compel Meta's compliance with the subpoena, Plaintiffs ultimately obtained eight productions from Meta and deposed Meta's corporate designee in a proceeding consolidated with a separate VPPA matter. *Id.*

### C.     Summary Judgment and Class Certification.

Following the Court's order on Patreon's motion to dismiss the FAC (ECF No. 59), Plaintiffs served discovery on numerous third-parties to develop the underlying factual record for Patreon's challenge to the VPPA under the First Amendment. Grille Decl., ¶ 9. Additionally, Plaintiffs retained an expert on privacy and the First Amendment and worked with him to produce an expert report regarding the expectations of privacy in intellectual activities and the history and purpose of the VPPA. *Id.*, ¶ 10. Plaintiffs also produced a rebuttal expert report responding to the technical opinions offered in Patreon's expert's report. *Id.* Plaintiffs, over Patreon's objection, supplemented the summary judgment record with additional facts elicited through the depositions of Patreon witnesses. *Id.*, ¶ 11. The Court then heard oral argument on Patreon's motion on April 12, 2024. Prior to the Court's ruling on Patreon's summary judgment motion, the Parties reached an agreement in principle to settle this action. *Id.*

Plaintiffs had fully drafted their motion for class certification and prepared the evidence in support at the time the Parties agreed in principle to resolve this action. *Id.*, ¶ 15.

### D.    The Settlement Negotiations.

The Parties began discussing settlement in summer 2023 when they first mediated before the Judge Fogel on June 27, 2023. Grille Decl., ¶ 16. The Patries continued discussing settlement over the next year, mediating before Judge Fogel again on November 20, 2023, March 5, 2024, and April 16, 2024. *Id.* The Parties ultimately reached an agreement in principle on April 26, 2024, and executed the settlement agreement on August 2, 2024. *Id.*, ¶ 17.

### E.    Settlement Terms and Preliminary Approval.

The Class consists of all persons in the United States who, between April 1, 2016, and September 23, 2024, requested or obtained video content on the Patreon website (patreon.com) while in the United States and at a time the person had a Facebook account and also had a Patreon account. *Id.*, ¶ 18.

Under the Settlement, Patreon will pay $7,250,000.00 to create a non-reversionary cash fund for Class Members. ECF No. 176-1 §§ 1.39, 2.1. Notice costs, administration expenses, attorneys' fees and costs, and service awards awarded by the Court will be deducted from the fund and the balance (the "Net Settlement Fund") will be applied to pay claims. *Id.* at § 1.21. Class Members also receive non-monetary relief through Patreon's removal or disabling of the Meta Pixel on any Patreon web page that includes video content, with Patreon agreeing not to re-install or operate the Meta Pixel on any patreon.com web page that includes video content, except if: (a) the VPPA is amended in relevant part, repealed, or otherwise invalidated; (b) Patreon obtains consent in the form required by the VPPA, 18 U.S.C. § 2710(b)(2)(B); or (c) the Meta Pixel on the relevant Patreon web page otherwise complies with the VPPA. ECF No. 176-1 §§ 2.4-2.5.

Plaintiffs moved for preliminary approval of the Settlement on August 2, 2024. ECF No. 176. The Court heard the motion on September 18, and granted it on September 23. ECF Nos. 188, 192.

## IV.     NOTICE AND SETTLEMENT ADMINISTRATION

### A.     The Class Notice.

The Court's preliminary approval order appointed Simpluris, Inc. as Claims Administrator. ECF No. 192, ¶ 8. As detailed in the Declaration of Simpluris, Inc. ("Simpluris Decl."), Simpluris has implemented the Notice Plan as initially ordered by the Court and subsequently modified. Simpluris Decl. ¶¶ 11-13; ECF No. 176-1 § 6; ECF No. 194 (extending the deadline to distribute Notice from October 18 to November 1 to account for and interruption in the transmission of email notice).

#### 1.     Direct Notice by Email.

Patreon provided Simpluris with a list containing the names and email addresses for each potential Class Member (to the extent Patreon had such information) ("Potential Class List"). The Potential Class List contained records for a total of 8,653,241 individuals, with valid email addresses available for 8,168,662 of those individuals. Simpluris Decl., ¶ 7. The Potential Class List contained 484,579 invalid email addresses, which were excluded from the email notification campaign as a standard best practice. *Id.*, ¶ 8. These emails were designated invalid for several reasons, including being: in an invalid format; flagged for abuse; unable to be authenticated; on a "Do Not Mail" list; or identified as potential spam trap. *Id.*

Between October 12, 2024, and October 31, 2024, Simpluris sent direct email notice to the 8,168,662 potential Class Members for whom a valid email address was available. *Id.*, ¶ 11. This email notice was successfully delivered to 8,097,092 potential Class Members. *Id.* Accordingly, 99% of potential Class Members received notice via direct email. Grille Decl., ¶ 39.

The actual class size, however, is smaller. While the Potential Class List consists of Patreon account holders who accessed video content on patreon.com while in the United States during the Class period, not all these people simultaneously maintained a Facebook account such that the Meta Pixel would pass their video viewing choices and personal information to Meta. Grille Decl., ¶ 38. Based on publicly available data regarding web browsing habits, use of cookie blockers or private browsing, and Facebook login rates, Plaintiffs estimate that about 20% of the 8 million, or 1.6 million people, are Class Members. *Id.* On November 21, 2024, Simpluris initiated a reminder email to Class Members who had not submitted a claim form or a request for exclusion. Simpluris Decl., ¶ 12.

2.      **The Settlement Website and Toll-Free Number.**

Simpluris also established and operates a dedicated Settlement Website ("Website")—https://www.patreonsettlement.com/ —as well as a dedicated toll-free number and email inbox. Simpluris Decl., ¶¶ 9-10. These resources provide real-time information about the Settlement and claims process to potential Class Members and allow them to access the online claim form, FAQs, and other case documents. Simpluris Decl., ¶ 9. The website was made available to the public on October 12, 2024, and has been available without interruption since then. *Id.*

B.      **Claims, Objections, and Requests for Exclusion.**

The deadline to submit a claim, opt out, or object is January 15, 2025. ECF No. 194. As of December 10, Simpluris has received 98,887 total claims. Simpluris Decl. ¶ 23.[2]  Of that total, 98,542 valid claims have been submitted and 345 remain pending as of December 10. *Id.*, ¶ 16. The Claim Form, designed in accordance with the Northern District's Procedural Guidance, allows for ease of use by potential Class Members, who may submit a claim online. Grille Decl. ¶¶ 23-24, 36. Thus far, only 328 Class Members have opted out and no objections have been filed. Simpluris Decl., ¶ 15.

Class Members with questions about the Claim Form or the Settlement can contact Class Counsel or the Administrator. As of December 9, Class Counsel has received 125 inquiries and responded to each promptly. Grille Decl., ¶ 42. Similarly, Simpluris has responded to 509 phone calls and 2,037 emails as of December 10. Simpluris Decl. ¶¶, 10, 13. As of December 10, with 98,887 valid claims submitted, each Class Member will receive over $35. This figure is within the range estimated in the Email Notice and Long Form Notice. ECF Nos. 191-2, 191-3. Moreover, this recovery is comparable to that in other VPPA matters. *See supra* Section V.C.3.i (The Strengths of Plaintiffs' Case, Balanced Against the Risks of Continuing Litigation, Weigh in Favor of Approval). To secure the claims-administration process, Simpluris also employed a series of fraud-prevention measures, including: (a) requiring two data point module login for Settlement Class Members (Unique ID and PIN); (b) an "auto-lock out" feature restricting users from continuously attempting to login and using invalid credentials; (c) the capture and review of various metadata elements used to determine if a

---

[2] In connection with Plaintiffs' Reply brief, Simpluris will submit a further declaration with updated claim, objection, and opt-out numbers before the fairness hearing on January 30, 2025.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
CASE NO. 3:22-cv-03131-JCS

login is attempted by a legitimate source or if by a software programmed to obfuscate identity; and (d) industry standard reCAPTCHA verification. Simpluris Decl., ¶ 17. Further, Claims are subject to review and audit, and Claimants who submit claim forms that do not meet the submission requirements will receive notice and an opportunity to cure deficiencies. *Id.*, ¶ 18; ECF No. 176-1 §§ 3.4–3.5.

### C.    Notice and Administration Expenses.

As of December 10, Simpluris has incurred $185,671.81 in expenses associated with notifying Class Members and administering the Settlement. Simpluris Decl. ¶ 20. As provided under the Settlement Agreement (§ 2.2) and the Court's Order Granting Plaintiffs' Motion for Preliminary Approval (ECF No. 192, ¶ 13), $58,953.20 has been approved as an advance payment to Simpluris from the Settlement Fund for initial costs associated with Notice and Administration Expenses.

Simpluris is on track to complete claims administration on time and anticipates it will further incur approximately $229,471.36 in expenses related to claim intake and processing, the anticipated disbursement activities, and case closure. Simpluris Decl. ¶ 20. The ultimate total is below the not-to-exceed amount ($425,000) provided to the Court. ECF No. 193. All payments to the Claims Administrator from the Settlement Fund are also subject to prior Court approval. ECF No. 192. Simpluris will provide updated declarations regarding its fees and expenses in connection with Plaintiffs' Reply brief and after distribution to eligible Class Members. *See Id.*

## V.    <u>ARGUMENT</u>

### A.    The Proposed Class Should be Certified.

The Court previously found that it "will likely be able to certify the [] proposed class pursuant to Federal Rule of Civil Procedure 23." ECF No. 192, ¶ 3; *see also* FED. R. CIV. P. 23(e)(1)(B)(i-ii) (by granting preliminary approval, the court finds that it will likely grant final approval). There have been no objections and no intervening events that warrant the Court reconsidering its provisional conclusion. *See, e.g.*, *Black v. T-Mobile USA, Inc.*, No. 17-CV-04151-HSG, 2019 WL 3323087, at *2 (N.D. Cal. July 24, 2019) ("Because no facts that would affect these requirements have changed since the Court preliminarily approved the class . . . this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval.").

### 1.    Class Members Are Too Numerous to Be Joined.

For a class to be certified, its members must be so numerous that their joinder would be "impracticable." FED. R. CIV. P. 23(a)(1). Plaintiffs estimate that the Settlement Class consists of approximately 1.6 million people. Grille Decl., ¶ 38. This estimate is derived from Patreon's records, which show that approximately 8 million Patreon subscribers accessed video content on patreon.com while in the United States during the Class Period, and publicly available data indicating that about 20% of the 8 million subscribers simultaneously maintained a Facebook account and other browser settings such that the Meta Pixel would pass their video viewing choices and personal information to Meta. *Id*. Numerosity is thus satisfied.

### 2.    There Are Common Questions of Law and Fact.

"The commonality requirement of Rule 23(a)(2) requires plaintiffs seeking class certification to show that their claims 'depend upon a common contention' that 'is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *A.B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Commonality is "construed permissively" and it does not require that all questions of fact and law be common to the class. *Chinitz v. Intero Real Est. Servs.*, 2020 WL 7391299, at *8 (N.D. Cal. July 22, 2020) (citation omitted). Moreover, the common question does not have to be answered in favor of the class. *See Opperman v. Path, Inc.*, 2016 WL 3844326, at *4 (N.D. Cal. July 15, 2016). Commonality is met because the common contentions in this case revolve around Patreon's use of the Pixel. *See Brown v. Google, LLC*, 2022 WL 17961497, at *14 (N.D. Cal. Dec. 12, 2022) (common questions included whether the defendant was improperly collecting and using private user information).

Here, common questions include: (1) whether Patreon is a "video tape service provider"; (2) whether Patreon intentionally installed the Meta Pixel on its website; (3) whether during the class period, the Meta Pixel on Patreon's website was configured to transmit information constituting "personally identifying information" under the VPPA; and (4) whether Patreon's transmission of its subscribers' personally identifying information was done without consent in the form required by 18 U.S. Code § 2710(b)(2)(B). *See Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 533 (E.D. Mich. 2015)

(finding with respect to the similar Michigan Video Rental Privacy Act that common questions included whether the defendant was a business subject to the law and disclosed identifying information). Because the answers to these questions are at the heart of every VPPA claim, the commonality requirement is met. *See Martinez v. Blu Prod., Inc.*, 2019 WL 12838199, at *3 (C.D. Cal. Oct. 3, 2019) ("[T]here appears to be a number of sufficiently important common questions here including: Did the phones in question include firmware that continuously captured and transmitted Plaintiffs' personally identifiable information?").

### 3.    Plaintiffs' Claims Are Typical of the Class.

A plaintiff's claims are typical under Rule 23(a)(3) "if they are reasonably coextensive with those of absent class members." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016). "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured in the same course of conduct.'" *Id.* (citation omitted). Here, Plaintiffs and Class Members have the same types of claims stemming from the same alleged violations concerning Patreon's transmission of their personal information to Meta via the Pixel, thus satisfying typicality. *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 267 (N.D. Cal. 2011) (typicality met when "[a]ll members of the putative class were allegedly injured by the same course of conduct[.]"); *see also Just Film v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (class representative's "claim is typical of the class because it shares 'some common question of law and fact with class members' claims'") (quoting Newberg on Class Actions § 3:31 (5th ed.)).

### 4.    Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of Class Members.

The test for evaluating adequacy of representation under Rule 23(a)(4) is: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). The test is met here.

Plaintiffs and their counsel do not have any conflicts with Class Members and have vigorously prosecuted this case through pre-complaint investigation, complex motion practice, fact discovery, and

settlement negotiations. Plaintiffs agreed to serve in a representative capacity, communicated frequently with their attorneys, produced documents, responded to multiple rounds of discovery requests, and contributed to the preparation of the complaint. Plaintiffs' declarations detail the time and effort they expended on this litigation. *See* Declarations of Brayden Stark, Judd Oostyen, Laura Goodfield, Isaac Belenkiy, Valerie Burton, and Denovias Mack, submitted herewith.

Class Counsel are experienced consumer advocates and are well qualified to continue serving as Class Counsel. ECF No. 176-3. Class Counsel has decades of experience successfully representing plaintiffs and classes in complex class action litigation, including in consumer privacy cases. *See* Grille Decl., ¶ 46. Class Counsel has diligently prepared this matter for trial in accordance with the Court's schedule and presented this settlement to the Court in conformity with this District's guidelines. *Id.*, ¶¶ 3-15, 22-40. Adequacy is thus satisfied.

## B.    Rule 23(b)(3) is Satisfied For Settlement Purposes.

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members," and that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The trial manageability criteria of Rule 23(b)(3)(A) drop out of the analysis when "certifying a settlement class, where, by definition, there will be no trial." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019). As the Court preliminarily found, common questions predominate over individualized questions for settlement purposes, and a class action is a superior method for resolving this controversy. ECF No. 192, ¶¶ 4(b), (e).

### 1.    Common Questions of Fact and Law Predominate.

The predominance analysis "focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 894-95 (N.D. Cal. 2015) (citation omitted). In the settlement context, predominance is ordinarily satisfied when the claims arise out of the defendant's common conduct. *See, e.g.*, *In re Hyundai & Kia*, 926 F.3d at 559 ("We have held that these types of common issues, which turn on a common course of conduct by the defendant, can establish predominance in nationwide class actions."); *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D.

280, 288, 290-93 (N.D. Cal. 2017) (holding that predominance was satisfied where claims were based on the same defective conduct); *Kacsuta v. Lenovo (United States) Inc.*, No. 13-cv-00316 CJC (RNBx), 2014 WL 12585783, at *3 (C.D. Cal. Sept. 15, 2014) (common issues "significantly outweigh any individual questions" where the claims arise out of the "same alleged course of conduct" by the defendant).

To establish liability under the VPPA, a plaintiff must show that "(1) a defendant is a 'video tape service provider,' (2) the defendant disclosed 'personally identifiable information concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Each Class Member's personal information was allegedly transmitted to Meta via Patreon's Pixel without consent in violation of the VPPA. So, whether Patreon violated the VPPA in its implementation of the Meta Pixel can be determined in a single class proceeding. Predominance is thus met. *See Alcazar v. Fashion Nova, Inc.*, 2022 WL 19975445, at *2 (N.D. Cal. Sept. 6, 2022) ("Whether Fashion Nova's website complies with those laws or whether it violates them can be answered in one fell swoop."). Predominance is further satisfied because the VPPA's statutory damages obviate the need for complex, individualized damages calculations. *See In re Toys R Us-Delaware, Inc.*, 300 F.R.D. 347, 377 (C.D. Cal. 2013) ("Courts have been more willing to find predominance where, as here, the class seeks only statutory damages.").

### 2.    A Class Action is a Superior Means of Resolving This Case.

A class action is superior under Rule 23(b)(3) when "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). When, as in this case, individual recoveries would be relatively small and individual litigation would needlessly duplicate discovery and expert work, it is "an inferior method of adjudication." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010); *see In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 548 (N.D. Cal. 2018) (statutory damages not enough to incentivize individual litigation due to high cost of discovery and Facebook's vigorous defense); *Alcazar*, 2022 WL 19975445, at *4 (availability of $4,000 in statutory damages was not enough to incentivize individual litigation because "that sum pales in comparison with the cost of

pursuing litigation") (citation omitted). "Cases, such as this, 'where litigation costs dwarf potential recovery' are paradigmatic examples of those well-suited for classwide prosecution." *Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS, 2016 WL 1535057, at *8 (N.D. Cal. Apr. 15, 2016).

Therefore, consistent with Rule 23(e)(1)(B), the Court will likely be able to certify the Class in this case.

### C.    The Settlement is Fair, Reasonable and Adequate.

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 536661, at *5 (N.D. Cal. Feb. 11, 2019) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)). A court may approve a proposed class action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).[3]

---

[3] Before Rule 23 was amended in December 2018, the Ninth Circuit had enumerated a similar list of factors to consider in evaluating a proposed class settlement. *See Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (enumerating the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement"). In the notes accompanying the Rule 23 amendments, the Advisory Committee explained that the amendments were not designed "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Accordingly, courts apply the framework of Rule 23 while "continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 17, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

As explained more fully below, the proposed Settlement is fair, reasonable, and adequate. Class Counsel is highly experienced in complex class action litigations, actively litigated the case for more than two and a half years, and reached an arms-length settlement under the supervision of a mediator. The Settlement provides meaningful monetary and non-monetary relief for Class Members, particularly when balanced against the risks and expenses of continuing litigation.

### 1. Class Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class.

Plaintiffs and Class Counsel have vigorously prosecuted this case through pleading motions, discovery, summary judgment, mediation, and preparing their motion for class certification. Class Counsel thus "possessed sufficient information to make an informed decision about settlement." *Hefler*, 2018 WL 6619983 *6. Against this backdrop, in its Preliminary Approval Order the Court found that Plaintiffs and Class Counsel adequately represented the interests of the Settlement Class. ECF No. 192, ¶¶ 2(a), 4(d). The ongoing notice program and Class Counsel's other work to advance the proposed settlement further confirm the Court's previous finding and supports a finding that this element is satisfied.

### 2. The Settlement Is the Product of Arm's Length Negotiations Among Experienced Counsel.

The Settlement is the product of serious, non-collusive, arm's length negotiations by experienced counsel with the assistance of a well-respected, experienced mediator. *See, e.g., G. F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) (noting that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive"); *Hefler*, 2018 WL 6619983 *6 (noting that the settlement "was the product of arm's length negotiations through two full-day mediation sessions and multiple follow-up calls" supervised by a mediator); Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment (stating that "involvement of a neutral" in negotiations "may bear on whether they were conducted in a manner that would protect and further the class interests.").

As this Court has already found, "[t]he Class Settlement Agreement was negotiated at arm's length with the assistance of the Hon. Jeremy D. Fogel (Ret.), a former District Judge of the Northern District of California and experienced private mediator." ECF No. 92, ¶ 2(b). Before agreeing on the

terms of the Settlement, the parties engaged in extensive factual investigation, which included eight depositions of current and former Patreon employees, the production and review of thousands of pages of documents, comprehensive written discovery, and hard-fought motion practice. Grille Decl., ¶¶ 3-15. The record was thus sufficiently developed to fully inform the parties and enable them to adequately evaluate the strengths and weaknesses of their respective positions and risks to both sides if the case did not settle.

Further, Class Counsel has acted in the best interests of the Class, and there is no evidence to the contrary—for example, by compromising the claims of the Settlement Class in exchange for higher fees—and there has been no agreement concerning attorneys' fees or otherwise disadvantaging the Class. *See In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) ("There is no evidence that the parties colluded here. Counsel's fee request is proportionate to the settlement fund, there is no clear sailing provision, and no funds revert").

### 3. The Relief Under the Proposed Settlement is Adequate.

#### i. The Strengths of Plaintiffs' Case, Balanced Against the Risks of Continuing Litigation, Weigh in Favor of Approval.

Under Rule 23(e)(2)(C)(i), courts in the "Ninth Circuit evaluate 'the strength of the plaintiff's case; complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial.'" *In re Extreme Networks*, 2019 WL 3290770, at *8 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). The Northern District has recognized that "[a]pproval of a class settlement is appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'" *Mendoza v. Hyundai Motor Co.*, Ltd, No. 15-CV-01685-BLF, 2017 WL 342059, at *6 (N.D. Cal. Jan. 23, 2017) (citation omitted). Further, "a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478, at *6 (N.D. Cal. 2016) (cleaned up).

While Plaintiffs are confident in the strength of their case, Patreon has consistently and vigorously denied liability. Patreon's First Amendment challenge to the VPPA, which remained unresolved at the time the parties settled this action, presents considerable risk in this action in

particular. This novel defense would terminate Plaintiffs' claims or result in a lengthy appeals process if successful, while the dearth of authority on point underscores the unpredictability of the outcome. Moreover, Plaintiffs had not filed their motion for class certification at the time the parties agreed to resolve this matter in principle. Although Plaintiffs were confident they could certify a class, the inherent uncertainty accompanying Plaintiffs' motion presented a serious risk to achieving a successful outcome in this matter. Plaintiffs thus recognized that they faced significant risks at the summary judgment, class certification, trial, and likely post-trial appeal. *See Aarons v. BMW of N. Am., LLC*, 2014 WL 4090564, at *10 (C.D. Cal. 2014) ("In the absence of a settlement, it is very likely that this case could ultimately be decided at trial by a 'battle of the experts' over the existence of a [defect] . . . taking those issues to trial might be more challenging for Plaintiffs than for BMW, given complex technical nature of the . . . system."); *Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2015 WL 2062858, at *3 (N.D. Cal. May 4, 2015) ("[F]act-intensive inquiries and developing case law present significant risks to Plaintiffs' claims and potential recovery.").

　　　　If Plaintiffs prevailed at trial and in a post-trial appeal, Patreon would likely face a judgment exceeding $1 billion given the VPPA's statutory damage measure of $2,500 per claimant. *See* Pltfs. Prelim. App. Mot. at 12 (ECF No. 176). Yet Patreon would argue that damages under the VPPA are discretionary. *See* 18 U.S.C. § 2710(c)(2)(A) (A "court *may* award actual damages but not less than liquidated damages in an amount of $2,500) (emphasis added); *Rogers v. BNSF Ry. Co.*, 680 F. Supp. 3d 1027, 1041 (N.D. Ill. 2023) (finding that the Illinois Biometric Information Privacy Act's use of "may" meant that damages were discretionary). And even if a jury awarded damages for the full amount available under the VPPA, Patreon would likely argue that it violates its due process rights because aggregated statutory damages, even if constitutional on a per-claimant basis, may be limited when they become "wholly disproportioned" and "obviously unreasonable" in relation to the statute's goals and prohibited conduct. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1123 (9th Cir. 2022) (quoting *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919)). Importantly, it is also possible Plaintiffs would not prevail at trial, thus depriving Class Members of any recovery. *See Schaffer v. Litton Loan Servicing, LP*, 2012 WL 10274679, at *11 (C.D. Cal. 2012) ("Estimates of

1    what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the

2    expense of litigating the case, and the expected delay in recovery (often measured in years).").

3        By comparison, the settlement before the Court provides certain and immediate relief to the

4    consumers in this class. *See, e.g.*, *Kacsuta*, 2014 WL 12585783, at *4 (risks arising from a vigorous

5    defense where, as here, a motion to dismiss had been granted in part, weighed in favor of settlement).

6    This means that the Settlement will provide approximately 98,887 Claimants (and counting) with cash

7    payments, estimated to be over $35 per Claimant. *See* Simpluris Decl., ¶ 23.[4]  This represents at least a

8    6% claims rate, which exceeds the claim rate of similar VPPA-Pixel cases and comports with

9    Plaintiffs' initial estimate. *See* Prelim. App. Mot. at 6 (ECF No. 176) (estimating a claims rate between

10   1% and 10%; *Fiorentino v. FloSports, Inc.*, Case No. 1:22-cv-11502-AK, ECF No. 72 (D. Mass. Feb.

11   16, 2024) (3.3% claims rate); *Ambrose v. Boston Globe Media Partners, LLC*, Case No. 1:22-cv-

12   10195-RGS, ECF Nos. 63, 67 (D. Mass. Sept. 6, 2023) (estimated 2.6% claims rate); *Beltran, Jr., et al.

13   v. Sony Pictures Entertainment Inc., d/b/a CrunchyRoll*, Case No. 1:22-cv-04858, ECF No. 53 (N.D.

14   Ill. Dec. 7, 2023) (1.75% claims rate).

15       Further, the amount recovered per Class Member is consistent with, if not exceeds, that in

16   comparable cases. *See Vela v. AMC Networks, Inc*., No. 1:23-cv-02524-ALC, ECF No. 59 (S.D.N.Y.)

17   (approximately $9 per); *Beltran, Jr., et al. v. Sony Pictures Entertainment Inc., d/b/a CrunchyRoll*,

18   Case No. 1:22-cv-04858, ECF No. 52 (N.D. Ill. Dec. 7, 2023) (approximately $30.94 at the time of

19   filing); *Fiorentino v. FloSports, Inc.*, Case No. 1:22-cv-11502-AK, ECF No. 72 (D. Mass. Feb. 16,

20   2024) (approximately $85). The recovery here is also substantial when compared to that in other

21   consumer class actions. *See, e.g., In re Google Referrer Header Priv. Litig.*, No. 5:10-CV-04809-EJD,

22   2023 WL 6812545, at *2 (N.D. Cal. Oct. 16, 2023) ($7.70 payment per settlement class member); *In re

23   Google Plus Profile Litig.*, No. 5:18-cv-06164-EJD (VKD), ECF No. 96 at 5-6 (N.D. Cal. Oct. 15,

24   2020) ($12 or $5 payment per class member); *Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 943

25   (N.D. Cal. 2013), *aff'd sub nom*; *Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016) ($15 payment per

26   ───────────

27   [4] Although some claims may be denied after an audit (*see* ECF No. 176-1 § 3.4), the Claim Form was designed to ensure Class Members can easily submit a claim without the need to submit extensive supporting documentation.  Plaintiffs therefore anticipate that nearly all Claimants will be eligible to

28   recover.

class member); *Poertner v. The Gillette Co.*, No. 6:12-v-00803-GAPDAB, ECF No. 168 (M.D. Fla. Aug. 21, 2014) ($6- $12 payment per class member); *In re: Vizio, Inc., Consumer Privacy Litig.*, No. 8:16-ml-02693-JLS-KES, 2019 WL 12966638, at *4 (C.D. Cal. July 31, 2019) (approving settlement in VPPA case that provided each claimant with an estimated $16.50 at a claims rate of 4.1%).

In addition, all Class Members will be afforded relief through Patreon's removal of the Meta Pixel from any web page on the Patreon website that includes video content and its agreement not to re-install or operate the Meta Pixel on a Patreon web page with video content except under specific circumstances. SA at §§ 2.4-2.5.

In light of Patreon's defenses, as well as the fact that a trial date is not set and thus it is unknown when, if any, resolution through trial would occur, the Settlement delivers a timely and substantial recovery for the class. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (settlement amounting to a fraction of the potential total recovery was reasonable given the significant risks of going to trial); *Hendricks v. StarKist Co.*, 2015 WL 4498083, at *7 (N.D. Cal. 2015) (settlement representing "only a single-digit percentage of the maximum potential exposure" was reasonable given the risks).

### ii.    Method of Distribution of Settlement Funds.

The process for distributing funds is straightforward and readily accessible to Class Members. Class Members with an Approved Claim will be entitled to their *pro rata* share of the Net Settlement Fund. The Claim Form simply requires Claimants to provide a link to their Facebook profile and attest to the fact that they accessed video content on Patreon.com while having an active Facebook account and provide a link to their Facebook profile. SA at §§ 3.2-3.3. This information serves as a reasonable proxy for Class Membership when combined with Patreon's records and expedites payments to Class Members by avoiding the delay and expense of a forensic data retrieval exercise over the objections of nonparty Meta.

While submitting a claim, Class Members are given several digital payment options to choose from. To the extent Class Members have questions with the claims-submissions process, they can turn to the FAQ on the settlement website, a toll-free line with a full menu of settlement information, or they can email Simpluris or Class Counsel for a prompt response to any inquiry. Simpluris Decl., ¶¶ 9-

10; Grille Decl., ¶¶ 37, 41-43. Claimants are also afforded a reasonable opportunity to cure defective claim submissions during a period of up to 60 days ("Cure Period"). ECF No. 176-1 § 3.5. The method of distribution therefore provides no impediments to getting money into the hands of Eligible Claimants.

### iii. Attorneys' Fees and Expenses

The parties have reached no agreements regarding the amounts of attorneys' fees, expenses, and service awards to be paid. Grille Decl., ¶ 21; *see, e.g., In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 569-70 (en banc) (rejecting objection because counsel "did not reach an agreement with the automakers regarding the amount of attorney's fees to which they were entitled," which "[p]rovid[es] further assurance that the agreement was not the product of collusion"). The payment of attorneys' fees, expenses, and service awards, if any, is subject to approval of the Court based on a finding that such amounts are fair and reasonable.[5]  Further, consistent with this District's Procedural Guidance for Class Action Settlements, Class Counsel is moving for an award of attorneys' fees thirty-five days prior to the deadline for Class Members to object to the Settlement. *See* ECF No. 195. At the time of submission, there are no objections to the Settlement. Simpluris Decl., ¶ 15. There is thus no aspect of the Class Settlement Agreement regarding the payment of attorneys' fees and expenses that raises any concern about the reasonableness, fairness, or adequacy of the Class Settlement.

### iv. Other Agreements.

The Court is also required to consider "any agreements required to be identified under Rule 23(e)(3)," which requires the parties to identify "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). There are no other agreements to disclose under Rule 23(e)(3).

### 4. The Settlement Treats All Class Members Equitably.

Rule 23(e)(2)(D) asks whether "the proposal treats class members equitably relative to each other."  The crux of the inquiry is whether the agreement "improperly grant[s] preferential treatment to

---

[5] Pursuant to the schedule in the Court's order preliminarily approving the Settlement and the subsequent modification to that schedule, Plaintiffs have submitted a motion for attorneys' fees concurrently herewith.  *See* ECF Nos. 192, 194.

class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted). The Settlement readily satisfies this requirement because Class Members are treated equally; all Class Members benefit from the non-monetary relief and those who submit a valid claim will receive a proportional share of the Net Settlement Fund. *See* Grille Decl., ¶ 22, 29; ECF No. 176-1 § 3.8; *Hefler*, 2018 WL 6619983, at *12 ("The allocation plan disburses the Settlement Fund to class members on a pro rata basis based on the relative size of the potential claims that they are compromising. This type of pro rata distribution has frequently been determined to be fair, adequate, and reasonable.") (citation omitted) (internal quotation marks omitted). The Settlement avoids unnecessary distinctions between Claimants who have suffered nearly identical injuries by distributing an equal share of the Net Settlement Fund to all Class Members with a valid claim, and thus all Class Members are treated equitably. *See Hefler*, 2018 WL 6619983, at *12.

**5.    The Settlement Satisfies the Remaining Ninth Circuit Approval Factors.**

In addition to the framework of Rule 23 as amended in 2018, Courts "continu[e] to draw guidance from the Ninth Circuit's factors and relevant precedent," in evaluating a proposed class settlement. *Hefler*, 2018 WL 6619983, at *4; *Churchill*, 361 F.3d at 575 (courts should consider "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement"). Many of these factors, such as the strength of Plaintiffs' case, the risk and duration of further litigation, and the amount offered, overlap with the Rule 23(e)(2)(C) factors and are addressed above. The remainder favor final approval as well, as described below:

**i.    Class Members' Response Has Been Positive**

As of December 10, out of the 8,097,092 potential Class Members contacted, there were 328 opt-outs and zero objections. Simpluris Decl., ¶ 15. In comparison, there have been 98,887 Claimants so far, and the Claim period will remain open for another month. *Id.*, ¶¶ 14, 16. These figures represent a very positive response. *See Churchill*, 361 F.3d at 577 (noting a court may infer appropriately that a class action settlement is fair, adequate, and reasonable when few class members object to it); *Zepeda v.*

*PayPal, Inc.*, 2017 WL 1113293, at *16 (N.D. Cal. Mar. 24, 2017) ("[T]he indisputably low number of objections and opt-outs, standing alone, presents a sufficient basis upon which a court may conclude that the reaction to settlement by the class has been favorable); *Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."). Plaintiffs will submit updated opt-out, objections, and claims statistics when submitting their reply brief in support of final approval.

### ii.    Class Counsel Endorses the Settlement

In considering whether to grant final approval, courts afford significant weight to the opinions of experienced class counsel who are familiar with the litigation. *See In re Volkswagen "Clean Diesel" Mkt'g, Sales Pracs., and Prods. Liab. Litig.*, 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("Courts afford 'great weight to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'") (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)). This is because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Class Counsel is experienced in complex class action litigation and settlement, including in complex consumer cases like this one. Grille Decl., ¶ 46. Based on this experience, Class Counsel believe that the Settlement provides a positive outcome for Class Members and, in light of the uncertainties and risks in continued litigation, recommends its approval.

### iii.    The Presence of a Government Participant

On December 5, 2022, the United States intervened to argue in support of the constitutionality of the Video Privacy Protection Act following Patreon's First Amendment challenge on summary judgment. ECF No. 49. However, the United States has taken no position with respect this Settlement. Additionally, the Attorney General of the United States and Attorneys General of each State were notified of the proposed Class Settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715. Simpluris Decl., ¶ 5. As of December 10, 2024, Simpluris has only received one request from an Attorney General to re-send the CAFA exhibits, which Simpluris re-sent. Simpluris has not received any questions or indications of intention to intervene from any state or federal Attorney General. *Id.*, ¶ 6.

1

### D.    The Class Notice Satisfied Due Process and Rule 23.

2    "A binding settlement must provide notice to the class in a 'reasonable manner'" under Rule

3    23(c)(2)(B) and 23(e)(1)(B). *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 567 (en banc). Due

4    process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties

5    of the pendency of the action and afford them an opportunity to present their objections." *Mullane v.*

6    *Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

7    The Court previously approved the parties' proposed class notice procedures, which used plain

8    language and relied on direct email notice and the creation of a settlement website and toll-free

9    telephone number to assist potential Class Members. ECF No. 192, ¶¶ 7-12. The notice program fully

10    complies with Rule 23 and the mandates of due process. *See Richards v. Chime Fin., Inc.*, No. 19-CV-

11    06864-HSG, 2021 WL 2075689, at *5 (N.D. Cal. May 24, 2021) (finding email notice and notice on

12    settlement website compliant with Rule 23(c)(2)(B); *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573,

13    586 (N.D. Cal. 2015) (noting "the Court approved a notice plan involving direct email notice, a

14    settlement website and a toll-free telephone number, as consistent with Rule 23(c)(2)(B)"); *Rael v.*

15    *Children's Place, Inc.*, No. 16-CV-370-GPC-LL, 2021 WL 1226475, at *14 (S.D. Cal. Mar. 31, 2021)

16    (approving notice plan primarily relying on email and settlement website); *Evans v. Linden Rsch., Inc.*,

17    No. C-11-01078 DMR, 2014 WL 1724891, at *3 (N.D. Cal. Apr. 29, 2014) (similar).

18    Simpluris executed a thorough notice campaign that resulted in 99% of potential Class

19    Members receiving direct notice of the Settlement. *See* Simpluris Decl., ¶¶ 7, 11. In addition, on

20    November 21, 2024, Simpluris initiated a reminder email to Class Members who had not submitted a

21    claim form or a request for exclusion. *Id.* ¶ 12. To assist potential Class Members and provide

22    information to the largest number individuals, Simpluris also maintains the Settlement Website and a

23    dedicated toll-free number and email inbox. Simpluris Decl., ¶¶ 9-10. The Settlement Website also

24    offers a video explaining the Claim Form. *Id.*, ¶ 9. The Settlement Notice thus represents the best

25    notice practicable. *See, e.g., In re Nexus 6P Prod. Liab. Litig.*, 2019 WL 6622842, at *7 (N.D. Cal.

26    Nov. 12, 2019) (finding notice that reached "approximately 77% of class members" satisfied Rule 23

27    and granting final approval); *Free Range Content, Inc. v. Google, LLC*, 2019 WL 1299504, at *6 (N.D.

28

1  Cal. Mar. 21, 2019) ("Notice plans estimated to reach a minimum of 70 percent are constitutional and

2  comply with Rule 23.") (brackets and internal quotation marks omitted).

3      As there is no alternative method of notice that would be more practicable or likely to notify

4  Class Members, the class notice procedures used here constitute the best practicable notice to Class

5  Members and comply with the requirements of Due Process.

6  **VI.   CONCLUSION**

7      For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court enter

8  the proposed order certifying the Settlement Class, appointing Simon Grille of Girard Sharp LLP as

9  Settlement Class Counsel, appointing Class Plaintiffs to represent the Settlement Class, and granting final

10  approval of the Class Settlement.

11

12  Dated: December 11, 2024                    Respectfully submitted,

13                                              */s/ Simon S. Grille*
                                                Adam E. Polk (SBN 273000)
14                                              Simon S. Grille (SBN 294914)
                                                Trevor T. Tan (SBN 280145)
15                                              Reid Gaa (SBN 330141)
16                                              **GIRARD SHARP LLP**
                                                601 California Street, Suite 1400
17                                              San Francisco, CA 94108
                                                Telephone: (415) 981-4800
18                                              Facsimile: (415) 981-4846
19                                              apolk@girardsharp.com
                                                sgrille@girardsharp.com
20                                              ttan@girardsharp.com
                                                rgaa@girardsharp.com
21
22                                              *Attorneys for Plaintiffs*
23
24
25
26
27
28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
CASE NO. 3:22-cv-03131-JCS

1

## <u>CERTIFICATE OF SERVICE</u>

2        I hereby certify that on December 11, 2024, I electronically filed the foregoing document with

3   the Clerk of the Court using the CM/ECF system, which will automatically send notification of the

4   filing to all counsel of record.

5

6                                 */s/ Simon S. Grille*
                                 Simon S. Grille

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
CASE NO. 3:22-cv-03131-JCS