Adam E. Polk (SBN 273000)
Simon Grille (SBN 294914)
Trevor T. Tan (SBN 280145)
Reid Gaa (SBN 330141)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
apolk@girardsharp.com
sgrille@girardsharp.com
ttan@girardsharp.com
rgaa@girardsharp.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRAYDEN STARK, JUDD OOSTYEN, ISAAC BELENKIY, VALERIE BURTON, LAURA GOODFIELD and, DENOVIAS MACK, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PATREON, INC.,<br><br>Defendant. | Case No. 3:22-cv-03131-JCS<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES AND EXPENSES**<br><br>Judge:      Hon. Joseph C. Spero<br>Date:        February 19, 2025<br>Time:       9:30 a.m.<br>Courtroom: Via Zoom |

## I. INTRODUCTION

Plaintiffs request that the Court finally approve their settlement with Patreon, award attorneys' fees equal to 30% of the settlement fund, reimburse Class Counsel's litigation expenses, and grant service payments to each of the class representatives in the amounts requested. The Court thoroughly reviewed the settlement at preliminary approval. Notice was given in accordance with the Court's preliminary approval order. The response of Class Members confirms the fairness of the settlement and claims procedure. There was no objection to the claim procedure, and over 105,000 Class Members submitted claims. These Class Members each will receive a cash payment over $40. Patreon has removed or disabled the Pixel from its webpages with video content, as set forth in the settlement agreement. This case was thoroughly litigated and achieved its objectives, and the results speak for themselves.

There is a single, conditional objection to the settlement and no objection to the fee application or the request for service awards. Laura Hill, represented by Ted Frank of the Hamilton Lincoln Law Institute Center for Class Action Fairness, is concerned that, depending on the volume of Class Member claims, the entire recovery could be distributed *cy pres*. Hill's concern is now moot because the claims deadline has passed and there is no chance the recovery will go entirely to a *cy pres* beneficiary.

Hill also points out that some Class Members may not claim their payments, leaving a "remainder" fund. Hill argues that any remainder should be distributed to Class Members and current technology allows payments as low as $1 to be processed efficiently. There are other costs associated with redistribution, however, and in Class Counsel's experience, most people consider payments under $10 something of a nuisance. But the Court need not address Hill's concerns at this time, as there is no proposed *cy pres* distribution before the Court. Objections to a *cy pres* remainder should only be addressed when it becomes clear there will be funds left over. And should there be a proposed *cy pres*, Class Counsel have no objection to Hill being heard, assuming she disagrees with the proposed recipient.

Accordingly, Plaintiffs respectfully request that the Court grant final approval, and award fees, expenses, and service awards in the amounts requested. Plaintiffs further request that the Court approve an interim payment to the Claims Administrator, in accordance with paragraph 13 of the Preliminary Approval Order, to compensate the Administrator for the costs it has incurred to date in connection with notice and administration.

## II. ARGUMENT

### A. The Reaction of the Class Shows That the Settlement Is Fair, Reasonable, and Adequate.

The claims rate is favorable in comparison to similar privacy class actions, there are few opt outs, and only one objection.

Consumer class actions frequently have claims rates between 3 to 5 percent. *Munday v. Navy Fed. Credit Union*, 2016 WL 7655807, at *8 n.1 (C.D. Cal. Sept. 15, 2016). The Settlement Administrator has received 105,378 claims out of approximately 1.6 million eligible Class Members—a claims rate of about 6.5%.[1] Declaration of Meagan Brunner ("Brunner Decl."), ¶ 7. The robust response from the Class favors settlement approval. *See In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) (approximately 6% claims rate represented a "positive reaction by the class"); *Shuman v. SquareTrade Inc.*, 2023 WL 2311950, at *4 (N.D. Cal. Mar. 1, 2023) ("This appears to reflect a claims rate of about 6 percent. Courts have approved settlements with significantly lower claims rates.").

"Very few objections and opt-outs create a strong presumption that the Settlement is beneficial to the Class and thus warrants final approval." *Hashemi v. Bosley, Inc.*, 2022 WL 18278431, at *6 (C.D. Cal. Nov. 21, 2022). There has only been one objection, which as discussed below, is conditional and presents no impediment to final approval. The near absence of objections strongly favors approving the Settlement. *See In re Transpacific Passenger Air Transportation Antitrust Litig.*, 2015 WL 3396829, at *3 (N.D. Cal. May 26, 2015) ("As for objections, there is just one, despite a class of

---

[1] As discussed in Plaintiffs' Motion for Final Approval, Plaintiffs estimate that about 20% of the 8 million people who received notice, or 1.6 million people, are eligible Class Members. *See* ECF No. 197 at page 13 of 31.

hundreds of thousands. This alone suggests that the settlements are fair"), *aff'd*, 701 F. App'x 554 (9th Cir. 2017); *Kacsuta v. Lenovo (United States) Inc.*, 2014 WL 12585787, at *5 (C.D. Cal. Dec. 16, 2014) (the fact there were only two objections demonstrated that "the reaction of the class to settlement has been almost entirely positive").

The Settlement Administrator received 1,287 opt outs, including 927 purported opt outs compiled by a non-party claim aggregator, Lexclaim Recovery Group. Brunner Decl., ¶ 6.[2] The opt outs represent a tiny fraction of the 1.6 million Class Members and an even smaller percentage of the noticed population. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (upholding settlement with 500 opt outs out of 90,000 "notified class members"); *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *9 (N.D. Cal. May 25, 2023) (finding that the "low number . . . of opt-outs relative to the size of the class weighs in favor of approving the Settlement" where 1,733 exclusion requests we received out of 718,651 eligible class members); *Quiruz v. Specialty Commodities, Inc.*, 2020 WL 6562334, at *7 (N.D. Cal. Nov. 9, 2020) (noting that "[o]pt-out percentages of nearly 5% have been deemed so 'overwhelmingly positive' as to support approval").

The reaction of the Class supports approval.

**B.      The Hill Objection Presents No Barrier to Final Approval.**

In considering the lone objection, "the Court must evaluate the objection[] to determine whether [it] suggest[s] serious reasons why the proposed settlement might be unfair." *Hendricks v. Starkist Co*, 2016 WL 5462423, at *6 (N.D. Cal. Sept. 29, 2016) (citation omitted).

Nothing about the Hill objection suggests the settlement is unfair and cannot be approved. Section 3.11 of the Settlement Agreement provides in pertinent part that if "a *pro rata* redistribution would result in each … Class Member receiving less than $10, the uncashed funds will be distributed, subject to Court approval, to a nonprofit organization focused on consumer privacy protection that has not filed an amicus brief in this Action or in any other action alleging claims under the Video Privacy

---

[2] Lexclaim has brought an action against Patreon on behalf of 927 persons who purportedly assigned their claims to Lexclaim. *See Lexclaim Recovery Group US LLC v. Patreon, Inc.*, No. 3:25-cv-428-RFL. On January 23, this Court ruled that *Lexclaim v. Patreon* is unrelated to this action. ECF No. 203. Plaintiffs take no position as to the validity of the Lexclaim opt-outs.

Protection Act." ECF No. 176-1 at 11. Hill objects that, depending on the volume of Class Member claims, the entire recovery could be distributed to a *cy pres* beneficiary. Hill's concern is moot because the claims deadline has passed and there are approximately 105,000 valid claims, resulting in per-claimant payments exceeding $40, and there is no possibility of the entire recovery going to *cy pres*. Brunner Decl., ¶¶ 7, 10.

Hill also points out that the Settlement Agreement does not identify the *cy pres* beneficiary. Hills asks to be heard if there is such a proposed *cy pres* distribution. *Id.* at 7-8. Plaintiffs have no objection to Hill being heard.[3]

### 1. There is No Possibility That the Entire Settlement Fund Will be Paid to a *Cy Pres* Beneficiary.

To preserve her rights, Hill lodged a contingent objection "concerning the $10 minimum for class claimants, and most especially if it results in the diversion of the entire settlement." *Id.* at 1 (acknowledging that as of December 11, 2024, there were less than 100,000 claims, but noting that "finalized claims figures sometimes vary drastically from those initially reported."). Hill recognized her concerns might be mooted, noting that while the total number of valid claims may not be finalized because of the 60-day cure process, "a rough final number would likely establish there's no risk that the *entire* settlement might be diverted." ECF No. 201 at 7. The claims deadline has passed, and the Settlement Administrator has received 105,078 valid claims. Brunner Decl., ¶ 7. The entire settlement will not be paid to *cy pres* and Hill's concern is moot.

If there is a residual, in accordance with section 3.11, the Administrator will attempt to redistribute it to Class Members. But there are costs associated with redistribution, including data preparation and validation, postage and check printing for Class Members who were unable to access digital payments, skip tracing for undeliverable checks, and related staff time. If, after factoring in the costs of redistribution, the amount leftover is so low that the redistribution payments would become more of a nuisance than a benefit to Class Members, then the Settlement Agreement provides for a *cy pres* distribution, subject to Court approval.

---

[3] Hill has submitted a declaration purporting to establish her standing as a Class member. Plaintiffs assume for purposes of their reply that Hill has standing but respectfully reserve their position.

4
PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR FINAL APPROVAL AND MOTION FOR ATTORNEYS' FEES
CASE NO. 3:22-cv-03131-JCS

### 2. Hill's Concern With the Identity of the Cy Pres Beneficiary is Premature.

Hill also objects that the *cy pres* beneficiary has not been identified. ECF No. 201 at 4. But "the Ninth Circuit observed also that issues related to the identity of a *cy pres* beneficiary are not generally ripe until there are funds that remain unclaimed." *Martinez v. Semi-Tropic Coop. Gin & Almond Huller, Inc.*, 2022 WL 11329840, at *6 (E.D. Cal. Oct. 19, 2022) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (explaining that the issue of the *cy pres* provision was not "ripe" because the "trigger point has not been reached; no *cy pres* disbursement is imminent; and the fund in this case may well be depleted before *cy pres* kicks in.")); *see Hartless v. Clorox Co.*, 273 F.R.D. 630, 642 (S.D. Cal. 2011) ("The Ninth Circuit has found that identification of *cy pres* recipients is not ripe until it is determined there will be unclaimed funds.").

Consistent with the Ninth Circuit's conclusion in *Rodriguez*, other district courts in the Ninth Circuit have deferred ruling on the *cy pres* issue, including the identity of the beneficiary, until there is a proposed distribution to *cy pres* and the issue is ripe for decision. *See, e.g.*, *Martinez*, 2023 WL 3569906, at *19 (citing both *Rodriguez* and *Dennis*); *In re Transpacific Passenger Air Transportation Antitrust Litig.*, 2015 WL 3396829, at *4 (N.D. Cal. May 26, 2015) ("The Court is not troubled by the lack of a named *cy-pres* in this case."), *aff'd*, 701 F. App'x 554 (9th Cir. 2017). A *cy pres* beneficiary will be designated only if there are residual funds, and the parties will seek this Court's approval by noticed motion, if necessary. *See Martinez v. Semi-Tropic Coop. Gin & Almond Huller, Inc.*, 2023 WL 3569906, at *19 (E.D. Cal. May 19, 2023) (noting that the identity of the *cy pres* recipient was not "ripe" because the distribution was "contingent," and the court retained jurisdiction after final approval).

Class Counsel will notify Hill of any such motion and has no objection to her being heard on any proposal for *cy pres* disposition of remainder funds. *See* ECF No. 201 at 7-8 (acknowledging that the amount left over "may be trivial" and requesting "an opportunity to be heard on any cy pres diversion . . . This would not necessarily require an amendment to the Settlement Agreement, which already requires Court approval for such disbursement."). Because there is no *cy pres* proposal before

the Court, and Hill will have the opportunity to be heard on any *cy pres* disposition, Hill's objection has been addressed in accordance with her concerns.

### C. The Court Should Approve the Request for Attorneys' Fees, Costs, and Service Awards and Approve an Interim Payment to the Claims Administrator.

Class Counsel seek attorneys' fees in the amount of $2,175,000, reimbursement of litigation expenses in the amount of $379,837.05,[4] and service awards of $7,500 to Plaintiffs Stark and Oostyen, and $5,000 for the other named Plaintiffs. These requests are reasonable for the reasons previously expressed. See ECF No. No. 196. Hill "expresses no opinion" on the fee request. ECF No. 201 at 6 n.4. No other Class member has objected to the fee request or the service awards.

As this Court has recognized, the absence of objections to the fee request supports an upward adjustment of the benchmark. *See Chavez v. Stellar Mgmt. Grp. VII, LLC*, 2022 WL 827115, at *1 (N.D. Cal. Mar. 18, 2022) (the fact "no class member objected to the request for fees" supported an upward departure from the benchmark) (Spero, J.); *see also Jarrell v. Amerigas Propane, Inc.*, 2018 WL 1640055, at *3 (N.D. Cal. Apr. 5, 2018) ("[T]he Court now concludes that a slight upward adjustment—to 30% of the common fund—is warranted based on several factors, including the results achieved, the risk of non-recovery, and the fact that no class member has objected to the proposed award."); *Foster v. Adams & Assocs., Inc.*, 2022 WL 425559, at *10 (N.D. Cal. Feb. 11, 2022) ("the lack of any Class Member objections also supports the fee award"); *Bernstein v. Ginkgo Bioworks Holdings, Inc.*, 2024 WL 5112227, at *7 (N.D. Cal. Dec. 13, 2024) (absence of objections weighed in favor of finding fee request reasonable).

In addition, pursuant to paragraph 13 of the Preliminary Approval Order (ECF No. 192), Plaintiffs request that the Court approve an interim payment to the Claims Administrator for fees and expenses incurred to date in connection with notice and administration. The Administrator has incurred $261,640.37 in notice and administration costs so far. Brunner Decl., ¶ 11. The Court previously

---

[4] After the filing of their fee motion, Plaintiffs incurred additional litigation expenses in the amount of $7,390.31. *See* Suppl. Grille Decl., ¶ 4. Plaintiffs submit an updated Proposed Order with this Reply Brief. Plaintiffs respectfully reserve the right to seek reimbursement from any remainder fund of expenses incurred after final approval in completing settlement administration.

approved an advance payment of $58,953.20 to the Claims Administrator. ECF No. 192 at ¶ 13. Accordingly, Plaintiffs request that the Court approve an additional payment of $202,687.17 to the Claims Administrator. The Claims Administrator is on track to complete administration of this settlement within its not-to-exceed estimate. Brunner Decl., ¶ 11.

The Court should therefore approve the requests for fees, reimbursement of expenses, service awards, and an interim payment to the Claims Administrator.

### III. CONCLUSION

For the foregoing reasons and the reasons stated in Plaintiffs' Motion for Final Approval and Motion for Attorneys' Fees, Plaintiffs and Class Counsel respectfully request that the Court grant final approval of the Class Settlement, and award attorneys' fees in the amount of $2,175,000, reimbursement of litigation expenses in the amount of $379,837.05, and service awards of $7,500 to Plaintiffs Stark and Oostyen, and $5,000 to each of Plaintiffs Belenkiy, Burton, Goodfield, and Mack. Plaintiffs further request that the Court approve an interim payment of $202,687.17 to the Claims Administrator.

Dated: January 30, 2025

Respectfully submitted,

*/s/ Simon S. Grille*

Adam E. Polk (SBN 273000)
Simon S. Grille (SBN 294914)
Trevor T. Tan (SBN 280145)
Reid Gaa (SBN 330141)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
apolk@girardsharp.com
sgrille@girardsharp.com
ttan@girardsharp.com
rgaa@girardsharp.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

/s/ Simon S. Grille
Simon S. Grille