1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Jason Harrow
(Cal. Bar No. 308560)
GERSTEIN HARROW LLP
12100 Wilshire Blvd. Ste. 800
Los Angeles, CA 90025
jason@gerstein-harrow.com
(323) 744-5293

Charles Gerstein
(*pro hac vice* pending)
GERSTEIN HARROW LLP
1001 G St., NW Ste. 400E
Washington, DC 20001
charlie@gerstein-harrow.com
(202) 670-4809

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

BRAYDEN STARK, et al., individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

PATREON, INC.,

Defendant.

Case No. 3:22-cv-3131-JCS

**DECLARATION OF JASON HARROW IN SUPPORT OF CONTINGENT OBJECTION OF LEXCLAIM RECOVERY GROUP US LLC TO FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**Dated: February 5, 2025**

**Judge: Hon. Joseph C. Spero**

## DECLARATION OF JASON HARROW

1.     My name is Jason Harrow. I am over eighteen years old and a resident of the United States of America. If called to testify, I could competently testify to the matters described here.

2.     I am one of the two members of Lexclaim Recovery Group US LLC, a limited liability company. The other member is Charles Gerstein.

3.     I make this declaration in support of the Contingent Objection that Lexclaim has filed along with this document.

4.     I am personally familiar with the manner in which Lexclaim obtained 927 assignments of claims against Patreon because I was involved in setting up the advertising campaign to introduce Lexclaim's offer to potentially impacted class members and receiving the relevant information from an advertising service Lexclaim engaged.

5.     Sometime after I saw the proposed settlement agreement in the *Stark v. Patreon* case, I thought that Lexclaim could make offers to potential class members that would make them better off than they would be under the settlement agreement—and potentially much better off if Lexclaim were to secure relief that is closer to the permitted statutory damages amount under the VPPA than counsel for the proposed class secured.

6.     Sometime after that, Mr. Gerstein and I decided that we would offer potential class members a guaranteed payment of $10 plus 20% of any additional recovery, in exchange for a complete assignment to Lexclaim of their claims against Patreon.

7.     I then worked with Mr. Gerstein and an advertising service to create a campaign where potential class members could learn about our offer and, if interested, sign an agreement offering to assign their claims to Lexclaim. I did not

personally see any advertisements in the precise manner that they would have been displayed to any user; as I understand it, by their nature, advertisements on social-media platforms are variable and individualized. But I approved draft posts that included images, and I also approved draft headline and copy language.

8.    I have attached true and correct copies of those draft posts and sample advertisements that Lexclaim approved as Exhibit A.

9.    As far as I am aware, potential class members would have seen headlines and advertisements that look substantially similar to the ones in that exhibit.

10.    I am unaware of exactly which posts, headlines, and copy were displayed more frequently than others, or what content was displayed to what assignor. The actual purchase and delivery of advertisements was handled by an advertising service that was given discretion to monitor an advertising campaign to provide the highest return per dollar of advertising spending.

11.    Lexclaim, however, ensured that the text shown to potential classmembers was as Lexclaim approved in the documents attached as Exhibit A.

12.    Potential class members who saw the advertising and thought they might be a member of the potential class would, if they clicked the advertisement, be directed to a website where they could fill out a questionnaire. The front page of the website, which is not directly controlled by Lexclaim but is still active as of the time of submission of this declaration, is https://www.videos-privacy-violation.com/. A true and correct copy of the front page is attached as Exhibit B.

13.    Those who gave answers to questions that confirmed their membership in the potential class were offered to review and sign the assignment contract.

14.    This workflow took place entirely online, and it is difficult to capture in static screenshots because the website contains an interactive form.

Accordingly, I have completed a screen recording of a sample user flow. The screen recording video I made is a real-time recording of a sample user interaction using test data that I inputted on February 4, 2025, though I made one deletion to the screen recording at 3:07 of the video to speed up the upload of a sample file and so as not to reveal the names of other files and folders on my computer. The screen recording shows the basic user flow that all 927 assignors would have gone through. I went through the flow quickly for purposes of the video, but users could spend as much time on each screen as they wished, including the screens where they could review specific documents for as long as they wished.

15.     That screen recording can be viewed at https://bit.ly/40IV4UF, and it can be downloaded from that address. I will use my best efforts to ensure that this video remains at that web address until at least February 19, 2025, but it may be removed after that date.

16.     No one at Lexclaim communicated directly with any assignor or potential assignor during this process. As far as I am aware, all 927 assignors signed the assignment contract and other documents after going through the questionnaire mentioned above.

17.     Mr. Gerstein and I would receive periodic updates from our advertising service about how the campaign was going. At some point, we stopped the campaign after the funds we had deposited with the advertising service had been depleted.

18.     During the campaign, we received access to an online database containing all respondents' answers to the questions asked, plus other data they submitted.

19.     Our advertising service shared with us that 927 people had qualified under our criteria and ultimately completed the assignment contract by signing it, as well as by signing an accompanying opt-out form and declaration. The

advertising service then gave us access, via the Dropbox cloud service, to individual folders containing files from each of those assignors.

20.    Each individual folder I received contained at minimum a PDF containing the aforementioned three documents: assignment contract, signed opt-out form, and declaration. Many of the folders also contained additional documents that assignors had uploaded, such as emails providing proof they had subscribed to Patreon during the relevant time period. True and correct copies of three of the PDFs containing all three documents from three different assignors are attached as Exhibit C. Because of the repetitive nature of the documents and the difficulty of combining 927 files and then uploading thousands of pages of documents via CM/ECF, I have not included all 927 PDF files as attachments. Rather, all 927 are available electronically for view and download at https://bit.ly/42HCEGi. Those files will be available until February 19, 2025, but may be removed after that date.

21.    I also maintain Lexclaim's public email address, info@lexclaim-us.com. I reviewed every incoming and outgoing email to that inbox since it was created as I prepared this declaration. In that review, I identified three email exchanges that concerned this case and that were from, or potentially from, anyone who is potentially a class member in this case. True and correct copies of all three of those email exchanges are available as Exhibit D.

22.    As far as I am aware, neither I nor anyone else acting on Lexclaim's behalf has communicated with any potential class member about this matter in any other manner. Lexclaim has no public phone number, so no communications have occurred by phone. As far as I am aware, no communications have happened in person, via text or instant message, or in another manner other than those described here.

**HARROW DEC ISO CONTINGENT OBJECTION**

23.    On January 13, 2025, I caused a copy of each signed opt out form received through the process described above to be printed at a local print shop. I confirmed that each form was printed on a separate sheet of paper, as I had instructed.

24.    On January 13, 2025, I mailed the 927 opt out forms to the settlement administrator in this case.

25.    I received tracking information for that shipment. By monitoring the tracking, I confirmed via the U.S. Postal Service's website that the forms had been delivered to the settlement administrator in this case.

26.    On January 30, 2025, I received an email with a link to two subpoenas directed at Lexclaim and served by Defendant. Counsel for Patreon then followed up by email with electronic copies of the subpoenas. True and correct copies of the electronic version of the subpoenas are attached as Exhibit E.

27.    On February 3, 2025, Mr. Gerstein and I, acting as counsel for Lexclaim, had a conversation with Nathan Walker, counsel for Patreon, about the subpoenas Patreon served. Mr. Walker emailed me (and others) later that day with a bulleted list of what, in his view, was discussed in our phone conversation. A true and correct copy of that email is attached as Exhibit F.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 5, 2025.

<u>/s/ Jason Harrow</u>

**HARROW DEC ISO CONTINGENT OBJECTION**