Fred Norton (CA SBN 224725)
fnorton@nortonlaw.com
Nathan Walker (CA SBN 206128)
nwalker@nortonlaw.com
Bree Hann (CA SBN 215695)
bhann@nortonlaw.com
Gil Walton (CA SBN 324133)
gwalton@nortonlaw.com
Celine G. Purcell (CA SBN 305158)
cpurcell@nortonlaw.com
Emily Kirk (CA SBN 348547)
ekirk@nortonlaw.com
THE NORTON LAW FIRM PC
300 Frank H. Ogawa Plaza, Ste. 450
Oakland, CA 94612
Telephone: (510) 906-4900

Attorneys for Defendant
PATREON, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| BRAYDEN STARK, JUDD OOSTYEN, ISAAC BELENKIY, VALERIE BURTON, LAURA GOODFIELD, and DENOVIAS MACK, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br>     v.<br><br>PATREON, INC.,<br><br>               Defendant. | Case No. 3:22-CV-03131-JCS<br><br>**DEFENDANT PATREON, INC.'S SUPPLEMENTAL OPENING BRIEF RE PUTATIVE OPT-OUTS SUBMITTED BY LEXCLAIM RECOVERY GROUP US, LLC** |

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................................... 2

III.    ARGUMENT ............................................................................................................ 5

        A.      The Court Has Both A Duty And Broad Authority To Protect The Class. ..................... 5

        B.      Where Misleading Or Incomplete Statements May Have Caused Potential Class
                Members To Submit Opt-Out Requests, The Court Can And Should Rule That The
                Opt-Outs Are Invalid And Issue Curative Relief. ................................................ 6

        C.      Lexclaim Made Misleading And Incomplete Statements That Likely Induced Many,
                If Not All, Of The 927 Individuals To Provide Their Opt-Outs To Lexclaim, And
                Thus The Court Should Reject The Opt-Outs And Issue Curative Relief. ..................... 9

        D.      The Court Should Exercise Its Discretion To Reject The 927 Putative Opt-Out
                Requests Because They Do Not Conform To The Exclusion Request Procedure. .......... 13

        E.      The Court Should Enforce The Settlement Agreement's "Group Opt-Out" Prohibition . 14

        F.      The Opt-Out Request Lexclaim Submitted In Its Own Name Purporting To Opt Out
                The Group Of 927 Claims It Purportedly Obtained By Assignment Is Invalid. .............. 17

                1.      As A Matter Of Law, The Purported Assignments To Lexclaim Are Invalid
                        And, Thus, Lexclaim Had (And Has) No Standing Or Ability To Exclude
                        Claims From the Settlement ................................................................ 17

                        a.      California Law Bars Assignment of VPPA And Other Privacy Claims ......... 18

                        b.      Federal Common Law Likewise Bars Assignment of VPPA and Other
                                Privacy Claims ....................................................................... 20

                2.      The Opt-Out Lexclaim Submitted In Its Own Name Does Not Contain
                        Any Address, Phone Number, Or Signature For The 927 Individuals, As
                        The Class Notice Requires. ................................................................ 22

                3.      The Opt-Out Request Lexclaim Submitted Is A "Group Opt-Out" That The
                        Settlement Expressly Prohibits. ........................................................... 23

        G.      Neither Absent Class Members Nor Lexclaim Are Parties Whose Consent Is
                Required For This Court To Rule That The Lexclaim Opt-Outs Are Invalid. ................ 23

        H.      If The Court Is Unwilling Or Unable To Decide Whether The Assignments Of
                VPPA Claims Are Valid, It Should Still Reject The Group Opt-Outs, Order A
                Curative Notice, And Order Lexclaim To Post Security To Protect The Class. .............. 24

IV.     CONCLUSION ....................................................................................................... 25

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abernathy v. DoorDash, Inc.*,
   438 F. Supp. 3d 1062 (N.D. Cal. 2020) ........................................................ 16

*Amalfitano v. Google Inc.*,
   2015 WL 456646 (N.D. Cal. Feb. 2, 2015) .................................................. 14

*Amalgamated Transit Union, Loc. 1756, AFL–CIO v. Superior Ct.*,
   46 Cal.4th 993 (2009) ................................................................................... 11

*Casino Cruises Inv. Co. v. Ravens Mfg. Co.*,
   60 F. Supp. 2d 1285 (M.D. Fla. 1999) ......................................................... 21

*Chalian v. CVS Pharmacy, Inc.*,
   2020 WL 7347866 (C.D. Cal. Oct. 30, 2020) ................................................ 6

*Chamber of Com. of United States of Am. v. City of Seattle*,
   334 F.R.D. 440 (W.D. *Wash. 2020)* ............................................................ 11

*Cooper v. Nat'l Credit Adjusters, LLC*,
   2022 WL 17656316 (N.D. Tex. Nov. 28, 2022) ...................................... 19, 20

*Cottle v. Plaid Inc.*,
   2022 WL 2829882 (N.D. Cal. July 20, 2022) ............................................... 23

*County of Santa Clara v. Astra USA, Inc.*,
   2010 WL 2724512 (2010) ............................................................................... 8

*Day v. Persels & Assocs., LLC*,
   729 F.3d 1309 (11th Cir. 2013) .................................................................... 23

*Derr v. Ra Med. Sys., Inc.*,
   2022 WL 21306534 (S.D. Cal. Sept. 23, 2022) ............................................ 16

*Dominguez v. Better Mortg. Corp.*,
   88 F.4th 782 (9th Cir. 2023) ........................................................................... 6

*Dotson v. Credit Collection Servs.*,
   2023 WL 2749183 (W.D. Okla. Mar. 31, 2023) ........................................... 19

*Dotson v. Transworld Sys., Inc.*,
   2022 WL 2655785  (W.D. Okla. July 8, 2022) ............................................. 21

*Eichenberger v. ESPN, Inc.*,
   876 F.3d 979 (9th Cir. 2017) ........................................................................ 20

ii

*Erhardt v. Prudential Grp., Inc.*,
   629 F.2d 843 (2d Cir. 1980) ................................................................................................ 6

*Evans v. Boyd Rest. Grp., LLC*,
   240 F. App'x 393 (11th Cir. 2007) .................................................................................... 21

*Feldman v. Sta,r Trib. Media Co. LLC*,
   659 F. Supp. 3d 1006 (D. Minn. 2023) .............................................................................. 20

*Flynn v. Higham*,
   149 Cal. App. 3d 677 (1983) ....................................................................................... 19, 20

*Fox v. Saginaw Cnty., Michigan*,
   35 F.4th 1042 (6th Cir. 2022) ............................................................................................. 7

*Georgine v. Amchem Prods., Inc.*,
   160 F.R.D. 478 (E.D. Pa. 1995) ........................................................................... 6, 8, 9, 13

*Goodley v. Wank & Wank, Inc.*,
   62 Cal. App. 3d 389 (1976) ............................................................................................... 19

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) .............................................................................................................. 5

*Hadley v. Kellogg Sales Co.*,
   2020 WL 836673 (N.D. Cal. Feb. 20, 2020) ............................................................... 16, 17

*Hadley v. Kellogg Sales Co.*,
   2021 WL 3700746 (N.D. Cal. June 15, 2021) .................................................................... 17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................................... 15

*Impervious Paint Indus., Inc. v. Ashland Oil*,
   508 F. Supp. 720 (W.D. Ky. 1981) ...................................................................................... 6

*In re Centurylink Sales Pracs. & Sec. Litig.*,
   2020 WL 3512807 (D. Minn. June 29, 2020) .................................................................... 13

*In re Diet Drugs, Prods. Liab. Litig.*,
   282 F.3d 220 (3d Cir. 2002) ......................................................................................... 15, 16

*In re Google Assistant Privacy Litig.*,
   2025 WL 510435 (N.D. Cal. Feb. 14, 2025) ..................................................................... 13

*In re HealthSouth Corp. Sec. Litig.*,
   334 F. App'x 248 (11th Cir. 2009) .................................................................................... 16

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   2023 WL 6205473 (N.D. Cal. Sept. 19, 2023) ...........................................................*Passim*

iii

*In re MyFord Touch Consumer Litig.*,
  2018 WL 10539267 (N.D. Cal. June 7, 2018) ........................................................... 17

*In re TikTok, Inc., Consumer Priv. Litig.*,
  565 F. Supp. 3d 1076 (N.D. Ill. 2021) ..................................................................... 15

*In re Vizio, Inc., Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) .................................................................. 20

*J2 Glob. Commc'ns, Inc. v. Protus IP, Sols.*,
  2010 WL 9446806 (C.D. Cal. Oct. 1, 2010) ............................................................ 11

*James v. E. Acct. Sys. of Connecticut, Inc.*,
  2023 WL 3431893 (C.D. Cal. Mar. 1, 2023) ...................................................... 19, 20

*James v. Puget Sound Collections*,
  2022 WL 2357050 (W.D. Wash. June 30, 2022) ..................................................... 19

*Knight v. Concentrix Corp.*,
  2019 WL 3503052 (N.D. Cal. Aug. 1, 2019) ........................................................... 17

*Koby v. ARS Nat'l Servs., Inc.*,
  846 F.3d 1071 (9th Cir. 2017) ........................................................................... 23, 24

*Lexington Ins. Co. v. S.H.R.M. Catering Servs., Inc.*,
  567 F.3d 182 (5th Cir. 2009) ................................................................................ 21

*Lugosi v. Universal Pictures*,
  25 Cal. 3d 813 (1979) ...................................................................................... 19, 20

*Martinez v. Green*,
  131 P.3d 492 (Ariz. Ct. App. 2006) ....................................................................... 21

*Michigan v. U.S. Army Corps of Eng'rs*,
  667 F.3d 765 (7th Cir. 2011) ................................................................................ 22

*Mollett v. Netflix, Inc.*,
  795 F.3d 1062 (9th Cir. 2015) ............................................................................... 20

*MSP Recovery Claims, Series LLC v. Abbott Labs.*,
  2022 WL 11804007 (D.N.J. Oct. 17, 2022) ............................................................. 11

*Pac. Gas & Elec. Co. v. Nakano*,
  12 Cal.2d 711, 87 P.2d 700 (1939) ....................................................................... 19

*Pileggi v. Washington Newspaper Publ'g Co., LLC*,
  2024 WL 324121 (D.D.C. Jan. 29, 2024) ................................................................ 20

*Pony v. Cnty. of Los Angeles*,
  433 F.3d 1138 (9th Cir. 2006) ............................................................................... 19

iv

*Postier v. Louisiana-Pac. Corp*,
   2014 WL 261801 (N.D. Cal. Jan. 23, 2014) ............................................................ 23

*Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.*,
   2016 WL 4080294 (N.D. Cal. July 29, 2016) .................................................... 7, 8, 13

*Righthaven LLC v. Wolf*,
   813 F. Supp. 2d 1265 (D. Colo. 2011) .................................................................. 21

*Roofer's Pension Fund v. Papa*,
   2024 WL 4205638 (D.N.J. Sept. 12, 2024) ............................................................ 14

*Salazar v. Nat'l Basketball Ass'n*,
   118 F.4th 533 (2d Cir. 2024) ............................................................................... 20

*Sanft v. Sims Grp. USA Corp.*,
   2023 WL 6851992 (N.D. Cal. Oct. 16, 2023) ......................................................... 16

*Searles Valley Mins. Operations Inc. v. Ralph M. Parsons Serv. Co.*,
   191 Cal. App. 4th 1394 (Jan. 21, 2011) ............................................................... 18

*Stark v. Patreon, Inc.*,
   656 F. Supp. 3d 1018 (N.D. Cal. 2023) ............................................................... 20

*Taylor v. Shippers Transp. Express, Inc.*,
   2014 WL 12561036 (C.D. Cal. July 8, 2014) .......................................................... 7

*Tisdale v. Enhanced Recovery Co., LLC*,
   2023 WL 1810413 (E.D. Tex. Jan. 17, 2023) .................................................. 19, 20

*US Fax L. Ctr., Inc. v. iHire, Inc.*,
   476 F.3d 1112 (10th Cir. 2007) .......................................................................... 19

*Wallach v. Eaton Corp.*,
   837 F.3d 356 (3d Cir. 2016) ............................................................................... 20

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .......................................................................................... 15

**Statutes**

18 U.S.C. § 2710 ................................................................................................. 11, 20

28 U.S.C. § 636(c) ............................................................................................... 23, 24

California Civil Code § 954 ....................................................................................... 18

**Rules**

Federal Rule of Civil Procedure 23(c)(2)(B) .................................................................. 7

**Other Authorities**

3 Newberg and Rubenstein on Class Actions § 9:49 (6th ed.) .................................................. 5

6A C.J.S. Assignments............................................................................................................ 22

Prosser, *Privacy*,
   48 Cal. L. Rev. 383 (1960) ............................................................................................ 22

Restatement (Second) of Contracts.................................................................................. 21, 22

## I.    INTRODUCTION

Third-party Lexclaim Recovery Group US LLC engaged in a misleading campaign to solicit members of this settlement class to give up their VPPA claims for cheap.  Instead of the $42 each class member could obtain under the settlement, Lexclaim induced 927 individuals to sign opt-out and assignment forms that purported to grant Lexclaim the right to assert their claims in exchange for $10 and an illusory 20% of what Lexclaim might obtain by asserting those VPPA claims against Patreon.

The Court has the authority and the duty to protect class members from unilateral, unsupervised communications from third parties that interfere with the Court-approved Class Notice and the class members' understanding of their rights.

*First*, the Court should reject the group of 927 opt-outs that Lexclaim solicited and obtained, for three independent reasons:  (1) Lexclaim made misleading and incomplete statements that likely induced many, if not all, of the 927 individuals to provide their opt-outs to Lexclaim; (2) none of the 927 opt-outs Lexclaim submitted contain the individual's address or telephone number, as the Class Notice expressly requires and which are necessary to verify the identity of persons subject to and excluded from the judgment; and (3) as the Claims Administrator reasonably determined, the group of opt-outs submitted by Lexclaim is a "group opt-out" that the settlement expressly prohibits.

*Second*, the Court should order a curative notice to correct the misimpressions created by Lexclaim and allow the 927 individuals another opportunity to opt out in compliance with the Class Notice and settlement agreement, and to make a claim if they choose to do so.

*Third*, the Court should also reject the opt-out request Lexclaim submitted in its own name, purporting to opt-out of the settlement for the group of 927 claims it purportedly obtained by assignment, again for three independent reasons:  (1) the opt-out request Lexclaim submitted does not contain any address, phone number, or signature for the 927 individuals, or even an address or phone number for Lexclaim, as the Class Notice expressly requires and which are necessary to verify the identity of the persons subject to and excluded from the judgment; (2) the opt-out request Lexclaim submitted is a "group opt-out" that the settlement expressly prohibits, and (3) as a matter of law, the purported assignments of claims to Lexclaim were (and are) invalid and, thus, Lexclaim had no standing or ability to exclude those claims from the settlement.

At the fairness hearing, Patreon suggested that the Court need not decide the validity of the

putative assignments of claims at this time. Given the arguments that Lexclaim made at the hearing, however, it is now clear that the Court can and should decide the issue now. At the hearing, Lexclaim contended that even if the Court did hold that a curative notice is necessary, Lexclaim would still contend that its assignment is valid and that only Lexclaim, not the class members, has the right to opt out. But if the VPPA claims are not assignable at all, as Patreon maintains, Lexclaim has no right or standing to object or to opt out. Moreover, if class members gave up their settlement rights in the mistaken belief that they might benefit from a recovery on the assigned claims, that provides another compelling reason to issue a curative notice. In addition, Lexclaim's insistence that it owns the claims and the opt-out right creates a problem for the class. Some or all of the 927 may get the benefit of the curative notice, conclude they were misled, and decide to make a claim after all. At that point, this Court must decide whether the claims are to be paid from the settlement fund or excluded from it; waiting for some other court to decide would delay final approval and distribution to the other approximately 105,300 claimants. ***Who*** owns the claim and any attendant opt-out right thus is a threshold issue that should be decided now.

The Court should reject the group of 927 opt-outs that Lexclaim obtained and submitted; reject the group opt-out Lexclaim submitted for the 927 claims it says it bought and aggregated; issue a curative notice; and hold that the attempted assignment of the VPPA claims was ineffective.

## II.    FACTUAL BACKGROUND

On August 2, 2024, Plaintiffs filed their motion for preliminary approval of the Settlement Agreement in this case. Dkt. 176. Consistent with class action case law, the Settlement Agreement expressly prohibits "group opt-outs": "This Settlement Agreement will not bind a Class Member who timely and validly opts out of the Class. … ***Group opt-outs, including 'mass' or 'class' opt-outs, are prohibited***." Dkt. 176-1 at § 7.4 (emphasis added).

On August 23, 2024, shortly after Plaintiffs filed their motion for preliminary approval, Lexclaim was formed. Dkt. 209-2, ¶ 8, Exhs. G and H. It appears that two attorneys at the litigation law firm Gerstein Harrow LLP control Lexclaim, in whole or in part. Dkts. 206, 206-1, 209-3, 209-6.

On September 23, 2024, the Court preliminarily approved the settlement. Dkt. 192.

By Lexclaim's own admission, after the settlement in this case was preliminarily approved, Lexclaim "sought out" potential class members to offer them what Lexclaim contends is a "better deal"

than they could get under the class settlement.  Dkt. 206 at 4 ("After the settlement in this case was preliminarily approved, Lexclaim sought out affected class members to offer them a better deal than they would have gotten in the class settlement.").  Under Lexclaim's "deal," potential class members would assign to Lexclaim any VPPA claims they have against Patreon and would deliver to Lexclaim a request to opt-out of the settlement; in return, the putative assignors would receive a payment of "$10 guaranteed and 20% of any amount Lexclaim recovers from Patreon" by litigating the putative assignors' claims.  *Id.*

Lexclaim admits it set up, and retained an advertising service to run, a social-media ad campaign that encouraged potential class members to visit a website (https://www.videos-privacy-violation.com/) where they could fill out a questionnaire.  Dkt. 206-1 ¶¶ 4-16; Dkt. 206-2; Dkt. 206-3; Dkt. 209-2, ¶ 7, Exhs. E, F.  Lexclaim alleges that individuals whose answers to the questionnaire confirmed their membership in the potential class were offered the opportunity—on the website—to review and sign an assignment contract and a settlement opt-out request.  Dkt. 206-1 ¶¶ 12-13; Dkt. 209-2, ¶ 7, Exhs. E, F.

Lexclaim's ads and website encouraged class members to opt-out of the settlement and accept payment of $10 from Lexclaim, but the ads and website did ***not*** disclose relevant information about the settlement they were being encouraged to opt out of.  Dkt. 206-1, ¶¶ 7-8, 11-16; Dkt. 206-2 (text of ads, stating, *e.g.*, "If you've ever used Patreon, you could be eligible for a cash reward. Click 'Apply Now' to find out if you qualify"); Dkt. 209-2, ¶ 7, Exhs. E, F (screenshots of Lexclaim website pages).  Lexclaim did not disclose that individuals who submitted valid claims under the settlement would receive cash payments that, based on claims rates in similar cases, are expected to be between ***$35 and $175*** per claimant, as set forth in the Class Notice.  Dkt. 191-2 at 12; Dkt. 209-2, ¶ 9, Exh. I.  (Based on the actual claim-rate in this case, the Claims Administrator has estimated that each class member who submits a valid claim will receive payment of approximately $42.  Dkt. 204-2 ¶ 10.)

Lexclaim states that over the course of weeks, through its ads and website, it obtained assignments and opt-out requests from 927 individuals.  Dkt. 206 at 4; Dkt. 206-1 ¶¶ 4-19.[1]  Lexclaim—

---

[1] It appears that three of the alleged 927 opt-out requests may be duplicates; the group appears to include two copies of opt-outs from each of the following individuals:  Carol Ciocco, Isabel Lundquist, and

3

not the individuals—controlled whether the assignments became effective:  each assignment agreement provided that it "is effective only when it is signed by both parties," and Lexclaim alleges it signed the 927 assignments only after they were signed by the putative assignors.  Dkt. 206-1, ¶ 20; Dkt. 206-4 at 2; Dkt. 209-2, ¶ 3, Exh. A at ¶¶ 51-55.  Likewise, Lexclaim and only Lexclaim controlled whether and when individuals' opt-out forms were submitted to the Claims Administrator.  Dkt. 206-1 ¶¶ 20, 23-24; Dkt. 206-4 at 1 ("Assignor is advised that Lexclaim may or may not mail Assignor's signed opt-out form").  In a meet-and-confer call on February 11, 2025, Lexclaim's principals Charles Gerstein and Jason Harrow represented that Lexclaim has provided to the Court all communications from Lexclaim to the putative 927 assignors.  Dkt. 209-2, ¶ 9.  If true, that means that these putative class members were never informed that Lexclaim had accepted the assignment nor that Lexclaim had submitted an opt-out form on their behalf.  *Id.*

On December 9, 2024, counsel for Lexclaim emailed a letter to Patreon counsel, stating that Lexclaim was soliciting opt-outs and acquiring class members' VPPA claims.  Lexclaim demanded that Patreon pay it an additional $1,480,000 to settle those claims, or $1,600 per claimant, and threatened to seek far more in litigation.  Supp. Decl. of N. Walker ¶ 2, Exh. M.  Patreon declined.

Lexclaim states that on January 13, 2025, it placed the group of 927 opt-outs into the United States mailstream addressed to the Claims Administrator, and then later that day signed the 927 assignment agreements.  Dkt. 209-02 at Exh. A at ¶¶ 54, 55.[2]  However, the assignments that Lexclaim filed with this Court are unsigned by Lexclaim and thus not effective on their faces.  Dkt. 206-04; *see also* putative assignments linked at URL set forth in paragraph 20 of Dkt. 206-1.

Later on January 13, Lexclaim filed a complaint against Patreon in this Court, asserting VPPA claims it allegedly obtained by assignment from the 927 individuals.  Dkt. 209-2 at Exh. A.

On January 15, the deadlines for making a claim under the settlement and for submitting a request for exclusion passed.  Dkt. 202.

---

Melodie Coulter-Pennington.  It is impossible to determine on this record whether putative assignors also submitted multiple claims using different names.

[2] Lexclaim also submitted an opt-out request in its own name, signed on Lexclaim's behalf by Jason Harrow, who is also an attorney for Lexclaim.  Dkt. 209-2, ¶ 6, Exh. D.

On January 17, after receiving the group of 927 opt-out requests from Lexclaim, the Claims Administrator sent an email to Patreon's counsel and Plaintiffs' counsel, stating:

> We received a package that was postmarked on January 13, 2025, and contained approximately 1,000 pages of what appear to be generic opt-out forms. All documents are identical [sic] formatted, and each opt-out only contains an opt-out statement, name, and signature but does not include the individual's address or telephone number. The generic opt-outs do appear to match the opt-outs described in the attached the attached [sic] document for Case No. 24-cv-428. However, *knowing that para 7.4 of the Settlement Agreement prohibits "mass" opt-outs, our inclination is to reject or disqualify these opt outs unless the parties disagree.*

Dkt. 209-2, ¶ 4, Exh. B (emphasis added). Counsel for Patreon had no prior communication with the Claims Administrator about Lexclaim in particular or group opt-outs in general prior to the Claims Administrator's January 17 email. *Id.* at ¶ 5.

On January 30, consistent with its January 17 email, the Claims Administrator executed a declaration, stating that the group of 927 opt-outs "appear to be invalid due to a 'group' opt-out filing by Lexclaim Recovery Group US LLC, which is prohibited in paragraph 7.4 of the Settlement Agreement." Dkt. 204-2, ¶ 6. The parties to the Settlement Agreement—Patreon and Plaintiffs—agree. Dkts. 209, 210. The Settlement Agreement's prohibition on "group opt-outs" is consistent with class-action practice because the right to opt out is an individual one and must be exercised knowingly and individually. *See* 3 Newberg and Rubenstein on Class Actions § 9:49 (6th ed.) (Dkt. 209-14).

Patreon would not have assented to the Settlement Agreement had it believed a third-party entity (such as Lexclaim) would be permitted to solicit, compile, and submit *en masse* 927 opt-outs and then file a new VPPA lawsuit against Patreon, asserting the opted-out claims unless Patreon paid it an additional $1.48 million or more to obtain peace and finality. Dkt. 209-1, ¶¶ 5-6.

## III. ARGUMENT

### A. The Court Has Both A Duty And Broad Authority To Protect The Class.

"Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *see also* Fed. Rule R. Civ. P. 23(d). In that regard, "[i]t is the responsibility of the court to … to safeguard [class members] from unauthorized, misleading communications from the parties or their counsel." *Erhardt v. Prudential Grp., Inc.*, 629

5

DEFENDANT PATREON, INC.'S SUPPLEMENTAL OPENING BRIEF RE: PUTATIVE OPT-OUTS SUBMITTED BY LEXCLAIM
CASE NO. 3:22-CV-03131-JCS

F.2d 843, 846 (2d Cir. 1980) (holding that communications "to class members which are factually or legally incomplete, lack objectivity and neutrality, or contain untruths will surely result in confusion and adversely affect the administration of justice").

**B.      Where Misleading Or Incomplete Statements May Have Caused Potential Class Members To Submit Opt-Out Requests, The Court Can And Should Rule That The Opt-Outs Are Invalid And Issue Curative Relief.**

Where, as here, misleading or incomplete statements may have caused potential class members to submit opt-out requests or claims under a class settlement, the Court is empowered to find the submitted opt-outs or claims invalid and provide affected individuals an additional opportunity to opt out or submit a claim.  *See In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 19-MD-02913-WHO, 2023 WL 6205473 (N.D. Cal. Sept. 19, 2023) (Orrick, J.) ("*JUUL*") (disallowing claims under settlement submitted by third-party claim aggregator that made potentially misleading statements to class members, and providing opportunity to affected individuals to individually submit a claim or opt out); *Chalian v. CVS Pharmacy, Inc.*, 2020 WL 7347866 (C.D. Cal. Oct. 30, 2020) and Order in *Chalian* at Dkt. No. 196 (submitted in this case at Dkt. 209-12) (declaring opt-out elections ineffective and ordering issuance of corrective notice with an additional opt-out period, where attorneys solicited opt-outs through misleading and incomplete statements); *Georgine v. Amchem Prods., Inc.*, 160 F.R.D. 478 (E.D. Pa. 1995) (ruling opt-outs were invalid where attorneys opposing settlement made misleading and incomplete statements to class members, and providing second opportunity to opt out or submit claim); *Impervious Paint Indus., Inc. v. Ashland Oil*, 508 F. Supp. 720, 723-724 (W.D. Ky. 1981) (disallowing opt-outs and providing second opportunity to submit claim or opt out; "Since we cannot say that these class members made a free and unfettered decision, we must devise a remedy which can restore to these class members the opportunity to make the same type of independent decision that other class members have been able to make.").  In addition, in such cases, the Court has the authority to supervise the entity's future communications with potential class members to ensure that no additional misleading statements are made.  *See Dominguez v. Better Mortg. Corp.*, 88 F.4th 782 (9th Cir. 2023) (upholding order directing employer to communicate only in writing and with prior court approval with potential class members, where employer had record of misleading communications with them); *Fox v. Saginaw Cnty., Michigan*, 35 F.4th 1042 (6th Cir. 2022) (upholding order barring nonparty from any

6

further communications with class during opt-out period, where nonparty had record of misleading communications with class); *Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty.*, 2016 WL 4080294 (N.D. Cal. July 29, 2016) ("*Retiree*") (holding court had power to exercise authority over nonparty communications with class members under Rule 23 and All Writs Act); *Taylor v. Shippers Transp. Express, Inc.*, 2014 WL 12561036, at *4 (C.D. Cal. July 8, 2014) (ordering plaintiffs to submit to court a copy of all proposed communications with class members "at least three business days before they intend to issue them"). As these cases instruct, to exercise that supervisory power the Court need not find that class members were actually misled, but simply that they may have been.

This Court's decision in *JUUL* is instructive. There, the Court exercised its discretion to uphold the Claims Administrator's rejection of thousands of settlement claims submitted *en masse* by a third-party aggregator called "ClaimClam." *See In re JUUL Labs.*, 2023 WL 6205473, *8–10 (Orrick, J.). The Court based its decision on due process concerns:

> The Settlement Administrator appropriately rejected the ClaimClam submissions. The method and contents of the notices given to class members – including the explanation of the case and instructions on how to participate, opt-out, or object – were all approved by the Court as required by Federal Rule of Civil Procedure 23(c)(2)(B). The Court also approved the appointment of Epiq as the Claims Administrator based on representations of Epiq's qualifications and experience and an outline of administrative and communication services to be provided to class members, under the supervision of Class Counsel and ultimately the Court. The Court takes these steps to ensure that class members' due process rights are fully protected. Allowing en masse submissions by claims aggregators like ClaimClam raises real risks that Class Members will not receive accurate information regarding the scope of the class and the claims process. Allowing a third-party to submit hundreds or thousands of aggregated claims also hinders the ability of the Court-appointed Claims Administrator to communicate directly with claimants and conduct required follow up to identify fraudulent claims or verify the accuracy of claims and to resolve claim disputes (*e.g.*, confirm hours worked in wage and hour suits, or the amount of product purchased in consumer suits).

*Id.* at *9. The *JUUL* Court ordered that (1) ClaimClam provide the Class Administrator with the names and email addresses of individuals for whom ClaimClam submitted a claim (or other means of primary communication with which ClaimClam communicated with the individuals); (2) Class Counsel and the Class Administrator notify such individuals, in writing, of the order and provide instructions for how the individuals may submit claims directly to the Claims Administrator and/or rescind any opt-out requests; and (3) the individuals for whom ClaimClam submitted a claim shall have three months from the date of

---

7

the order to submit their claims directly to the Claims Administrator. *Id.* at *9–10.

This Court's decision in *Retiree* is likewise instructive. There, after the Settlement Administrator sent a Court-approved notice to the class that the Court had preliminarily approved a settlement, a nonparty (AFSCME Retiree Chapter 57 ("Chapter 57")) solicited opt-outs by means a letter that contained misleading statements and omissions. *See Retiree*, 2016 WL 4080294 at *7. Even though Court-approved notice of the settlement had been sent to the class, the Court concluded that Chapter 57's letter to the class contained "significant misstatements and omissions" because it not only contained misleading statements but also omitted material information about the underlying case:

> [A] review of the communication sent to class members … reveals a number of significant misstatements and omissions. To begin, ***while the letter refers to a "Settlement" that is "the result of an agreement between the County and RSG," it provides no information about the underlying case from which the settlement resulted.*** … Indeed, the letter does not even mention the existence of litigation at all, leaving recipients who may have received the letter prior to the class notice to simply conjecture about why the settlement was reached. ***The letter does not identify the case name and number, any of the claims brought by RSG, the Court in which the case was filed, or any other way by which recipients could learn about the case. Nor does the letter identify the class's counsel or provide any way for the recipients to contact them***. *See County of Santa Clara v. Astra USA, Inc.*, 2010 WL 2724512 at *6 (finding that communications "misled the putative plaintiff class" because it "did not contain the complaint or Ninth Circuit opinion, did not describe the claims, did not contain the current status of the case, [and] did not provide contact information for the plaintiffs' attorneys).…

*Id.* at *6 (emphases added). The *Retiree* Court granted the defendant's request to invalidate the opt-outs and order a curative notice. *Id.* at *11. The Court specifically ordered that "the notice will be issued on court letterhead and should inform the recipients that any opt-out elections obtained through [the nonparty's] form and communications have been invalidated by the Court, as well as the reasons for the invalidation." *Id.*

*Georgine* is in accord. There, as here, attorneys opposing a settlement made misleading, one-sided statements to class members that likely caused potential class members to opt out. *See Georgine*, 160 F.R.D. at 489. The *Georgine* court held that "[t]he timely exclusion requests of class members shall be invalidated and a second opt-out period and notice shall be ordered." *Id.* at 518. In reaching this holding, the court recognized that "District Courts have both the duty and broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."

1  *Id.* at 489.  And the court further recognized that "[u]nsupervised, unilateral communications with the

2  plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided

3  presentation of the facts, without opportunity for rebuttal." *Id.* at 490.

4  ### C.  Lexclaim Made Misleading And Incomplete Statements That Likely Induced Many, If Not All, Of The 927 Individuals To Provide Their Opt-Outs To Lexclaim, And Thus The Court Should Reject The Opt-Outs And Issue Curative Relief.

5

6  In at least three respects, Lexclaim made misleading and incomplete statements to the 927

7  individuals from whom it acquired the opt-outs, and those statements likely induced many if not all of

8  those individuals to provide their opt-outs to Lexclaim.

9  ***First***, Lexclaim made misleading and incomplete statements to potential class members

10  (including the 927 affected individuals) concerning the settlement.  Lexclaim's ads and website

11  encouraged and provided class members with the opportunity to opt-out of the settlement and accept

12  payment of $10 from Lexclaim.  But the ads and website—including the assignment and opt-out forms

13  Lexclaim provided in the website—omitted material facts about the settlement that the Court deemed

14  necessary to include in the Class Notice, including:

15  ▪ The fact that the individual could submit a claim under the settlement, rather than opt out.

16  ▪ The fact that if the individual submitted a valid claim under the settlement, the individual

17  would receive a cash payment, and although the amount they would receive would be

18  undetermined until all claims are completed, based on claims rates in similar cases, the

19  individual may receive between ***$35 and $175 each***, as set forth in the Class Notice (Dkt.

20  191-2 at 11-12).

21  ▪ The process by which the individual could submit a claim under the settlement.

22  ▪ The fact that individuals covered by the class settlement are already represented by Class

23  Counsel, and providing mail, email, and phone contact information for Class Counsel.

24  ▪ The fact that the individual could obtain further information about the underlying lawsuit, the

25  settlement, and their options, including information in the Class Notice, on the Claims

26  Administrator's website (https://patreonsettlement.com/).

27  Lexclaim not only failed to disclose these facts, it made affirmative statements about the

28  settlement that were misleading.  In the assignment form Lexclaim provided to prospective class

9

members, Lexclaim stated that "the settlement resolves the claims of approximately 1,400,000 people against Patreon… in exchange for a payment of $7,250,000, which, after attorneys' fees and administration costs, would be approximately $4,165,000." Dkt. 206-4 at 1, 6, 11; Dkt. 206-1, ¶ 20.[3] That statement likely misled some prospective class members to believe incorrectly that under the settlement each class member would receive ***approximately $3*** ($4,165,000 divided by 1,400,000). Indeed, that was plainly Lexclaim's intent, as it doubled down on that misstatement at the fairness hearing, arguing that the actual value of the settlement to each claimant was $3. Supp. Walker Decl., ¶ 3, Exh. N at 23-26. The Court rightly rejected that assertion, as "not the real world," but rather "a fake world." *Id.* at Exh. N. at 26. Lexclaim's statement was misleading in that Lexclaim did not disclose that per-claimant payments under the settlement depend on the number of claims made against the settlement fund, or that based on claims rates in similar cases, each individual who submitted a valid claim here was expected to receive "between ***$35 and $175 each***," as set forth in the Class Notice.

***Second***, Lexclaim made misleading or incomplete statements to potential class members (including the 927 affected individuals) about its proposed "deal." Lexclaim told potential class members that if they provided Lexclaim with an assignment of VPPA claims and an opt-out request, they would receive $10 and a right to 20% of any recovery Lexclaim obtains on their putatively assigned claim. But Lexclaim did not tell potential class members any of the following facts:

- The Settlement Agreement prohibits "group opt-outs." Thus, any group of opt-out requests solicited, compiled, and submitted as a group by Lexclaim is—or could be deemed to be—a "group opt-out" prohibited by the Settlement Agreement.

- Even if the opt-out were permitted, individuals who accept Lexclaim's "deal" might, and indeed likely will, receive ***much less*** than they would receive had they submitted a claim under the settlement and obtained $42. *See* Dkt. 204-2, ¶ 10; *see also* Dkt. 204 at 5. An individual who accepts Lexclaim's "deal" likely will receive at most only the $10 payment

---

[3] Lexclaim's assignment form does not identify where Lexclaim obtained the figure "1,400,000." That figure is not in the Class Notice. *See* Dkt. 191-2. And the figure is larger than the estimate of the size of the Class that Class Counsel set forth in its motion for preliminary approval. Dkt. 176 at 21 (estimating the Class size to be "1.2 million").

Lexclaim has promised them.  Although the individual would have the right to receive 20% of any recovery Lexclaim obtains on their putatively assigned VPPA claim, that right is effectively worthless, for reasons that Lexclaim—again—did not disclose.  VPPA claims are personal privacy claims that are not assignable at all;[4] even if such claims were assignable, claims for statutory damages unrelated to actual damages are not assignable;[5] an assignee like Lexclaim lacks statutory standing under the VPPA, which limits the universe of persons who can bring civil actions for remedies under the VPPA to "person[s] aggrieved," 18 U.S.C.A. § 2710(c); Patreon denies it violated the VPPA and denies it had any knowledge of any improper disclosure; and the Court may hold that the VPPA violates the First Amendment, for the reasons forth in Patreon's motion for summary judgment in this case, *see* Dkts. 76 and 117.

- If the individual accepted Lexclaim's "deal" and putatively assigned their claim to Lexclaim, the individual would be subject to discovery by Patreon in any litigation Lexclaim pursues on the claim; refusal to participate in discovery would also render the claim worthless.  *See, e.g.*, *Chamber of Com. of United States of Am. v. City of Seattle*, 334 F.R.D. 440, 441-42 (W.D. Wash. 2020); MSP Recovery Claims, Series LLC v. Abbott Labs.*, 2022 WL 11804007, at *4 (D.N.J. Oct. 17, 2022).

- Lexclaim also gave class members no assurances that, in discovery or otherwise, it would make any effort to protect their privacy in litigating their VPPA claims.  One putative class member emailed Lexclaim to express interest, identifying the specific Patreon channels where she watched video content.  Dkt. 206-5 at 3.  Lexclaim filed that email with her name, viewing history, and email address on this Court's public docket.  *Id.*

- If the individual accepted Lexclaim's "deal" and putatively assigned their claim to Lexclaim,

---

[4] *See* legal authorities cited in Section III(F)(1) below.

[5] *See J2 Glob. Commc'ns, Inc. v. Protus IP Sols.*, 2010 WL 9446806, at *8 (C.D. Cal. Oct. 1, 2010) ("The right to recover statutory damages unrelated to actual damages and/or treble damages is not assignable."; right to recover statutory damages under the TCPA was not assignable); *Amalgamated Transit Union, Loc. 1756, AFL–CIO v. Superior Ct.*, 46 Cal.4th 993, 1003 (2009) ("[T]he right to recover a statutory penalty may not be assigned.").

11

Lexclaim and the individuals would need to take steps to preserve all documents in their possession, custody or control that are relevant to the claim, in anticipation of the litigation Lexclaim planned to pursue.

*Third*, Lexclaim's website contained misleading statements related to the relationship between the prospective class members and Lexclaim. The webpage that prompted individuals to sign the assignment and opt-out request repeatedly refers to the individual as "Client." Dkt. 209-2 at Exh. F at pp. 14-18 (panels on right-side of screens, referring to "Client"). These references to "Client" may have led some potential class members to believe Lexclaim would represent them as counsel. To be sure, on other webpages, Lexclaim disclaimed any attorney-client relationship with the prospective class member. But some individuals may not have read or understood those disclaimers. Indeed, the documents Lexclaim provided appear to show that at least one individual who accepted Lexclaim's "deal" believes he had signed up for a "class action" with Lexclaim. Dkt. 206-5 at 1 (email from potential class member Jeremy Hibbard to Lexclaim, stating "I signed a class action with yall …."). Lexclaim submitted an opt-out form on behalf of a person with the name of that email correspondent. Dkt. 209-2, ¶ 6; Dkt. 209-5 at 721 (opt-out form for Jeremy Hibbard).

In addition, in support of Lexclaim's Objection, Mr. Harrow stated in his declaration that putative assignors were asked to upload documentation, such as proof that they subscribed to Patreon during the relevant period. Dkt 206-1, ¶ 20. However, Lexclaim did not include any such uploaded documents with its Objection, nor did it include any in the folder of "all 927 PDF files" it made available for review. *Id.* Patreon sought these documents in its subpoena to Lexclaim, but Lexclaim refused to provide them. Dkt. 206-6 at 8-9. The documents are relevant to understand whether putative assignors were confused by Lexclaim's offer—for example, if a person uploaded irrelevant files, files related to a different lawsuit or claim, a document with questions in it, a document labeled "privileged," or documents showing that they in fact have no claim, any of these would tend to indicate they did not understand what Lexclaim was asking them to do, who Lexclaim is, whether Lexclaim is a law firm, or whether their assignment would be effective.

Moreover, the sheer number of opt-outs Lexclaim obtained and submitted (927) indicates that Lexclaim's misleading and incomplete statements likely caused many, if not all, of the individuals to opt

12

out.  The number of opt-outs obtained by Lexclaim is particularly high in view of the low total number of opt-outs received from all potential class members.  The Claims Administrator sent notice of the settlement to more than 8 million email addresses associated with Patreon account holders who are potential class members.  The Claims Administrator received a total of 1,289 requests for exclusion from the settlement, and 927 of them (~72%) were solicited, obtained and submitted by Lexclaim.  Dkt. 204-2, ¶¶ 5-6.  While Lexclaim may argue that it secured a substantial majority of the opt-outs because it offered class members better economic terms, for the reasons stated above that offer is likely worth *substantially less* than what is available to class members under the settlement.  And in any event, the individuals' decisions to opt out were likely not *informed* decisions since Lexclaim's offer to the individuals omitted material facts about the settlement, including that they could get *substantially more* money if they submitted a valid claim under the settlement, as discussed above.

In light of these misstatements and material omissions by Lexclaim, and the likely confusion they caused, the Court should rule that the 927 putative opt-out requests are invalid, order a curative notice to the 927 individuals, and allow them additional time to opt out or make a claim.  *See JUUL*, 2023 WL 6205473, *8–10; *Retiree*, 2016 WL 4080294 at *6-7, 11; *Georgine*, 160 F.R.D. at 489-90.

### D.    The Court Should Exercise Its Discretion To Reject The 927 Putative Opt-Out Requests Because They Do Not Conform To The Exclusion Request Procedure.

Even if the Court concludes that no misleading or incomplete statements were made to the class, the Court "ha[s] discretion to accept or reject opt-out requests that do not conform precisely to the exclusion request procedure."  *In re Google Assistant Privacy Litig.,* 2025 WL 510435, at *3 (N.D. Cal. Feb. 14, 2025) (citations omitted).  "This means, of course, that a district court may either 'disregard certain hyper-technical violations' of the opt-out procedure in the 'interests of justice,' or, conversely, it may enforce adherence to those procedures where it believes necessary."  *Id.* (quoting *In re Centurylink Sales Pracs. & Sec. Litig.*, No. 17-cv-2832, 2020 WL 3512807, at *3 (D. Minn. June 29, 2020)).

The Class Notice provides that any opt-out request "must include your name, address, telephone number, and your signature."  Dkt. 191-2 at 13.  In its preliminary approval Order, the Court approved the Notice, as to both form and content.  Dkt. 192, ¶ 7.  None of the 927 opt-outs Lexclaim submitted to the Claims Administrator contains any mailing or email address or telephone number, as required by the

Class Notice.  Dkt. 206-4; Dkt. 206-1, ¶ 20; Dkt. 209-2, ¶ 6, Exh. C, D.  For that reason alone, the opt-outs are not valid.

Each of the 927 opt-outs is on the same form, which was provided by Lexclaim.  The opt-outs contain a name, a date, what appears to be an electronic signature, and a statement that the signatory want to opt out of the class.  Many of the names on the forms are common names.  Patreon thus cannot tell from the forms who exactly has submitted an opt-out.  Moreover, because the names are often common, it would not be possible in subsequent litigation to determine whether a litigant asserting a VPPA claim is the person who submitted an opt-out through Lexclaim or a class member bound by *res judicata*.  This is not mere formalism; whether or not a person validly opted out of a class action settlement is a not infrequent subject of later litigation.  *See, e.g.*, *Roofer's Pension Fund v. Papa,* 2024 WL 4205638, at *3 (D.N.J. Sept. 12, 2024) (class member who did not submit timely opt out was bound by class settlement four years earlier and could not assert claims); *Amalfitano v. Google Inc.*, 2015 WL 456646, at *3 (N.D. Cal. Feb. 2, 2015) (putative class action dismissed because claims administrator's declaration showed plaintiff was not on opt-out list of prior class settlement).

The Court should exercise its discretion to reject opt-out requests where, as here, the requests fail to identify the individual's address and telephone number, or other unique identifier, as required by exclusion-request procedures.  This information is necessary to verify the identity of persons subject to and excluded from the judgment.

**E.**     **The Court Should Enforce The Settlement Agreement's "Group Opt-Out" Prohibition**

The Settlement Agreement expressly provides:  "This Settlement Agreement will not bind a Class Member who timely and validly opts out of the Class. … ***Group opt-outs, including 'mass' or 'class' opt-outs, are prohibited***."  Dkt. 176-1 at § 7.4 (emphasis added).[6]  This prohibition on group opt-outs is consistent with the line of authority in class actions against group or mass opt outs.  *See In re*

---

[6] Consistent with the Settlement Agreement's express prohibition on "group opt-outs," the Class Notice notified each potential class member they could opt out by taking individualized action as follows: "How do ***I*** opt out?  ***You*** can opt out of the Settlement Class by going to https://www.patreonsettlement.com and filling out the online form, or by sending a letter via first class U.S. mail saying that you want to opt out of the Settlement …"  Dkt. 191-2 at 13; Dkt. 209-2 ¶ 10; Dkt. 209-11 at 13 (emphasis added).

*TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1092 (N.D. Ill. 2021) ("Just as the requirements of notice and opportunity to opt out are designed to protect the due process rights of individual class members, courts have recognized that 'opting out is an individual right' that 'must be exercised individually.'") (quoting *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 241 (3d Cir. 2002)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ("There is no class action rule, statute, or case that allows a putative class plaintiff or counsel to exercise class rights en masse, either by making a class-wide objection or by attempting to effect a group-wide exclusion from an existing class. Indeed, to do so would infringe on the due process rights of the individual class members, who have the right to intelligently and individually choose whether to continue in a suit as class members. … Additionally, to allow representatives in variously asserted class actions to opt a class out without the permission of individual class members 'would lead to chaos in the management of class actions.'" (citations omitted)).

Here, the group of 927 opt-outs that Lexclaim solicited, compiled, and submitted as a group is a "group opt-out" prohibited under the Settlement Agreement. Lexclaim admits it "sought out" potential class members, using social-media ads and a website, to offer them a deal under which potential class members would provide Lexclaim with opt-out requests and assignments of claims. *See* discussion above at § II. Lexclaim alleges it received the opt-outs and assignments from 927 individuals, and Lexclaim—not the individuals—controlled whether the opt-outs were submitted to the Claims Administrator and whether the assignments became effective. *Id.* And Lexclaim ultimately submitted the 927 opt-outs as a group to the Claims Administrator. *Id.* There is no dispute that these opt-outs are coordinated behavior controlled by Lexclaim. Thus, as the Claims Administrator reasonably concluded, the group of 927 opt-outs Lexclaim submitted is a "group opt-out" prohibited under the Settlement Agreement. *Id.* This conclusion is supported by both the plain language of the Settlement Agreement and the commonly understood meaning of the word "group." *See* Merriam-Webster Dictionary (defining "group" to include "an assemblage of objects regarded as a unit") (Dkt. 209-13).

Where, as here, the parties' settlement agreement contains an express prohibition on "group opt-outs," the court should enforce that prohibition as written. A "group opt-out" prohibition serves two

15

important purposes.  *First*, it protects the individual's due process right to exercise their individual decision to make a claim under the settlement or opt out, with accurate information and without interference by a third party.  *See JUUL,* 2023 WL 6205473 at *9 ("Allowing en masse submissions by claims aggregators like ClaimClam raises real risks that Class Members will not receive accurate information regarding the scope of the class and the claims process.").  *Second*, it serves the settling defendant's interest in finality and in avoiding the costs and burdens that would result if a third-party could solicit and mass opt-outs, pay money to get them, and then assert those claims as a group in a subsequent lawsuit.  Courts have often observed that the threat of mass or group opt outs can undermine efforts to reach settlement and get finality.  *See*, *e.g.*, *In re Diet Drugs*, 282 F.3d 220, 232-38 (affirming district court's injunction forbidding mass opt-out effort that could jeopardize settlement).  Consistent with that observation, courts routinely enforce provisions in class settlement agreements that protect the defendant's finality interest.  *See*, *e.g.*, *In re HealthSouth Corp. Sec. Litig.*, 334 F. App'x 248, 253 (11th Cir. 2009) (affirming rejection of untimely opt-out that might have been substantial enough to trigger "blow provision" in settlement agreement); *Sanft v. Sims Grp. USA Corp.*, 2023 WL 6851992, at *5 (N.D. Cal. Oct. 16, 2023) (finding class settlement term permitting defendant to terminate if opt-outs exceeded specified number was fair and reasonable); *Derr v. Ra Med. Sys., Inc.*, 2022 WL 21306534, at *5 (S.D. Cal. Sept. 23, 2022) (same, emphasizing defendant's interest in finality).

In its Objection, Lexclaim argued that courts in this district have rejected individual opt-out requirements.  Dkt. 206 at 9-10.  Not so at all.  For example, in *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1067 (N.D. Cal. 2020), Judge Alsup suggested (in dicta) that requiring an "*original ink signature* by each individual" was burdensome; no such requirement exists here, where class members could opt out online by using a web form or by sending the Claims Administrator a letter.  Dkt. 199 at 22.  In *Hadley v. Kellogg Sales Co.*, 2020 WL 836673, at *8 (N.D. Cal. Feb. 20, 2020), Judge Koh denied preliminary approval of a proposed settlement with numerous defects, including a procedure that permitted opt-outs only by downloading a form, printing it, and mailing it in hard copy.  In that case, Judge Koh later *approved* a renewed request for approval of the settlement agreement, which *included a term stating forbidding mass opt-outs*:  "The Request for Exclusion must be personally completed and submitted by the Class Member or his or her attorney, and so-called 'mass' or 'class' opt-outs shall not

be permitted or recognized." *Hadley v. Kellogg Sales Co.*, No. 16-cv-04955-LHK, Dkt. 378-1 at 13

(Settlement Agreement § 6.6) (Mar. 10, 2021); *id.* at 31 (class notice requiring opt-out online or by mail)

(*Hadley v. Kellogg Sales Co.,* 2021 WL 3700746 (N.D. Cal. June 15, 2021) (granting approval).

Likewise, *Knight v. Concentrix Corp.*, 2019 WL 3503052, at *6 (N.D. Cal. Aug. 1, 2019) is no help to

Lexclaim, as it concerned an ***opt-in*** procedure, not an opt-out.  Magistrate Judge Westmore expressed

concern that the proposed mail-only opt-in process was too burdensome, and directed opt-in by secure

electronic signature.  *Id.*  Last, *In re MyFord Touch Consumer Litig.*, 2018 WL 10539267 (N.D. Cal.

June 7, 2018) had ***nothing*** to do with opt-outs at all.  In that case, the parties had proposed a claims-

made settlement in which class members ***making claims*** had to document costs they had incurred, even

though the defendant already had records of those costs.  Judge Chen questioned whether that claim

requirement was necessary.  *See MyFord*, 2018 WL 10539267, at *2.

The prohibition on group opt-outs here is fair, reasonable, and protects the interests of the parties

and absent class members in promoting settlement, ensuring that individual class members knowingly

exercise their rights, and obtaining finality.  The Court should approve that settlement term here as fair

and reject group opt-outs, like Lexclaim's, that violate the terms of the settlement.

### F.    The Opt-Out Request Lexclaim Submitted In Its Own Name Purporting To Opt Out The Group Of 927 Claims It Purportedly Obtained By Assignment Is Invalid.

The opt-out request Lexclaim submitted *in its own name*—purporting to opt-out of the settlement

for the entire group of claims of the 927 individuals it purportedly obtained by assignment—should be

deemed by this Court to be invalid for three independent reasons:  (1) as a matter of law, the purported

assignments of claims to Lexclaim are invalid and, thus, Lexclaim has no standing or ability to exclude

those claims from the settlement; (2) the opt-out request Lexclaim submitted does not contain the

individuals' or Lexclaim's addresses or phone numbers, as the Class Notice expressly requires and

which are necessary to verify the identity of persons subject to and excluded from the judgment; and

(3) the opt-out request Lexclaim submitted is a "group opt-out" that the settlement expressly prohibits.

### 1.    As A Matter Of Law, The Purported Assignments To Lexclaim Are Invalid And, Thus, Lexclaim Had (And Has) No Standing Or Ability To Exclude Claims From the Settlement

Lexclaim alleges it obtained ***by assignments*** from 927 individuals all claims those individuals

may have against Patreon for violation of the VPPA or other applicable law relating to information privacy.  Dkt. 206 at 3; Dkt 206-4 at 1.  And Lexclaim submitted an opt-out request in its own name, purporting to exclude the claims it purportedly obtained by assignment.  Dkt. 209-6.

As a matter of law, however, the purported assignments of claims to Lexclaim are invalid and thus Lexclaim had (and has) no standing or ability to exclude those claims from the settlement.  As a matter of both California law and federal common law, claims for violation of personal privacy, including VPPA claims, are not assignable.

> **a.    California Law Bars Assignment of VPPA And Other Privacy Claims.**

California law governs the assignment analysis here and prohibits the 927 putative assignors from assigning their VPPA claims against Patreon to Lexclaim.

Patreon's Terms of Use contain a California governing-law provision that applies to the assignment analysis here.  To create a Patreon account, each of the individuals from whom Lexclaim contends it was assigned claims was required to (and did) agree to Patreon's Terms of Use, which contain a governing-law provision stating that "any disputes with [Patreon] must be resolved … under California law."  *See* Sullivan Decl., ¶¶ 5-15, Exhs. 1-9 (Terms of Use) at sections entitled "Dispute resolution" and "Governing law."  Thus, under the governing-law provision, any dispute between the individuals and Patreon over the validity of their assignment of claims to Lexclaim would be resolved under California law.  And the same is true for any dispute between Lexclaim (putative assignee of the individuals) and Patreon on that issue, since an assignee "stands in the shoes" of the assignor.  *Searles Valley Mins. Operations Inc. v. Ralph M. Parsons Serv. Co.*, 191 Cal. App. 4th 1394, 1402 (Jan. 21, 2011) ("The assignee 'stands in the shoes' of the assignor, taking his rights and remedies, subject to *any defenses* which the *obligor* has against the assignor prior to notice of the assignment.").  Thus, in this case, the assignability of those claims is controlled by California law.

As a matter of California law, the 927 individuals' VPPA claims (and other privacy claims) against Patreon, if any, are not assignable to Lexclaim.  California Civil Code § 954 provides that only "[a] thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner."  Courts applying California law have thus held that "causes of action for personal injuries arising out of a tort are not assignable," *Goodley v. Wank & Wank, Inc.*, 62 Cal. App.

18

3d 389, 393 (1976), nor are claims for the common law privacy torts of intrusion upon seclusion and public disclosure of private facts, *Lugosi v. Universal Pictures*, 25 Cal. 3d 813, 819-20 (1979) (stating that claims for intrusion upon seclusion, public disclosure of private facts, and false light are not assignable); *see also Flynn v. Higham*, 149 Cal. App. 3d 677, 683 (1983) ("It is well settled that the right of privacy is purely a personal one; it cannot be asserted by anyone other than the person whose privacy has been invaded, that is, plaintiff must plead and prove that his privacy has been invaded." (citations omitted)).  Consistent with these principles, federal courts applying California law of assignability have concluded that claims arising under federal statutes that are comparable to common law tort claims or personal injury claims are not assignable.  *See Pony v. Cnty. of Los Angeles*, 433 F.3d 1138, 1143 (9th Cir. 2006); *James v. E. Acct. Sys. of Connecticut, Inc.*, 2023 WL 3431893, at *4 (C.D. Cal. Mar. 1, 2023) (Fair Debt Collection Practices Act claim not assignable under California law; comparing FDCPA claim to torts).  As the Ninth Circuit explained in *Pony*:

> The right to sue in tort for personal injury is non-assignable under California law. *Pac. Gas & Elec. Co. v. Nakano*, 12 Cal.2d 711, 87 P.2d 700, 701 (1939) ("It is well settled in this jurisdiction that a purely tort claim is not assignable."). . . . Just as plaintiff cannot assign her Section 1983 action, she cannot assign an action, such as Section 1988, that is derivative of it. . . . Accordingly, plaintiff's right to seek statutory attorney's fees is not transferrable in California, and the retainer agreement's provisions to the contrary are void as a matter of law.

*Pony*, 433 F.3d at 1143-44.  Federal courts applying the laws of other states have reached the same conclusion.  *See US Fax L. Ctr., Inc. v. iHire, Inc.*, 476 F.3d 1112, 1120 (10th Cir. 2007) (TCPA claim could not be assigned); *Tisdale v. Enhanced Recovery Co., LLC*, 2023 WL 1810413, at *9 (E.D. Tex. Jan. 17, 2023) (FDCPA and FCRA claims could not be assigned; collecting cases); *Dotson v. Credit Collection Servs.*, 2023 WL 2749183, at *3 (W.D. Okla. Mar. 31, 2023) (FDCPA claim could not be assigned); *Cooper v. Nat'l Credit Adjusters, LLC*, 2022 WL 17656316, at *4 (N.D. Tex. Nov. 28, 2022) (FDCPA claim could not be assigned); *James v. Puget Sound Collections*, 2022 WL 2357050, at *3 (W.D. Wash. June 30, 2022) (FDCPA claim could not be assigned).

VPPA claims fall squarely within California's prohibition on assignments because they are personal privacy claims and are comparable to common law tort claims for personal injury.  Congress's purpose when enacting the VPPA was "[t]o preserve *personal privacy* with respect to the rental, purchase or delivery of video tapes or similar audio visual materials."  *Stark v. Patreon, Inc.*, 656 F.

19

Supp. 3d 1018, 1026-27 (N.D. Cal. 2023) (quoting *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015)) (emphasis added). The VPPA itself has "Privacy Protection" in its name, and it prohibits video tape service providers from disclosing "personally identifiable information" concerning a consumer's request for or acquisition of video materials or services, absent specified circumstances. *See* 18 U.S.C. § 2710. And federal courts in this Circuit and others have likened VPPA claims to the common law privacy torts of intrusion upon seclusion and public disclosure of private facts, *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983-84 (9th Cir. 2017) (holding alleged VPPA violation was similar to the intrusion upon seclusion tort); *Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 541 n.5 (2d Cir. 2024) (comparing VPPA claim to public disclosure of private facts tort); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1216 (C.D. Cal. 2017); *Pileggi v. Washington Newspaper Publ'g Co., LLC*, 2024 WL 324121, at *5 (D.D.C. Jan. 29, 2024) (intrusion upon seclusion); *Feldman v. Star Trib. Media Co. LLC*, 659 F. Supp. 3d 1006, 1016 (D. Minn. 2023) (same), both of which are unassignable privacy torts under California law, *Lugosi*, 25 Cal. 3d at 819-20; *Flynn*, 149 Cal. App. 3d at 683.

Simply put, California law does not permit assignment of VPPA or other personal privacy claims. Thus, the putative assignments of such claims from the 927 individuals to Lexclaim were (and are) invalid, and Lexclaim had no standing or ability to exclude those claims from the settlement.

> **b.    Federal Common Law Likewise Bars Assignment of VPPA and Other Privacy Claims**

Patreon anticipates Lexclaim will assert that, notwithstanding the California choice-of-law provision of the Patreon Terms of Use, the assignability of the 927 individuals' claims is governed by the ***federal common law***. Even assuming that assertion is correct, the result is the same: under federal common law, VPPA and other privacy claims are not assignable.[7]

The historic rule in the common-law courts of England was that a "chose in action" could not be

---

[7] In cases that did not involve a California choice-of-law contractual provision, some courts have stated that the assignability of claims arising under a federal statute should be governed by the federal common law, *see, e.g.*, *Wallach v. Eaton Corp.*, 837 F.3d 356, 366 (3d Cir. 2016), while others courts concluded there is no federal common law of assignments at all, *see, e.g.*, *Tisdale*, 2023 WL 1810413, at *5 ("[T]here is no federal law of assignments."); *Cooper*, 2022 WL 17656316, at *3 (same); *James*, 2023 WL 3431893, at *4 (same). This uncertainty as to the mere *existence* of a federal common law of assignability is an additional factor in favor of applying California assignment law here, consistent with the Patreon Terms of Use.

assigned. *See* Restatement (Second) of Contracts, Chpt. 15 Intro. Note (1981) (Exh. O to Supp. Decl. of N. Walker). And although that historic common law rule has largely disappeared in the context of contractual claims, it remains applicable to claims sounding in tort, including claims for personal injury. *See Righthaven LLC v. Wolf*, 813 F. Supp. 2d 1265, 1272 n.3 (D. Colo. 2011) ("Although the historical common law rule prohibiting the assignment of a chose in action has largely disappeared in the context of contracts, Restatement (Second) of Contracts § 317 cmt. c (1981), the prohibition is much more robust in the context of torts."); Restatement (Second) of Contracts § 317, cmt. c (1981) (Exh. P to Supp. Decl. of N. Walker) ("[T]he historic common-law rule that a chose in action could not be assigned has largely disappeared. *It remains applicable to some non-contractual rights, particularly claims for damages for personal injury* …." (emphasis added)).

Federal courts of appeal, federal district courts, and state courts uniformly have held that the *federal common law prohibits assignment of personal injury and invasion of privacy claims*. *Lexington Ins. Co. v. S.H.R.M. Catering Servs., Inc.*, 567 F.3d 182, 185 (5th Cir. 2009) ("Under the common law and the law of most states, 'personal injury claims are not assignable absent a statute to the contrary;'" concluding that personal injury claim was not assignable under federal maritime law); *Evans v. Boyd Rest. Grp., LLC*, 240 F. App'x 393, 398 (11th Cir. 2007) ("[U]nder federal common law, 'personal injury claims are not assignable absent a statute to the contrary.'"); *Casino Cruises Inv. Co. v. Ravens Mfg. Co.*, 60 F. Supp. 2d 1285, 1287 (M.D. Fla. 1999) ("Under the common law and the law of most states, personal injury claims are not assignable absent a statute to the contrary."); *Dotson v. Transworld Sys., Inc.*, No. CIV-22-29-D, 2022 WL 2655785, at *2 n. 3 (W.D. Okla. July 8, 2022) ("Even if federal common law governed the assignability issue, the common law rule is that claims arising from torts are not assignable."; concluding FDCPA claim was not assignable); *Martinez v. Green*, 131 P.3d 492, 494-95 (Ariz. Ct. App. 2006) (TCPA claims cannot be assigned under general rule of both "state law and federal common law" that "a personal injury claim cannot be assigned"; analogizing TCPA claims to "invasion of privacy tort claims").

These courts' conclusions that personal injury and privacy claims are not assignable are consistent with the Restatements of Law—on which federal courts often rely when discerning the federal common law, *see Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 780 (7th Cir. 2011)

1  (noting that Restatement (Second) of Torts is a common reference point for considering a case "arising

2  under federal common law")—and other respected secondary authorities.  *See* Restatement (Second) of

3  Torts § 652I (1977) (Exh. Q to Supp. Decl. of N. Walker) ("Except for the appropriation of one's name

4  or likeness, an action for invasion of privacy can be maintained only by a living individual whose

5  privacy is invaded."); *see id.* at cmt. a ("*The right protected by the action for invasion of privacy is a*

6  *personal right, peculiar to the individual whose privacy is invaded. The cause of action is not*

7  *assignable*, and it cannot be maintained by other persons such as members of the individual's family,

8  unless their own privacy is invaded along with his….") (emphasis added); Restatement (Second) of

9  Contracts § 317, cmt. c (1981) (Exh. P to Supp. Decl. of N. Walker) ("[T]he historic common-law rule

10 that a chose in action could not be assigned has largely disappeared.  *It remains applicable to some non-*

11 *contractual rights, particularly claims for damages for personal injury* …." (emphasis added)); 6A

12 C.J.S. Assignments § 49 (Exh. R to Supp. Decl. of N. Walker) (claims for "personal injury" and

13 "personal torts" are not assignable); 6A C.J.S. Assignments § 52 (Exh. S to Supp. Decl. of N. Walker)

14 ("Unassignable causes of action for personal torts include those for personal injury [and] invasion of

15 privacy"); Prosser, *Privacy*, 48 CAL. L. REV. 383, 408 (1960) (Exh. T to Supp. Decl. of N. Walker)

16 ("The right [to privacy] is not assignable.").

17      Applying these federal common law principles here, VPPA claims are analogous to the common-

18 law invasion-of-privacy torts of intrusion upon seclusion and public disclosure of private facts, *see*

19 *supra* pp. 19-20, and are comparable to tort claims for personal injury, and thus are not assignable.  As a

20 result, the putative assignments of VPPA and other privacy claims to Lexclaim are invalid, and thus

21 Lexclaim had (and has) no standing or ability to exclude those claims from the settlement, and its opt-

22 out request purporting to do so is invalid.

23          **2.      The Opt-Out Lexclaim Submitted In Its Own Name Does Not Contain Any**
                    **Address, Phone Number, Or Signature For The 927 Individuals, As The**
24                  **Class Notice Requires.**

25      The opt-out request that Lexclaim submitted in its own name, purporting to exclude from the

26 settlement the group of claims of the 927 individuals, does not contain any address, phone number, or

27 signature for the 927 individuals, or even an address or phone number for Lexclaim, as required by the

28 Class Notice.  Dkt. 209-2, ¶ 6, Exh. C, D; Dkt. 191-2 at 13.  For that reason alone, the opt-out request is

not valid.  *See* § III(D) above.

### 3.    The Opt-Out Request Lexclaim Submitted Is A "Group Opt-Out" That The Settlement Expressly Prohibits.

The opt-out request that Lexclaim submitted *in its own name*—purporting to opt-out of the settlement the entire group of claims of the 927 individuals it purportedly has obtained by assignment—is also invalid for another third independent reason:  it is a "group opt-out" that the Settlement Agreement expressly prohibits.  *See* Dkt. 209-2, ¶ 6, Exh. D.  On that basis alone, it is invalid. Lexclaim's group opt-out request is invalid for all the reasons courts prohibit group opt-outs under similar circumstances:  Lexclaim's misleading and incomplete solicitation and its non-compliance with the requirements for exclusion raise doubts whether the 927 individuals have exercised their due process rights to make individual decisions whether to exclude themselves from the class free from interference.

### G.    Neither Absent Class Members Nor Lexclaim Are Parties Whose Consent Is Required For This Court To Rule That The Lexclaim Opt-Outs Are Invalid.

Neither absent class members nor Lexclaim are parties whose consent is required for this Court to rule that the Lexclaim opt-outs are invalid.  It is undisputed that the parties to this case consented to have a United States magistrate judge conduct all proceedings in this case pursuant to 28 U.S.C. § 636(c) (*see* Dkts. 7, 11), and it is well established that absent class members are *not* parties whose consent is required for a magistrate judge to enter a final judgment.  *See Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1076 (9th Cir. 2017) (holding that Section 636(c) "requires the consent of the named plaintiffs alone" and does not require consent of "absent class members"); *Postier v. Louisiana-Pac. Corp*, 2014 WL 261801, at *1, fn. 1 (N.D. Cal. Jan. 23, 2014) (Spero, J.) (recognizing even before Ninth Circuit decision in *Koby* that "three circuit courts have held that unnamed class members who do not intervene in the lawsuit 'are not "parties" before the court in the sense of being able to direct the litigation,' and therefore, their consent is not required for a magistrate judge to exercise jurisdiction under 28 U.S.C. § 636(c)"); *Cottle v. Plaid Inc.*, 2022 WL 2829882, at *8 (N.D. Cal. July 20, 2022) ("[C]onsent of absent class members is not required for a magistrate judge to exercise jurisdiction over a class action."); *Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1312 (11th Cir. 2013) ("absent class members are not parties whose consent is required for a magistrate judge to enter a final judgment under section 636(c)").  Moreover, as the Ninth Circuit recognized in *Koby*, "[l]imits imposed by the Due Process Clause on the *enforcement* of class judgments do not curtail a magistrate judge's authority

under § 636(c) to *enter* judgment in the first instance."  846 F.3d at 1078–79.

Lexclaim's contrary suggestion—that this Court has no power to rule that the opt-outs are invalid (and to grant remedial relief)—conflicts with absent class members' due process rights and the reasonable administration of this case.  Under Lexclaim's theory, the Court would be powerless to rule that any opt-out is invalid for any reason at all.  The Court thus would be left with the choice of either (1) granting final approval of the settlement without resolving who is bound by it; or (2) deferring final approval of the settlement indefinitely, pending a ruling by some other court on the validity of the opt-outs.  Lexclaim's argument would have wide-ranging implications for the litigation of class actions, as parties would be unwilling to consent to a magistrate judge in putative class actions if the court had no power to issue a ruling or judgment that implicates the absent class members who had not consented.  Fortunately, as set forth above, the Court **has** the power in this case to rule that the Lexclaim opt-outs are invalid and to issue a curative order.  The Court should do so.

### H.    If The Court Is Unwilling Or Unable To Decide Whether The Assignments Of VPPA Claims Are Valid, It Should Still Reject The Group Opt-Outs, Order A Curative Notice, And Order Lexclaim To Post Security To Protect The Class.

Patreon understands that the Court may prefer not to decide the assignability issue at this time.  For the reasons given above (*see* § III(F)(1)), Patreon believes the Court can and should reach that issue and hold that the claims could not be assigned to Lexclaim.  If, nonetheless, the Court chooses not to decide that question and also agrees that a curative notice is required, Patreon submits that the Court will need to address how to protect the interests of the class while ownership of the claims is unresolved.

The problem is this:  if the assignments are invalid and the 927 individuals have the right to make settlement claims after receiving curative notice, any claims made by them must be paid from the settlement fund and the distribution to all other class members would be reduced accordingly.  If, however, the assignments are valid ***and*** Lexclaim has the right to opt out for the entire group, neither Lexclaim nor the individuals would be entitled to payment under the settlement and the class member distributions thus would be as the Claims Administrator has currently calculated them.  So long as the ownership of the claims is unresolved, it appears that the Court has these options:

(1)    Delay any distribution to any class member until there is a final decision on assignability, an unattractive choice for obvious reasons that imposes unfair delay on the other class members.

24

(2)      Hold back sufficient funds to pay the disputed claims of the 927 and pay all other class members a slightly reduced amount on account of the holdback.  But if the assignments are eventually ruled to be valid, the claims of the 927 would eventually be disallowed and the holdback would need to be distributed to the remaining class members.  Given the maximum size of the holdback (about $40,000) and the size of the class (about 105,000) the administrative cost of the second distribution would likely consume the benefit, and the remaining class members would still be prejudiced.

(3)      Require Lexclaim to post security in the amount that each class member receives (about $42) for each of the 927 who submit a claim that Lexclaim contests.  With the security provided for disputed claims, the Claims Administrator can pay all other valid claims to all other class members in full, with no holdback.  If Lexclaim later loses its argument that the claims are assignable, the bond will be used to pay claims of the 927 that Lexclaim wrongly asserted that it owned.  If Lexclaim prevails in its argument that the assignments are valid, the claims of the 927 will be disallowed and Lexclaim will recover its security in full.  This ensures that the vast majority of class members are paid now and in full notwithstanding the dispute over the 927; the 927 will be paid in full if Lexclaim's assignments are invalid; and Lexclaim will suffer no prejudice if it is ultimately proven right as to assignability.

If the Court does not decide the validity of the assignments now, it should proceed with the third option and direct Lexclaim to post a bond after the second claim- and opt-out period has concluded and the number of claims made by the 927 is known.

## IV.    CONCLUSION

For all the foregoing reasons, the Court should rule that the settlement opt-outs Lexclaim submitted are invalid and order the curative notice and other relief set forth in Patreon's accompanying proposed order.

Dated:  February 26, 2025                    Respectfully submitted,

                                             THE NORTON LAW FIRM PC

                                             */s/ Fred Norton*

                                             Fred Norton
                                             Attorneys for Defendant
                                             PATREON, INC.